# 23-683

## United States Court of Appeals
## for the Second Circuit

ELIAS BOCHNER, 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees,*

MARCIA MELENDEZ, JARICAN REALTY INC., 1025 PACIFIC LLC, LING YANG, TOP EAST REALTY LLC, HAIGHT TRADE LLC,

*Plaintiffs,*

*against*

CITY OF NEW YORK, *a municipal entity,*
MAYOR ERIC L. ADAMS, *as Mayor of the City of New York,*
COMMISSIONER LOUISE CARROLL, *Commissioner of New York City Department of Housing Preservation & Development,* COMMISSIONER JONNEL DORIS, *Commissioner of New York City Department of Small Business Services,*

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of New York

---

**JOINT APPENDIX**
**Volume XI of XI (pp. A2701-A2862)**

---

STROOCK & STROOCK & LAVAN LLP
Attorneys for Plaintiffs-Appellees and
Plaintiffs
180 Maiden Lane
New York, New York 10038
(212) 806-5400
cszyfer@stroock.com

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
  *of the City of New York*
Attorney for Defendants-Appellants
100 Church Street
New York, New York 10007
(212) 356-2490
jdavies@law.nyc.gov

## INDEX TO VOLUMES

**<u>Page</u>**

Volume I .................................................................. A1-A266

Volume II ................................................................. A267-A535

Volume III ............................................................... A536-A805

Volume IV ............................................................... A806-A1075

Volume V ................................................................ A1076-A1346

Volume VI ............................................................... A1347-A1616

Volume VII .............................................................. A1617-A1891

Volume VIII ............................................................. A1892-A2165

Volume IX ............................................................... A2166-A2436

Volume X ................................................................ A2437-A2700

Volume XI ............................................................... A2701-A2862

# TABLE OF CONTENTS

**Page**

Docket Sheet.............................................................................. A1

Declaration of Stephen P. Younger, Dated July 22, 2020, in
Support of Plaintiffs' Motion for Preliminary Injunctive and
Declaratory Relief, with Selected Exhibits ........................................... A26

Exhibit 3 - The New York Times Article, Published
May 21, 2020, titled "New Threat to New
York City: Commercial Rent Payments
Plummet"................................................. A54

Exhibit 5 - Complaint, Dated June 23, 2020, in *The
Gap, Inc. and Old Navy, LLC, v. 44-45
Broadway Leasing  Co., LLC*.............................. A61

Exhibit 15 - Chapter 23 Act of the New York State
Sessions Laws of 2020, Approved and
effective March 3, 2020................................. A88

Exhibit 17 - State of New York Executive Order
No. 202, Issued March 7, 2020........................... A92

Exhibit 18 - State of New York Executive Order
No. 202.3, Issued March 16, 2020....................... A97

Exhibit 19 - State of New York Executive Order
No. 202.6, Issued March 18, 2020...................... A101

Exhibit 20 - State of New York Executive Order
No. 202.7, Issued March 19, 2020...................... A105

Exhibit 21 - State of New York Executive Order
No. 202.8, Issued March 20, 2020...................... A109

Exhibit 22 - State of New York Executive Order
No. 202.16, Issued April 12, 2020 ...................... A113

Exhibit 23 -  State of New York Executive Order
No. 202.28, Issued May 7, 2020 ......................... A117

Exhibit 24 -  State of New York Executive Order
No. 202.38, Issued June 6, 2020 ........................ A122

Exhibit 25 -  State of New York Executive Order
No. 202.48, Issued July 6, 2020 ......................... A126

Exhibit 26 -  Chapter 125 Act of the New York State
Sessions Laws of 2020, Approved and
Effective June 17, 2020....................................... A131

Exhibit 27 -  Chapter 127 Act of the New York State
Sessions Laws of 2020, Approved and
Effective June 30, 2020....................................... A135

Exhibit 31 -  Transcript of the City of New York City
Council Stated Meeting,
Dated May 13, 2020 ............................................ A139

Exhibit 32 -  Press Release of the New York City
Council, Dated April 21, 2020, titled
"New York City Council Announces
COVID-19 Legislative Relief Package To
Be Introduced on Wednesday" ............................ A218

Exhibit 33 -  Transcript of the Committee on Housing
and Buildings Jointly with the
Committee on Consumer Affairs and
Business Licensing, Dated April 28, 2020.......... A228

Exhibit 34 -  Transcript of the Committee on Small
Business Jointly with the Committee on
Consumer Affairs and Business
Licensing, Dated April 29, 2020......................... A373

Exhibit 35 -  Committee Report of the Infrastructure
and Governmental Affairs Divisions,
Dated April 28, 2020........................................... A664

Exhibit 36 -   Briefing Paper and Committee Report of
the Governmental Affairs Division,
Dated April 29, 2020 ............................................ A679

Exhibit 37 -   Committee Report of the Governmental
Affairs Division, Dated May 13, 2020 ................. A759

Exhibit 38 -   Committee Report of the Infrastructure
Division, Dated May 13, 2020 ............................. A816

Exhibit 41 -   NYC's Nightlife Economy Impact, Assets,
and Opportunities Report, Commissioned
by The Mayor's Office of Media and
Entertainment ........................................................ A823

Exhibit 44 -   Small Business First Report, Better
Government, Stronger Businesses ...................... A905

Declaration of Santo Golino, Dated July 22, 2020,
in Support of Plaintiffs' Motion for a Preliminary Injunction,
with Annexed Exhibits ........................................................ A955

Exhibit A -   Curriculum Vitae of
Golino Law Group PLLC .................................... A989

Exhibit B -   List of Materials and Sources ............................. A994

Declaration of Elias Bochner, Dated August 25, 2020,
in Support of Plaintiffs' Motion for Preliminary Injunctive
and Declaratory Relief ...................................................... A1000

Amended Complaint, Dated September 2, 2020 ............................. A1006

Order, Dated September 4, 2020 ...................................................... A1073

Transcript of Videoconference Oral Argument Proceedings,
Dated September 11, 2020 ................................................................ A1076

Answer to Amended Complaint, Dated March 7, 2022 .................... A1137

Plaintiffs' Notice of Motion for Summary Judgment,
Dated March 28, 2022 ....................................................................... A1188

Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts
in Support of Their Motion for Declaratory Relief,
Dated March 28, 2022 ....................................................................... A1191

Letter, Dated April 11, 2022, from Pamela A. Koplik
and Scali Riggs to Hon. Ronnie Abrams,
with Additional Document ............................................................... A1201

Letter, Dated July 22, 2022, from Claude G. Szyfer
to Hon. Ronnie Abrams ..................................................................... A1213

Defendants' Notice of Cross-Motion for Summary Judgment,
Dated September 23, 2022 ................................................................ A1216

Defendants' Rule 56.1 Statement of Material Undisputed
Facts in Support of Their Cross-Motion for Summary
Judgment, Dated September 23, 2022 ............................................. A1219

Declaration of Pamela A. Koplik, Dated September 23, 2022,
in Support of Defendants' Cross-Motion for Summary
Judgment and in Opposition to Plaintiffs' Motion for
Summary Judgment and Declaratory Relief,
with Selected Exhibits ...................................................................... A1254

    Exhibit A -   Local Law Int. No. 1932,
                      Effective Date April 20, 2020 ............................ A1263

    Exhibit B -   Transcript of Stated Meeting,
                      Dated April 22, 2020......................................... A1270

    Exhibit C -   Briefing Paper and Committee Report of
                      the Governmental Affairs Division,
                      Dated April 29, 2020......................................... A1370

Exhibit D - Transcript of the Committee on Small
Business Jointly with the Committee on
Consumer Affairs and Business
Licensing, Dated April 29, 2020 ....................... A1449

Exhibit F - Local Law Int. No. 1932-A,
Effective Date May 5, 2020 ............................. A1739

Exhibit G - Plain Language Summary
Local Law Int. No. 1932-A ................................ A1743

Exhibit H - Committee Report of the Governmental
Affairs Division, Dated May 13, 2020 .............. A1745

Exhibit I - Transcript of the Committee on Small
Business, Dated May 13, 2020 ......................... A1801

Exhibit J - Transcript of the City Council Stated
Meeting, Dated May 13, 2020 .......................... A1814

Exhibit K - Letter, Dated May 26, 2020, from Paul
Ochoa to Hon. Michael McSweeney ................. A1892

Exhibit L - Local Law 55 of the City of New York
for the Year 2020 ............................................... A1895

Exhibit M - Local Law Int. No. 2083 .................................... A1900

Exhibit N - Plain Language Summary
Local Law Int. No. 2083 .................................... A1902

Exhibit O - Transcript of the Committee on Small
Business, Dated September 14, 2020 ............... A1904

Exhibit P - Testimony of Public Advocate Jumaane
D. Williams to the New York City
Council Committee on Small Business
Hearing, Dated September 14, 2020 ................. A2017

Exhibit Q - Committee Report of the
Governmental Affairs Division,
Dated September 14, 2020 ................................ A2054

Exhibit R - Transcript of the Stated Meeting,
Dated September 16, 2020 ................................ A2069

Exhibit S - Proposed Local Law Int. No. 2083-A,
Effective Date September 15, 2020.................. A2150

Exhibit T - Plain Language Summary
Local Law Int. No. 2083-A................................ A2156

Exhibit U - Transcript of the Committee on Small
Business, Dated September 23, 2020 .............. A2158

Exhibit V - Committee Report of the
Governmental Affairs Division,
Dated September 23, 2020 ................................ A2166

Exhibit W - Local Law Int. No. 2083-A,
Effective Date September 15, 2020.................. A2185

Exhibit X - Transcript of the City Council Stated
Meeting, Dated September 23, 2020................. A2191

Exhibit Y - Letter, Dated September 28, 2020,
from Paul A. Ochoa
to Hon. Michael McSweeney ............................ A2262

Exhibit Z - Local Law No. 98 of the City of New York
for the Year 2020................................................ A2264

Exhibit AA - Preconsidered Local Law Int. No. 2243,
Effective Date March 10, 2021.......................... A2271

Exhibit BB - Plain Language Summary
Local Law Int. No. 2243.................................... A2276

Exhibit CC - Transcript of the Committee on Small
Business, Dated March 17, 2021 ...................... A2278

Exhibit EE - Committee Report of the
Governmental Affairs Division,
Dated March 17, 2020 ....................................... A2402

Exhibit FF - Transcript of the City Council Stated
Meeting, Dated March 18, 2021 ....................... A2421

Exhibit GG - Preconsidered Local Law Int. No. 2243-A,
Effective Date March 10, 2021 .......................... A2508

Exhibit HH - Plain Language Summary
Local Law Int. No. 2243-A ................................ A2514

Exhibit II - Transcript of the Committee on Small
Business, Dated March 25, 2021 ..................... A2516

Exhibit JJ - Committee Report of the
Governmental Affairs Division,
Dated March 25, 2020 ....................................... A2524

Exhibit KK - Local Law Int. No. 2243-A,
Effective Date March 10, 2021 .......................... A2543

Exhibit LL - Transcript of the City Council Stated
Meeting, Dated March 25, 2021 ....................... A2549

Exhibit MM - Local Law No. 50 of the City of New York
for the Year 2021 ................................................ A2690

Declaration of Colby Kalter, Dated September 22, 2022,
in Support of Defendants' Cross-Motion for Summary
Judgment ............................................................................ A2696

Defendants' Responses to Plaintiffs' Rule 56.1 Statement of
Undisputed Facts, Dated September 23, 2022 ................ A2701

Plaintiffs' Responses to Defendants' Rule 56.1 Statement of
Undisputed Facts, Dated October 14, 2022 .................... A2716

Declaration of Claude G. Szyfer, Dated October 14, 2022, in
Further Support of Plaintiffs' Motion for Summary
Judgment and in Opposition to Defendants' Cross-Motion for
Summary Judgment, with Annexed Exhibits ................................. A2763

    Exhibit 1 -   Email Transmissions, Various Dates,
                between Tilly Gordon, Steve Leicht
                and Chaim Simkowitz ...................................... A2766

    Exhibit 2 -   Email Transmissions, Various Dates,
                between Chaim Simkowitz, Steve Leicht,
                and Tilly Gordon ................................................ A2772

Reply Declaration of Pamela A. Koplik, Dated October 28,
2022, in Further Support of Defendants' Cross-Motion for
Summary Judgment, with Annexed Exhibits ................................. A2779

    Exhibit A -   Summons and Verified Complaint, Sworn
                to September 2, 2021, in *287 7th Avenue
                Realty LLC a/k/a 287 7th Avenue, LLC v.
                Grubbs 287 7th Avenue Corp. d/b/a
                Grubbs take away, and Ian Mitchell* ............... A2782

    Exhibit B -   Plaintiffs' Responses and Objections to
                Defendants' First set of Requests for the
                Production of Documents,
                Dated May 6, 2022 ........................................... A2796

Order, Dated November 30, 2022 ..................................................... A2811

Transcript of Oral Argument, Dated December 12, 2022................ A2813

Defendants' Notice of Appeal, Dated April 26, 2023 ....................... A2861

# A2701

DEFENDANTS' RESPONSES TO PLAINTIFFS' RULE 56.1 STATEMENT
<u>OF UNDISPUTED FACTS, DATED SEPTEMBER 22, 2022</u>
(pp. A2701-A2715)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, Top East Realty LLC, Haight Trade LLC, Elias Bochner, and 287 7th Avenue Realty LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> The City of New York, *a municipal entity*, Bill de Blasio, *as Mayor of the City of New York*, Louise Carroll, *Commissioner of New York City Department of Housing Preservation & Development*, and Jonnel Doris, *Commissioner of New York City Department of Small Business Services*, <br><br> *Defendants*. | Civ. No. 20-cv-5301(RA) <br><br><br> **DEFENDANTS' RESPONSES TO PLAINTIFFS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS** |

In accordance with Federal Rule of Civil Procedure 56 and Southern District of New York Local Rule 56.1, Defendants The City of New York, a municipal entity, Bill de Blasio, as Mayor of the City of New York, Louise Carroll, Commissioner of New York City Department of Housing Preservation & Development, and Jonnel Doris, Commissioner of New York City Department of Small Business Services, submit the following responses and objections to Plaintiffs' Rule 56.1 Statement filed in support of their motion for summary judgment:

**I.        COVID-19 and its Impact on New York City**

1.        As a result of the ongoing COVID-19 pandemic, property owners, including Plaintiffs, saw a precipitous decline in their rental income, threatening their ability to pay their own bills, such as property taxes, mortgages, maintenance expenses and employee salaries.  (ECF No. 32 ¶ 30; ECF No. 31 ¶ 37; ECF No. 52 ¶¶ 10-11).  In New York City, landlords reported having been unable to receive as much as 80% in rent from their commercial tenants during the

pandemic. (ECF No. 29-3 at 2[1]).

**Response:** Defendants dispute that such facts are material to the question of whether the Guaranty Law violates the Contracts Clause. However, Defendants do not dispute the accuracy of the first sentence of paragraph "1" as to some property owners, but do dispute the first as unsupported by the cited evidence from plaintiffs Elias Bochner and 287 7th Avenue Realty LLC ("plaintiffs") who merely allege that due to the COVID-19 pandemic the plaintiffs "may not be able to collect rent" and that "our commercial tenant has had to close their business" (ECF No. 52 ¶¶ 10-11) Furthermore, Defendants do dispute the accuracy of the second sentence of paragraph "1" as unsupported by the cited evidence (ECF No. 29-3 at 2) which is a New York Times article stating that "**one** landlord reported that 80 percent of retail tenants missed rent at the start of the month (emphasis supplied)."

## II.    Legislative Responses to the Pandemic

2.        In response to COVID-19, the State Legislature conferred broad emergency powers on the Governor to address the pandemic by amending Section 29-a of the Executive Law. (ECF No. 29 ¶ 22). Pursuant to that amendment, the Governor, by executive order, was empowered to issue any directive during a state disaster emergency—including an epidemic—that can only be overridden by a joint resolution of the Legislature. (Id. at ¶¶ 23-24; ECF No. 29-15 at 2-3). The Governor passed several executive orders impacting small businesses in New York City. (ECF No. 29 ¶¶ 27-43).

**Response:** Defendants do not dispute the accuracy of the first and third sentences of paragraph "2" but object as to the second sentence of paragraph "2" which is conclusory and contains legal conclusions, not facts, and aver that the amendment of Section 29-a of the Executive

---

[1] Page numbers refer to the pagination in the ECF filing stamps on documents filed in this action.

Law speaks for itself (ECF No. 29-15).

3.      The New York State Legislature also passed two statutes to provide relief to both landlords and residential tenants:  The Emergency Rent Relief Act of 2020 ("ERRA") and the Tenant Safe Harbor Act ("TSHA").  (ECF No. 29 ¶¶ 45-46).  The ERRA makes rental assistance vouchers available to landlords on behalf of those tenants who have experienced an increase in their rent burdens between April 1 through July 31, 2020 because of a loss in income due to COVID-19.  (Id.; ECF No. 29-26 at 2-3).  The TSHA prevents courts from issuing warrants of eviction for nonpayment of rent that accrues from March 7, 2020 until the executive orders on non-essential gatherings expire.  (ECF No. 29 ¶¶ 45-46; ECF No. 29-27 at 2-3).

**Response:** Defendants dispute that such facts are material to the question of whether the Guaranty Law violates the Contracts Clause.  However defendants do not dispute the accuracy of all three sentences of paragraph number "3," but object insofar as these statutes only apply to residential and not commercial tenancies.

### III.    The Guaranty Law

4.      On April 21, 2020, the Council announced its intention to add three bills— including the Guaranty Law—to the Federal government's, Governor's and Legislature's directives.  (ECF No. 29 ¶ 54; ECF No. 29-32 at 2).  In describing the bills, the Speaker of the Council explained: "[i]t's essential that New Yorkers get the rent cancellation they need."  (ECF No. 29-32 at 2).

**Response:** Defendants do not dispute as set forth in the first sentence of paragraph "4" that on April 21, 2020, the City Council announced that it was introducing a COVID-19 Relief Package (ECF No. 29-32 at 2) but dispute Plaintiffs' characterization of the Guaranty Law as being "added" to any other legislative directives. Defendants do not dispute that the words in the second sentence

of paragraph "4" were spoken by the Speaker of the Council, however object to such statement as cherry-picked and taken out of context (ECF 29-32).

5.      The Council's Committee on Housing and Buildings and its Committee on Consumer Affairs and Business Licensing held a hearing on April 28, 2020.  (ECF No. 29 ¶ 55). On April 29, 2020, the Committee on Small Business and the Committee on Consumer Affairs and Business Licensing held a hearing.  (Id.).  The Committee Report summarized the bill's terms, providing no factual justification, no analysis of the bill's scope, and no consideration of any alternatives that might have been less burdensome or more narrowly tailored to those truly in need. (Id. ¶¶ 62-64; ECF No. 29-36 at 41).  When Council Member Carlina Rivera asked Gregg Bishop, Commissioner of the City Department of Small Business Services, whether the department had heard from small business owners "regarding personal liability concerns," Bishop responded, "we have not."  (ECF No. 29-34 at 73).  When the Vice Chair of Community Board 7, a supporter of the Guaranty Law, was asked by the Council "how many" of his members had been affected by personal guaranties during the pandemic, he stated that he did not have "the data."  (Id. at 141).

**Response:** Defendants do not dispute the accuracy of the first and second sentences of paragraph "5." Defendants dispute the accuracy of the third sentence of paragraph "5" and aver that the April 29, 2020 Briefing Paper and Committee Report of the Governmental Affairs Division provided factual justification for the Guaranty Law (Koplik Decl. at ¶ 5, Exhibit C at 9-35) and was released prior to review of written and oral testimony concerning the bill, so would not be expected to contain the full analysis of its scope or alternatives considered. Defendants object to the fourth sentence of paragraph "5" as unsupported by the cited evidence and as a statement by Commissioner Bishop that is cherry-picked and taken out of context; indeed Commissioner Bishop said in response to whether SBS had heard from business owners regarding personal liability

concerns either prior to or during COVID-19, "we have not, but again we would connect them to our attorney network. That is one of the services that we provide in general for legal assistance, especially around contracts and leases." (Koplik Decl. at ¶ 6, Exhibit D at 72). Defendants object to the fifth sentence of paragraph "5" as unsupported by the cited evidence and as a statement by Andrew Rigie, Vice Chair of Community Board 7 and Executive Director of the New York City Hospitality Alliance, that is cherry-picked and taken out of context; indeed Mr. Rigie stated, in relevant part: "[y]ou know, that's a good question. I don't have the data. I can tell you thousands of restaurants, bars and clubs throughout the city are being impacted....So, I don't have an exact number but I have to imagine with 25,000 eating and drinking establishments in the five boroughs, we're taking about numbers in the thousands since the vast majority of them are not generating any revenue and [they're] unable to pay rent." (Koplik Decl. at ¶ 6, Exhibit D at 140-141).

6.      Council Member Justin Brannan spotlighted his "concerns that [the Guaranty Bill] may end up helping Louis Vuitton as much as it helps Louise['s] [P]izza." (ECF No. 29-31 at 38). Council Member Peter Koo warned the City "need[ed] to address th[e] ecosystem as a whole and find a comprehensive solution for all," including "small landlords who are struggling to make payments and meet their obligations."  (Id. at 63).  At the hearings, a tenants' rights group identified a prescient issue presented by the Guaranty Law—"tenants who can pay but who are going to withhold rent out of solidarity."  (ECF No. 29-33 at 41, 45).

**Response:** Defendants dispute the first sentence of Paragraph "6" to the extent that it contains partial quotations that misrepresent the testimony of Council Member Brannan and Council Member Koo. (Koplik Decl. at ¶ 12, Exhibit J at pp. 36-37, 62). Dispute the second sentence of paragraph "6" because it pertains to testimony relating to the Residential and Commercial Harassment Laws, particularly the alleged withholding of rent by residential tenants,

and is not material to the question of whether the Guaranty Law violates the Contracts Clause. (Ugalde Decl., Ex. OO, ECF No. 38:41).

7.      Council members also recognized the Guaranty Law simply shifted contractual burdens from the tenant to the landlord: as Council Member Kalman Yeger put it: "we are in tough times and everybody is hurting" and "it can't just be that the tenant is not going to pay rent because the tenant doesn't have income.  We have to find a way . . . to reduce the burden on all New Yorkers that are trying to come out of this."  (ECF No. 29-34 at 91-92).

**Response:** Defendants dispute Paragraph "7" to the extent that it contains partial quotations that misrepresent the testimony of Council Member Yeger. (Koplik Decl. at ¶ 6, Exhibit D at pp. 90-91).

8.      Council Member Fernando Cabrera questioned if it made "more sense to have the state and the city come up with a fund to pay for [] rent, just like Delaware," but discussions went no further.  (ECF No. 29 ¶ 60; ECF No. 29-33 at 52).  Towards the end of the hearing, several Council Members openly expressed doubts about the constitutionality of the Guaranty Law, including one member who argued "[t]he city cannot retroactively adjust, amend a contract that was entered into by two parties at arm's length . . . . [e]mergency or not . . . . *This feels unconstitutional.*  We don't have a legal authority to go backwards into a contract that was entered into five, six, seven . . . years ago . . . and amend [it] retroactively to remove a provision."  (ECF No. 29 ¶ 61; ECF No. 29-34 at 90) (emphasis added).

**Response:**  Defendants dispute the first sentence of paragraph "8 because it pertains to testimony relating to the Residential and Commercial Harassment Laws, and because  such facts are not material to the question of whether the Guaranty Law violates the Contracts Clause. Defendants dispute the second sentence of paragraph "8" insofar as Plaintiffs' state that "several

Council Members openly expressed doubts about the constitutionality of the Guaranty Law" as unsupported by the cited evidence, cherry-picked and taken out of context (Ugalde Decl., Ex. OO, ECF No. 38:41).  Defendants do not dispute the second sentence of paragraph "8" insofar as the cited exhibit contains, in part, the quoted language. (Koplik Decl. at ¶ 6, Exhibit D at 89).

9.      The "fiscal impact statement" in the legislative record is a two-page, pro forma document summarizing the legislation with no analysis.[2]  The hearing record consists largely of one-page letters, including form letters, from self-interested individuals and advocacy groups. (See, e.g., ECF No. 38-52 at 148-69; ECF No. 38-53 at 2-195; ECF No. 38-54 at 2-180).

**Response:** Defendants dispute that such facts are material to the question of whether the Guaranty Law violates the Contracts Clause, and dispute Plaintiffs' characterization of the legislative record as unsupported by the cited evidence, and unsupported by the record itself. (Koplik Decl. at ¶¶ 4-37, Exs. A-MM).

10.      Despite these reservations, at a signing ceremony purporting to be a public hearing, on May 26, 2020, Mayor de Blasio signed the bill into law without further debate.  (ECF No. 58 ¶ 129; ECF No. 29 ¶ 65).  In total, the public and any interested parties had just 21 days to comment on the bill.  (ECF No. 58 ¶ 130).

**Response:** Defendants dispute that such facts are material to the question of whether the Guaranty Law violates the Contracts Clause, and object to these statements as not followed by a citation to admissible evidence. *U.S. Info. Sys. v. IBEW Local Union No. 3*, 2006 U.S. Dist. LEXIS 52938, at *13. Defendants admit that Mayor de Blasio signed the bill on May 26, 2020. (Koplik Decl. at ¶ 13, Exhibit K).

---

[2] Council of the City of New York Finance Division, Fiscal Impact Statement, Proposed Int. No. 1932-A, Small Business Committee, May 7, 2020, *available at* https://legistar.council.nyc.gov/View.ashx?M=F&ID=8405256&GUID=B6EE6978-34B0-4ADF-987E-4A4C0E811C78.

11.     The City Council extended the Guaranty Law twice, first in September 2020 and again in March 2021.  (Melendez v. City of New York, 16 F.4th 992, 1005 n. 27 (2d Cir. 2021); N.Y.C. Local L. 2020/98; N.Y.C. Local L. 2021/50).   No additional hearings were held, no additional analysis performed and no changes made to the Guaranty Law.  (N.Y.C. Local L. 2020/98; N.Y.C. Local L. 2021/50).  By the summer of 2020, businesses started to reopen and by March 2021, trillions of dollars in pandemic assistance funds had been appropriated, and hundreds of billions of dollars were expended to assist small businesses.  (Melendez, 16 F.4th at 1044). None of the changing economic conditions were factored into the decision to extend the Guaranty Law.  (N.Y.C. Local L. 2020/98; N.Y.C. Local L. 2021/50).  Instead, the City Council summarily and imprecisely declared that the extension was designed to provide businesses with "an opportunity to not only survive but also to generate sufficient revenues to defray owed financial obligations."  (N.Y.C. Local L. 2020/98(9); N.Y.C. Local L. 2021/50(9)).

**Response:** Defendants do not dispute the accuracy of the first and third sentences of paragraph "11."  Defendants dispute the accuracy of the second sentence of paragraph "11" and note that several hearings were held regarding Local Law 98 of 2020 and Local Law 50 of 2021, additional analysis performed and changes made to the Guaranty Law, including the inclusion of a "Declaration of legislative intent and findings" in both extensions of the Guaranty Law (Koplik Decl. at ¶ 15-37, Exhibits O, P, Q, R, U, V, X, Z, AA, CC, DD, EE, FF, II, JJ, LL, MM). Defendants dispute the accuracy of the fourth and fifth sentences of paragraph "11" and note that the changing economic conditions were factored into the decision to extend the Guaranty Law. (see, e.g., Koplik Decl. at Exhibits Z and MM, "Declaration of legislative intent and findings").

### A.     The Provisions of the Guaranty Law

12.     N.Y.C. Local L. 2020/55 amended the N.Y.C. Administrative Code adding §22-1005.  (N.Y.C. Admin. Code §22-1005).  The Guaranty Law forever prohibits landlords from

enforcing personal guaranties executed as security for commercial leases for defaults occurring between March 7, 2020 and June 30, 2021. (<u>Id.</u>). Specifically, the Guaranty Law, entitled "Personal Liability Provisions in Commercial Leases" provides that:

> A provision in a commercial lease or other rental agreement involving real property located within the city . . . that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, **<u>shall not be enforceable</u>** against such natural persons if the conditions of paragraph 1 and 2 are satisfied.

(<u>Id.</u> at § 22-1005 (emphasis added)). The law's first condition for application involves tenants required to cease serving members of the public under executive orders 202.3, 202.6 and 202.7, mostly impacting restaurants, bars, or non-essential retail establishments. (<u>Id.</u> at § 22-1005(1)). The second requirement is that the default or other event causing the personal guarantor to become personally liable must have occurred between March 7, 2020 and June 30, 2021, inclusive. (<u>Id.</u>).

**Response:** Defendants do not dispute the accuracy of the first sentence of paragraph "12" but dispute the remaining sentences and aver that the remaining sentences of paragraph "12" contain legal conclusions, and not facts, and that Local Law 55 of 2020 speaks for itself.

### B.     The Personal Guaranty in Commercial Leases

13.     The personal guaranty is an essential part of commercial leasing in the City. (ECF No. 30 ¶ 27). Depending on their credit-worthiness, personal guaranties enable tenants to lease space they would otherwise be precluded from leasing because of an owner's need or desire to place a more creditworthy tenant on the lease. (<u>Id.</u>). Guaranty agreements provide additional security where the tenant named on the lease is a corporation, LLC, or other entity, such that the entity's officers or members would be protected from personal liability for the entity's debts. (<u>Id.</u> at ¶ 28). Often, the guarantor is an owner or other principal of the business entity who agrees to

be personally liable for the obligations of the tenant.  (<u>Id.</u>).

**Response:**  Defendants object to this statement as it is not followed by a citation to admissible evidence. *U.S. Info. Sys. v. IBEW Local Union No. 3*, 2006 U.S. Dist. LEXIS 52938, at *13. Accordingly, this statement should be disregarded and stricken from the record. Defendants further object on the ground that the statement is merely the opinion of the declarant Santo Golino, Esq., lacks foundation, is speculative and is not material for purposes of a Rule 56.1. statement.

14.     Guaranties take various forms.  (<u>Id.</u> ¶ 29).  A guaranty agreement may constitute a "full" guaranty, where the guarantor guarantees payment of the tenant's obligations through the end of the lease, whether or not the lease is terminated early or not.  (<u>Id.</u>).  Alternatively, it may be a limited guaranty—or a "good guy" guaranty—where a guarantor's obligations run through the date when the tenant surrenders possession of the premises to the landlord, which he can do prior to the end of a lease to avoid the balance of rent payments.  (<u>Id.</u>).  Guaranty agreements—and "good guy" guaranties, in particular—benefit both owners and tenants.  (<u>Id.</u> ¶ 30).  They encourage property owners to lease property to commercial tenants who may not be as creditworthy and they incentivize tenants to voluntarily surrender a leased property without the landlord having to resort to an eviction proceeding giving the landlord the ability to re-let a commercial space.  (<u>Id.</u>).  Good guy guaranties help prevent the worst-case scenario for small landlords—and for the overall health of the real estate market—when a tenant continues to occupy the premises during and beyond the lease term without paying rent.  (<u>Id.</u> at ¶ 31).

**Response:**  Defendants object to this statement as it is not followed by a citation to admissible evidence. *U.S. Info. Sys. v. IBEW Local Union No. 3*, 2006 U.S. Dist. LEXIS 52938, at *13. Accordingly, this statement should be disregarded and stricken from the record. Defendants further object on the ground that the statement is merely the opinion of the declarant Santo Golino,

Esq., lacks foundation, is speculative and is not material for purposes of a Rule 56.1. statement.

15.     The Guaranty Law forever cancels "good guy" and any other personal guaranties contained in New York City commercial leases for the period between March 1, 2020 and June 30, 2021.  (Id. at ¶¶ 96-99).  The Guaranty Law's triggers do not contain any substantial injury requirement and therefore could be—and, indeed, have been—invoked by businesses that are well-capitalized or surviving the pandemic well.  (Id.).  Tens of thousands of small business landlords in New York City have been impacted by the Guaranty Law.  (ECF No. 29 ¶ 86).

**Response:** Defendants object to this statement as it is not followed by a citation to admissible evidence. *U.S. Info. Sys. v. IBEW Local Union No. 3*, 2006 U.S. Dist. LEXIS 52938, at *13. Accordingly, this statement should be disregarded and stricken from the record. Defendants further object on the ground that the statement is merely the opinion of the declarants Santo Golino, Esq., and Stephen P. Younger, Esq., lacks foundation, is speculative, constitutes legal conclusions and is not material for purposes of a Rule 56.1. statement.

### IV.     The Guaranty Law's Impact on Plaintiff Bochner

16.     Plaintiff Elias Bochner ("Mr. Bochner") is a shareholder of 287 7th Avenue Realty LLC, a limited liability company, which owns the property located at 287 7th Avenue, a mixed-use building with one commercial space.  (ECF No. 52 ¶¶ 2-3).  Mr. Bochner and his family rely on the rental payments for their income and he requires "good guy" guaranties for all of his commercial tenants in the regular course of business.  (Id. ¶¶ 6, 14).  Like thousands of commercial landlords throughout New York City, Mr. Bochner would not have entered into any lease agreements with a small business if not for the "good guy" guarantee given by the principals of the business.  (Id.).

**Response:** Defendants do not dispute the first and second sentences of paragraph "16."

Defendants Dispute the third sentence of paragraph "16" to the extent that it asserts that Plaintiff Bochner entered into any lease agreement (Koplik Decl. ¶ 39, Ex. OO1-OO2), and to the extent that Plaintiff Bochner purports to know that the guarantor's relationship to Plaintiff 287 7ᵗʰ Avenue Realty LLC's tenant. (Koplik Decl. ¶ 46 , Ex. VV at 29:10-29:12). Defendants object to the third sentence of paragraph "16" as it is not followed by a citation to admissible evidence. *U.S. Info. Sys. v. IBEW Local Union No. 3*, 2006 U.S. Dist. LEXIS 52938, at *13. Accordingly, this statement should be disregarded and stricken from the record. Defendants further object on the ground that the statement as it pertains to "thousands of commercial landlords throughout New York City" is not contained in the cited evidence, is merely the opinion of Plaintiffs, lacks foundation, is speculative and is not material for purposes of a Rule 56.1. statement.

17.    The principal of the commercial tenant at 287 7th Avenue—Sunburger 1 LLC ("Sunburger")—agreed to a "good guy" guaranty with a six-month notice provision.  (Id. ¶ 15). Starting in December 2019, even before the pandemic, Sunburger defaulted in paying full rent. (Id. ¶ 16).  On March 20, 2020, Sunburger provided notice of its intent to surrender the property on September 20, 2020, agreeing to be liable for six months of rent, but avoiding rent beyond that point by handing the premises back over to Mr. Bochner.  (Id.).  Both parties agreed that pursuant to the "good guy" guaranty, Sunburger's principal pay rent until September 20, 2020.   (Id. ¶ 17). However, Sunburger's principal defaulted, and because of the Guaranty Law, the personal guaranty could no longer be enforced and Mr. Bochner has no practical means under the commercial lease agreement to collect unpaid rent pursuant to the parties' agreement.  (Id. ¶ 18). The Guaranty Law canceled the six months' rent payments the parties agreed upon and rendered the commercial lease virtually valueless for the period March 20, 2020 to September 20, 2020. (Id.).

**Response:** Defendants dispute the first, fourth, and fifth sentences of Paragraph "17" to the extent that they purport to state what the guarantor's relationship to Plaintiff 287 7th Avenue Realty LLC's tenant is. (Koplik Decl. at ¶ 46 , Ex. VV at 29:10-29:12). Defendants dispute the third sentence of Paragraph "17" because Sunburger defaulted in full rent payments earlier than December 2019. (Koplik Decl. at ¶ 43, Ex. SS).  Defendants further dispute the fifth and sixth sentences  of paragraph "17" and aver that those sentences contain legal conclusions, and not facts, and that the Guaranty Law speaks for itself. Defendants do not dispute the third sentence of paragraph "17."

18.     The Guaranty Law threatens to financially harm Mr. Bochner's small business.  (Id. ¶¶ 18-22).  Because it has been unable to recover unpaid rent amounts (approximately $110,000), 287 7th Realty LLC may not have sufficient assets to continue to operate as a going concern and may not be able to meet the tax obligations and operational expenses of the property.  (Id. ¶¶ 19-20).  Indeed, Mr. Bochner had to pay the $35,000 in taxes for the property due July 1, 2020 using his own personal funds.  (Id. ¶ 20).

**Response:** Defendants dispute the accuracy of all three sentences of paragraph "18" as contrary to the record evidence, aver that Plaintiffs admitted that they never attempted to recover unpaid rent amounts from the tenant through litigation, or the Guarantor through litigation or otherwise, (Koplik Decl. at ¶¶ 38, 46, Ex. NN, 36:13-37:8; Ex. VV, 32:12-33) and that Plaintiff Bochner admitted at deposition that his own personal funds were not used to pay the real estate taxes for the property. (Koplik Decl. at ¶¶ 38, 46, VV, 42:13-44:02, NN, 45:18-45:24).

Dated:        New York, New York
              September 23, 2022

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Admin. Law Div.
New York, New York 10007
Tel: (212) 356-2187
Email:   pkoplik@law.nyc.gov
          sriggs@law.nyc.gov


By: _____
    PAMELA A. KOPLIK
    SCALI RIGGS
    Assistant Corporation Counsel

# A2716

PLAINTIFFS' RESPONSES TO DEFENDANTS' RULE 56.1 STATEMENT
OF UNDISPUTED FACTS, DATED OCTOBER 14, 2022
(pp. A2716-A2762)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, | : Civ. No. 20-cv-5301(RA) |
| Ling Yang, Top East Realty LLC, Haight Trade LLC, Elias | : |
| Bochner, and 287 7th Avenue Realty LLC, | : |
| | : |
| *Plaintiffs*, | : |
| | : |
| v. | : |
| | : |
| The City of New York, *a municipal entity*, | : |
| Bill de Blasio, *as Mayor of the City of New York*, | : |
| Louise Carroll, *Commissioner of New York City* | : |
| *Department of Housing Preservation &* | : |
| *Development*, and Jonnel Doris, *Commissioner of* | : |
| *New York City Department of Small Business* | : |
| *Services*, | : |
| | : |
| *Defendants*. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' RESPONSES TO DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56.1, in opposition to Defendants' cross-motion for summary judgment, Plaintiffs Elias Bochner and 287 7th Avenue Realty LLC (collectively "Plaintiffs") hereby submit the following responses to Defendants' Rule 56.1 Statement of Undisputed Facts:

## I.  Background

1.    COVID-19 is an acute respiratory illness caused by a novel coronavirus that first appeared in the United States in January 2020.

**Response**: Plaintiffs object to this statement because it is not supported by any admissible evidence.  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

2.      As of September 9, 2022, there have been over 600 million reported cases of COVID-19 worldwide,[1] including over 2 million confirmed cases in New York City.[2]

**Response**: Undisputed, however, Plaintiffs object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

3.      On January 31, 2020, the United States Department of Health and Human Services declared the COVID-19 virus a public safety emergency.[3]

**Response**: Undisputed, however, Plaintiffs object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

4.      On March 11, 2020, the World Health Organization declared it to be a global pandemic.[4]

**Response**: Undisputed, however, Plaintiffs object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

5.      All levels of government took drastic measures to limit the spread of the disease, including implementing stay-at-home orders, mandating closure of businesses and restaurants, and restricting public and private gatherings.

**Response**: Plaintiffs object to this paragraph because it is not supported by admissible evidence, contains statements of opinion rather than facts, and is argumentative.  Plaintiffs further

---

[1]   New York City Department of Health, Covid-19 data, available at: https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page, (last visited, September 12, 2022).

[2]   New York City Department of Health, Covid-19 data, available at: https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page, (last visited, September 12, 2022).

[3]   United States Department of Health & Human Services, available at: https://aspr.hhs.gov/legal/PHE/Pages/2019-nCoV.aspx, (last accessed, September 12, 2022).

[4]   Domenico Cucinotta and Maurizio Vanelli, WHO Declares COVID-19 a Pandemic, National Library of Medicine, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7569573/, (last accessed, September 12, 2022).

object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

6.      Chapter 23 of the New York State Laws of 2020 ("Chapter 23") amended sections 20(2)(a) and 29-a of the New York Executive Law. The amendment to N.Y. Executive Law § 29-a enabled the Governor to "issue any directive during a state disaster emergency" involving, among other things, an epidemic or disease outbreak so long as such directive is "necessary to cope with the disaster," and expanded the Governor's existing authority to temporarily suspend laws, rules or orders. The amendment to N.Y. Executive Law § 29-a took effect on March 3, 2020. *See* Exhibit "A" to the Declaration of Carlos F. Ugalde Alvarez ("Ugalde Decl."), [Dkt. 38-1].

**Response**: Disputed, and Plaintiffs respectfully refer the Court to the full text of Chapter 23 for its full and complete terms.  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

7.      By New York State Gubernatorial Executive Order ("EO") No. 202 dated March 7, 2020, the Governor, *inter alia*, declared, pursuant to N.Y. Executive Law § 28, a state disaster emergency, effective March 7, 2020. Ugalde Decl., Ex. "B" [Dkt. 38-2].

**Response**: Disputed, and Plaintiffs respectfully refer the Court to the full text of Executive Order No. 202 for its full and complete terms.  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

8.      By New York State Gubernatorial Executive Order No. 202.3, dated March 16, 2020, the Governor, *inter alia*, directed that, no later than March 16, 2020 at 8:00 p.m., (i) "[a]ny restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises," and (ii) "[a]ny gym, fitness centers or classes, and movie theaters shall also cease operation." Ugalde Decl., Ex. "C" [Dkt. 38-3].

**Response**: Disputed, and Plaintiffs respectfully refer the Court to the full text of Executive Order No. 202.3 for its full and complete terms  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

9.      By New York State Gubernatorial Executive Order No. 202.6, dated March 18, 2020, the Governor, *inter alia*, directed that, no later than March 20, 2020 at 8:00 p.m., "[a]ll businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize," and that "[e]ach employer shall reduce the in-person workforce at any work locations by 50%," except that these directives do not apply to "[a]ny essential business or entity providing essential services or functions," which include "essential retail including grocery stores and pharmacies." Ugalde Decl., Ex. "E" [Dkt. 38-6].

**Response**: Disputed, and Plaintiffs respectfully refer the Court to the full text of Executive Order No. 202.6 for its full and complete terms.  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

10.      By New York State Gubernatorial Executive Order No. 202.7, dated March 19, 2020, the Governor, *inter alia*, (i) ordered the closure of all barbershops, hair salons, tattoo or piercing parlors and related personal care services, including nail technicians, cosmetologists and estheticians, and the provision of electrolysis, laser hair removal services, by March 21, 2020 at 8:00 p.m., and (ii) modified "[t]he provisions of [EO No.] 202.6 requiring in- person work environment restrictions" so that, no later than March 21, 2020 at 8:00 p.m., non- essential businesses or entities "reduce the in-person workforce at any work locations by 75%." Ugalde Decl., Ex. "F" [Dkt. 38-6].

**Response**: Disputed, and Plaintiffs respectfully refer the Court to the full text of Executive Order No. 202.7 for its full and complete terms.  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

11.     On June 14, 2021, Governor Cuomo announced the end of the State's disaster emergency.[5]

**Response**: Undisputed, however, Plaintiffs object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

## II.     The City's Enactment of Local Law 55 of 2020

12.     On April 22, 2020, at its stated meeting, the New York City Council ("City Council") introduced a piece of legislation—*i.e*, Introduction ("Intro") No. 1932—that, as amended, became Local Law No. 55 of 2020 (the "Guaranty Law"). *See* Declaration of Pamela A. Koplik September 23, 2022 ("Koplik Decl."), Exs. A-B.

**Response**: Plaintiffs object to this paragraph because it does not specify how Intro No. 1932 was amended, but otherwise do not dispute it.

13.     Fifteen City Council Members sponsored Intro 1932. *See* Koplik Decl., Ex. A.

**Response**: Undisputed.

14.     On April 29, 2020, the City Council's Committee on Small Business and Committee on Consumer Affairs and Business Licensing jointly held a hearing on Intro 1932 (the "April 29, 2020 Committee Hearing"). *See* Koplik Decl., Ex. D.

**Response**: Undisputed.

15.     During the April 29, 2020 Committee Hearing, Council Member and bill sponsor Carolina Rivera, stated:

> My bill will ensure that business owners, should they be forced to walk away or temporarily shutter their stores, through no fault of their own can do so without facing personal liability, ensuring that one day they may be able to return and relaunch or create a new thriving business in our neighborhoods. Sadly, I am already hearing from small businesses in my district that some landlords who I understand maybe suffering as well are going after small business owners life

---

[5]     *See* https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-ending-covid-19-state-disaster-emergency-june-24

savings and personal assets during this national pandemic. These are folks like my constituents Mario, the owner of Follia, an amazing Italian restaurant on 3rd Avenue. Mario is already getting rent due notices and threats from his landlord that the personal liability clause in his lease will soon be acted upon. He has no where to turn right now. No matter the need, it is a moral and unethical failure for landlords to seek such restitution for people who have already lost their life's work. Any small business owners that's taken the right steps in incorporating their business should be protected by this bill and I encourage all members of these committees to please support Intro. 1932.

*See* Koplik Decl., Ex. D at 30:03-31:03.

**Response**: Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045. While paragraph 15 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

16.     During the April 29, 2020 Committee Hearing, City Council heard testimony about the accessibility of City, State, and Federal COVID-19 economic relief programs. *See generally id.*

**Response**: Disputed. Plaintiffs object to this paragraph because it is not supported by admissible evidence, argumentative, and is misleading and ignores other hearing testimony. Plaintiffs further note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045.

17.     At the April 29, 2020 Committee Hearing, Yin Kong, the Director of Think Chinatown testified, in part, as follows:

[B]oth SBS and SBA grants and loan programs were not inclusive in the grant owned businesses. Language support on the application and on the outreach of the program is sorely lacking. By the time grassroot efforts pulled together to fill in the gaps for translations, the funding was already run out. The cash basis business practice common in Chinatown also results in a paper trail that may not be able to fully reflect loses and informal payroll prevalent in small family owned businesses excluded many businesses from benefiting in meaningful amounts from the PPP.

*See* Koplik Decl., Ex. D at 252:04-252:16.

**Response**: Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 17 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

18.    At the April 29, 2020 Committee Hearing, small business owner, Alice Lu, testified, in part, as follows:

> I want to talk to a little bit about my families experience as well as many other small businesses experience in applying for these existing grants and loan opportunities that were given to us by the state, the city, and the federal government. So, my family actually applied for the Employee Retention Grant that was administered by the SBS. After having spent one entire day gathering all the necessary documents including bank statements, POS system statements, revenue, annual revenue, etc., we only found out that we were eligible for $960.00, a mere $960 and then on top of that when we were called and contacted by the administrator of the grant, we found out that we were not eligible for it because we had no proof of payroll that was acceptable to SBS. So, they insisted to us that the only acceptable document for payroll was check stubs but that's not something that exists for Chinatowns small mom and pop businesses and for microbusinesses. And so, therefore, it excludes all of these small businesses, immigrant businesses and microbusinesses"

*See Id*. at 254:22-255:19.

**Response**: Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 18 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

19.    At the April 29, 2020 Committee Hearing, small business owner, Ryan Roy, testified, in part, as follows:

> My business is located in a building with over 100 smaller you know, studio spaces and I'm with a group of tenants who are approximately 80 or so of us that are trying to negotiate with a landlord and you know there's some talk about helping

businesses who are being harassed by their landlord. We are experiencing the total opposite where no one is communicating with us except through you know, an intermediary who basically stonewalls us. So, we feel pretty powerless to voice our needs. We are unable to provide income to pay for our retail spaces and then you know, paying for our residential rents on top of that has just become incredibly challenging and I waited five hours because you know, to speak here because there is no other opportunities. There is no where our voice can be heard. So, I'm very grateful for this opportunity to speak and you know, I own a tattoo studio, I do not have employees but my space provides a space for other artists to work, so they rent room from my studio. I applied for a lot of loans. I'm not sure how I qualified or didn't, I haven't received anything yet and I was told by my account that the EDL or EIDL loan that I applied in March and there was a glitch or something and now I need to reapply but they are not taking new applications. So, it's a lot here and I want to keep it concise and just I guess I just want to get across that we're just feeling very powerless and like we have no voice and we're really hoping that you know, the people can provide support and you know, we're thinking of our families and our livelihoods are on the line here and we're desperate. So, I just wanted to speak for myself and other small businesses that are in my situations. That's all. Thank you for your time.

*See Id*. at 263:22-265:09.

**Response**: Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 19 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

20.    At the April 29, 2020 Committee Hearing, several individuals testified about the

broader role of Intro No. 1932 in the City's economic recovery. *See generally id.*

**Response:** Disputed.  Plaintiffs object to this paragraph because it is not a specific material fact, and no specific admissible evidence is cited to support it.

21.    Council Member Corey Johnson, a co-sponsor of Intro No. 1932 and City Council

Speaker at that time, stated:

Small businesses employ 26 percent of New Yorkers and if they close down, hundreds of thousands of workers will permanently lose their jobs and the city loses out on billions of dollars in sales tax, property tax and income tax revenue. Our economy runs on small businesses and now they are facing unprecedented losses.

This could be the worst economic disaster that New York City has seen since the great depression. Many businesses will be forced to shut down for good if they don't get more help. That won't just devastate business owners and their workers, it will further destabilize our economy, our neighborhoods, and the lives of so many New Yorkers. Congress made some improvements to the Paycheck Protection program but those loans are still too hard to access in their ensured supply and I'm not confident that they will end up helping the vast majority of New York City small businesses. This is particularly true for the city's immigrant owned small businesses. They face significant obstacles in accessing loans because of language barriers, documentation requirements and eligibility criteria. We absolutely need more federal support here but there are some things that the city can do.

*See* Koplik Decl., Ex. D at 10:11-11:13.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 21 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

22.     During the April 29, 2020 Committee Hearing, the following exchange occurred between City Council Member Carolina Rivera and Andrew Rigie, Vice Chair of Community Board 7 and Executive Director of the New York City Hospitality Alliance:

COUNCIL MEMBER RIVERA: So, thank you for what you said about the bill. You know, this is not an amendment to a contract, it's a temporary suspension and contract law does allow for broad changes based on emergency situations and I think this is certainly an emergency. We are in crisis. So, Andrew, I wanted to ask you and thank you for your testimony. How many of your members have been impacted by personal liability clauses during COVID19, more or less? And how many do you expect to face this?

ANDREW RIGIE: You know, that's a good question. I don't have the data. I can tell you thousands of restaurant, bars and clubs throughout the city are being impacted. The challenge is, we don't know when we're going to be able to reopen lawfully. But then once we can start reopening, if there will be a reduced occupancy and then what consumer purchasing behavior is going to be. Will we have enough sales to sustain those businesses. So, immediately, we've heard some stories where there's been great relationships between the small businesses and the landlords. But we've heard some as I think you mentioned earlier, where there is you know, been some threats or there hasn't been as good of communication. So, the longer that

these closures go on and the uncertainty of what the business environment will be moving forward, leads me to believe that there will be more and more businesses or businesspeople whose personal livelihood and assets are at risk. So, I don't have an exact number but I have to imagine with 25,000 eating and drinking establishments in the five boroughs, we're talking about numbers in the thousands since the vast majority of them are not generating any revenue and their unable to pay the rent.

*See Id.* at 139:22-141:10.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. Indeed, in the cited quote, Mr. Rigie admits that he "do[es not] have the data," and that his conclusion is based purely on speculation ("I have to imagine . . ."). Moreover, Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045. While paragraph 22 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

23.     At the April 29, 2020 Committee Hearing, several individuals testified in support of Intro 1932. *See generally id.*

**Response:** Disputed. Plaintiffs object to this paragraph because it is not a specific material fact, and no specific admissible evidence is cited to support it.

24.     Robert Bookman, General Counsel to the New York City Hospitality Alliance, testified, in part, as follows:

Nothing is keeping small business owners awake at night more than this, what we are calling the industry good guy guarantees. Typically, leases require that the business owner personally guaranteed the rent as long as the business is in possession of the premises. It is designed properly to prevent someone from operating while not paying the rent. But no one ever contemplated this situation where we are technically in possession but the government says we cannot operate or only minimally operate. For a landlord under these circumstances to file civil action against the small business owners personal assets, their life savings, their house is simply unconscionable and cannot be allowed to happen… May rent is coming due and business owners are deciding, should they give the keys back and permanently go out of business or risk another month of personal liability. You must act now… small businesses are not just the live blood of our neighborhoods, they are not just employers, their [sic] not just the reason why companies come to New York to do business, they are also why artists of all types can make a living

here while pursuing their art, their music, their acting and their writing. There is no recovery for New York City without our restaurants and our small businesses.

*See* Koplik Decl., Ex. D at 153:14-155:08

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  Further, to the extent that the Court credits this statement, Plaintiffs note that the cited testimony that "business owners are deciding, should they give the keys back and permanently go out of business" contradicts Defendants' claim that a reopening condition was "not necessary" in the Guaranty Law because business owners "wanted to remain open or to reopen." (*See* Opp. Br. at 3).  While paragraph 24 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

25.      Greg Bishop, Commissioner of the New York City Department of Small Business

Services, testified, in part, as follows:

I know the Brooklyn Chamber did a quick survey of their members of businesses in Brooklyn and there seems to be about I think 30 percent were not able to pay the rent and only about half of them have been able to work with their landlords.

*See Id*. at 83:5-83:09

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 25 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

26.      Small business owner, Mojito Iaba, testified, in part, as follows:

I have two stores in Brooklyn. One is in Williams Park and one in Greenpoint and due to COVID-19 we lost store. They are closed since March 18th and since most of our stores have no business, we have no income since March 18th. So, we tied [sic] to file PPP as emergency loans but so far, no luck…Then my landlord asked for rent for April. We told my landlord we are not making any money since March; he told me rain or shine or whatever is happening now, I have to pay the rent. She

told me I have to use my savings money. I told her, we are having a crisis, so we ask for a better deal. Cheaper rent. Her answer was no. If we can't pay April or end of May rent, we have to leave by May 31st. We have to leave on

May 31st and she is going to keep the $9,000 deposit. So, we called 311 New York City for help and … the City Commercial Lease Assistance program. They have been helping us to get through this situation but since most of the commercial lease are unfair to the tenants, we decided to give up and move out by April 31st. Small business needs help from New York City because New York City's economy made from small businesses that attribute from all over the world. In order to survive as a small business owner, New York City has to pass a bill to protect tenants from the landlord ASAP.

*See Id.* at 277:02:-278:15

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045. Further, to the extent that the Court credits this statement, Plaintiffs note that the cited testimony that "we decided to give up and move out" contradicts Defendants' claim that a reopening condition was "not necessary" in the Guaranty Law because business owners "wanted to remain open or to reopen." (*See* Opp. Br. at 3). While paragraph 26 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

27.     Many participants in the April 29, 2020 Committee Hearing did not believe that

Intro No. 1932 went far enough to protect small businesses.

**Response:** Disputed. No admissible evidence is cited in support of paragraph 27.

28.     Karen Narefski, Senior Organizer for Equitable Economic Development at the

Association for Neighborhood and Housing Development, testified, in part, as follows:

We also support Intro. 1932, we think it's an important effort to protect small business owners from personal financial risk, but we ask the city to strengthen it by expanding it beyond the COVID-19 period and by clarifying that personal guarantee agreement, even that are not included in the lease itself, are also covered by the Intro.

*See Id.* at 208:16.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045. While paragraph 28 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

29.     Julian Hill, Supervising Attorney at TakeRoot Justice, testified, in part, as follows:

Two quick suggestions, extend the COVID-19 period by several months to contemplate what would inevitably a need for time to recover and two, expand the definition of personal liability provision to include guarantee agreements which often accompany leases and give effect to personal liability in the first place. Look, before TakeRoot, I've advised domestic and Latin American companies at a very large law firm, so I understand there are multiple perspectives here, but let's not ignore what's obvious. Small businesses need rent relief. Most landlords are not providing that relief despite our efforts. The largest corporations in the world got bailed out. People need to know that City government which has the authority to abate rent will put all of its tools on the table to help them. Failure means power in property in the hands of fewer large corporations and monopolies which has been brought up several times today, and the exploitation of community, labor, culture, and investments.

*See Id.* at 258:16-259:12.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045. While paragraph 29 accurately reflects the cited portion of Koplik Decl., Ex. D, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. D for its full and complete contents and context.

30.     In connection with the April 29, 2020 Committee Hearing, the Committee received

written testimony from several individuals, organizations and entities. *See* Koplik Decl., Exs. E1-

E5.

**Response:** Undisputed.

31.     This testimony touched on several topics, including how other COVID-19 relief measures were inadequate, how landlords were eager to seize personal assets of guarantors, and how Intro No. 1932 was integral to the reopening of small businesses throughout the City. *See generally id.*

**Response:** Disputed.  Plaintiffs object to this paragraph because it is not a specific material fact, and no specific admissible evidence is cited to support it.  Plaintiffs further object to this paragraph because it relies on statements of opinion, not fact, is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.

32.     Gabriel Stulman, CEO and Founder of Happy Cooking Hospitality, testified, in part, as follows:

> We have applied for every loan and grant that we've deemed worthwhile: NYC Business Continuity Fund, Federal EIDL Loans, James Beard Foundation Grants, and the Federal PPP Loans. In most cases, we've had to submit 8 independent applications - one for each individual LLC. *To date, we have not been approved for a single application. ...* Emotionally and financially I am preparing for this possibility of going bankrupt and belly up.. I am concerned that my landlords in *addition* to them keeping my security deposits (most of them 3 months and in excess of $60,000), are entitled to — and likely will — sue me personally for my obligations under my various leases. The Bill 1932-2020 that you have proposed is instrumental to my existence and that of most small businesses in this city. I am currently living in fear and anxiety of my personal exposure to my landlords, most of whom are demonstrably unsympathetic to my standing during this crisis, and extremely unlikely to release me from any potential liability. If this legislation is not made into law, I do not have enough assets or savings to cover the personal liability and guarantees of all of my commercial leases. If this bill does not pass, I am at risk of not only losing my restaurants and my income, but beyond that, I am at risk of losing the entirety of my life savings and any and all assets I have until I am personally bankrupt. I understand and accept the terms of the Good Guy Clause under normal circumstances. I accept the responsibility that if my business is failing, that I need to provide adequate notice to my landlord before exiting the lease. The "Notice Period" for most of my leases ranges from 3-6 months. Under my current obligations, I must cover all arrears in rent (April and May) plus an additional 3-6 months of rent after I give notice. Failure to pay all of that rent in addition to sacrificing my security deposits, leaves me personally liable. That's a *bullish* set of circumstances to be forced to agree to under normal circumstances— but we all agree anyway, because that is the rules of the game of commercial leases. These are NOT normal circumstances. To hold me - and others like me - accountable to these clauses when the reason for our failures and closures can be precisely attributed to the COVID-19 pandemic and subsequent government mandated closures is fatal. I have done everything in my power to mitigate these

circumstances directly with my landlords. Despite the siren blaring in the background, most of my landlords remain unmoved and my attorneys have advised me in stark terms about my risks. I appeal to you as a last resort before me, and the many other well meaning business people, residents, and families like mine, that are at risk of being decimated.

*See* Koplik Decl., Ex. E1 pp. 106-108.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 32 accurately reflects the cited portion of Koplik Decl., Ex. E1, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. E1 for its full and complete contents and context.

33.     Bryan Cowan, Founder of Wisefish, testified, in part, as follows:

When we signed our leases we had every intention of living up to the terms and guarantees we made to our landlords. If we failed because our business didn't work, that was on us - and we understood the costs. However, the situation we face today is failure due to an unprecedented circumstance that was completely out of our control. Because of personal guarantees in our leases I not only have to deal with a potentially failing business, I too have to think about personal financial ruin and bankruptcy. As a newlywed I look to the future and was hoping to begin a family and potentially buy a home. These are all things that would need to be put on hold with a bankruptcy on my record.

*See Id.* at p. 111.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 33 accurately reflects the cited portion of Koplik Decl., Ex. E1, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. E1 for its full and complete contents and context.

34.     Joseph Conti, Owner of Shuraku, testified, in part, as follows:

Your proposed law that would release commercial tenants from personal guarantee would be life changing for me and many other small business owners. 3 years ago, when I took my life savings to open up a 20 seat, 6 employee restaurant in the West

Village, the only way I could secure a lease was to provide a personal guarantee. That guarantee entitles my landlord to 6 months rent (at $18,000 per month),other fees and my security deposit (3 months rent) should I request to vacate the premises prior to the end of the 10 year lease. In the current situation I cannot afford to pay rent and I cannot afford to give notice. I will quickly run out of money either way. I applied early on for the PPP and 2 other SBA loans, but I was not approved before the funds dried up. I have filed loss of income claims with my insurance company to no avail. I am out of options. … We will then be forced into bankruptcy to liquidate whatever little else we might have, to pay commercial rent on a location that has been forced to close.

*See Id.* at p. 13.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 34 accurately reflects the cited portion of Koplik Decl., Ex. E1, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. E1 for its full and complete contents and context.

35.   Doris Huang, owner of The Deco Food + Drink testified, in part, as follows:

I can guarantee that my business, along with so many other independently-owned hospitality and retail businesses in NYC, will NOT survive if we cannot completely renegotiate our leases post-COVID. . . . The vast majority of us WANT to revive our businesses, but it will be impossible without some bold support from our landlords and from the government.

*See Id.* at p. 146.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 35 accurately reflects the cited portion of Koplik Decl., Ex. E1, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. E1 for its true and complete contents and context.

36.   Over 700 business operators submitted virtually identical written testimony, which states, in part, as follows:

> As the operator of a business in your district, I URGE you to SPONSOR and PASS the following critical legislation that will support small businesses in your district, giving us a fighting chance to survive.

*See* Koplik Decl., Exs. E1-E5.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement, and the identical form letters identified in paragraph 36 were previously before the Second Circuit, which held that they were not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1006 (noting that "hundreds of persons identifying themselves as 'operator[s]' of 'restaurant and nightlife' businesses submitted brief, identically worded letters supporting the Guaranty Law as 'critical' to giving them 'a fighting chance to survive' the pandemic").

37.     On April 29, 2020, the Committees also issued a Briefing Paper and Committee

Report of the Governmental Affairs Division ("April 29, 2020 Committee Report"), which states,

in part, as follows:

> Restrictions similar to PAUSE have been implemented across the country, which has caused a massive reduction in the number of small businesses operating. In their survey of small businesses (under 500 employees), the National Bureau of Economic Research found that 43 percent of businesses had closed due to COVID-19 and that they had reduced their staff by about 40 percent since January 2020. The results were more severe in the Mid-Atlantic region, which includes New York, where 57 percent of businesses were closed, and staff employment decreased by 47 percent. . . .The nation's economy is dependent on its small businesses. There are approximately 27 million of these businesses across the country and they are responsible for employing 57 million workers. When including the owners of these businesses, in addition to employees, that total comes to an estimated 85 million people. According to the Small Business Administration, small businesses are responsible for creating two-thirds of the Country's new jobs. Given their vital role, it is crucial that they are either given alternative means to operate, in as lucrative a manner as possible, throughout the COVID-19 crisis, and/or are provided the necessary support to restart their operations once social distancing measures have been lifted.… A Reuters article claimed that 25 percent of the initial $350 billion allocated to SBA loan programs went to fewer than two percent of the firms that got relief, with some of these being large publicly-traded companies with thousands of employees and hundreds of millions of dollars in annual sales. . . .Immigrant communities in NYC may have had even more difficulty applying to and obtaining federal funds, which would considerably impact the City's economy. Immigrant workers make up 45 percent of the city's workforce and own one-half of New York City's businesses. In some neighborhoods, immigrant-owned businesses employ up

to 42 percent of the neighborhood population. For those with access to COVID-19 funding programs, there are drawbacks to consider. Although the federal government's PPP program offers loan forgiveness, there are significant conditions to satisfy. Seventy-five percent of the PPP loan's forgiven amount must be spent on payroll costs, a condition that appears to have taken shape late in the process. If 75 percent of the forgiven amount must be spent on payroll costs, that may leave less for businesses to spend on obligations such as rent and utilities, which may be disproportionately higher in our City. . . .There are concerns about whether the City's economy will strengthen quickly enough to satisfy the terms of these loans, and businesses might struggle to pay off additional debt (even at low or no interest rates) after this sustained period of closure and reduced income. . .The vast array of departments and agencies have made it difficult for businesses to navigate and, as discussed, there have been numerous limitations to the government programs that are further compounded by the technological and language barriers that some small business owners also face. This comes on top of the other issues that small businesses have to navigate during this crisis range from trying to make rent and payroll, finding suppliers and moving retail online, to negotiating insurance claims, delivery commissions, and bank loans.

Koplik Decl., Ex. C at pp. 10-28 (footnotes omitted).

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements of opinion, not fact. Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045. While paragraph 37 accurately reflects the cited portion of Koplik Decl., Ex. C, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. C for its full and complete contents and context.

38.     On May 13, 2020, the City Council amended Intro. No. 1932 as Intro. No. 1932-A.

*See* Koplik Decl., Ex. F.

**Response:** Undisputed.

39.     On May 13, 2020, the Committee issued a Committee Report of the Governmental

Affairs Division ("May 13, 2020 Committee Report") on Intro. No. 1932-A. Koplik Decl., Ex. H.

**Response:** Undisputed, except Plaintiffs note that this report was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose. *Melendez*, 16 F.4th at 1045.

40.     On May 13, 2020, the City Council's Committee on Small Business held a hearing

on Intro. No. 1932-A (the "May 13, 2020 Committee Hearing"). *See* Koplik Decl., Ex. I.

**Response:** Undisputed.

41.     During the May 13, 2020 Committee Hearing, City Council Member and Chairperson of the Committee on Small Business, Mark Gjonaj ("Chairperson Gjonaj"), stated, in part, as follows:

> Intro 1932 will prohibit enforcement of commercial lease provisions that hold business owners personally responsible when their business cannot pay rent due to COVID-19. Intro 1914 protects tenants from landlord harassment during this crisis. While many landlords in the state are renegotiating leases to help their tenants, this bill will provide additional protection to small businesses that may be experiencing harassment. The bills we're voting on today are strong starts to protecting our small businesses during this pandemic and as Chair of the Small Business Committee it is my priority to ensure that our small business sector will re-emerge strong after stay at home orders are lifted and the city begins to reopen.

*Id.* at 5:3 – 5:17.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement was previously before the Second Circuit, which held that it was not sufficient to demonstrate that the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16 F.4th at 1045.  While paragraph 41 accurately reflects the cited portion of Koplik Decl., Ex. I, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. I for its full and complete contents and context.

42.     On May 13, 2020, the Committee passed Into 1932-A by a vote of five (5) in the affirmative and zero (0) in the negative and no abstentions. *See Id.*

**Response:** Undisputed.

43.     On May 13, 2020, the City Council held a stated meeting during which it passed Intro. No. 1932-A by a vote of forty-four (44) in the affirmative and six (6) in the negative. *See* Koplik Decl., Ex. J.

**Response:** Undisputed.

44.     During the May 13, 2020 stated meeting, City Council Member Carolina Rivera, stated, in part, as follows:

> . . . I have heard from countless small business owners these past few weeks …
> now worrying about going belly up about the very real possibility that their stores
> may have to change or even never return after this pandemic ends … So, while my
> bill will not be able to bring back . . . any business that we lose, and [sic] can ensure
> that the owners who poured years then dreams into a store friends to not have to
> face our landlord going after their personal life savings and asset because of a
> disaster no one saw coming.

*See Id.* at pp. 29-30.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay,
speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact.
Plaintiffs further object because this quote is taken out of context, misleading, and ignores other
hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement
was previously before the Second Circuit, which held that it was not sufficient to demonstrate that
the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16
F.4th at 1045.  Further, to the extent that the Court credits this statement, Plaintiffs note that the
cited testimony that "stores may have to change or even never return" contradicts Defendants'
claim that a reopening condition was "not necessary" in the Guaranty Law because business
owners "wanted to remain open or to reopen." (*See* Opp. Br. at 3).  While paragraph 44 accurately
reflects the cited portion of Koplik Decl., Ex. J, Plaintiffs respectfully refer the Court to Koplik
Decl., Ex. J for its full and complete contents and context.

45.     During the May 13, 2020 stated meeting, City Council Member and then Speaker

Corey Johnson stated, in part, as follows:

> When I met with some restaurant owners last virtually, we learned that this is one
> of the top issues keeping them up that night. It is awful. Losing your business is
> hard enough. But imagine someone coming after your home, as well, while your
> business is closed.

*See Id.* at p. 17.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay,
speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact.
Plaintiffs further object because this quote is taken out of context, misleading, and ignores other
hearing testimony in the record concerning the Guaranty Law.  Plaintiffs note that this statement
was previously before the Second Circuit, which held that it was not sufficient to demonstrate that
the Guaranty Law was reasonable and appropriate to its professed public purpose.  *Melendez*, 16
F.4th at 1045.  While paragraph 45 accurately reflects the cited portion of Koplik Decl., Ex. J,
Plaintiffs respectfully refer the Court to Koplik Decl., Ex. J for its full and complete contents and
context.

46.     On May 26, 2020, the Mayor approved Intro. No. 1932-A and signed it into Law.

*See* Koplik Decl., Ex. K.

**Response:** Undisputed.

47.      Local Laws 55 took effect on May 26, 2020. *See* Koplik Decl., Ex. L.

**Response:** Undisputed.

## III.     The Guaranty Law

48.      Local Law 55 amended Section 1. Chapter 10 of title 22 of the administrative code of the city of New York is amended by adding a new section 22-1005 to read, in pertinent part, as follows:

> § 22-1005. Personal liability provisions in commercial leases. A provision in a commercial lease or other rental agreement involving real property located within the city that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph 1 and 2 are satisfied:
>
> 1.      The tenant satisfies the conditions of subparagraph (a), (b) or (c):
>
>> (a)      The tenant was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under executive order number 202.3 issued by the governor on March 16, 2020;
>>
>> (b)      The tenant was a non-essential retail establishment subject to in-person limitations under guidance issued by the New York state department of economic development pursuant to executive order number 202.6 issued by the governor on March 18, 2020; or
>>
>> (c)      The tenant was required to close to members of the public under executive order number 202.7 issued by the governor on March 19, 2020.
>
> 2.      The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and September 30, 2020, inclusive.

**Response:** Plaintiffs respectfully refer the Court to the full text of Local Law 55 for its full and complete terms.

IV.    **The City's Enactment of Local Law 98 of 2020**

49.    On September 14, 2020, the City Council's Committee on Small Business held a hearing to discuss the first extension of the Guaranty Law (Intro 2083) (the "September 14, 2020 Committee Hearing"). *See* Koplik Decl., Ex. O.

**Response:** Undisputed.

50.    During the September 14, 2020 Committee Hearing, Chairperson Gjonaj stated, in part:

> This past spring the council boldly acted to prevent this through the passage of Local Law 55, which temporarily prohibited the enforcement of personal liability provisions and some commercial leases. The preconsidered introduction will extend this necessary bill. The mass closure of city small businesses will leave commercial corridors decimated and unemployment rates high. Households will struggle to feed their families.

*See* Koplik Decl., Ex. O, 7:3-11.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. (*See, e.g.*, Ex. O at pages 66:6-71:7 (testimony from small property owner who had to borrow money to pay property taxes and insurance bills, and was at "risk of losing our assets" and considering selling the property because of tenant's unpaid rent), 78:2-85:22 (testimony from real estate owner stating that the Guaranty Law meant "suspending hundreds of millions of dollars of obligations . . . at the expense of depriving all owners . . . of a critical form of security for their lease obligations, and their own ability to pay their own expenses of their properties")). While paragraph 50 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

51.    Council Member Rivera, the sponsor of the extension bill, stated in part:

> So I appreciate the opportunity to speak briefly on my preconsidered bill that we are hearing today to extend the prohibition of enforcement of personal liability provisions in commercial leases or rental agreement involving a COVID-19-impacted tenant. Since we passed my legislation to create this emergency prohibition in May, I have heard from countless small business owners of their gratitude and thanks for the city giving them a lifeline when our state and federal government had failed to do so. Just last week New York Magazine's Chris Crowley interviewed one restaurant owner, Roni Mazumdar, who said that the protections in this bill, and I quote, "Absolutely and desperately needs to continue.

It would be a fatal blow to the restaurant industry if they don't extend it." While more than 2800 businesses in New York City have permanently closed since March 1, according to data from Yelp, those small business owners can take solace in the fact that their landlords cannot go after their personal life savings and assets thanks to this prohibition. And countless other businesses teetering on the edge can continue to focus on paying workers and supporting their communities without this threat looming over them. While I hoped in May that our federal government would have been able to bring us back to a point where most businesses could fully reopen safely, today that just isn't the case. That is why we are forced to return here today to vote on a six-month extension to the prohibition, and I'm hoping I'll have your support when this bill is up for a vote. I look forward to hearing today the stories of small businesses, workers, landlords, and others suffering in the midst of this crisis, and while I certainly understand that this law and the proposed extension we're hearing today may not, may not be supported by everyone at this hearing, rest assured that I will continue to push for any and all measures that our city can take to help our communities and those most at risk.

*See* Koplik Decl., Ex. O at 8:7-9:23.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. (*See* Plaintiffs' response to paragraph 50, above). Further, to the extent that the Court credits this statement, Plaintiffs note that the cited testimony that "more than 2800 businesses in New York City have permanently closed since March 1" contradicts Defendants' claim that a reopening condition was "not necessary" in the Guaranty Law because business owners "wanted to remain open or to reopen." (*See* Opp. Br. at 3). While paragraph 51 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

52.    Commissioner Jonnel Doris of the New York City Department of Small Business

Services testified at the September 14, 2020 Committee Hearing and stated, in relevant part:

It is my pleasure to testify before the City Council today on the preconsidered of Intro 1932 that seeks to extend the temporary personal guarantee protection provisions for commercial tenants impacted by COVID-19 until March 2021. I am grateful for the council's ongoing support and friendship as we work together to advocate for small businesses throughout the city. The economic crisis brought forth by the COVID-19 has been tremendous. Rent challenges for commercial tenants continue to place enormous pressure on our businesses and business owners, now more than ever, disproportionately affecting our communities of color.

*        *        *

Though rent affordability has been an issue that this administration as tackled, ah, since its inception, the financial crisis brought forth by COVID-19 has only heightened these challenges and forced us to think creatively, which is why we are here to speak on the administration's support for the extender bill relating to Local Law 55 of 2020, which aims to extend the guaranteed protection provisions of Local Law 55 for commercial tenants impacted by COVID-19 until March 2021. We have heard from our constituents how the bill has allowed them to plan accordingly, allow business owners to make determinations without having to endure additional losses. Many businesses are planning to make a decision before the end of the [month] on whether to remain open. This extension allows for further planning and allows them to generate additional income in the absence of federal and state aid.

*See* Koplik Decl., Ex. O at 11:21-13:17.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. (*See* Plaintiffs' response to paragraph 50, above). While paragraph 52 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

53.   Commissioner Doris further testified that SBS has heard that "there has been an increase in landlords who are looking to negotiate and renegotiate…with their tenants based upon…the [enactment of the Guaranty Law.]" *See* Koplik Decl., Ex. [X] 31:5-9.

**Response:** Disputed. Paragraph 53 is not supported by the evidence cited, and in any event even admits that it is based entirely on hearsay statements ("Commissioner Doris testified that *SBS has heard . . .*").

54.   In response, Council Member Rivera explained at the September 14, 2020 Committee Hearing:

That's great, and that was absolutely one of the intentions of, of putting forward this bill, was to not just protect our small business owners who are really just such important New Yorkers to us, they keep the city moving, that are the lifeblood, but also to show to some of these landlords that, um, we really are trying to do everything we can to support a fair and effective negotiation. We realize everybody's in hard times, ah, but that increase in landlords looking to negotiate new lease terms was absolutely a positive side effect of the bill that I put forward that we're hoping to extend today,…

*See* Koplik Decl., Ex. O at 32: 4-16.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See* Plaintiffs' response to paragraph 50, above).  While paragraph 54 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

55.     At the September 14, 2020 Committee Hearing, Andre Rigie testified on behalf of

the New York City Hospitality Alliance, stating in relevant part:

> Ah, you know, when this legislation passed, ah, earlier this year to suspend the enforcement of personal liability guarantees, ah, in leases, this is one action the council took that has helped saved countless small business owners, you know, people who put their livelihoods into these small businesses and the fact that they cannot only lose their business, but then their landlords can go after their personal assets, their savings, their homes, just created so much fear and uncertainty. So we at the New York City Hospitality Alliance, which is a nonprofit organization representing restaurants and nightlife venues throughout the five boroughs strongly support, ah, the extension of this, ah, law. We conducted a survey and we've been doing it monthly, but to the most recent one, ah, about 500 restaurants in the five boroughs responded, and 83% of them had paid no rent or partial rent, ah, and only one in 10 had been able to renegotiate their leases. So we are still in a dire situation. It was just announced, thankfully, ah, that September 30 we will begin indoor dining at a 25% reduced occupancy. But let's keep in mind prep that when restaurants a 100% occupancy, ah, they could barely even survive in many cases. So I can't explain how important extending this law is, ah, to the future of our small businesses and I also think it's important to note that, you know, many small restaurant owners I've spoken with, if this law wasn't in effect and they know they did not have this protection, they may just toss their keys in right now, even though otherwise they had a successful restaurant that they hoped one day they could, ah, bring back. So, again, this law is just so important.

*See* Koplik Decl., Ex. O at 47: 11-48:20.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See* Plaintiffs' response to paragraph 50, above).  While paragraph 55 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

56.     Upon being asked by Council Member Rivera regarding how many of the New

York City Hospitality Alliance members have been impacted by personal liability provisions and

how may his organization has heard from concerning the bill (*see* Koplik Decl. Ex. O at 50:14-

18), Mr. Rigie responded, in part:

> Well, so I don't have a, a hard number for you. But what I can tell you is I am
> bombarded with phone calls, text messages, everything you can imagine, same way,
> you know, direct messages, you know, by hundreds, I'm sure it's thousands. I mean,
> you, you look at the 25,000-plus eating and drinking establishments pre- pandemic,
> the vast majority of them are small business owners, meaning that there is a
> likelihood that they do have one of these personal liability guarantees in their leases.
> So, I mean, I expect the number is in the thousands. I can just tell you from my
> experience, it's almost everyone I've spoken to tells us how important this law is.
> And without it they would probably just have to toss back their keys now, um,
> which would be horrible for the city because then we know no matter what we do
> we're not gonna get these restaurants back. Um, but we also know the underlying
> issue is that people's personal assets are on the line and when we talk about people,
> particularly living here in the city, we need to keep our New Yorkers here and to
> do that they're gonna have their, need their resources and resources. So, um, again,
> I expect the number is in the thousands. Um, I've heard around the clock, and I've
> been continually asked, you know, this is getting extended, right, this is getting
> extended? So, um, you know, that's the best answer I can give you. I hope it's
> somewhat sufficient.

*See* Koplik Decl., Ex. O at 50:19-51:22.

> **Response:**  Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay,
> speculative (including because the speaker admits that he has no "hard number" for those impacted
> by personal liability provisions), anecdotal, conclusory, and contains statements that are the
> speaker's opinion, not fact.  Plaintiffs further object because this quote is taken out of context,
> misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See*
> Plaintiffs' response to paragraph 50, above).  While paragraph 56 accurately reflects the cited
> portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its
> full and complete contents and context.

57.     During the September 14, 2020 Committee Hearing, Karen Duresky, Senior

Organizer for Equitable Economic Development at the Association for Neighborhood and Housing

Development testified in support of the extension bill. She stated, in part:

> We supported, um, Local Law 55 when it was first introduced, um, and we certainly
> believe that it should be extended through March 2020, as proposed. Um, of course,
> some of the businesses that have closed in April have been able to reopen in a
> limited capacity but, um, the public health requirements of operating during a
> pandemic have increased financial strain, um, and many of the businesses that we
> work with and, and nonprofit cultural and other spaces, um, rely on public assembly
> and on people coming together, and they may not be able to be fully operational for

long after, um, the period ends. Ah, so the challenges to small businesses are really numerous and they have been touched on very eloquently in this hearing, um, so this is an important way to, ah, to ensure some protection, um, for the individuals who are running those businesses and ensure that their livelihoods are not ruined along with the potential risk to their business.

*See* Koplik Decl., Ex. O at 56:19-57:14

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. (*See* Plaintiffs' response to paragraph 50, above). While paragraph 57 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

58.  Mr. Bookman also testified at the September 14, 2020 Committee Hearing in support of the extension bill stating in part:

So, yes, in such an unprecedented emergency it is not only appropriate for government to intervene, ah, but it is, it is a moral imperative for government to protect the thousands of small business owners, the ones most likely to have to have personal guarantees, 'cause large corporations when they sign these leases don't need the personal guarantees. Um, to protect, ah, to protect these businesses that protect our city and our commercial corridors from becoming blighted and ghost towns, ah, which would negatively impact our quality of life, public safety, sanitation, you know, etcetera. Um, and this law has been very effective. Um, as an attorney, you know, with a very small little country practice, I could tell you, I know of dozens of clients just, you know, in, in my practice that but for this law would have already been forced to turn in their keys, ah, and close their restaurants permanently 'cause they could not take the additional risk of the personal liability. And yes, ah, we were all shocked that indoor dining has, ah, did not start on July 6 when we originally passed Local Law 55, as we thought it would, and it's taken three full months for it to happen, and then at only 25% capacity. But it has gotten the attention of landlords, who have been waiting for us to open and open at full capacity, um, but given that that didn't happen this law is necessary to bring more and more landlords to the table and say, listen, you know, let's work out something 'cause it's better to have that tenant who's always there for years, who didn't miss rent at a reduced rent, um, than an empty space, ah, and you do not have the opportunity to go after us personally now.

*See* Koplik Decl., Ex. O at 60:8-61:17

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. (*See* Plaintiffs' response to

paragraph 50, above).  While paragraph 58 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

59.     Iyong Kim, Assistant Director of Small Business Programs at the Asian American

Federation also testified in support of the extension bill, stating in relevant part:

> Um, I'd like to thank, um, Council Member Rivera for the preconsidered bill, the good guy clauses, an especially pressing issue for immigrant small business owners, as well, and as we welcome this effort to extend this protection I would also request for an ample outreach to the immigrant communities to make sure that all small business owners are aware of their rights.

*See* Koplik Decl., Ex. O at 72:13-20.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, conclusory, and contains statements that are the speaker's opinion, not fact.  Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See* Plaintiffs' response to paragraph 50, above).  While paragraph 59 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

60.     Kathleen Riley, from the New York State Restaurant Association also testified in

support of the extension bill at the September 14, 2020 hearing, stating in part:

> NYSRA is wholeheartedly in support of extending the provisions of Local Law 55 until March 31, 2021. This law, which prevents personal liability provisions in commercial leases from being enforced against COVID-related defaults has provided both protection and peace of mind to our New York City restaurants in the last few months. Without intervention, the protection would expire on September 30, and while that date seemed reasonable back in April, we have unfortunately had a much worse summer than everyone had hoped. Between the outbreaks of COVID-19 around the country and the dire local economic situation, the summer served as a reality check that the impacts of the COVID-19 pandemic will be much more extreme and long-lasting than previously [inaudible]. The support to extend the protections of Local Law 55 is strong and as early as June or July our members realized they would need such an extension to continue planning their recoveries.

*See* Koplik Decl., Ex. O at 86:20-87:15.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact.  Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See* Plaintiffs' response to paragraph 50,

above).  While paragraph 60 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

61.     Ms. Riley further testified regarding employment in the restaurant industry stating,

in relevant part as follows:

> Nearly every restaurant that is open right now is operating at net mutual or a loss, but still striving to provide what jobs they can and taking every necessary precaution to ensure the health and safety of their employees and customers.

*See* Koplik Decl., Ex. O at 89:2-6.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See* Plaintiffs' response to paragraph 50, above).  While paragraph 60 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents and context.

62.     Michael Brady, the Chief Executive Officer of the Third Avenue Business

Improvement District and the Bruckner Boulevard Improvement District, collectively representing

a thousand South Bronx largely immigrant-owned mom and pop businesses, also testified at the

September 14, 2020 hearing in support of the extension. *See* Koplik Decl., Ex. O at 100–106.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, is taken out of context, misleading, speculative, and ignores other hearing testimony in the record concerning the Guaranty Law.  (*See* Plaintiffs' response to paragraph 50, above).  While paragraph 62 accurately reflects the cited portion of Koplik Decl., Ex. O, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. O for its full and complete contents.

63.     In connection with the September 14, 2020 Committee Hearing, the Committee

received written testimony the Public Advocate Jumaane Williams, and several individuals,

organizations and entities. *See* Koplik Decl., Ex. P.

**Response:** Undisputed.

64.     This testimony touched upon the necessity for the extension of the Guaranty Law.

*See generally id.*

**Response:** Disputed.  Plaintiffs object to this paragraph because it is not a specific material fact, and no specific admissible evidence is cited to support it.  Moreover, paragraph 64 is argumentative and simply espouses an opinion, not based on any admissible evidence or facts.

65.     Camilla Marcus on behalf of an organization named Relief Opportunities for All Restaurants ("ROAR") wrote

> As restrictions remain in place and business operations cannot safely return to normal, many restaurant owners fear losing their personal savings and risking stability for their own families in the coming weeks. In fact, I closed my restaurant west~bourne, at 137 Sullivan Street in Soho, last week for just this very reason. With a landlord who refused to negotiate reasonably given the new reality we were dealt, I simply could not gamble my personal financial stability with a one-year old son at home at the risk of this legislation not being extended, and the end of month deadline just loomed too powerfully. I now hope that our closing was not in vain. The legislation being discussed today will provide medium term assurance and relief to many of us in the restaurant business who are faced with an impossible choice and enormous uncertainty in the coming months.

*See* Koplik Decl., Ex. P, p. 11.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other testimony in the record concerning the Guaranty Law.  (*See, e.g.*, Ex. P at 7 (written testimony from the Real Estate Board of New York opposing the extension of the Guaranty Law, noting that "the pandemic's economic burden should not be shifted from one group to another" and that "[u]pon a tenant's default for non-payment of rent and without the enforceability of a personal guarantee, owners have no recourse to collect rent or any portion thereof, making it difficult for owners to meet mortgage and property tax payments")).  Further, to the extent that the Court credits this statement, Plaintiffs note that the cited testimony that Ms. Marcus "closed [her] restaurant" contradicts Defendants' claim that a reopening condition was "not necessary" in the Guaranty Law because business owners "wanted to remain open or to reopen."  (*See* Opp. Br. at 3).  While paragraph 65 accurately reflects the cited portion of Koplik Decl., Ex. P, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. P for its full and complete contents and context.

66.     On September 14, 2020 the Committee on Small Business issued a report detailing the impact of the COVID -19 crisis on small businesses in New York City, which states in relevant part.

> Because of the high cost of rent and the inability to make adequate revenue, restaurant and other small business owners affected by COVID-19-related restrictions on their operations have urged the Council to extend Local Law 55 of 2020 (Int. No. 1932-A), which protects certain COVID-19-impacted commercial tenants from personal liability when a default of other such event occurs between

March 7, 2020 and September 30, 2020. Personal liability provisions in commercial leases may hold a business owner personally responsible if they are unable to pay rent by threatening the seizure of their personal assets or property. In order to prevent this, an owner must turn in the keys to the property, effectively ending their lease. According to one restaurant owner, "Come September 30… if [Local Law 55] doesn't get extended – [you] might see a massive number of evictions. Evictions will continue to happen at an exponential rate, and I think this will be the specific last straw many restaurateurs are holding onto." The owner predicted that if Local Law 55 is not extended, it would be "a fatal blow to the restaurant industry." Another owner predicted that many restaurants that have not already closed would "giv[e] up, thinking there's no real help at all."

*See* Koplik Decl., Ex. Q, p. 6-7.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements of opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. While paragraph 65 accurately reflects the cited portion of Koplik Decl., Ex. Q, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. Q for its full and complete contents and context.

67.     On September 16, 2020, the Council held a stated meeting at which Council

Member Rivera stated in part:

My original bill suspending personal liability provisions is set to expire on September 30, and it is critical that we pass an extension as quickly as possible. It's clear that we all underestimated how long this crisis would last and its impact on small business owners, but I hope you will recognize the continued urgency of this moment. Extending this law is one of the few tangible actions this body can take to save small businesses from permanently shuttering and their owners from financial ruin. It is simply unethical to let this expire and allow landlords to go after people who have already lost their income and livelihoods in the midst of an ongoing economic and public health crisis. I'm kept up at night thinking about the countless small business owners who have reached out to my office, terrified that they'll now lose any semblance of financial independence after they've already lost their income and livelihoods due to COVID. Earlier this week at the hearing for this preconsidered bill we heard from Louise Fabier, the owner of two Brooklyn bars, the Pencil Factory and [inaudible] and Sons. She currently owes her landlords $100,000 in back rent from the start of the pandemic and without these protections her only option will be to operate her bars at a loss and be saddled with debts for the next 30 years to pay back her rent. That means she will be paying until she is 86 years old. Even with outdoor dining and limited indoor dining on the horizon, the reality is that very few of them will be able to break even for the foreseeable future.

*See* Koplik Decl., Ex. R, 62:7-63:14.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  While paragraph 67 accurately reflects the cited portion of Koplik Decl., Ex. R, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. R for its full and complete contents and context.

68.     On or about September 22, 2020, the City Council amended Intro. No. 2083 as

Intro. No. 2083-A. *See* Koplik Decl., Ex. S.

**Response:** Undisputed.

69.     On September 23, 2020, the Committee on Small Business held a hearing to discuss

Intro 2083-A. *See* Koplik Decl., Ex. U. At that hearing, Chairperson Gjonaj, stated in relevant part:

> The COVID-19 crisis presents the greatest threat to small business economy in modern history. According to a recent report by the city comptroller, small business revenues should drop 25 percent since January ranking New York City 40th amongst the 52 largest American cities during this period. In early April, small businesses had experienced a drop in revenue of over 60 percent. As small businesses are experiencing massive declines in revenue, thousands of small businesses have closed in New York. According to the city comptroller report, at least 2800 small businesses closed permanently between March 1st and July 10th. Partnership that New York City predicts that as many as 1/3 of the 230,000 small businesses in New York City may never reopen, forever changing the commercial corridors that make up our neighborhoods. As small businesses are experiencing declines in revenue, many small businesses have been unable to pay rent. The hospitality Alliance surveyed restaurants, bars, nightclubs, and 11 venues in late August and in early September and found that 87 percent of respondents did not pay their full August rent. I want to emphasize that many landlords in this city are hopefully renegotiating their leases with their tenants in good faith. Some small business owners may fear, however, that their inability to pay rent may lead to their landlords to go after their assets or personal property. This past spring, the Council boldly acted to prevent this through the passage of local law 55 which temporarily prohibited the enforcement of personal liability provisions in some commercial leases. The proposed introduction we'll be voting on today will extend this necessary bill until March 31st, 2020. Proposed Introduction 2083 will also mandate Department of Small Business Services or another agency designated by the Mayor to conduct an information and outreach campaign to educate commercial tenants affected by this law about its protections which I hope will also take into considerations the language barrier and various businesses throughout the city. The mass closure of the city's small business will leave commercial corridors decimated and unemployment rates high. As the Chair of the Committee on Small Business, it is my priority to ensure our small business sector will reemerge strong after the COVID-19 crisis is over.

*See* Koplik Decl., Ex. U, 3:13-5:11.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements that are the speaker's opinion, not fact.  Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Further, to the extent that the Court credits this statement, Plaintiffs note that the cited testimony that "at least 2800 small businesses closed permanently between March 1st and July 10th" and that "as many as 1/3 of the 230,000 small businesses in New York City may never reopen" contradicts Defendants' claim that a reopening condition was "not necessary" in the Guaranty Law because business owners "wanted to remain open or to reopen." (*See* Opp. Br. at 3).  While paragraph 69 accurately reflects the cited portion of Koplik Decl., Ex. U, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. U for its full and complete contents.

70.     On September 13, 2020 the Committee passed Intro 2803-A by a vote of four (4)

to zero (0) and no abstentions. *See* Koplik Decl., Ex. U.

**Response:** Undisputed that Koplik Decl., Ex. U reflects that on September 23, 2020 the Committee passed Intro 2083-A by a vote of four to zero and no abstentions.  Disputed to the extent that paragraph 70 misstates the date and Intro. number.

71.     The Committee also issued a report on September 23, 2020, detailing the impact of

the COVID -19 crisis on small businesses in New York City which was substantially similar to its

September 14, 2020 Report. *See* Koplik Decl., Ex. V.

**Response:** Disputed.  Defendants cite no admissible evidence as to the "impact of the COVID-19 crisis on small businesses."  Plaintiffs further object because this paragraph takes the cited report out of context and is therefore misleading.  Plaintiffs respectfully refer the Court to the September 14, 2020 report for its full contents and context..

72.     On September 28, 2020, the City Council held a stated meeting during which it

passed Intro. No. 2803-A by a vote of forty-five (45) in the affirmative and five (5) in the negative.

*See* Koplik Decl., Ex. X.

**Response:** Undisputed that Koplik Decl., Ex. X reflects that on September 23, 2020, the City Council held a stated meeting during which it passed Intro No. 2083-A by a vote of 45 in the affirmative and five in the negative.  Disputed to the extent that paragraph 72 misstates the date and Intro. number.

73.     Local Law 98 of 2020 contained a "Declaration of legislative intent and findings,"

which detailed, among other matters, the numbers of jobs lost in the food services and drinking

places subsector, the retail trade sector, and the personal and laundry services subsector, and

declared, in pertinent part:

> 5.  While businesses may be willing to weather the economic hardships imposed upon them by governmental measures to combat COVID-19 by either staying open or temporarily closing and later reopening, individual owners and other natural persons who personally guarantee the financial obligations of these businesses face a different and more substantial risk than losing revenue and profit. They risk losing their personal assets, including their possessions and even their own homes, transforming a business loss into a devastating personal loss. This is particularly a risk for small businesses, as the scale of the financial obligations of larger businesses generally renders having a natural person guarantee those obligations impracticable.

> 6.  If these individual owners and natural persons are forced to close their businesses permanently now or to suffer grave personal economic losses like the loss of a home, the economic and social damage caused to the city will be greatly exacerbated and will be significantly worse than if these businesses are able to temporarily close and return or, failing that, to close later, gradually, and not all at once.

*See* Koplik Decl., Ex. Z at 3.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements of opinion, not fact.  Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  While paragraph 73 accurately reflects the cited portion of Koplik Decl., Ex. Z, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. Z for its full and complete contents.

74.    Local Law 98 of 2020 amended Section 1. Chapter 10 of title 22 of the

administrative code of the City of New York by amending section 22-1005 to read, in pertinent

part, as follows:

> § 22-1005. Personal liability provisions in commercial leases. A provision in a commercial lease or other rental agreement involving real property located within the city, *or relating to such a lease or other rental agreement,* that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph 1 and 2 are satisfied:

\*      \*      \*

2. The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and *March 31, 2021*, inclusive.

*Id.* at 5.

**Response:** Plaintiffs respectfully refer the Court to the full text of Local Law 98 for its full and complete terms.

## V.   **The City's Enactment of Local Law 50 of 2021**

75.    On March 17, 2021, the City Council's Committee on Small Business held a hearing to discuss the second extension of the Guaranty Law (Intro 2243) (the "March 17, 2021 Committee Hearing"). *See* Koplik Decl., Ex. CC.

**Response:** Undisputed.

76.    At the March 17, 2021 Committee Hearing, Council Member Rivera stated, in part:

It's been 10 months since we first passed this emergency legislation. I don't think any of us could have foreseen last year that we'd still be in this situation in March 2021. This disaster has profoundly changed our cityscape with a nearly 40% decrease in the number of small businesses operating citywide in the last year, according to Harvard Universe, and 12% of all businesses in lower Manhattan, which includes my district, have closed, according to the Downtown Alliance.

\*      \*      \*

But of all of our work in the council this personal liability legislation is the effort I continue to hear the most about from small business owners, many who reached out over the past [month] worried they would have to shut down their business without the extension. The continued suspension of personal liability clauses and commercial leases will ensure that countless businesses teetering on the edge can continue to focus on paying workers and supporting their communities without the threat of landlords going after their personal life savings and assets if they do have to shut down.

*See* Koplik Decl., Ex. CC, 15:24-17:7.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements of opinion, not fact.  Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  Further, to the extent that the Court credits this

statement, Plaintiffs note that the cited testimony contemplating businesses "shut[ting] down" despite "[t]he continued suspension of personal liability clauses" contradicts Defendants' claim that a reopening condition was "not necessary" in the Guaranty Law because business owners "wanted to remain open or to reopen." (*See* Opp. Br. at 3). While paragraph 76 accurately reflects the cited portion of Koplik Decl., Ex. CC, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. CC for its full and complete contents.

77.     Many others testified in support of the second extension bill at the March 17, 2021 hearing including Commissioner Doris, Take Root Justice, New York City Hospitality Alliance, Volunteers of Legal Service ("VOLS"), New York State Restaurant Association, Cooper Square Committee, New York City Artist Coalition and Music Workers Alliance, among others. *Id.*, generally.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is not a specific material fact, and no specific admissible evidence is cited to support it.  Plaintiffs further object because this statement is argumentative, constitutes inadmissible hearsay, is taken out of context, misleading, represents the opinion of Defendants, and ignores other hearing testimony in the record concerning the Guaranty Law.

78.     In connection with the March 17, 2021 Committee Hearing, the Committee received written testimony from several individuals, organizations and entities. *See* Koplik Decl., Ex. DD.

**Response:** Undisputed.

79.     Kathleen Reilly of the New York State Restaurant Association wrote in support of the second extension of the Guaranty Law in pertinent part as follows:

> NYSRA is wholeheartedly in support of extending the provisions of local law 98 of 2020 until March 31, 2021. This law, which prevents personal liability provisions in commercial leases from being enforced against Covid-related defaults, has provided both protection and peace of mind to NYC restaurants over the last year. Without intervention, the protection would expire at the end of the month, on March 31. We recognize that these protections have already been extended once, and while the new end date seemed reasonable back in September, the holiday surge of Covid-19, the second shutdown of indoor dining, and the timelines for vaccinations and the federal Restaurant Revitalization Fund all contribute to our current need for a second extension. The support to extend the protections of local law 98 of 2020 is very strong with New York City operators, and they have been inquiring with us for months about the possibility of an extension.

*See* Koplik Decl., Ex. DD, p. 16.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements of opinion, not fact.  Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law.  While paragraph 79 accurately reflects the cited portion of Koplik Decl., Ex. DD, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. DD for its full and complete contents.

80.   The Committee also issued a report on March 17, 2021, detailing the impact of the COVID -19 crisis on small businesses in New York City. *See* Koplik Decl., Ex. EE.

**Response:** Disputed.  Defendants cite no admissible evidence as to the "impact of the COVID-19 crisis on small businesses."  Plaintiffs further object because this paragraph takes the cited report out of context and is therefore misleading.  Plaintiffs respectfully refer the Court to the March 17, 2021 report for its full contents and context..

81.   On or about March 24, 2021, the City Council amended Intro. No. 2243 as Intro. No. 2243-A. *See* Koplik Decl., Ex. GG.

**Response:** Undisputed.

82.   On September 13, 2020 the Committee on Small Business passed Intro 2803-A by a vote of five (5) to zero (0) and no abstentions. *See* Koplik Decl., Ex. II.

**Response:**  Disputed.  Paragraph 82 is not supported by the evidence cited.

83.   The Committee also issued a report on March 25, 2021, detailing the impact of the COVID -19 crisis on small businesses in New York City which is substantially similar to its March 17, 2021 report. *See* Koplik Decl., Ex. JJ.

**Response:** Disputed.  Defendants cite no admissible evidence as to the "impact of the COVID-19 crisis on small businesses."  Plaintiffs further object because this paragraph takes the cited report out of context and is therefore misleading.  Plaintiffs respectfully refer the Court to the March 25, 2021 report for its full contents and context.

84.   On March 25, 2021, the City Council held a stated meeting during which it passed Intro. No. 2243-A by a vote of forty-three (43) in the affirmative and six (6) in the negative. *See* Koplik Decl., Ex. LL.

**Response:** Undisputed.

85. Local Law 50 of 2021 contained a "Declaration of legislative intent and findings," which detailed, among other matters, the numbers of jobs lost in the food services and drinking places subsector, the retail trade sector, and the personal and laundry services subsector, and declared similar to Local Law 98 of 2020, in pertinent part, as follows:

> 5. While businesses may be willing to weather the economic hardships imposed upon them by governmental measures to combat COVID-19 by either staying open or temporarily closing and later reopening, individual owners and other natural persons who personally guarantee the financial obligations of these businesses face a different and more substantial risk than losing revenue and profit. They risk losing their personal assets, including their possessions and even their own homes, transforming a business loss into a devastating personal loss. This is particularly a risk for small businesses, as the scale of the financial obligations of larger businesses generally renders having a natural person guarantee those obligations impracticable.
>
> 6. If these individual owners and natural persons are forced to close their businesses permanently now or to suffer grave personal economic losses like the loss of a home, the economic and social damage caused to the city will be greatly exacerbated and will be significantly worse than if these businesses are able to temporarily close and return or, failing that, to close later, gradually, and not all at once.

*See* Koplik Decl., Ex. MM at 3.

**Response:** Disputed. Plaintiffs object to this paragraph because it is inadmissible hearsay, speculative, anecdotal, conclusory, and contains statements of opinion not fact. Plaintiffs further object because this quote is taken out of context, misleading, and ignores other hearing testimony in the record concerning the Guaranty Law. While paragraph 85 accurately reflects the cited portion of Koplik Decl., Ex. MM, Plaintiffs respectfully refer the Court to Koplik Decl., Ex. MM for its full and complete contents.

86. Local Law 50 of 2021 amended Section 1. Chapter 10 of title 22 of the administrative code of the City of New York by amending section 22-1005 to read, in pertinent part, as follows:

§ 22-1005.

2. The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and *June 30, 2021*, inclusive.

*Id.* at 4-5.

**Response:** Plaintiffs respectfully refer the Court to the full text of Local Law 50 for its full and complete terms.

## VI.   Plaintiffs' 287 7th Avenue Realty LLC and Elias Bochner

87.    Plaintiff Elias Bochner ("Plaintiff Bochner") is the Managing Member of Plaintiff 287 7th Avenue Realty LLC ("Plaintiff 7th Avenue"), a limited liability company, which owns the property located at 287 7th Avenue, a mixed-use building with one commercial space (the "subject premises"). *See* Plaintiffs' Rule 56.1 Statement ("P56.1") at ¶ 16; Koplik Decl., Ex. UU.

**Response:** Undisputed.

88.    Plaintiffs allege, and defendants do not dispute, that pursuant to a June 9, 2006 Lease between 177 West 76th Street Associates and Sunburger 1 LLC ("Lease"), and the options exercised thereafter, Plaintiff 7th Avenue leased the one commercial space at the subject premises to Tenant Sunburger 1 LLC ("Sunburger"). *See* P56.1 at ¶ 17; Koplik Decl., Ex. OO1- OO2.

**Response:** Undisputed.

89.    Mitch Cantor (the "Guarantor") signed the guaranty under the Lease. *See* Koplik Decl., Ex. OO2 at 29.[6]

**Response:** Undisputed.

90.    Steven Leicht was at all relevant times the Chief Executive Officer of Sunburger 1, LLC. *See* Koplik Decl., Exs. PP, QQ, RR.

**Response:** Undisputed.

---

[6]    Exhibit pages herein refer to the page of the "pdf" as filed on the docket.

91.     Sunburger served a March 20, 2020 Six Month Notice of Tenant's Intention to Vacate and Surrender the Premises for the subject premises. *See* Koplik Decl., Ex. QQ.

**Response:** Undisputed.

92.     Sunburger surrendered the subject premises (and all fixtures, furniture and equipment therein) effective June 30, 2020. *See* Koplik Decl., Ex. RR.

**Response:** Undisputed.

93.     Guardian Realty Management ("Guardian") manages the property on behalf of Plaintiff 7th Avenue. *See* Koplik Decl., Ex. NN, 6:5-20.

**Response:** Undisputed.

94.     Shlome Reifer works for Guardian and represented Plaintiff 7th Avenue at the Rule 30(b)(6) deposition on August 16, 2022. *See* Koplik Decl., Ex. NN, *generally*.

**Response:** Undisputed.

95.     Plaintiffs 7th Avenue and Bochner admitted that they never attempted to recover alleged monies due pursuant to the Lease from Sunburger via litigation. *See* Koplik Decl., Ex. NN, 25:13-26:8; Ex. VV, 31:6-8.

**Response:** Disputed.  Defendants' insinuation that Plaintiffs "never attempted to recover the alleged monies due" is flatly refuted by admissible evidence elucidated during discovery.  At his deposition, Shlome Reifer testified regarding a June 18, 2020 email sent by Sunburger's President, in which the tenant expressly claimed that neither Sunburger nor its guarantor were liable for rent and specifically invoked the protection of the Guaranty Law.  (Koplik Dec., Ex. NN at 25:18-25, 33:8-21).  After that email, Defendants were "at a dead end." (*Id.*).  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

96.     Plaintiffs 7th Avenue and Bochner admitted that they never attempted to recover alleged monies due pursuant to Guaranty from the Guarantor via litigation or otherwise. *See* Koplik Decl., Ex. NN, 36:13-37:8; Ex. VV, 32:12-33:7.

**Response:** Disputed.  Defendants' insinuation that Plaintiffs "never attempted to recover the alleged monies due pursuant to (sic) Guaranty" is flatly refuted by admissible evidence

elucidated during discovery.   At his deposition, Shlome Reifer testified regarding a June 18, 2020 email sent by Sunburger's President, in which the tenant expressly claimed that neither Sunburger nor its guarantor were liable for rent and specifically invoked the protection of the Guaranty Law. (Koplik Decl., Ex. NN at 25:18-25, 33:8-21).   After that email, Defendants were "at a dead end." (*Id.*).   Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

97.   Plaintiff 7th Avenue admitted never communicating with the Guarantor at all. *See*

Koplik Decl., Ex. NN, 21:6-22:8.

**Response:** Disputed to the extent this paragraph insinuates that Plaintiffs never attempted to recover the alleged monies due.   Shlome Reifer testified regarding a June 18, 2020 email sent by Sunburger's President, in which the tenant expressly claimed that neither Sunburger nor its guarantor were liable for rent and specifically invoked the protection of the Guaranty Law. (Koplik Decl., Ex. NN at 25:18-25, 33:8-21).   After that email, Defendants were "at a dead end."  (*Id.*). Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

98.   At the Rule 30(b)(6) deposition on August 16, 2022, Shlome Reifer testified as

follows:

Q.  Do you have contact information for Mitch Cantor?

A.  No, we don't.

\*       \*       \*

Q.  Have you ever communicated with Mitch Cantor?

A.  We don't communicate with guarantors if tenants are paying on a day-to-day basis, even if they do have some sort of a balance. It just gets between the landlord and the tenant's bad side if we do reach out to the guarantor and we cross out the tenant, so we do not usually communicate with the guarantor if the tenant is still occupying the space and plans on making some sort of payments.

Q.  Have you ever communicated with Mitch Cantor?

A.  No, we haven't.

*See* Koplik Decl., Ex. NN, 21:23-22:08.

**Response:** Disputed to the extent this paragraph insinuates that Plaintiffs never attempted to recover the alleged monies due.   Shlome Reifer testified regarding a June 18, 2020 email sent by Sunburger's President, in which the tenant expressly claimed that neither Sunburger nor its guarantor were liable for rent and specifically invoked the protection of the Guaranty Law. (Koplik Decl., Ex. NN at 25:18-25, 33:8-21).   After that email, Defendants were "at a dead end."  (*Id.*).

Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

99.     At least a portion of the alleged amounts due pursuant to the Lease accrued prior to

March 7, 2020 and are still conceivably recoverable from the Guarantor despite the Guaranty Law.

*See* Koplik Decl., Ex. SS.

**Response:** Disputed.  Plaintiffs object to this paragraph because it is argumentative, speculative, a statement of opinion rather than fact, and not supported by admissible evidence. Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

100.    Plaintiff 7th Avenue received a disaster assistance loan in the amount of $150,000

from the U.S. Small Business Administration. *See* Koplik Decl., Exs. TT, UU.

**Response:** Undisputed, but incomplete.  The loan has not been forgiven and remains outstanding.  (Koplik Decl., Ex. NN at 52:14-17).  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

101.    Plaintiff 7th Avenue used Sunburger's security deposit in the amount of $57,000.

*See* Koplik Decl., Ex. SS at 2.

**Response:** Undisputed, however, Plaintiffs object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

102.    When Sunburger vacated the subject premises, it left furniture, fixtures, and

equipment, which were used by a subsequent tenant. *See* Koplik Decl., Exs. RR, NN, 34:20- 35:4,

40:10-25, Ex. VV, 37:19-38:8.

**Response:** Undisputed, but incomplete.  Shlome Reifer testified that he was "not sure exactly what [the subsequent tenant] did use and what he didn't use," and that the value of the objects left behind by Sunburger was subjective: "[t]o us, there's no value to it; meaning that if the space would have been vacant, it would have been more valuable, or else we would have to clean it out." (Koplik Decl. NN at 35:5-11, 40:17-25).  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

103.    At the Rule 30(b)(6) deposition on August 16, 2022, Shlome Reifer testified as

follow:

Q. What did you observe at that walkthrough?

A. If I remember correctly, I met with two young ladies. I believe it was a manager and an employee. They showed me the space and that was the end of it.

Q. What was the condition of the space?

A. It was in good condition. They had benches, they had walk-in refrigerators that they left there. They had some things left upstairs in the office, a camera system, a large safe, and they had a dining setting on the first floor.

*       *       *

Q. What happened to those things that you found, the safe and all the things you mentioned, the walk-in refrigerator, the benches, what happened to all that stuff?

MR. KAHNE: Object to form.

A. So whatever was left at 287 Seventh Avenue was used by the next tenant, which happened to be a restaurant as well.

*See* Koplik Decl., Ex. NN, 34:24-35:18.

**Response:** Undisputed, but incomplete.  Shlome Reifer testified that he was "not sure exactly what [the subsequent tenant] did use and what he didn't use," and that the value of the objects left behind by Sunburger was subjective: "[t]o us, there's no value to it; meaning that if the space would have been vacant, it would have been more valuable, or else we would have to clean it out." (Koplik Decl. NN at 35:5-11, 40:17-25).  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

104.    Both Plaintiffs 7th Avenue and Bochner provided deposition testimony establishing

that the real estate taxes were paid from funds from another entity owned by Plaintiff Bochner. *See*

Koplik Decl., Ex. NN, 45:18-46:8, Ex. VV, 42:13-43:25.

**Response:** Undisputed, but incomplete.  Both witnesses testified that Bochner had to take out a loan from another entity in order to pay taxes on 287 7th Avenue after Sunburger failed to pay such taxes as required under the terms of the lease between Sunburger and 287 7th Avenue. (Koplik Decl., Ex. NN at 45:20-46:8; Ex. VV at 43:14-18).  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

105.    With respect to payment of the property taxes and other expenses related to the
subject premises, Plaintiff Bochner testified as follows:

Q. The question is, do you have any ownership interest in any other LLCs?

A. The answer is, yes, but I'm not prepared to list them all. I don't have them in front of
me.

Q. Did you ever pay, personally pay, taxes, real estate taxes, for 287 7th Avenue Realty?

MR. KAHNE: Object to the form. You can answer. THE WITNESS: Answer?

MR. KAHNE: Yes.

A. I don't remember.

Q. Did you contribute any money toward real estate taxes for 287 7th Avenue Realty in
calendar year 2020?

A. I don't remember.

Q. Did you ever contribute any money toward real estate taxes for 287 7th Avenue Realty
in calendar year 2021?

A. I don't remember the exact dates but I believe from 2020 up through until 2022 we had
put in $200,000 for real estate taxes and whatever expenses the building needed.

Q. Who is we?

A. That means us, the ownership, the partnership with other corporations or personal.

Q. And where did that $200,000 come from?

A. It came from other investments that we have. Q Which other investments?

A. I don't remember exactly where it came from but it came from 177 -- I don't remember
which building but the total we put in was $200,000. That's besides the EIDL loan that
we got for $150,000.

Q. The what loan? I'm sorry. I didn't hear that.

A The loan, the SBA loan, that we got in June 2020 for $150,000 plus our $200,000 today
is $350,000 that we have a liability to pay back.

Q The $200,000 that you put into 287 7th Avenue Realty LLC, was that a gift? A No.

Q. What was it?

A. A loan. It has to be paid back. Q Is there a loan agreement?

A. No.

Q. Is there an oral loan agreement?

A. A simple understanding. I mean it's a common practice between the building. Sometimes when the building is short, that one entity will borrow the other entity and when the funds are available, pay it back.

Q  Is there interest on the loan? A No.

*See* Koplik Decl., Ex. VV, 42:13-44:02.

**Response:** Undisputed except as to the first two quoted sentences of Plaintiff Bochner's testimony, which are not supported by the evidence cited.  Plaintiffs further object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

106.   With respect to payment of the property taxes and other expenses related to the

subject premises, 30(b)(6) witness, Shlome Reifer, testified as follows:

Q. So who paid the amounts from 2020 to 2022?

MR. KAHNE: Object to form. You can answer.

A. So 287 7th Avenue Realty LLC paid for the taxes, which was, I believe, borrowed from a different entity of theirs.

Q. I'm sorry?

A.  It was a loan from a different entity of theirs. So they loaned him the money to be able to pay the taxes.

*See* Koplik Decl., Ex. NN, 45:18-45:24.

**Response:**  Undisputed, however, Plaintiffs object to this paragraph because it is not material to the determination of whether the Guaranty Law is a reasonable and appropriate means to achieve its professed purpose.

Dated:   New York, New York
　　　　October 14, 2022

　　　　　　　　　STROOCK & STROOCK & LAVAN LLP


By: */s/ Claude G. Szyfer*　　　
Claude G. Szyfer
David J. Kahne
Darya D. Anichkova
180 Maiden Lane
New York, NY 10038
(212) 806-5400
cszyfer@stroock.com
dkahne@stroock.com
danichkova@stroock.com

*Attorneys for Plaintiffs Elias Bochner and 287 7th Avenue, LLC*

# A2763

DECLARATION OF CLAUDE G. SZYFER, DATED OCTOBER 14, 2022,
IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>
(pp. A2763-A2765)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, Top East Realty LLC, Haight Trade LLC, Elias Bochner, and 287 7th Avenue Realty LLC, | : |

Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC,
Ling Yang, Top East Realty LLC, Haight Trade LLC, Elias
Bochner, and 287 7th Avenue Realty LLC,

         *Plaintiffs*,

   v.

The City of New York, *a municipal entity*,
Bill de Blasio, *as Mayor of the City of New York*,
Louise Carroll, *Commissioner of New York City
Department of Housing Preservation &
Development*, and Jonnel Doris, *Commissioner of
New York City Department of Small Business
Services*,

         *Defendants*.

: **DECLARATION OF
CLAUDE G. SZYFER IN
FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
AND IN OPPOSITION TO
DEFENDANTS' CROSS-
MOTION FOR SUMMARY
JUDGMENT**

: Civ. No. 20-cv-5301(RA)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CLAUDE G. SZYFER,** pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am a Partner at Strook & Strook & Lavan LLP, attorneys for Plaintiffs Elias Bochner and 287 7th Avenue Realty LLC (collectively "Plaintiffs") in the above-captioned action.

2.     I respectfully submit this declaration in support of Plaintiffs' motion for summary judgment, which seeks to declare unconstitutional New York City Admin. Code § 22-1005 (the "Guaranty Law" or the "Law"), and in opposition to the City Defendants' cross-motion for summary judgment.

3.     This declaration is intended to put before the Court documents which were produced in discovery after Plaintiffs moved for summary judgment on March 28, 2022 (Dkt. 91) but before Defendants cross-moved for summary judgment on September 23, 2022 (Dkt. 101), and which concern certain facts raised in Defendants' cross-motion.

4.       Attached as **Exhibit 1** is a true and correct copy of an email chain between

Plaintiff Bochner's property manager, Guardian Realty LLC ("Guardian") and Mr. Bochner's

tenant, Sunburger 1 LLC ("Sunburger"), dated June 17, 2020 through June 29, 2020, produced

by Plaintiffs in this action and bearing Bates numbers 287-Bochner0000117 through 287-

Bochner0000120.

5.       Attached as **Exhibit 2** is a true and correct copy of an email chain between

Guardian and Sunburger, dated May 6, 2020 through June 11, 2020, produced in this action and

bearing Bates numbers 287-Bochner0000112 through 287-Bochner0000116.

6.       I declare under penalty of perjury that the foregoing is true and correct.


Dated:   New York, New York
         October 14, 2022

                                    */s/ Claude G. Szyfer*
                                    Claude G. Szyfer

# A2766

EXHIBIT 1 - ANNEXED TO THE DECLARATION OF CLAUDE G. SZYFER
Email Transmissions, Various Dates, between Tilly Gordon,
Steve Leicht and Chaim Simkowitz
(pp. A2766-A2771)

REPRODUCED FOLLOWING

# EXHIBIT 1

---

Message

---

**From:**     Tilly Gordon [tilly@guardian.nyc]
**Sent:**     6/29/2020 4:40:24 PM
**To:**       steve@brgr.com
**CC:**       Shlome Reifer [shlome@guardian.nyc]
**Subject:**  RE: 287 7th Ave

Please let me know about the rent balance. Can you pay it up before vacating or would you like to set up a payment plan?

---

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Monday, June 29, 2020 12:39 PM
**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Shlome Reifer <shlome@guardian.nyc>
**Subject:** Re: 287 7th Ave

**[EXTERNAL]**
OK. I will make Eileen aware.

Steve Leicht
SunBurger LLC

On Jun 29, 2020, at 11:32 AM, Tilly Gordon <tilly@guardian.nyc> wrote:

Ok
Shlome will stop by tomorrow.

---

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Monday, June 29, 2020 11:08 AM
**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Shlome Reifer <shlome@guardian.nyc>
**Subject:** Re: 287 7th Ave

**[EXTERNAL]**
4pm.

Steve Leicht
SunBurger LLC

On Jun 29, 2020, at 10:14 AM, Tilly Gordon <tilly@guardian.nyc> wrote:

Please advise until when she'll be there tomorrow.

CONFIDENTIAL

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Monday, June 29, 2020 9:12 AM
**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Shlome Reifer <shlome@guardian.nyc>
**Subject:** Re: 287 7th Ave

**[EXTERNAL]**
I am not able to be at the store. However, Eileen, the store manager will be there today and tomorrow if you want to do a walk through. Eileen can provide you with the key, or we can overnight for July 1st delivery as previously planned.

Steve Leicht
SunBurger LLC


On Jun 22, 2020, at 2:55 PM, Tilly Gordon <tilly@guardian.nyc> wrote:

Please advise on the time. And if you can wire the rest of the balance this week.

**From:** Tilly Gordon
**Sent:** Friday, June 19, 2020 2:46 PM
**To:** steve@brgr.com
**Cc:** Shlome Reifer <shlome@guardian.nyc>
**Subject:** RE: 287 7th Ave

Please let us know what time on the 29th.

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Thursday, June 18, 2020 5:22 PM
**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Shlome Reifer <shlome@guardian.nyc>
**Subject:** Re: 287 7th Ave

**[EXTERNAL]**
We will remove all perishable inventory and leave space broom clean. I don't believe a walk through is necessary, but can make myself available on June 29th or 30th if you'd like.

Steve Leicht
SunBurger LLC


On Jun 18, 2020, at 2:14 PM, Tilly Gordon <tilly@guardian.nyc> wrote:

Hi,
I'd like to schedule a walkthrough before the keys are returned. Please let me know a day and time you're available.

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Thursday, June 18, 2020 11:09 AM
**To:** Chaim Simkowitz <chaim@guardian.nyc>
**Cc:** Tilly Gordon <tilly@guardian.nyc>; Shlome Reifer <shlome@guardian.nyc>
**Subject:** Re: 287 7th Ave

**[EXTERNAL]**
As requested in your previous email, this is confirmation that SunBurger 1 LLC will surrender the space at 287 7th Avenue on June 30, 2020. We will FEDEX the keys to you at 3611 14th Avenue, Suite 603 Brooklyn, NY 11218 for delivery on June 30, 2020.

Steve Leicht
SunBurger LLC

On Jun 18, 2020, at 9:01 AM, Chaim Simkowitz <chaim@guardian.nyc> wrote:

Good morning
Obviously there is a difference between judgments and actual collections .
I judgment is good for 20 years As you also should know this is being challenged as unconstitutional & other grounds .
Please advise when you intend to surrender the keys so we can coordinate in an orderly way .

Thank you

On Jun 18, 2020, at 8:03 AM, "steve@brgr.com" <steve@brgr.com> wrote:

**[EXTERNAL]**

Hi Tilly. As you may be aware, on May 26, 2020 legislation was enacted in NYC that affects the guarantor's liability under the lease for the BRGR restaurant at 287 7th Avenue (N.Y.C. Council Int. No. 1932-A (2020) and N.Y.C. Council Int. No. 1914-A (2020)). Under the protections afforded under this law, the guarantor is not liable for rent, utility expenses or taxes owed by the tenant or for fees or charges relating to routine maintenance owed by the tenant and occurring between March 7, 2020 and September 30, 2020. Please note that the 6-month notice from the guarantor expires September 30, 2020 (not June 30), however, I am happy to surrender the keys earlier.

**From:** Tilly Gordon <tilly@guardian.nyc>
**Date:** June 17, 2020 at 11:16:34 AM EDT
**To:** "steve@brgr.com" <steve@brgr.com>

**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject: 287 7th Ave**

Hi Steve,
Per the notice attached, the limitation on the good guy is only if keys are returned timely. Please confirm we will be receiving keys on 6/30/20. If not, the personal guarantee shall continue.

Thank you,
**Tilly Gordon**
VP, Operations

**A:** 3611 14th Ave Suite #603 Brooklyn, NY 11218
**P:** 718.686.6262 x8203 | **F:** 718.686.0431
**E:** tilly@guardian.nyc | **W:** guardian.nyc

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

# A2772

EXHIBIT 2 - ANNEXED TO THE DECLARATION OF CLAUDE G. SZYFER
Email Transmissions, Various Dates, between Chaim Simkowitz,
Steve Leicht, and Tilly Gordon
(pp. A2772-A2778)

REPRODUCED FOLLOWING

# EXHIBIT 2

# A2774

---

Message

---

**From:**      Tilly Gordon [tilly@guardian.nyc]
**Sent:**      6/11/2020 4:43:41 PM
**To:**        steve@brgr.com
**CC:**        Chaim Simkowitz [chaim@guardian.nyc]
**Subject:**   RE: 287 ledger

**Importance:**   High

Can you submit a partial payment this week?
Your rent balance is $119,987.27

---

**From:** Chaim Simkowitz <chaim@guardian.nyc>
**Sent:** Wednesday, June 10, 2020 12:03 AM
**To:** steve@brgr.com
**Cc:** Tilly Gordon <tilly@guardian.nyc>
**Subject:** Re: 287 ledger

Starve what's the plan . We need to bills taxes and water sewer insurance mortgage and my self . No one delayed any payments for the owners and it's a very big deal that zero is being paid .

On Jun 5, 2020, at 10:37 AM, "steve@brgr.com" <steve@brgr.com> wrote:

**[EXTERNAL]**
As you can imagine, this is a very difficult time for a restaurant. The
pandemic has been a tremendous blow. Adding to difficulty, social unrest and looting- as close as the adjacent stores- makes operating impossible. Our weekly sales are averaging $4k- not enough to cover labor and food costs. Not paying you is not a sign or disrespect, it's desperation.
I received PPP payment of $60k and immediately paid you $15 k as permitted by the PPP program.
To date, I have been unsuccessful obtaining a SBA loan, but am pursuing other avenues.

Steve Leicht
SunBurger LLC

On Jun 5, 2020, at 9:32 AM, Chaim Simkowitz <chaim@guardian.nyc> wrote:

Good morning another week plus went by . you know how connect when you want to and make a payment. There is no reason for this mistreatment.

---

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Thursday, May 28, 2020 2:10 PM
**To:** Chaim Simkowitz <chaim@guardian.nyc>
**Cc:** Tilly Gordon <tilly@guardian.nyc>
**Subject:** Re: 287 ledger

CONFIDENTIAL

**[EXTERNAL]**
Hi Chaim- I am not ignoring. Out of town until Monday with family issue. We should talk Monday am to discuss plan forward. I am available between 7am and noon Monday.

Steve Leicht
SunBurger LLC

On May 28, 2020, at 1:46 PM, Chaim Simkowitz <chaim@guardian.nyc> wrote:

Steve I called and sent you a text as well . you are putting us the managing company in a very bad position with our clients there is no excuse for ignoring . tilly emailed you a few times . we need to get funds . nothing is for free. Attached is the wiring info.

Thank you

**From:** Tilly Gordon <tilly@guardian.nyc>
**Sent:** Thursday, May 28, 2020 11:58 AM
**To:** steve@brgr.com
**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** RE: 287 ledger

Good afternoon,
Can you wire another $15K before the 1st?

**From:** Tilly Gordon
**Sent:** Tuesday, May 26, 2020 12:38 PM
**To:** steve@brgr.com
**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** RE: 287 ledger
**Importance:** High

Good afternoon,
Please let us know how much you can pay before the end of the month. See ledger attached- your balance is $92,085.13.

**From:** Tilly Gordon
**Sent:** Wednesday, May 20, 2020 5:45 PM
**To:** steve@brgr.com
**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** RE: 287 ledger

Hi Steve,
Can we expect another payment this week?

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Wednesday, May 13, 2020 3:18 PM

**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** Re: 287 ledger

**[EXTERNAL]**
Yes. Please send wiring instructions.

Steve Leicht
SunBurger LLC

On May 13, 2020, at 3:02 PM, Tilly Gordon <tilly@guardian.nyc> wrote:

Can you wire the money today?

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Wednesday, May 13, 2020 2:56 PM
**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** Re: 287 ledger

**[EXTERNAL]**
Tried that, and rejected again. "Exceeds ACH limit "

Steve Leicht
SunBurger LLC

On May 13, 2020, at 2:52 PM, Tilly Gordon <tilly@guardian.nyc> wrote:

It's 10K. Please divide the payment in two

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Wednesday, May 13, 2020 2:52 PM
**To:** Chaim Simkowitz <chaim@guardian.nyc>
**Cc:** Tilly Gordon <tilly@guardian.nyc>
**Subject:** Re: 287 ledger

**[EXTERNAL]**
Just tried to pay $15k through your system. Rejected because exceed ACH limit. Did not see limit amount on payment portal.

Steve Leicht
SunBurger LLC

On May 12, 2020, at 6:59 PM, Chaim Simkowitz <chaim@guardian.nyc> wrote:

Steve did you ACH funds ?

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Monday, May 11, 2020 1:55 PM
**To:** Tilly Gordon <tilly@guardian.nyc>
**Cc:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** Re: 287 ledger

[EXTERNAL]
Got it thanks.

Steve Leicht
SunBurger LLC

On May 11, 2020, at 1:44 PM, Tilly Gordon <tilly@guardian.nyc> wrote:

Attached are the payment instructions.

**From:** Chaim Simkowitz <chaim@guardian.nyc>
**Sent:** Friday, May 08, 2020 11:38 AM
**To:** steve@brgr.com
**Cc:** Tilly Gordon <tilly@guardian.nyc>
**Subject:** RE: 287 ledger

Thank for the update . please only wire/ACH or we will pick up . do not mail . chaim

**From:** steve@brgr.com <steve@brgr.com>
**Sent:** Friday, May 08, 2020 11:09 AM
**To:** Chaim Simkowitz <chaim@guardian.nyc>
**Subject:** Re: 287 ledger

[EXTERNAL]
I am expecting to be funded by PPP today/Monday. I will send a check upon receipt.

Steve Leicht
SunBurger LLC

On May 6, 2020, at 3:56 PM, Chaim Simkowitz <chaim@guardian.nyc> wrote:

# A2778

Hi steve, hope all is well we spoke last week and we need to get payment on account here the balance is 107,085.13 ledger is attached. please advise ASAP.

Thank you

**Chaim Simkowitz**
Founder & CEO

**A:** 3611 14th Ave Suite #603 Brooklyn, NY 11218
**P:** 718.686.6262 x8205 | **F:** 718.686.0431
**E:** chaim@guardian.nyc | **W:** guardian.nyc

<image001.png>

<image004.png>

---------------------------------------------------------

This message, and any attachments to it, may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are notified that any use, dissemination, distribution, copying, or communication of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately by return e-mail and delete the message and any attachments. Thank you.

<Transactions_2005061417.pdf>

<287 7th Ave Realty LLC.pdf>

<287 - Wiring Instructions.pdf>

# A2779

REPLY DECLARATION OF PAMELA A. KOPLIK, DATED OCTOBER 28, 2022,
IN FURTHER SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY
<u>JUDGMENT</u>
(pp. A2779-A2781)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC, Ling Yang, Top East Realty LLC, and Haight Trade LLC, Elias Bochner, and 287 7th Avenue Realty LLC<br><br>      *Plaintiffs,*<br><br>   *v.*<br><br>The City of New York, a municipal entity, Bill de Blasio, as Mayor of the City of New York, Louise Carroll, Commissioner of New York City Department of Housing Preservation & Development, and Jonnel Doris, Commissioner of New York City Department of Small Business Services,<br><br>      *Defendants.* | **REPLY DECLARATION OF PAMELA A. KOPLIK FURTHER SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>20 CV 05301 (RA) |

   **PAMELA A. KOPLIK** declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

   1. I am an Assistant Corporation Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants in the instant action.

   2. I respectfully submit this reply declaration in further support of Defendants' cross-motion for an order and judgment dismissing the Amended Complaint pursuant to Rules 56 and 57 of the Federal Rules of Civil Procedure.

   3. This declaration is intended to put before the Court information which bears on Defendants' cross-motion.

4.     Attached as Exhibit A is a true and correct copy of a Summons and Complaint in *287 7th Avenue Realty LLC v. Grubbs 287 7th Avenue Corp.* (Index No. 522987/2021) that was provided to Defendants by Plaintiffs in discovery and is bates-stamped 287-Bochner0000153–165.

5.     Attached as Exhibit B is a true and correct copy of "Plaintiffs' Responses And Objections To Defendants' First Set Of Requests For The Production Of Documents" dated May 6, 2022.

**WHEREFORE**, for the reasons stated in Defendants' papers, Defendants respectfully request that this Court deny Plaintiffs' motion for summary declaratory relief and grant Defendants' cross-motion to for summary judgment dismissing the Amended Complaint .

Dated:        New York, New York
              October 28, 2022


                                   /s/
                      _____
                      **PAMELA A. KOPLIK**

# A2782

EXHIBIT A - ANNEXED TO THE REPLY DECLARATION OF
PAMELA A. KOPLIK

Summons and Verified Complaint, Sworn to September 2, 2021, in *287 7th Avenue
Realty LLC a/k/a 287 7th Avenue, LLC v. Grubbs 287 7th Avenue Corp. d/b/a
Grubbs take away, and Ian Mitchell*
(pp. A2782-A2795)

REPRODUCED FOLLOWING

# A2783

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------X
287 7TH AVE REALTY LLC a/k/a                    Index No.          /21
287 7TH AVENUE, LLC,

                Plaintiff,                       Date of Filing:

    - against –                                **SUMMONS**

                              Basis of Venue:
GRUBBS 287 7TH AVENUE CORP. d/b/a               Plaintiff's Business
GRUBBS TAKE AWAY, and IAN MITCHELL,             Address:
                              3611 14th Ave., Suite 603
                 Defendants.              Brooklyn, N.Y. 11218
-----------------------------------X

To the above named Defendants:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on the undersigned attorneys for the Plaintiffs within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the accompanying complaint, together with the costs of this action.

Dated:   New York, New York
        September 9, 2021

                        **THE KLEIN LAW GROUP CRE PLLC**

              By:   /s/Efrem Z. Fischer
                  Efrem Z. Fischer
                  Attorneys for Plaintiff
                  275 Madison Avenue, 33rd Floor
                  New York, New York 10016
                  (212) 661-9400

CONFIDENTIAL                                           287-Bochner0000153

TO:   **GRUBBS 287 7TH AVENUE CORP.**
      **d/b/a GRUBBS TAKE AWAY**
      287 7th Avenue
      New York, New York 10001

      **IAN MITCHELL**
      **c/o GRUBBS TAKE AWAY**
      418 Washington Street
      Hoboken, New Jersey 07030

2

CONFIDENTIAL                                         287-Bochner0000154

# A2785

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------X

                              Index No.     /21

287 7TH AVE REALTY LLC a/k/a
287 7TH AVENUE, LLC,

              Plaintiff,

                            **VERIFIED COMPLAINT**

    - against -

GRUBBS 287 7TH AVENUE CORP. d/b/a
GRUBBS TAKE AWAY, and IAN MITCHELL,

              Defendants.

------------------------------------X

    Plaintiff, 287 7TH AVE REALTY LLC a/k/a 287 7TH AVENUE, LLC ("Plaintiff"), by its undersigned attorneys, The Klein Law Group CRE PLLC, as and for its complaint herein, allege as follows:

## THE PARTIES

    1.   Plaintiff is a New York limited liability company maintaining its principal office at 3611 14th Avenue, Suite 603, Brooklyn, New York 11218.

    2.   Upon information and belief, Defendant GRUBBS 287 7TH AVENUE CORP. d/b/a GRUBBS TAKE AWAY (hereinafter, "Tenant"), is a New York corporation maintaining a place of business at, and whose last known address is, 287 7th Avenue New York, New York 10001.

    3.   Upon information and belief, Defendant IAN MITCHELL (hereinafter, "Guarantor", and collectively with Tenant, referred

CONFIDENTIAL                                             287-Bochner0000155

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM
INDEX NO. 522987/2021
NYSCEF DOC. NO. 1
Case 1:20-cv-05301-RA   Document 113-1   Filed 10/28/22   Page 4 of 13
RECEIVED NYSCEF: 09/09/2021

to herein as "Defendants") is an individual residing at 418 Washington Street, Hoboken, New Jersey 07030.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over Defendants pursuant to section 301 and/or section 302 of New York's Civil Practice Law and Rules.  At all times relevant herein, Defendants resided in the State of New York, transacted business and/or contracted to supply goods and services within the State of New York, and owned, used or possessed real property situated within the State of New York.

5.   This Court furthermore has jurisdiction over the Defendants, because in Article 99 of the Lease (as hereinafter defined), and Section 3.2 of the Guarantee (as hereinafter defined), Defendants consented to the jurisdiction of the Courts of the State of New York concerning all issues arising under the Lease and Guarantee.

6.   Venue is proper in Kings County because Plaintiff resides in Kings County.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.   Plaintiff is the owner and Landlord of the building and real property located at and known as 287 7th Avenue New York, New York 10001 (hereinafter, the "Building").

2

CONFIDENTIAL                                            287-Bochner0000156

8.    On or about October 2, 2020, Tenant, entered, as tenant, into the Agreement of Lease, dated as of October 2, 2020, with Plaintiff, as landlord (hereinafter, the "Lease"), under which Plaintiff leased to Tenant a certain portion of rentable space located on the ground floor (approximately 2,000 square feet) and a certain portion of rentable space in the basement (collectively the "Premises"), in the Building.

9.    Upon information and belief, Guarantor was and/or is a Principal of Tenant, and Guarantor signed the Lease on behalf of Tenant, as its principal and President.

10.    Pursuant to the terms of the Lease, in consideration for its possession and use of the Premises, Tenant agreed to pay certain rent and additional rent to Plaintiff, in advance of the first day of each month, in the amounts specified in the Lease.

11.    Pursuant to, and without limitation, the Third Paragraph on the first page of the Lease, and Articles 1 and 42(A) of the Lease, the fixed rent reserved for the Premises for the period relevant to this action is as follows: for the period from October 1, 2020 through November 30, 2021, at a rental rate of $174,500.00 per annum ($14,500.00).

12.    Pursuant to, without limitation, the initial paragraphs of the Lease, all fixed rent payments are due from Tenant in

3

CONFIDENTIAL

287-Bochner0000157

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM INDEX NO. 522987/2021
NYSCEF DOC. NO. 1 Case 1:20-cv-05301-RA Document 113-1 Filed 10/28/22 Page 6 of 13 RECEIVED NYSCEF: 09/09/2021

advance on the first day of each month during the term of the Lease, without any set off or deduction whatsoever.

13. In addition to the fixed rent, Tenant is also liable for certain additional rents pursuant to the Lease.

14. Pursuant to, and without limitation, Article 45 of the Lease, Tenant is required to pay real estate tax charges to Plaintiff.

15. Pursuant to, without limitation, Articles 17 and 59 of the Lease, Tenant is required to pay late fees and interest to Plaintiff if the fixed rent and additional rent is not timely paid in accordance with the terms of the Lease.

16. Contemporaneously with the execution of the Lease Amendment, Defendant Ian Mitchell, as principal of Tenant, executed a certain personal guarantee (the "Guarantee"), wherein and whereby, pursuant to Article II, Section 2.1(c) of the Guarantee, Guarantor, *inter alia*, guaranteed to Plaintiff, the performance of all of the monetary obligations of the Tenant under the Lease, including, without limitation, the payment of all of the rent and additional rent which accrue up to the last to occur of: (a) Tenant vacating the Premises; (b) so notifying Plaintiff in writing; (c) the expiration of six (6) full months after the date that Tenant has given Plaintiff written notice that it will surrender possession of the Premises; and (d) Tenant delivering

4

CONFIDENTIAL                                                  287-Bochner0000158

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM
INDEX NO. 522987/2021

NYSCEF DOC. NO. 1    Case 1:20-cv-05301-RA    Document 113-1    Filed 10/28/22    Page 7 of 13    RECEIVED NYSCEF: 09/09/2021

the keys to Plaintiff and surrendering the Premises in accordance with the Lease.

17. Pursuant to Section 2.4 of the Guarantee, Guarantor, as Guarantor, agreed to reimburse Landlord for all costs and expenses incurred by Plaintiff in connection with the enforcement of his Guarantee, including, without limitation, reasonable attorneys' fees.

18. Tenant is currently in possession of the Premises.

19. Plaintiff reserves the right to amend its claims against Tenant and the Guarantor, as the tenant and guarantor of the Lease, for fixed rent and all other sums payable by Tenant under the Lease, and by Guarantor under the Guarantee, as the same continue to accrue each month under the Lease and the Guarantee.

20. Since on or about January 1, 2021, Tenant failed to pay rent and additional rent due under the Lease to Plaintiff, in the amount through the date hereof of $69,759.38. By virtue of Tenant's breach of the Lease, there is due to Plaintiff from Tenant rent and additional rent in the sum of $69,759.38, together with interest thereon from the date on which each payment obligation accrued, no part of which has been paid.

21. Pursuant to Article II, Section 2.1 of his Guarantee, Guarantor is responsible as guarantor for the payment of fixed rent, additional rent, and all other charges accruing under the

5

CONFIDENTIAL                                                              287-Bochner0000159

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM
INDEX NO. 522987/2021
NYSCEF DOC. NO.    Case 1:20-cv-05301-RA   Document 113-1   Filed 10/28/22   Page 8 of 13   RECEIVED NYSCEF: 09/09/2021

Lease through the date hereof, in the sum of $69,759.38, with interest thereon from the date on which each payment obligation accrued, together with legal fees and disbursements paid or incurred by Plaintiff in seeking to enforce the Guarantee.

### AS AND FOR A FIRST CAUSE OF ACTION

22.   Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "21" above, as if the same were set forth fully hereat.

23.   Plaintiff performed any and all conditions on its part to be performed, as required by the Lease.

24.   Tenant has failed and omitted to honor its obligations under the Lease, and presently owes Plaintiff rent and additional rent in the amount of $69,759.38, together with interest thereon from the date on which each payment obligation accrued, no part of which has been paid.

25.   By reason of the foregoing, Plaintiff has been damaged in the sum of $69,759.38, together with interest thereon from the date on which each payment obligation accrued, no part of which has been paid.

26.   Accordingly, Plaintiff is entitled to judgment against Tenant in the sum of $69,759.38, together with interest from the date upon which each item of rent and additional rent became due.

6

CONFIDENTIAL

287-Bochner0000160

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM INDEX NO. 522987/2021
NYSCEF DOC. NO. 1    Case 1:20-cv-05301-RA   Document 113-1   Filed 10/28/22   Page 9 of 13   RECEIVED NYSCEF: 09/09/2021

## AS AND FOR A SECOND CAUSE OF ACTION

27. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "26" above, as if the same was set forth fully hereat.

28. Tenant owes the sum of $69,759.38, and Guarantor, as Guarantor, is responsible, therefore.

29. Guarantor has failed to honor the obligations under his Guarantee, by failing to pay to the Plaintiff the aforementioned arrears of $69,759.38 owed as of the date hereof by Tenant to the Plaintiff under the Lease.

30. By reason of the foregoing, Plaintiff has been damaged in the sum of at least $69,759.38, together with interest thereon from the date upon which each item of rent and additional rent became due, no part of which has been paid.

31. Accordingly, Plaintiff is entitled to judgment against Guarantor, in the amount of at least $69,759.38, together with interest thereon from the date upon which each item of rent and additional rent became due.

## AS AND FOR A THIRD CAUSE OF ACTION

32. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "31" above, as if the same were set forth fully hereat.

7

CONFIDENTIAL                                                                    287-Bochner0000161

# A2792

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM
INDEX NO. 522987/2021
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 09/09/2021

33. Pursuant to, without limitation, Article 19 and 66 of the Lease, Tenant is liable to Plaintiff for the attorneys' fees and expenses incurred by Plaintiff in prosecuting this action and otherwise enforcing Plaintiff's rights under the Lease.

34. Plaintiff has incurred, and will continue to incur, expenses in the form, *inter alia*, of legal fees and disbursements, all as a result of Tenant's default of its payment obligations pursuant to the Lease, the precise sum of which will be determined at trial or earlier conclusion of this action.

35. Tenant is liable for Plaintiff's expenses and legal fees under the terms of the Lease.

36. Accordingly, Plaintiff is entitled to judgment against Tenant for the expenses and legal fees incurred in prosecuting this action, the precise sum of which will be determined at trial or earlier conclusion of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

37. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "36" above, as if the same was set forth fully hereat.

38. Pursuant to Article II, Section 2.4 of his Guarantee, Guarantor is responsible for all reasonable costs and expenses, including attorneys' fees, incurred by Plaintiff in enforcing the aforementioned Guarantee.

8

CONFIDENTIAL
287-Bochner0000162

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM

INDEX NO. 522987/2021

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 09/09/2021

39. Plaintiff has incurred, and will continue to incur, additional attorneys' fees and other expenses in litigating this action, for which Guarantor is liable.

40. Accordingly, Plaintiff is entitled to judgment against Guarantor in an amount to be determined at trial, for their expenses and legal fees incurred in prosecuting this action.

**WHEREFORE,** Plaintiff demands judgment against Defendants 287 7TH AVE REALTY LLC a/k/a 287 7TH AVENUE, LLC and IAN MITCHELL, as follows:

(a) On its First Cause of Action, against the Defendant 287 7TH AVE REALTY LLC a/k/a 287 7TH AVENUE, LLC, in the sum of Sixty-Nine Thousand Seven Hundred and Fifty-Nine Dollars and Thirty-Eight Cents ($69,759.38), together with interest thereon from the date on which each payment obligation accrued, to be adjusted upwards through the date of judgment.

(b) On its Second Cause of Action, against the Defendant IAN MITCHELL, in the sum of Sixty-Nine Thousand Seven Hundred and Fifty-Nine Dollars and Thirty-Eight Cents ($69,759.38), together with interest thereon from the date on which each payment obligation accrued, to be adjusted upwards through the date of judgment.

(c) On its Third Cause of Action, against the Defendant 287 7TH AVE REALTY LLC a/k/a 287 7TH AVENUE, LLC, for its expenses and legal fees, the precise sum of which is to be determined at trial or earlier conclusion of this action.

(d) On its Fourth Cause of Action, against the Defendant IAN MITCHELL for its expenses and legal fees, the precise sum of which is to be determined at trial or earlier conclusion of this action.

9

CONFIDENTIAL

287-Bochner0000163

FILED: KINGS COUNTY CLERK 09/09/2021 01:26 PM INDEX NO. 522987/2021

NYSCEF DOC. NO. Case 1:20-cv-05301-RA   Document 113-1   Filed 10/28/22   Page 12 of 13 RECEIVED NYSCEF: 09/09/2021

 

    (e)  The costs and disbursements of this action, and such other relief as the Court deems just and proper.

Dated:  New York, New York
September 2, 2021

                  **THE KLEIN LAW GROUP CRE PLLC**

By:  <u>S/Efrem Z. Fischer</u>
Efrem Z. Fischer, Esq.
Attorneys for Plaintiff
275 Madison Avenue
33rd Floor
New York, New York 10016
(212) 661-9400

10

CONFIDENTIAL 287-Bochner0000164

# A2795

## VERIFICATION

STATE OF NEW YORK    )
                     )        ss.:
COUNTY OF KINGS      )

   The undersigned, being duly sworn, deposes and says that the deponent is the Chief Executive Officer of the Guardian Realty Management Inc., the property manager of the Plaintiff-Landlord herein, has read the annexed Complaint, and states that all the material allegations set forth in said Complaint are true and are within the personal knowledge of the deponent, except as to those matters alleged on information and belief, and as to those matters, deponent believes them to be true. The basis for deponent's knowledge, aside from first-hand knowledge, is deponent's review of the books and records maintained by Plaintiff-Landlord for the Premises.

                _____
                Chaim Simkowitz

Sworn to before me this
2 day of September, 2021

_____
Notary Public

Abraham Simkowitz
Notary Public, State of New York
No. 01SI4788227
Qualified in Kings County
Commission Expires Feb. 17, 2022

11

CONFIDENTIAL

287-Bochner0000165

# A2796

EXHIBIT B - ANNEXED TO THE REPLY DECLARATION OF
PAMELA A. KOPLIK
Plaintiffs' Responses and Objections to Defendants' First set of Requests
for the Production of Documents, Dated May 6, 2022
(pp. A2796-A2810)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Marcia Melendez, Jarican Realty Inc., 1025 Pacific LLC,  :
Ling Yang, Top East Realty LLC, Haight Trade LLC, Elias  :
Bochner, and 287 7th Avenue Realty LLC,                  :
                                                          :
                                      *Plaintiffs*,       :
                                                          :
                v.                                        :    Civ. No. 20-cv-5301(RA)
                                                          :
The City of New York, *a municipal entity*,              :
Bill de Blasio, *as Mayor of the City of New York*,      :
Louise Carroll, *Commissioner of New York City*          :
*Department of Housing Preservation &*                   :
*Development*, and Jonnel Doris, *Commissioner of*       :
*New York City Department of Small Business*             :
*Services*,                                               :
                                                          :
                                      *Defendants*.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF
## <u>REQUESTS FOR THE PRODUCTION OF DOCUMENTS</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rules 26.2
and 26.3 of this Court, Plaintiffs Elias Bochner ("Bochner") and 287 7th Avenue Realty LLC
(collectively the "Bochner Plaintiffs" or "Plaintiffs"), by and through their attorneys, Stroock &
Stroock & Lavan LLP, respond and object to Defendants' First Set of Requests for the
Production of Documents, dated April 6, 2022 (the "Requests"), as follows:

## <u>GENERAL OBJECTIONS</u>

1.      Plaintiffs object to the Requests to the extent that they seek information and the
production of documents that are protected from discovery by the attorney-client privilege, work
product protection, joint or common interest privilege, or any other applicable privilege,
protection, or immunity.  To the extent that Plaintiffs produce any information or documents
protected by an applicable privilege or protection, such production will be inadvertent, shall not

be deemed a waiver of any otherwise valid claim of privilege or protection, and any failure to assert a privilege or protection as to one document or communication shall not be deemed to constitute a waiver as to any other document or communication so protected.  Plaintiffs reserve the right to withdraw or recover such information to the extent that it is inadvertently produced.

2.      Plaintiffs object to the Requests to the extent that they seek information or documents that are confidential, sensitive or proprietary to Plaintiffs.  Plaintiffs will only produce such non-privileged, responsive information and documents subject to a mutually agreeable confidentiality order negotiated, or to be negotiated, between the parties or as may be imposed by the Court.

3.      Plaintiffs object to the Requests to the extent that they seek the production of documents subject to confidentiality agreements with third parties or which Plaintiffs are restricted from disclosing by law, contract, or order.

4.      Plaintiffs object to the Requests to the extent that they seek information or documents not in Plaintiffs' possession, custody, or control, or relating to the actions, activities, or operations of entities other than Plaintiffs.

5.      Plaintiffs object to the Requests to the extent that they are vague, ambiguous, overly broad, unduly burdensome, harassing, duplicative, and seek information beyond the reasonable scope of discovery or investigation proportional to the needs of this case.  Plaintiffs further object to the Requests on the grounds that the burden and expense of accessing and producing the requested documents outweigh their likely benefit in this action.

6.      Plaintiffs object to the Requests to the extent that they seek documents that are not relevant to a claim or defense in this case, or are not reasonably calculated to lead to the discovery of admissible evidence.

7.      Plaintiffs object to the Requests and Instructions to the extent that they are inconsistent with or purport to impose obligations broader in scope than those imposed by the Federal Rules of Civil Procedure, the rules of this Court, or any other applicable rule or law, and Plaintiffs expressly disclaim any obligations to provide any responses or information beyond that required by such rules or authority.

8.      Plaintiffs object to the Requests to the extent that they seek documents in the possession of, known to, or otherwise equally available to Defendants, on the grounds that such production would be unduly burdensome, cumulative, redundant and duplicative.

9.      Plaintiffs' objections to the Requests are not intended to be and shall not be deemed an admission or adoption of any factual or legal contention, assertion, assumption, characterization, or implication contained in any specific request.

10.      By responding to the Requests or providing documents in response thereto, Plaintiffs do not thereby concede the relevance, materiality, or admissibility of such response or documents.  Plaintiffs reserve all objections as to relevance, authenticity, materiality, or admissibility of any such documents or information.

11.      By agreeing to produce documents, Plaintiffs do not concede or represent that any such documents exist.  Plaintiffs will conduct a reasonable search of materials maintained within Plaintiffs' ordinary course of business and provide responsive, non-privileged information, if any.  Plaintiffs will make reasonable efforts to search for responsive information in the places reasonably likely to have such information, and Plaintiffs object to the Requests to the extent they purport to require a broader search.  Plaintiffs will search for readily accessible responsive electronic documents (including emails), if any, and object to the Requests as unduly

-3-

burdensome and oppressive to the extent that they seek to impose an obligation to restore emails or other data from non-readily accessible sources.

12.     Discovery is ongoing, and Plaintiffs reserve the right to supplement and/or amend any or all parts of Plaintiffs' objections and responses provided herein.

13.     All of the General Objections to Requests (referred to collectively herein as the "General Objections") apply to, and form a part of, the response to each specific request and are set forth in order to avoid duplication and repetition of restating them for each response.  The failure to specifically incorporate a General Objection in a response to any specific Request should not be construed as a waiver of any or all of the General Objections.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST FOR PRODUCTION NO. 1:

Produce all communications (and any documents memorializing such communications) between the Bochner Plaintiffs and Sunburger 1 LLC and between 177 West 26th Street Associates and Sunbuger 1 LLC concerning late or unpaid rent, rent arrears, or rent owed from June 9, 2006 to present.

### RESPONSE AND OBJECTION TO REQUEST NO. 1:

Plaintiffs object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents that are not relevant to any claim or defense in this case to the extent that it seeks documents and communications from June 9, 2006 to the present.  Plaintiffs further object to this Request on the grounds that it seeks information that is protected from discovery by the attorney-client privilege, work product protection, joint or common interest privilege, or any other applicable privilege, protection, or immunity.

Subject to the objections set forth here, and without waiving any of the General Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive

documents and communications from December 1, 2019 to the present, if any, located through a

reasonable investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 2:**

Produce all rent records and documents authored or received by the Bochner Plaintiffs or
by 177 West 26th Street Associates concerning payments received, outstanding balances
accrued, and security deposit retained or used, for the period of December 1, 2019 to the present
related to Sunburger 1, LLC's tenancy at the Premises.

**RESPONSE AND OBJECTION TO REQUEST NO. 2:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected

from discovery by the attorney-client privilege, work product protection, joint or common

interest privilege, or any other applicable privilege, protection, or immunity.  Plaintiffs further

object to this Request on the grounds that it is vague and ambiguous to the extent that it requests

documents concerning "outstanding balances accrued," "payments received," and "security

deposit retained or used."

Subject to the objections set forth here, and without waiving any of the General

Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive

documents, if any, located through a reasonable investigation and search of their records that

reflect rent payments.

**REQUEST FOR PRODUCTION NO. 3:**

Produce all documents authored or received by the Bochner Plaintiffs evidencing or
related to any agreements between the Bochner Plaintiffs and Sunburger 1, LLC and between
177 West 26th Street Associates and Sunburger 1 LLC concerning Sunburger 1, LLC's tenancy at
the Premises, including but not limited to agreements concerning rent, additional rent, vacatur or
amounts owed.

**RESPONSE AND OBJECTION TO REQUEST NO. 3:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected

from discovery by the attorney-client privilege, work product protection, joint or common

interest privilege, or any other applicable privilege, protection, or immunity.  Plaintiffs further

object to this Request on the grounds that it is overly broad, unduly burdensome, vague and

ambiguous to the extent that it does not specify a relevant time period.  Plaintiffs further object to

this Request on the grounds that it seeks the production of documents which are not relevant to

the claims and/or defenses set forth in this action, nor reasonably calculated to lead to the

discovery of admissible evidence in this matter.  Finally, Plaintiffs also object to this Request on

the grounds that it is vague and ambiguous as to the use of the phrases "agreements" and

"additional rent," as well as because this Request is not bound by any time period.

Subject to the objections set forth here, and without waiving any of the General

Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive

documents, if any, located through a reasonable investigation and search of their records.

## REQUEST FOR PRODUCTION NO. 4:

Produce all documents authored or received by the Bochner Plaintiffs concerning
Sunburger 1, LLC's 2019 default as asserted in paragraph 17 of Plaintiffs' Rule 56.1 Statement
[Dkt. 93].

## RESPONSE AND OBJECTION TO REQUEST NO. 4:

Plaintiffs object to this Request on the grounds that it seeks information that is protected

from discovery by the attorney-client privilege, work product protection, joint or common

interest privilege, or any other applicable privilege, protection, or immunity.

Subject to the objections set forth here, and without waiving any of the General

Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive

documents, if any, located through a reasonable investigation and search of their records.

## REQUEST FOR PRODUCTION NO. 5:

Produce all communications (and any documents memorializing such communications)
between the Bochner Plaintiffs and Sunburger 1, LLC related to Sunburger 1, LLC's 2019
alleged default.

**RESPONSE AND OBJECTION TO REQUEST NO. 5:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected from discovery by the attorney-client privilege, work product protection, joint or common interest privilege, or any other applicable privilege, protection, or immunity.

Subject to the objections set forth here, and without waiving the General Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive documents and communications, if any, located through a reasonable investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents authored or received by the Bochner Plaintiffs evidencing and/or related to the notice of intent to surrender the property provided to the Bochner Plaintiffs or to 177 West 26th Street Associates on March 20, 2020 as asserted in paragraph 17 of Plaintiffs' Rule 56.1 Statement [Dkt. 93].

**RESPONSE AND OBJECTION TO REQUEST NO. 6:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected from discovery by the attorney-client privilege, work product protection, joint or common interest privilege, or any other applicable privilege, protection, or immunity.

Subject to the objections set forth here, and without waiving any of the General Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive documents, if any, located through a reasonable investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 7:**

Produce all communications (and any documents memorializing such communications) related to the notice of intent to surrender the property provided to the Bochner Plaintiffs or to 177 West 26th Street Associates on March 20, 2020 as asserted in paragraph 17 of Plaintiffs' Rule 56.1 Statement [Dkt. 93].

**RESPONSE AND OBJECTION TO REQUEST NO. 7:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected from discovery by the attorney-client privilege, work product protection, joint or common

interest privilege, or any other applicable privilege, protection, or immunity.  Moreover,

Plaintiffs object to this Request to the extent that it is duplicative of and/or seeks documents

requested by Request No. 6.

Subject to the objections set forth here, and without waiving the General Objections,

Plaintiffs respond by stating that they will produce non-privileged, responsive documents and

communications, if any, located through a reasonable investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 8:**

Produce all documents authored or received by the Bochner Plaintiffs evidencing other
rental agreements relating to the Premises for the period of March 20, 2020 to the present.

**RESPONSE AND OBJECTION TO REQUEST NO. 8:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected

from discovery by the attorney-client privilege, work product protection, joint or common

interest privilege, or any other applicable privilege, protection, or immunity.  Plaintiffs further

object to this Request on the grounds that it seeks documents which are not relevant to the claims

and/or defenses set forth in this matter, particularly given the City's representation that they

sought this additional discovery for purposes of examining Plaintiffs' standing; nor does this

Request seek the production of documents reasonably calculated to lead to the discovery of

admissible evidence.  In addition, Plaintiffs object to this Request on the grounds that it is overly

broad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 9:**

Produce all documents authored or received by the Bochner Plaintiffs concerning the
Guarantor, including but not limited to all documents sent to or received from the Guarantor,
relating to the Premises for the period of December 1, 2019 to the present.

**RESPONSE AND OBJECTION TO REQUEST NO. 9:**

Plaintiffs object to this Request on the grounds that it is overly broad, unduly

burdensome, and seeks documents that are not relevant to any claim or defense in this case to the

extent that it seeks all documents concerning the Guarantor, relating to the Premises for the

period of December 1, 2019 to the present.  Plaintiffs further object to this Request on the

grounds that it seeks information that is protected from discovery by the attorney-client privilege,

work product protection, joint or common interest privilege, or any other applicable privilege,

protection, or immunity.

Subject to the objections set forth here, and without waiving any of the General

Objections, Plaintiffs respond by stating that they will produce non-privileged documents, if any,

authored or received by the Bochner Plaintiffs concerning the Good Guy Guarantee annexed to

the lease dated June 9, 2006 between 177 West 26th Street Associates and Sunburger 1 LLC (the

"Guarantee"), for the period of December 1, 2019 to the present, located through a reasonable

investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 10:**

Produce all communications (and any documents memorializing such communications)
concerning the Guarantor relating to the Premises for the period of December 1, 2019 to the
present.

**RESPONSE AND OBJECTION TO REQUEST NO. 10:**

Plaintiffs object to this Request on the grounds that it is overly broad, unduly

burdensome, and seeks documents that are not relevant to any claim or defense in this case to the

extent that it seeks all communications concerning the Guarantor, relating to the Premises for the

period of December 1, 2019 to the present.  Plaintiffs further object to this Request on the

grounds that it seeks information that is protected from discovery by the attorney-client privilege,

work product protection, joint or common interest privilege, or any other applicable privilege,

protection, or immunity.  Plaintiffs also object to this Request to the extent that it is duplicative

of Request No. 9.

## **REQUEST FOR PRODUCTION NO. 11:**

Produce all documents authored or received by the Bochner Plaintiffs concerning any investigation or inquiry into the financial health of the Guarantor, including but not limited to any and all credit inquiries.

## **RESPONSE AND OBJECTION TO REQUEST NO. 11:**

Plaintiffs object to this Request on the grounds that it is overly broad, unduly

burdensome, vague and ambiguous to the extent that it does not specify a relevant time period,

and is also vague as to the use of the phrase "any investigation or inquiry into the financial health

of the Guarantor," because it does not define in any way or provide any guidance as to the limits

of such phrase.  Plaintiffs further object to this Request on the grounds that it is not relevant to

any claim or defense in this case, is not proportional to the needs of the case, and is not

reasonably calculated to lead to the discovery of admissible evidence.  Finally, Plaintiffs object

to this Request on the grounds that it seeks information that is protected from discovery by the

attorney-client privilege, work product protection, joint or common interest privilege, or any

other applicable privilege, protection, or immunity.

## **REQUEST FOR PRODUCTION NO. 12:**

Produce all documents authored or received by the Bochner Plaintiffs relating to any and all court proceedings or actions commenced by the Bochner Plaintiffs, Sunburger 1, LLC, 177 West 26th Street Associates, or the Guarantor concerning the Premises for the period of December 1, 2019 to the present, including but not limited to all documents relating to any and all court proceedings or actions relating to the lease for the Premises.

## **RESPONSE AND OBJECTION TO REQUEST NO. 12:**

Plaintiffs object to this Request on the grounds that it seeks information that is protected

from discovery by the attorney-client privilege, work product protection, joint or common

interest privilege, or any other applicable privilege, protection, or immunity.  Plaintiffs further

object to this Request on the grounds that it is overly broad and unduly burdensome.  Finally,

Plaintiffs object to this Request on the grounds that it seeks documents that are not relevant to

any claim or defense in this case, is not proportional to the needs of the case, and is not

reasonably calculated to lead to the discovery of admissible evidence, particularly given the

City's representation that they sought this additional discovery for purposes of examining

Plaintiffs' standing.

**REQUEST FOR PRODUCTION NO. 13:**

Produce all documents authored or received by the Bochner Plaintiffs itemizing the total assets of 287 7th Avenue Realty LLC.

**RESPONSE AND OBJECTION TO REQUEST NO. 13:**

Plaintiffs object to this Request on the grounds that it seeks documents that are not

relevant to any claim or defense in this case, is not proportional to the needs of the case, and is

not reasonably calculated to lead to the discovery of admissible evidence, particularly given the

City's representation that they sought this additional discovery for purposes of examining

Plaintiffs' standing.  Plaintiffs further object to this Request on the grounds that it seeks

information that is protected from discovery by the attorney-client privilege, work product

protection, joint or common interest privilege, or any other applicable privilege, protection, or

immunity.

**REQUEST FOR PRODUCTION NO. 14:**

Produce all documents authored or received by the Bochner Plaintiffs establishing all shareholders and members of 287 7th Avenue Realty LLC and their percentage interest in the entity.

**RESPONSE AND OBJECTION TO REQUEST NO. 14:**

Plaintiffs object to this Request on the grounds that it seeks documents that are not

relevant to any claim or defense in this case, is not proportional to the needs of the case, and is

not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs further

object to this Request on the grounds that it seeks information that is protected from discovery by

the attorney-client privilege, work product protection, joint or common interest privilege, or any

other applicable privilege, protection, or immunity.

Subject to the objections set forth here, and without waiving the General Objections,

Plaintiffs respond by stating that they will produce non-privileged, responsive documents and

communications, if any, located through a reasonable investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 15:**

Produce all documents related to the Bochner Plaintiffs' 2019, 2020, 2021 and 2022 tax
returns, including but not limited to copies of the Bochner Plaintiffs' 2019, 2020, 2021 and 2022
tax returns.

**RESPONSE AND OBJECTION TO REQUEST NO. 15:**

Plaintiffs object to this Request on the grounds that it seeks documents that are not

relevant to any claim or defense in this case, is not proportional to the needs of the case, and is

not reasonably calculated to lead to the discovery of admissible evidence, particularly given the

City's representation that they sought this additional discovery for purposes of examining

Plaintiffs' standing.  Plaintiffs further object to this Request on the grounds that it is overly broad

and unduly burdensome and is vague and ambiguous as to the use of the phrase "related to the

Bochner Plaintiffs' 2019, 2020, 2021 and 2022 tax returns," which does not provide any

guidance or limitations on such phrase.  In addition, Plaintiffs further object to this Request on

the grounds that it seeks information that is protected from discovery by the attorney-client

privilege, work product protection, joint or common interest privilege, or any other applicable

privilege, protection, or immunity.

**REQUEST FOR PRODUCTION NO. 16:**

Produce all documents evidencing proof of payment of all taxes for the Premises for 2019, 2020, 2021 and 2022 as asserted in paragraph 18 of Plaintiffs' Rule 56.1 Statement [Dkt. 93].

**RESPONSE AND OBJECTION TO REQUEST NO. 16:**

Plaintiffs object to this Request on the grounds that it seeks documents that are not relevant to any claim or defense in this case, is not proportional to the needs of the case, and is not reasonably calculated to lead to the discovery of admissible evidence, particularly given the City's representation that they sought this additional discovery for purposes of examining the Plaintiffs' standing.

Subject to the objection set forth here, and without waiving any of the General Objections, Plaintiffs respond by stating that they will produce non-privileged, responsive documents, if any, located through a reasonable investigation and search of their records.

**REQUEST FOR PRODUCTION NO. 17:**

Produce all documents relating to loans or financial assistance used to cover taxes, expenses, or staffing for 287 7th Avenue Realty LLC from December 2019 to present.

**RESPONSE AND OBJECTION TO REQUEST NO. 17:**

Plaintiffs object to this Request on the grounds that it seeks documents that are not relevant to any claim or defense in this case, is not proportional to the needs of the case, and is not reasonably calculated to lead to the discovery of admissible evidence, particularly given the City's representation that they sought this additional discovery for purposes of examining the Plaintiffs' standing.  In addition, Plaintiffs further object to this Request on the grounds that it seeks information that is protected from discovery by the attorney-client privilege, work product protection, joint or common interest privilege, or any other applicable privilege, protection, or

immunity.  Plaintiffs also object to this Request on the grounds that it is vague and ambiguous as to the use of the phrase "financial assistance."

**REQUEST FOR PRODUCTION NO. 18:**

Produce all expert disclosures required pursuant to Federal Rule of Civil Procedure 26(a)(2).

**RESPONSE AND OBJECTION TO REQUEST NO. 18:**

Plaintiffs object to this Request on the grounds that it is premature and seeks to impose additional obligations that exceed, are inconsistent with, or differ from those permitted by the Federal Rules of Civil Procedure, the rules of this Court, or any other applicable rule or law.

Dated:   New York, New York
          May 6, 2022

                    STROOCK & STROOCK & LAVAN LLP

                    By: */s/ Claude G. Szyfer*
                    Claude G. Szyfer
                    David J. Kahne
                    Darya D. Anichkova
                    180 Maiden Lane
                    New York, NY 10038
                    (212) 806-5400
                    cszyfer@stroock.com
                    dkahne@stroock.com
                    danichkova@stroock.com

                    *Attorneys for Plaintiffs*

# A2811

ORDER, DATED NOVEMBER 30, 2022
(pp. A2811-A2812)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCIA MELENDEZ, *et al.*,

                Plaintiffs,

         v.

THE CITY OF NEW YORK, *et al.*,

                Defendants.

No. 20-CV-5301 (RA)

<u>ORDER</u>

RONNIE ABRAMS, United States District Judge:

Pending before the Court are Plaintiffs' motion for summary judgment and Defendants' cross motion for summary judgment. Oral argument on the motions has been scheduled for December 12, 2022 at 11:00 a.m. New arguments were raised, albeit concisely, by Defendants' brief, Plaintiffs' reply brief, and Defendant's reply brief, regarding purported jurisdictional defects with this action. The Court would benefit from more fulsome briefing on these issues.

Accordingly, no later than December 7, 2022, the parties are directed to file supplemental letters, specifically addressing:

(1) whether Plaintiffs Elias Bochner and 287 7th Avenue Realty LLC have established jurisdiction, including by demonstrating Article III standing;

(2) whether this action is ripe for judicial review;

(3) whether it would have been futile for Plaintiffs Bochner and 287 7th Avenue Realty LLC to have sought enforcement of the guarantee clause in their commercial rental contract.

SO ORDERED.

Dated:      November 30, 2022
              New York, New York

                                  Hon. Ronnie Abrams
                                  United States District Judge

# A2813

<u>TRANSCRIPT OF ORAL ARGUMENT, DATED DECEMBER 12, 2022</u>
(pp. A2813-A2860)

REPRODUCED FOLLOWING

# A2814

MCC6MELC                    ORAL ARGUMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARCIA MELENDEZ, *et al.*,

           Plaintiff,

        v.                            20 CV 5301(RA)

CITY OF NEW YORK, *et al.*,

           Defendants.

------------------------------x

                           New York, N.Y.
                           December 12, 2022
                           11:00 a.m.

Before:

               HON. RONNIE ABRAMS,

                           District Judge

                APPEARANCES

STROOCK & STROOCK & LAVAN LLP
    Attorneys for Plaintiffs
BY:  CLAUDE G. SZYFER
    DAVID J. KAHNE

NEW YORK CITY LAW DEPARTMENT
    Attorneys for Defendants
BY:  PAMELA A. KOPLIK
    SCALI RIGGS

# A2815

MCC6MELC                              ORAL ARGUMENT

1                    (Case called)

2                    DEPUTY CLERK:  Counsel, please state your name for the

3      record.

4                    MR. SZYFER:  Claude Szyfer on behalf of plaintiffs

5      from Stroock & Stroock & Lavan.

6                    MR. KAHNE:  David Khan, also from

7      Strook & Strook & Lavan.

8                    THE COURT:  Good morning.  I'm going to ask everyone,

9      including myself, to speak into the microphone.  It can be

10     difficult to hear in this courtroom.

11                   MS. KOPLIK:  Good morning.  Pamela Koplik on behalf of

12     the defendants.

13                   THE COURT:  Good morning.

14                   MS. RIGGS:  Good morning.  Scali Riggs also on behalf

15     of the defendants.

16                   THE COURT:  Good morning to you as well.

17                   We are here, of course, for oral argument on both

18     parties' cross-motion for summary judgment.

19                   In light of the fact that the circuit stated that the

20     city was entitled to an opportunity to develop the record with

21     respect to some of the points of concern identified in the

22     opinion, I thought it would make sense to start by hearing from

23     defense counsel and then hear from plaintiff and then have

24     rebuttal.  But if you want to propose something else to me, I'm

25     open to that as well.

MCC6MELC                              ORAL ARGUMENT

1              MR. SZYFER:  Your Honor, that's acceptable to us.

2              THE COURT:  All right.  Thanks.  And what I also want

3      to make clear is what I think would be most helpful for me is

4      that as we go through each of the circuit's expressed concerns,

5      that the parties point me to precisely where in the record it

6      is that I could find evidence supporting their arguments.  All

7      right?

8              So with that said, whenever you're ready.

9              MS. KOPLIK:  Thank you, your Honor.  Do you want me to

10     stand or should I remain seated?

11             THE COURT:  It's up to you.  You can either stay where

12     you are, or you can move to the podium.  Whatever is more

13     comfortable for you.

14             MS. KOPLIK:  Thank you.  I prefer to stay seated.

15             Your Honor, did you want us to launch directly into

16     the five factors outlined by the Second Circuit, or did you

17     want to hear about our jurisdictional arguments?

18             THE COURT:  I mean, why don't we start briefly with

19     jurisdiction, and then we'll go to the five factors.

20             MS. KOPLIK:  Thank you.  My colleague Scali Riggs is

21     going to speak on the jurisdiction.

22             THE COURT:  Thank you.

23             MS. RIGGS:  Thank you, your Honor.  And I'll be

24     somewhat brief.  The plaintiffs here have not established

25     standing.  They have not asserted an injury in fact that is

1    traceable to the city that is redressable by this Court.

2           The plaintiffs' purported injury is that the guaranty

3    law prevents them from enforcing their guaranty; yet, this

4    claim is not supported by anything in the record.  It's purely

5    speculative.

6           The deposition testimony revealed that the plaintiffs

7    have not actually attempted to enforce their guaranty, and so

8    they have not been denied any recovery because of the guaranty

9    law.

10          THE COURT:  One question I did want to ask you is how

11   *California v. Texas* changes the standing inquiry and whether

12   there's any dispute that the guaranty law prevents plaintiffs

13   like Mr. Bochner and his business from invoking the guaranty

14   law.

15          MS. RIGGS:  So I don't think there's a dispute as to

16   whether or not plaintiffs are prevented by the law.  There's no

17   enforcement mechanism in the law that says, you know, if the

18   plaintiffs seek to enforce, the city is going to come out and

19   penalize them in some way.  And *California v. Texas* is relevant

20   on this point because, similar to that case, California dealt

21   with the Affordable Care Act.  And specifically in the

22   Affordable Care Act, it dealt with a mandate that people obtain

23   certain minimum amounts of insurance, and the penalty for not

24   obtaining that insurance was a tax of $0.  And the Court found

25   that, although the individual plaintiffs had in fact obtained

# A2818

MCC6MELC                          ORAL ARGUMENT

1    insurance, relying on this mandate, this was a traceability

2    problem.

3             There was no injury that could be linked to the

4    mandate, and it's similar here.  The plaintiffs have chosen not

5    to enforce their guaranty.  The city hasn't prevented them from

6    doing so.  And should they chose to enforce, which they can,

7    there's no repercussion for doing that.  So there's no link

8    between the city and the plaintiffs' claimed injury.

9             THE COURT:  All right.  Thanks.  Do you want to

10   respond right now on jurisdiction?

11            MR. KAHNE:  Absolutely.  Thank you, your Honor.

12            Just three quick points I'd make on jurisdiction.

13            The first is that there's nothing hypothetical or

14   speculative about this case.  The moment the guaranty law

15   became effective, it rendered the plaintiff's good guy guaranty

16   in his commercial lease completely unenforceable.  And that is

17   what the Second Circuit said, that it forever extinguished

18   contractual rights.  There's actual concrete injury to

19   plaintiffs that's directly traceable to the defendants who

20   passed the guaranty law.

21            The city says in its letter brief that there's this

22   tower of hypotheticals.  There's nothing iffy or hypothetical

23   about the language of the guaranty law.  The guaranty law

24   expressly says that the good guy guaranty shall not be

25   enforceable against natural person guarantors for defaults

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# A2819

1    occurring during a 16-month period.  Because of the guaranty

2    law -- I know defendants said we haven't suffered injury, but

3    we cannot enforce our guaranty.

4           The issue of futility here is a critical one here,

5    your Honor, because if you look at the cases that the city

6    cites in its letter brief, in each one of those cases, and

7    it's -- they said there are a myriad of outcomes that could

8    have happened here had we tried to enforce the guaranty.  In

9    each and every one of those cases, the guaranty law was not

10   applicable to the guaranty.

11          Here, there is no dispute that the guaranty law is

12   applicable to this guaranty.  And not only would it have been

13   futile for us to try to go into court to try to collect on this

14   guaranty, frankly, it might have been frivolous.  And there are

15   certain cases -- there is a case, *27 Morton*, that we cited in

16   which there were counterclaims for harassment and counterclaims

17   for civil damages.  So the idea that there was nothing stopping

18   us from going into court to try to enforce a guaranty when the

19   law expressly says it's not enforceable is just not true.

20          THE COURT:  Let me ask, why wouldn't the appropriate

21   avenue here be to sue the guarantor, to recover unpaid rent,

22   and if the guarantor invokes the guaranty laws in defense, then

23   to argue that the law is unconstitutional?

24          MR. KAHNE:  So in effect, your Honor, the guarantor

25   did that.  I mean, we went to the tenant and tried to collect

MCC6MELC                        ORAL ARGUMENT

1    rent.  We got an e-mail back, and there's an e-mail attached as

2    an exhibit to our letter, that specifically invoked the

3    guaranty law.  So the tenant -- and it was invoked -- I -- it's

4    the guaranty law.  Presumably, it's on behalf of the guaranty.

5    The tenant was our contact here.  And so the tenant said we're

6    invoking the guaranty law.

7         So then to sue in state -- I mean, essentially here

8    we're asking for a declaration that the law is unconstitutional

9    so that we can take your Honor's decision and then try to

10   enforce -- it's just a matter of order of operations here.

11        So I think, you know, we did try to collect.  I think

12   it's sort of a red herring that we didn't go to the guarantor

13   versus the tenant because we did actually ask for -- they

14   invoked the guaranty law.

15        And the other thing I just want to say is that this is

16   a facial challenge.  Right?  I mean, we challenged this law

17   when it was passed, and so there's nothing unripe about a

18   facial change.  Facial challenges are automatically ripe the

19   minute that they're challenged.  And we're challenging the

20   unconstitutionality of the law here.

21        And so the issues in this litigation about whether it

22   was reasonable and appropriate are not the same issues that

23   would be in a collection action.  And so I don't think -- and

24   actually, I wanted to direct your Honor's attention.  There's a

25   case -- well, two cases.  One is one that was cited in your

1    Honor's initial decision, which was *Elmsford Apartment*
2    *Association v. Cuomo,* which is Judge McMahon's decision
3    upholding the constitutionality of the eviction moratorium and
4    the security deposit.  And that was a facial challenge too.
5    And I think it's analogous.  Judge McMahon didn't make the
6    plaintiffs in that case attempt to evict the tenants.  She
7    didn't make the plaintiffs in that case try to recover the
8    security deposits because that's a facial attack on the
9    constitutionality of the law.
10          One more point on futility, which is there's a case
11   that's cited in the defendant's letter brief.  It's called
12   *Williams v. Lambert*, 46 F.3d 12, 74.  And it's a case involving
13   a family law -- Family Law Statute 516.  And it was challenged
14   on equal protection grounds.  And it was challenged because
15   illegitimate -- orders of protection for illegitimate children
16   cannot be modified where other children can, but the protection
17   agreement can be modified.  And, there, the defendants, just
18   like the defendants here, said you have to try to modify the
19   agreement first before you can challenge its
20   unconstitutionality.  And the Court -- the Second Circuit there
21   said plaintiff could still file a petition in state court for a
22   modification of her agreement.  Such a gesture, however, would
23   be a futile one, as her case would be dismissed summarily under
24   the clear language of Section 515.
25          So I think that's exactly what the case is here.  We

1    could have filed a lawsuit for collection, but that lawsuit

2    would have been dismissed summarily under the clear language of

3    the law; and therefore, it was a futile gesture.

4           And just one other point.

5           THE COURT:  Sure.

6           MR. KAHNE:  The e-mail that I was referring to where

7    we sought collection debts, that's Szyfer Declaration

8    Exhibit 1, and the Bates is Bochner 0000119.

9           THE COURT:  Thanks.  Just one more question.  Since

10   the motion to dismiss, defendants have presented deposition

11   testimony suggesting that your clients were able to secure

12   funding via the SBA and other avenues.  Why doesn't that effect

13   whether there's been concrete injury here?

14          MR. KAHNE:  That's true, your Honor.  Our position is

15   that it's a loan.  Right?  It's an SBA loan.  It's $150,000

16   that Bochner and his entity had to take out and has not been

17   given back.  So he's now injured.  He now has to pay back

18   $150,000, whereas he would have had $116,000 in rent payment.

19   He had to take this money out and has to pay it back.  I don't

20   think a loan in any way makes him whole.  He has to pay

21   interest on that loan too.  It's even more.  And they're still

22   out of rent, the $110,000.

23          THE COURT:  Thank you very much.  Okay.  Do you want

24   to --

25          MS. KOPLIK:  May we respond to some?

MCC6MELC                              ORAL ARGUMENT

1          THE COURT:  Sure.  Go ahead.

2          MS. RIGGS:  I just want to respond to a few of the

3     factual points made surrounding whether or not there was a

4     communication between the plaintiffs and their guarantor.  You

5     know, although this e-mail conversation is being construed as

6     the tenant speaking on behalf of the guarantor in deposition

7     testimony, the plaintiffs said that they were unclear of the

8     relationship between the tenant and the guarantor.  So, you

9     know, I'm not sure that that's a leap that is supported by the

10    evidence that's in the record.

11         And in addition to that, that e-mail is arguably

12    hearsay.  The tenant is not here.  To the extent the tenant is

13    saying we're invoking the guaranty law, and that's being, you

14    know, submitted to the Court for the truth of that statement,

15    it should be excluded.

16         And I understand that plaintiffs may be making some

17    compelling arguments about the costliness of litigation, but

18    plaintiffs will have to litigate anyway eventually.  They

19    haven't even contacted the guarantor.  The guarantor might

20    settle.  The guarantor may not be alive and well on this earth.

21    We hope he is.  This is just so far down the road, there are

22    just a plethora of things that could happen.  And there's not

23    anything in the record that actually supports the statement

24    that going after the guarantor is futile.

25         THE COURT:  Okay.  Thank you very much.  All right.

MCC6MELC                              ORAL ARGUMENT

1     Why don't we just move to the merits?

2            What I want to start by doing is just making sure that

3     we're all working within the same framework.  And so let me

4     start by asking this:  Am I right in reading the circuit's

5     decision that the only issue left to decide is the third prong

6     of the contract's clause analysis, that is whether the guaranty

7     law was a reasonable and appropriate means of achieving the

8     city's purpose of mitigating the economic crisis during the

9     pandemic?  Is that a fair characterization?

10           MR. SZYFER:  Your Honor, on behalf of plaintiffs,

11    that's the way we read it.  And we don't think discovery has

12    raised any issue as to the substantial impairment prong.  While

13    we do dispute the legitimate public purpose for purposes of the

14    argument, we're willing to focus on the reasonable and

15    necessary prong.

16           THE COURT:  Thank you.  And from defendant's

17    perspective?

18           MS. KOPLIK:  From defendant's perspective, the

19    Second Circuit was looking at this on a motion to dismiss, and

20    they basically said that based upon the record before them,

21    there seemed to be a substantial impairment.  But we focused

22    some in our brief on the fact that this is such a speculative

23    issue about whether there could have been recovery from the

24    guarantor, and blending into some of our arguments on

25    jurisdiction, it seems to us that there is room in some of the

1    language of the Second Circuit decision to take issue with the

2    fact of whether or not there has been a substantial impairment

3    here.

4              THE COURT:  All right.  So with that, why don't you go

5    ahead, whenever you're ready.

6              MS. KOPLIK:  Okay.  So, your Honor, we believe that

7    the guaranty law was reasonable and necessary to achieve its

8    substantial public purpose.  And even in light of the five

9    factors identified by the Second Circuit, the guaranty law is

10   not unconstitutional.  The extensive legislative record for the

11   extension of the guaranty law was not before the

12   Second Circuit.  And while numerous places, plaintiff's

13   briefing alludes to, it's the same record, it's the same

14   record, it's the same record.  We submitted the extensive

15   hearings and legislative record and testimony from individuals

16   and the large institutional organizations that support them,

17   substantiating the urgent need for the guaranty law.

18             Moving on --

19             THE COURT:  Let me ask you, sorry, just about the

20   record.

21             MS. KOPLIK:  Yes.

22             THE COURT:  And I understand both parties are moving

23   for summary judgment, of course, but from your perspective, are

24   there any facts in dispute such that a bench trial would be

25   preferable to my deciding this on summary judgment, or I

1    essentially have everything before me that I really could have

2    and need?

3            MS. KOPLIK:  Your Honor, we believe that you have

4    everything before you to rule on our motion for summary

5    judgment.  We believe that our jurisdictional defect arguments

6    are strong.  We believe this action is not ripe.  We believe

7    that plaintiffs should have pursued relief.  We believe that

8    there are myriad of supreme -- of state court cases that rule

9    in determining that -- not just as plaintiff said, that the

10   guaranty law is inapplicable, but also that the defendant was

11   not raised by the guarantor.  And we believe that the

12   Second Circuit factors identified factors of concern, but those

13   factors of concern do not outweigh the strong need for this

14   legislation.

15           THE COURT:  Do you want to go through the five

16   concerns one by one?

17           MS. KOPLIK:  Yes, your Honor.

18           THE COURT:  All right.

19           MS. KOPLIK:  So the first factor the Second Circuit

20   identified is they said that the law was not temporary or

21   limited.  When viewed in the context of a multiyear commercial

22   lease, the guaranty is limited to a 16-month period.  The

23   plaintiff's lease here was initially for a seven-year term.

24           THE COURT:  But it is permanent; you would agree it is

25   permanent?

1            MS. KOPLIK:  For that 16 --

2            THE COURT:  For the 16 months.

3            MS. KOPLIK:  Yes.

4            THE COURT:  Okay.

5            MS. KOPLIK:  But that permanence for the 16 months

6    tracks the law's important public purposes, absent the relief

7    covering the period of forced business closures.  The prospect

8    of personal crippling liability would impact individual -- not

9    just the individual guarantors, but would have a substantial

10   impact on the city's economy.

11           Speaker Corey Johnson testified that small businesses

12   employ 26 percent of New Yorkers, and small businesses are the

13   types of businesses that such personal guarantors exist.  Large

14   businesses are not of the type that would have personal

15   guaranties.  If they close down, hundreds of thousand of

16   workers could permanently lose their jobs, and the city could

17   lose out on billions of dollars in sales tax, property takes,

18   income tracks, revenue.  The 16-month period was intended to

19   stop an economic disaster.

20           On reply, plaintiffs allege that the guaranty law

21   effectuates a complete and permanent rent cancellation.

22   However, that ignores the other available avenues of recovery

23   available to plaintiffs.  They give short shrift to the

24   available remedies.

25           THE COURT:  Let's talk about that and where that was

# A2828

1    in the record at the time the law was enacted.

2            MS. KOPLIK:  Okay.  So let's bring up the -- if your

3    Honor --

4            THE COURT:  You can continue on.

5            MS. KOPLIK:  I can continue on 56.1.  I'm sorry that

6    we don't have our fingertips on the exact locations of the

7    record.

8            Okay.  Defendant's 56.1 statement.

9            THE COURT:  Yeah.

10           MS. KOPLIK:  Paragraph 21 has Corey Johnson's

11   testimony in part regarding the urgent need and the small

12   business.

13           THE COURT:  Sorry.  Your 56.1 at what paragraph?

14           MS. KOPLIK:  21, your Honor.

15           THE COURT:  Tell me exactly how that's going to

16   provide alternative remedies for guarantors.

17           MS. KOPLIK:  Well, the alternative remedies for

18   guarantors?  No, I'm saying that landlords --

19           THE COURT:  For landlords.  I misspoke.

20           MS. KOPLIK:  That's okay.  I was confused.  Okay.  So

21   under commercial leases, there -- they can go after the

22   tenants, they can charge late payment fees, they can apply

23   security deposit funds, and in this case, here, $57,000 of

24   security was --

25           THE COURT:  Where does it say that here?

MCC6MELC                         ORAL ARGUMENT

1           MS. KOPLIK:  Okay, so that, may be under Bochner.

2           THE COURT:  This is obviously about how it's hurting

3    small businesses, right?

4           MS. KOPLIK:  Your Honor, yes, so the -- our 56.1 at

5    Paragraph 101.

6           THE COURT:  Okay.

7           MS. KOPLIK:  Plaintiff 7th Avenue used Sun Burger

8    security deposit in the amount of $57,000.  So there are other

9    available remedies for the landlord.  They -- and they did not

10   here, you know, even attempt in any substantial way to go after

11   their tenant or guarantor for the funds at issue.  So to say

12   that it effectuates a complete and permanent rent cancellation

13   is not true.  It's not a complete rent cancellation.  It's an

14   attempt, and this weaves into one of the other factors, an

15   attempt to balance the burden, the economic burden.  But --

16          THE COURT:  Is it balancing it or just shifting it?

17          MS. KOPLIK:  It's not shifting it.  It's balancing it.

18          THE COURT:  Why not?

19          MS. KOPLIK:  Because there are other remedies, there

20   are --

21          THE COURT:  Show me where the other remedies are

22   addressed in the record.

23          MS. KOPLIK:  I'm sorry, your Honor, the lease itself

24   would speak to that.  That, you know, you can recover rent from

25   your tenants.  You can charge late payment fees.  You can apply

MCC6MELC                          ORAL ARGUMENT

1    security deposit funds.  The lease for the property at issue.

2              THE COURT:  Was the city looking at commercial leases

3    when it passed the law?

4              MS. KOPLIK:  Yes, your Honor.

5              THE COURT:  And --

6              MS. KOPLIK:  And I think perhaps the findings -- the

7    findings from the two extension bills, the declaration of

8    intent and findings.

9              They were looking at the types of businesses that

10   would have economic hardships, and Paragraph 5 of local law 98

11   of 2020, which is the first extension, says while buildings may

12   be willing to weather the economic hardships imposed upon them

13   by governmental measures to combat COVID-19 by either staying

14   open or permanently closing and later reopening, individual

15   owners and other natural persons who personally guaranty face a

16   more substantial risk than losing revenue and profit.  They

17   lose -- they risk losing their personal assets, including their

18   possessions and even their homes, transforming a business loss

19   into a devastating personal loss.

20             THE COURT:  But why could that not be true for

21   landlords as well?  And what is the evidence in comparing

22   landlords to guarantors in that respect?

23             MS. KOPLIK:  The -- there is testimony in the record,

24   your Honor, that landlords are in a better position to

25   negotiate, to share the economic burden here.  And part of the

MCC6MELC                          ORAL ARGUMENT

1    intent of the --

2             THE COURT:  Sorry.  Show me page cites.  I mean,

3    that's what this is about.  The circuit said, you have this

4    opportunity to -- let me get out their exact language.  The

5    opportunity, as I said earlier, to develop the record with

6    respect to some of the points of concern that the circuit

7    clearly had, right?  So I'm just asking you to point me exactly

8    to where in the record your view is supported.

9             MS. KOPLIK:  And we did that in our 56.1, your Honor.

10   I'm sorry that I don't have my fingertips exactly on that.

11            THE COURT:  Well, let me ask it a different way.

12            MS. KOPLIK:  But we were on just the first factor.

13   That was not temporary or limited.  And then the factors weave

14   into each other, so I --

15            THE COURT:  Right.

16            MS. KOPLIK:  So I steamed ahead into balancing of the

17   economic burden.  But I --

18            THE COURT:  We can skip ahead.  It's fine.  I mean,

19   I'll just ask it a different way.

20            So the circuit said, and this is moving to the second

21   concern, right, so beyond the first one, that the enactment of

22   the guaranty law was based on three assumptions:  One that

23   shuttered small businesses are usually owned by the individuals

24   guarantying their leases.  Two, that these owner guarantors

25   would be financially ruined if required to pay their businesses

MCC6MELC                        ORAL ARGUMENT

1   rent arrears.  And three, that financially ruined business --

2   excuse me, financially ruined owners would be unlikely to

3   reopen shuttered businesses.

4          So where in the record does it support each of those

5   three assumptions?

6          MS. KOPLIK:  The record before the counsel included

7   testimony, voluminous testimony in support of the extensions

8   and ample evidence that businesses wanted to remain open.  And

9   I think that if I could go to our memorandum of law, one

10  second, your Honor.

11         THE COURT:  Sure.

12         MS. KOPLIK:  Okay.

13         THE COURT:  And maybe it's more helpful if we take one

14  at a time, if we take one assumption at a time.  So one, A,

15  that the shuttered small businesses are usually owned by

16  individuals guarantying their leases.  So that's one of the

17  assumptions.  Where is there evidence for that in the record?

18         MS. KOPLIK:  Okay.  So there is -- I'm sorry.  So we

19  cited in our memorandum of law that the assumptions identified

20  by the majority was based upon the legislative record, and we

21  cited to our 56.1 statement at Paragraphs 32 through 34, and

22  the Koplik declaration, which is my declaration, Exhibit E1 at

23  Page 13 and Page 106 to 108.

24         MR. SZYFER:  Can you repeat the last one?

25         MS. KOPLIK:  Sure.  The Koplik declaration, Exhibit E1

MCC6MELC                          ORAL ARGUMENT

1    at Page 106 to 108.

2           And we quoted Gabriel Stulman, the CEO and founder of

3    Happy Cooking Hospitality, who said:  Emotionally and

4    financially, I'm preparing for this possibility of going

5    bankrupt and belly up.  I'm concerned that my landlords, in

6    addition to them keeping my security deposits, are entitled and

7    likely will sue me personally for my obligations under various

8    leases.

9           I mean, there are --

10          THE COURT:  Where does it say that most businesses are

11   being guarantied by individual owners as opposed to one?

12          MS. RIGGS:  Your Honor, that was one example of

13   numerous accounts that counsel heard.

14          THE COURT:  Where are the other ones?

15          MS. RIGGS:  They are --

16          MS. KOPLIK:  They are included in the record, your

17   Honor.

18          THE COURT:  I know.  But this is exactly what the

19   circuit asked us to do, right?  They gave you this opportunity

20   to develop this record, and I'm asking you to now just point me

21   to exactly where in the record it supports your position.

22          MS. KOPLIK:  Well, there are certainly many places in

23   our 56.1, where we talk about the -- how testimony that owner

24   guarantors would be financially ruined if required to pay their

25   rent arrears, and, you know, I mean, and institutions that work

MCC6MELC                              ORAL ARGUMENT

1    with many, many people.  On Paragraph 44 of our 56.1 statement,
2    it's testimony from city counsel member Rivera, the sponsor of
3    the bill, who said, I have heard from countless small business
4    owners these past few weeks now, worried about going belly up,
5    about the very real possibility that their stores may have to
6    change or even never return after this pandemic ends.  So why
7    my bill will not be able to bring back any business that we
8    lose, it can ensure that the owners who poured years and dreams
9    into a store do not have to face losing their personal life
10   savings and assets.  And I'm paraphrasing a bit, so as not to
11   read it word by word.

12        I think that the support for these assumptions,
13   specifically for the financial ruin, I don't think that
14   plaintiffs take issue with the notion that small businesses are
15   usually owned by the individuals guarantying their leases.
16   Maybe they do.  Here, that's not the case.  Here, they don't
17   even know who their guarantor is.  But, you know, I mean, I can
18   keep going through the 56.1 if your Honor wishes and find other
19   examples of testimony before the counsel that shows that the
20   potential financial ruin to own --

21        THE COURT:  It's not just the potential financial
22   ruin, right?  I mean, that's part of it.  But it's also that
23   the shuttered small businesses are usually owned by individuals
24   guarantying their leases.  I mean, I understand your position
25   is that plaintiff isn't disputing that.  Is plaintiff disputing

MCC6MELC                         ORAL ARGUMENT

1    that, that there was evidence of that?

2         MR. SZYFER:  There was evidence of that, your Honor,

3    but, again, our situation is one where, you know, exactly, we

4    did not have a guarantor who owned the business, and we know

5    who the guarantor is.  We obviously have the guaranty, and the

6    guarantor was not the owner of the business.  It was a third

7    party.  And that's precisely part of the reasonableness problem

8    here, is that the city counsel simply bludgeoned all personal

9    guaranties, not just those where the owner of the business also

10   happened to be the guarantor, which obviously would have been

11   another means of reasonableness for the city to have passed a

12   more reasonable law.

13        THE COURT:  Okay.  All right.  Why don't we maybe

14   shift to the standard of review that the circuit has asked me

15   to apply.  Is it rational basis plus of some form?  I mean, how

16   much evidence did the city need before it adopted the law?

17   What do you think from your reading of the circuit's opinion?

18        MS. KOPLIK:  You're asking?

19        THE COURT:  I'm asking you that question.

20        MS. KOPLIK:  Okay.  So the -- our appeals division

21   filed an en banc petition to review the Second Circuit opinion.

22   And that en banc petition would have a fuller fleshed-out

23   analysis of what the city feels the standard of review is.  But

24   since that was denied, and this is what we're working with, it

25   seems to us that they were -- the standard of review here is,

1    that has stood, is something more than rational basis.  That

2    they are asking us -- the city to look -- they are analyzing

3    this case, scrutinizing it more, and specifically eyeing five

4    factors that are of concern.

5          However, those five factors were on a record prior to

6    discovery.  And those five factors did not take into account --

7    it took all -- when they were analyzing the case, it took --

8    they took all the allegations as stated in the complaint as

9    true, as you must, on a motion to dismiss.  And now upon

10   discovery and upon seeing that there really has not been a

11   substantial impairment here, there has not been injury, in

12   fact, because plaintiffs have not attempted to recover from

13   their guarantor.  They have not communicated with their

14   guarantor at all.  It seems to us that even, you know, aside

15   from the five factors and even based on the five factors, it's

16   the guaranty law still passes Constitutional muster.  I mean, I

17   do have more to say regarding the other five factors.

18         THE COURT:  Okay.  So go ahead.  We were talking about

19   number two.  I'm happy to go to number three, which is

20   allocating the guaranty law's economic burden on landlords.

21         MS. KOPLIK:  I have more to say about the second

22   factor --

23         THE COURT:  Okay, go ahead.

24         MS. KOPLIK:  Which is the lack of reopening

25   requirements.

1          THE COURT:  Sure, please.

2          MS. KOPLIK:  So, you know, we were just focusing on

3     the fact that there is testimony in the record that businesses

4     wanted to remain open or reopen.  But in addition to that, it

5     was reasonable for the counsel to conclude that a reopening

6     condition was not necessary.  Moreover, the guaranty law is not

7     just about reopening but has a broader public purpose.  It was

8     to prevent mass closures, layoffs, and personal bankruptcies of

9     the people involved.  Mass personal liability would have been

10    an economic disaster.

11         So in the guaranty law's declaration of intent and

12    findings in the two extensions, it would be far worse if

13    businesses were able to temporarily close and return or failing

14    to reopen, close gradually and not all at once.  So while --

15    while the counsel, it was reasonable for them to conclude that

16    the reopening was not a requirement.  And none of these five

17    factors did the Second Circuit hold are required.  They are

18    just factors of concern to be evaluated.

19         Plaintiffs attempt to minimize the record testimony as

20    anecdotal, but the counsel drafted -- but the fact that the

21    counsel drafted the guaranty law without a reopening condition

22    does not mean that such a condition was necessary for the law

23    to survive Constitutional scrutiny.

24         Additionally, other than reopening, the guaranty law

25    was to encourage negotiation, and here, rather than negotiate,

1    plaintiffs failed to commence any action against their tenant

2    or their guarantor and chose to do nothing.

3            The third factor of concern to the Second Circuit was

4    a statement that the economic burden was born solely by

5    commercial landlords.  But all cases involving contract clause

6    claims place an unequal burden on the parties whose contract

7    rights are affected.  Here, it was reasonable for the counsel

8    to conclude that unlike personal guarantors, commercial

9    landlords are in a far better position to bear the economic

10   burden.

11           THE COURT:  Where is that in the record?

12           MS. KOPLIK:  In the declaration of intent and

13   findings, it's of both extensions.  It states that the personal

14   guarantors have a different and more substantial risk than

15   losing revenue and profit.  They risk losing their personal

16   assets, their possessions, and even their homes.  The

17   commercial landlords are not in that position.

18           THE COURT:  Where is that, that the commercial

19   landlords are not in that position?

20           MS. KOPLIK:  The declaration of legislative intent and

21   findings are in both local laws, which are our 56.1 statement

22   at Paragraph 73, points to local law 98 of 2020, and quotes it.

23   It's Exhibit Z to the Koplik declaration at Page 3.  And then

24   the second extension --

25           THE COURT:  Hold on.  Let's look at that.  I mean, so

MCC6MELC                              ORAL ARGUMENT

1   this is basically just the declaration of intent?

2        MS. KOPLIK:  Yes.

3        THE COURT:  It's -- is there -- can you point me to

4   where in the record there is support for this?

5        MS. KOPLIK:  That -- that individual guarantors risk

6   losing their personal assets and their homes, is that what --

7        THE COURT:  That individual owners and other natural

8   persons who personally guaranty the financial obligations of

9   these businesses face a different and more substantial risk

10   than losing revenue and profit, and then it goes on.

11        MS. KOPLIK:  Okay.  So...

12        THE COURT:  And then again, anything that compares

13   that to landlords would be helpful.  Right?

14        MS. KOPLIK:  There's the committee on small business

15   reports.  There's the -- there's individual testimony of --

16        THE COURT:  Just give me page cites, paragraph cites.

17   Again, that's what we need do today, in my view.

18        MS. KOPLIK:  Okay.  So our 56.1 statement,

19   Paragraph 56, includes testimony from Andrew Rigie on behalf of

20   New York City Hospitality Alliance.

21        That says -- I mean, you -- you look at the

22   25,000-plus eating and drinking establishments prepandemic, the

23   vast majority of them are small business owners, meaning that

24   there is a likelihood that they do have one of these personal

25   liability guaranties in their leases.  I expect the number is

MCC6MELC                        ORAL ARGUMENT

1    in the thousands.  I've heard around the clock, and I've been

2    continually asked.  This is getting extended, right?  This is

3    getting extended.  So, you know, that's the best answer I can

4    give you.

5            Then, Karen Duresky of Paragraph 57 of our 56.1,

6    testified on behalf of an organization called Equitable

7    Economic Development and Association for Neighborhood and

8    Housing Development, we supported local law 55 when it was

9    first introduced, and we certainly believe that it should be

10   extended through March 2020.  This is during the first

11   extension period.

12           Of course, some of the businesses have closed, have

13   been able to reopen in limited capacity.  But the public health

14   requirements -- I'm sorry, and so the challenges to small

15   businesses are really numerous.  And they have been touched on

16   very eloquently in this hearing.  So to ensure some protection

17   for individuals who are running these businesses and ensure

18   that their livelihoods are not ruined, along with a potential

19   risk to their business --

20           THE COURT:  Just going back to how the concern was

21   articulated by the circuit.  It was about appropriately

22   justifying allocating the guaranty's law economic burden on

23   landlords.

24           MS. KOPLIK:  And it's not just on landlords because

25   the intent of the guaranty law was to effectuate a negotiation

1    and a renegotiation of leases.  So that the burden was shared

2    by landlords and guarantors for this brief period.

3           The circuit also said that the economic burden can't

4    be looked at in isolation.  And the counsel did not limit other

5    remedies to enforce the tenant's obligations.  It also later

6    passed legislation to provide tax relief to certain property

7    owners.  And city agencies and SBS, in particular, helped

8    businesses including landlords in other ways with lease

9    negotiations, with financing --

10          THE COURT:  Is that in the record?  Is that -- is the

11   effect on landlords and the benefit from these other, you know,

12   provisions in the record when this law was enacted or --

13          MS. KOPLIK:  Yes.  The Commissioner of SBS testified

14   about the other ways that --

15          THE COURT:  This also goes to the --

16          MS. KOPLIK:  So, okay.  So the counsel member Rivera

17   at the September 14, 2020, hearing of local law 98 of 2020

18   talked about the negotiation and renegotiation being a purpose.

19   We also cited to the Kalter declaration, which I wish I knew

20   what docket number that was.  I don't have a printout.  The

21   September 22nd, 2020, Kalter declaration at Paragraphs 9

22   through 14.  And he is the executive director of Launch

23   Services of New York City Department of Small Business

24   Services.

25          THE COURT:  And this all went to allocating the

MCC6MELC                         ORAL ARGUMENT

1    economic burden on landlords, specifically, and the regulatory

2    framework that would assist landlords?

3        MS. KOPLIK:  This spoke to how the -- one of the

4    purposes of the guaranty law was to effectuate -- to urge

5    negotiation between landlords and tenants and their guarantors

6    in order to share the economic burden.  And the testimony from

7    SBS that talked about the other types of -- that the other

8    types separate from legislative initiatives that help small

9    businesses, that testimony is -- is from an SBS report entitled

10   Supporting New York City Small Business Recovery and Growth,

11   which we -- at -- which we gave a link cite at Paragraph --

12   wait a minute.  I'm sorry, one second.  I lost my place.

13        Yes, we cited to this report about -- about -- we

14   cited to this report from 2022 from SBS report entitled

15   Supporting New York City Small Business Recovery and Growth.

16   But the commissioner of SBS did testify, and spoke about a

17   number of these issues.

18        THE COURT:  All right.  So why don't we go to the

19   fourth and fifth factors.

20        MS. KOPLIK:  Okay.

21        THE COURT:  So the fourth is did the city

22   appropriately justify not conditioning the guaranty law on

23   need.  And, again, I have your brief.  I've read your brief.

24   But I think it's helpful if you can do a little bit more to

25   direct me to where in the record it supports the positions that

1   you're taking.

2        MS. KOPLIK:  As having it not conditioned on a

3   guarantor's needs or ability to pay, your Honor, we focused on

4   the reasonableness of the counsel determination that business

5   owners who might not -- might still be able to need to pay,

6   might close their business when faced with personal liability.

7   So it's -- there's not a pinpoint cite in the record for that.

8   There is the reasonableness that this factor of concern -- the,

9   you know, should not weigh heavily.  The expanded record was --

10  you know, talked about the need for personal liability relief.

11  And tailoring the law solely to natural persons guaranteeing

12  businesses that were forced to close, without requiring the

13  bureaucracy that would be involved in adjudicating need should

14  not weigh heavily when time was short and the requirement for

15  action pressing.

16       THE COURT:  Okay.

17       MS. KOPLIK:  So I can't, on the fourth factor,

18  pinpoint a specific place where the counsel deliberated on

19  whether or not to condition the law on need or ability to pay.

20  Does that answer your question?

21       THE COURT:  It does.  It's -- that you can't identify

22  anything.  So we've got that.

23       MS. KOPLIK:  But --

24       THE COURT:  But I understand your argument as to why I

25  shouldn't be so concerned they don't have any support to

MCC6MELC                    ORAL ARGUMENT

1   address the circuit's concern.

2          So then the fifth factor is what about the failure to

3   provide for landlords or their principals to be compensated for

4   damages or losses sustained as a result of the guaranties

5   impairment.

6          Is there anything you want to say on that?

7          MS. KOPLIK:  I do, your Honor.

8          THE COURT:  Okay.

9          MS. KOPLIK:  So in raising the fifth factor as a

10  concern, the Second Circuit specifically said that it was

11  focusing on the allegations of plaintiff Bochner in the amended

12  complaint.  That he needed to draw on $35,000 of his own funds

13  to make the tax payment.  And the Second Circuit specifically

14  said that it assumed that damages could be extensive.  But

15  here, plaintiff did not personally pay the property taxes.  He

16  borrowed it in his deposition testimony from other investments

17  that he owns.

18         He also was able to use the security deposit of

19  $57,000.  He also was able -- the business left restaurant

20  fixtures and other equipment, and they leased the space to a

21  different restaurant.

22         Also, your Honor, as argued in our brief, no case has

23  ever suggested that a government is obligated to compensate a

24  party who is contract has been impaired, and the Second Circuit

25  acknowledged that compensation is not always necessary.

MCC6MELC                         ORAL ARGUMENT

1          We also here don't think that this fifth factor can be
2     looked at in isolation.  The Second Circuit acknowledged that
3     other financial assistance, pandemic-related financial
4     assistance may bear on the reasonableness of the impairment.
5     And it's undisputed that plaintiff here was able to obtain an
6     SBS -- an SBA, excuse me, disaster loan in the amount of
7     1,000 -- sorry, in the amount of $150,000.
8          THE COURT:  Which is a loan?
9          MS. KOPLIK:  Correct, it is a loan.  But it's still an
10    ability to weather the pandemic in a way that these SBA
11    disaster loans -- there is testimony in the record, and maybe
12    Scali can help me find where.
13         That shows that a lot of small business owners and
14    personal guarantors were unable to successfully access this
15    type of -- these types of funds and loans to whether the
16    pandemic.  It was much more accessible for large and
17    business-savvy individuals and entities.
18         On reply here on this fifth factor, plaintiffs don't
19    respond to any defendant's arguments.  They concede that
20    compensation is not always necessary.  And they don't dispute
21    the essential facts of plaintiff's ability to weather the
22    pandemic.  Instead, they tried to paint this picture of this
23    guarantor as a wealthy guarantor on just a Google search of the
24    words Mitch Cantor, when we asked in discovery for information
25    surrounding him, and were not provided with any.  You know, I

MCC6MELC                          ORAL ARGUMENT

1    found more than one Mitch Cantor when I personally did a Google

2    search, and I don't know which one they're referring to.

3             So with that, your Honor, if you have any other --

4    other questions, I can try to answer them.

5             THE COURT:  No, I think is there any other evidence in

6    the record supporting the appropriateness of the law that you

7    want me to focus on, specific evidence?  Again, I've read your

8    briefs.  I have them, but if there's anything else you want me

9    to focus on specifically that you think addresses the circuit's

10   concerns that, you know, it was not aware of, it did not have

11   before it at the time, this is a good opportunity to do that.

12            MS. KOPLIK:  Your Honor, I think that we did point in

13   our briefs to the evidence of the record -- in the record, that

14   support it.  And our 56.1 certainly tracks many of these

15   issues.

16            THE COURT:  All right.  Thank you very much.  Okay.

17   Would plaintiff like to be heard?

18            MR. SZYFER:  Sure, thank you, your Honor.

19            Let me first address the appropriate standard of

20   review.

21            THE COURT:  I appreciate that.

22            MR. SZYFER:  And if you look at Page 1032 of the

23   Melendez decision, the circuit says, and I'll quote, the

24   standard is more demanding than the rational basis review that

25   applies when legislation is challenged under the due process

1    clause.

2            But it is more differential to legislative judgment

3    than strict scrutiny, particularly when the impaired contract

4    at issue is private and state interest is not an obvious

5    concern.

6            Let me just -- it's a standard that depends on

7    balancing to ensure that contracts clause limitations both "do

8    not destroy the reserved power" of the states and "its

9    essential aspects" and that the reserved power of the states

10   does not destroy the limitations of the contracts clause.

11           And the Court, you know, did some analysis of the

12   language in Allied Structural Steel that talks about the

13   severity of impairment, and if this impairment is severe, which

14   obviously we believe it is severe here, that levels -- that

15   increases the level of scrutiny on the nature and purpose of

16   the statute.

17           And then the circuit sort of concluded at 1035, and

18   again, I'll quote, and it says, "We clarify here that when we

19   read Allied Structural Steel's quoted language and context, and

20   we do not understand the Supreme Court to be mandating a

21   particular standard of review, rather we understand the Court

22   to instruct that under its present balancing approach to

23   contracts claim, which controls here, the weight, any purpose

24   and means showing must bear to avoid constitutionality can vary

25   with a degree of contractual impairment."  Again, that's at

1     1035.

2          So I would submit, your Honor, that whether it's as

3     you said, rational basis plus or something else, because, you

4     know, this circuit is -- sort of says specifically that it's

5     not mandating a specific type, but we would submit that it

6     definitely is more than rational basis and less -- something

7     less than strict scrutiny.  And here, because the level of

8     impairment is so severe, the deference to legislators, we would

9     submit, is not as great, and you shouldn't just have a complete

10    deferment to the legislators.

11         Then turning to the five factors, your Honor, on the

12    permanency point, I think it's undisputed that the guaranty law

13    forever denies that the landlord has -- their ability to

14    collect the full guaranteed amount of rent during that 16-month

15    period, the guaranty law was in effect is permanently

16    extinguished.  The guaranty, as Mr. Khan mentioned, has been

17    rendered unenforceable by the text of the law, and it cannot be

18    enforced to collect and delinquent rents, which occurred during

19    the 16-month period.

20         Both you and the Second Circuit, your Honor, found

21    this, at the first stage of the case, and we believe discovery

22    has not changed that in any way.  And, you know, really the

23    city has not pointed to anything that changes that.

24         As to sort of their legal arguments, this argument

25    that the guaranty is just a fraction of the full term of the

1   lease, that's not the answer.  It's still a permanent

2   impairment, and it's still a permanent elimination of the

3   ability of the landlord to be able to enforce that guaranty.

4           You know, the city also says that it's reasonable for

5   the counsel to have concluded that without eliminating the

6   debt, there would be pressure for owners to shut our businesses

7   early.  Again, what's reasonable for the counsel to conclude is

8   not facts.  It's not support.  It's just conjecture by

9   defendants.

10          As we saw here, Sun Burger closed anyway.  Even with

11  the guaranty law in place, Sun Burger closed.  In sort, we

12  would argue that the city's law simply did not fit with its

13  alleged purposes, and there's no evidence to support the

14  arguments the city has put forward.

15          I'll turn to number two, the no reopening requirement.

16          The circuit found that the absence of a reopening

17  weighed heavily against reasonableness.

18          The circuit found that the guaranty law was not an

19  appropriate means to achieve its purpose because there was no

20  commitment by owners to reopen their shuttered businesses.  As

21  the circuit said, "It did not condition the relief it affords

22  on ever actually reopening."  And that's at 1041 of the

23  Melendez decision.

24          While the Court said it usually deferred to

25  legislative judgments about the means and reasonableness to

# A2850

1    address a public emergency, without some link between the

2    purpose and means, the circuit said such deference was

3    inappropriate.

4         And, again, I haven't heard anything here from the

5    city to develop that missing link on remand.  We don't see any

6    reasonable explanation or citations to evidence as to why a

7    reopening requirement was never even considered, you know, much

8    less rejected.

9         The city claims, you know, that the business owners

10   wanted to remain open, but if you look at all of the letters

11   that Ms. Koplik mentioned from the various owners, none of them

12   included a commitment to reopen.  Even if afforded relief by

13   the guaranty law.  And, again, that was something else that the

14   circuit found.  And that's at Page 1041 of the decision.

15        With respect to the anecdotal testimony of the owner

16   of Andrew's Coffee Shop, you know, this doesn't mean, and it

17   didn't mean that they were actually going to reopen.  And you

18   can hardly take from one owner of a shop that there was a

19   commitment to reopening.  In short, there is no missing link

20   here, that the circuit was looking for.

21        And therefore, the reopen -- the lack of a reopening

22   requirement, again, augers against and weighs heavily against

23   finding that this law is reasonable and appropriate.

24        Turning to the burden, the third prong -- the third

25   thing that the circuit found.  The circuit recognized that the

MCC6MELC                          ORAL ARGUMENT

1   guaranty law permanently excuses guarantors from

2   pandemic-accrued rent liability at the expense of the few

3   shoulders, and those are the commercial landlords.

4           And importantly, your Honor, the law contains

5   absolutely no protections at all for landlords.  If we look at

6   Cardozo's decision in *Worthing v. Kavanaugh*, he talks about

7   moderation and reason.  If you're going to impair contracts,

8   there needs to be moderation and reason.  There was no

9   moderation and reason here.

10          And as we've heard, I don't think the city really

11  disagrees with the characterization of the law.  They simply

12  just argue that the counsel was entitled to, on its own,

13  determine which economic group they felt could more easily

14  weather the storm, but that's not right.  There was no evidence

15  to support that.  And obviously, in this situation, Mr. Bochner

16  and 2,877th, have suffered a loss of rent of over $110,000, and

17  obviously, they had to take out a loan, and that's a loan,

18  which has not been forgiven.  Mr. Cantor, the guarantor, and

19  Sun Burger simply closed up shop and walked away.  They walked

20  away from their lease obligations.

21          The city also argues that the landlord could go after

22  the tenant or sue the tenant or apply the security deposit.

23  And that is actually something that Judge Kearny mentions in

24  her descent.  But as I believe we've made clear in our papers,

25  these are apparent incomplete remedies and don't satisfy the

1   reasonableness requirement.

2        I mean, the whole reason why the landlord is seeking

3   collection from the delinquent -- for delinquent rent is

4   because the tenant can't pay.  The tenant has been unable to

5   pay, and the tenant had defaulted, and that's exactly what

6   happened here.

7        You know, in addition, charging late fees or going to

8   after the tenant, that's not a real right, and that's certainly

9   not a substitute for the guaranty.  The city also makes this

10  point that the law was supposed to encourage negotiation.  I

11  find this argument sort of curious because it basically proves

12  that the counsel wanted to purposely disadvantage landlords at

13  the expense of their tenant.  They purposely wanted to

14  eliminate the landlord's protection and wanted to eliminate the

15  landlord's ability to be able to negotiate a reasonable deal,

16  and so I see this negotiation point as actually proof that the

17  motive here was to impair the contracts of landlords so that

18  they would reach an unfair agreement, and, of course --

19       THE COURT:  But is there evidence in the record from

20  your perspective to support the city's statement that on

21  average landlords have more financial security, such that it

22  was fair to shift that burden?  I know the city disputes the

23  word "shift," but --

24       MR. SZYFER:  No, we don't believe there is any

25  evidence, and this case is the perfect example, right?  We have

MCC6MELC                          ORAL ARGUMENT

1    Mr. Bochner who had to take out the SBA loan.  The city

2    provides no basis to support its notion that landlords could

3    more easily weather the storm, and there's no justification why

4    the landlord should have to take out a loan as opposed to the

5    guarantor.  So we would submit there is no evidence.

6            And, of course, if the point was to encourage

7    negotiation, that didn't happen here.  What happened was Sun

8    Burger closed up shop.  Sun Burger just walked away from their

9    rent obligation and, you know, said to us in the e-mail that

10   Mr. Khan referenced, you can't go after the guarantor because

11   the law prohibits you from going after the guarantor.

12           And then I would just also submit, your Honor, that

13   the city doesn't identify any facts or any proof as to the

14   number of negotiations that actually did occur.  It's just pure

15   speculation.

16           Fourth, as to the need requirement, and we believe

17   this is sort of the most glaring of the four, the circuit

18   recognized "many forms of pandemic relief are actually

19   conditioned on individual applicants demonstrating need or

20   hardship."  And the circuit went through the CARES Act.  They

21   went through the American Rescue Plan's Restaurant

22   Revitalization Fund.

23           Everyone kept saying that this was to protect

24   restaurants.  Well, there was a fund available to restaurants.

25           And the state's statutory eviction moratorium also

 1   applied to those who were claiming and could demonstrate a

 2   pandemic-related hardship.  So there were plenty of

 3   pandemic-related programs that actually did condition their

 4   benefits on showing need and on showing hardship.  The

 5   Second Circuit recognized that the record indicates little

 6   counsel discussion on the subject of guarantor need, much less

 7   a stated reason for not including such a condition in the

 8   challenged law.  And, again, that's at 1044.

 9          And I would submit, your Honor, we heard about a bunch

10   of statements that the city said support their position.  I

11   believe it was Paragraph 37 of their 56.1 statement,

12   Paragraph 32, 33, 34, to support all of this.  Well, this was

13   all evidence that was before the circuit.  This was all

14   evidence that was provided in connection with the initial

15   passage of the law, part of the legislative history, which

16   actually was in front of the Second Circuit, and the

17   Second Circuit said, hey, we've looked at all that, and that's

18   not sufficient here.  That's not sufficient to demonstrate any

19   of the links that we're looking for in any of the five, you

20   know, factors that they believed weighed heavily against a

21   finding of constitutionality.

22          So we would submit, your Honor, that that evidence, if

23   you want to call it evidence, and mostly it's just a lot of

24   hearsay statements, it was before the Second Circuit, and

25   that's why we continually said that the evidence that the city

1    points to is exactly the same type that either was before the

2    Second Circuit or similar to what was there before.  They don't

3    point to anything new.

4           In connection with the need requirement, I would

5    submit that the city has not provided any record evidence, and

6    again, here, actually, Ms. Koplik actually said that she

7    couldn't pinpoint any evidence in support of the need

8    requirement.

9           So then last, looking at the lack of compensation,

10   yes, the circuit said that while compensation is not always

11   necessary, whereas here a law permanently deprives a landlord

12   of the protection of a personal guarantee for up to 16 months

13   of rent arrears.  The failure to condition such relief on some

14   compensation for or mitigation of other obligations, is further

15   reason to question the reasonableness of the law.  And that's

16   at 1046 of the decision.

17          You know, the city wants to point to this $35,000 that

18   Mr. Bochner had to borrow from one of his entities.  Again,

19   that wasn't money that just came out of nowhere.  It was

20   borrowing 35,000 to pay his taxes.  In addition, we've got the

21   loss of $110,000, and we have the 150,000-dollar SBA loan,

22   which has not been forgiven.

23          The city also pointed to the fact that the tenant

24   purportedly left assets on the property.  Well, the testimony

25   from the guardian, which is the property manager, made very

1 clear that it was actually less beneficial to the owner to have

2 stuff on the property, whether it was fixtures or equipment,

3 because they had to get rid of it for the new tenant.  And even

4 though the new tenant may have wanted to inherit it, it's not

5 anywhere close to satisfying the $110,000 obligation.  You

6 know, they also say that tenants are still required to pay

7 rent.  But, again, this is hardly of any consequence.  As I

8 made clear before, if you're seeking payment from the

9 guarantor, it's because the tenant cannot pay you.  The remedy

10 is apparent.

11    They also stated that pandemic assistance wasn't

12 necessarily available to small businesses.  This is the Kalter

13 affidavit, which I'll address in a moment.

14    But we specifically, your Honor, put the testimony of

15 Mr. Doris, who was actually a defendant, and Mr. Doris actually

16 set forth the great job that he thought the city was doing,

17 getting pandemic assistance out to people.  This is hardly any

18 evidence that small businesses could not access the pandemic

19 relief funds.

20    With that, your Honor, let me turn to just I think a

21 couple points that I really want to emphasize.  Counsel for the

22 city spoke about testimony from Mr. Rigie, who's the vice chair

23 of the community board.  That he supported the number as to how

24 many guaranties were being effected here.  Well, counsel member

25 Rivera asked Mr. Rigie twice, and ask asked Mr. Rigie twice the

MCC6MELC                        ORAL ARGUMENT

1    same question.  First, at the April 2020 hearing and then at

2    the September 2020 hearing, and that question that she asked

3    was "How many of your members have been impacted by personal

4    guaranty clauses during COVID-19 more or less?"  In April,

5    Mr. Rigie said, "You know, that's a good question.  I don't

6    have the data."  Five months later, five months later, when the

7    bill -- when it was introduced to get this law extended,

8    Mr. Rigie is asked the same exact question, and he says, "Well,

9    so I don't have a hard number for you."  And that, your Honor,

10   for us is sort of endemic of the problem here.  That the city

11   didn't do the due diligence and didn't do the work that the

12   Second Circuit and the Supreme Court law requires.  It didn't

13   have the integrity in the legislative process to actually take

14   into consideration the key issues that they were trying to

15   address.

16          This is not -- sadly, this is not going to be the last

17   economic or health emergency that New York City is going to

18   face.  Contracts usually are impaired during circumstances that

19   are dire.  But there must be some procedural guard rails, your

20   Honor, some level of judicial scrutiny to ensure that the

21   contract rights of all New Yorkers, landlords as well as

22   tenants, are adequately protected.  I'm happy to address any

23   questions that your Honor may have.

24          THE COURT:  I don't think so.

25          MS. KOPLIK:  Your Honor, may I briefly respond?

MCC6MELC                              ORAL ARGUMENT

1          THE COURT:  Sure.  Go ahead.

2          MS. KOPLIK:  So two points, first of all, I strongly

3     disagree with counsel's assertion that what was before -- the

4     same evidence is before your Honor now that was before the

5     Second Circuit.  I spoke at length about and quoted here on the

6     record from testimony of various individuals at the extent --

7     at the hearings of the extensions.  So that was one thing I

8     wanted to emphasize.

9          The second point that I wanted to make is that counsel

10    selectively quotes from Mr. Rigie's response to counsel member

11    Rivera's question about how many people have been impacted by

12    the provisions in -- the personal liability provisions.  And he

13    basically, while he says the -- on this first extension, I

14    don't have a hard number for you, he goes on and talks for a

15    full paragraph, which is quoted in our 56.1 statement at

16    Paragraph 56, speaking about how he's gotten hundreds, I'm sure

17    it's thousands of direct messages, and so I expect the number

18    is in the thousands.  I've heard around the clock, and I'm

19    continually asked, this is getting extended, right?  So -- so

20    counsel is really, in my opinion, not accurately portraying

21    Mr. Rigie's testimony to the court.  And I just -- I felt

22    obliged to point that out.

23          I don't know if there was anything Scali had.  No?

24    With that, your Honor, if you have any questions.

25          THE COURT:  I don't think so.  Thank you.  Last word.

MCC6MELC                              ORAL ARGUMENT

1          MR. SZYFER:  Your Honor, can I just briefly address,

2     apologies.

3          THE COURT:  Yes.

4          MR. SZYFER:  As to the extensions, I think it's

5     important for the Court to understand that for the first

6     extension, from the date of introduction of the extension to

7     the passage, it was just 14 days.  And then with the second

8     extension, it was just eight days in between, so --

9          THE COURT:  Say that again, in between?

10          MR. SZYFER:  In between the introduction and the

11    passage of the first extension, it was just a mere 14 days, and

12    then for the second, it was just even shorter.  It was only 8

13    days.  And, again, there was no reevaluation.  Again, if you

14    look at the *Hahn* case, which we obviously think is quite

15    important, the *Hahn* case, when they were looking at the law in

16    the future, they were continuously revaluating the economics of

17    it.  They were doing intensive study, eight days here, your

18    Honor.  There was no intensive study.  This was introduced and

19    extended, and that was it, and the city didn't do anything to

20    really supplement its record.

21          And then the last thing I would point to is, if you do

22    look at the declaration of purpose, they're nearly identical.

23    It's a cut-and-paste job, and we made that point in our brief,

24    but again, we'll leave it at that.

25          THE COURT:  I'll take it under consideration.  Thank

MCC6MELC                          ORAL ARGUMENT

1    you, all, and enjoy the holidays.

2              (Adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# A2861

REPRODUCED FOLLOWING

United States District Court
Southern District of New York

------------------------------------------------------------ x

MARCIA MELENDEZ, et al.,

                         Plaintiffs,

            -against-

THE CITY OF NEW YORK et al.,

                       Defendants.

------------------------------------------------------------ x

**NOTICE OF APPEAL**

1:20-CV-5301-RA

      Notice is hereby given that defendants appeal to the U.S. Court of Appeals for the Second Circuit from the order of the U.S. District Court for the Southern District of New York (Abrams, J.) entered on March 31, 2023 (ECF No. 123).

Dated:    New York, New York
          April 26, 2023

                         HON. SYLVIA O. HINDS-RADIX
                         Corporation Counsel
                         of the City of New York
                         Attorney for Defendants

              By:                       
                         Devin Slack
                         Assistant Corporation Counsel
                         100 Church Street
                         New York, New York 10007
                         (212) 356-0817
                         dslack@law.nyc.gov

To:   STROOCK & STROOCK
      & LAVAN LLP
      180 Maiden Lane
      New York, New York 10038
      (212) 806-5400

      *Counsel for Plaintiffs*