# 23-683

## United States Court of Appeals
## for the Second Circuit

ELIAS BOCHNER and 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees,*

MARCIA MELENDEZ, JARICAN REALTY INC., 1025 PACIFIC LLC, LING YANG, TOP EAST REALTY LLC, and HAIGHT TRADE LLC,

*Plaintiffs,*

*against*

CITY OF NEW YORK, a municipal entity, BILL DE BLASIO, as Mayor of the City of New York, LOUISE CARROLL, Commissioner of New York City Department of Housing Preservation & Development, and JONNEL DORIS, Commissioner of New York City Department of Small Business Services,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLANTS

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
  *of Counsel*

August 8, 2023

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellants
100 Church Street
New York, New York 10007
212-356-2490 or -2502
jdavies@law.nyc.gov

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................iii

PRELIMINARY STATEMENT .............................................................. 1

JURISDICTIONAL STATEMENT ......................................................... 3

ISSUE PRESENTED FOR REVIEW ...................................................... 3

STATEMENT OF THE CASE ................................................................ 3

SUMMARY OF ARGUMENT AND STANDARD OF REVIEW ............. 7

ARGUMENT ...................................................................................... 10

    THE CONTRACTS CLAUSE CLAIM SHOULD BE
    DISMISSED FOR LACK OF JURISDICTION ............................ 10

    A.  Plaintiffs cannot satisfy any of the prongs of the standing
        test.................................................................................. 12

        1. Plaintiffs' alleged injury is not redressed by a
           declaratory judgment whose binding force does not
           extend to any relevant party................................... 13

        2. Because the City has no role in enforcing the law,
           plaintiffs' alleged injury is not traceable to the actions
           of any defendant................................................... 19

        3. The possibility that plaintiffs may face a legal defense
           in a hypothetical litigation against a nonparty is not an
           injury-in-fact....................................................... 23

    B.  Plaintiffs cannot manufacture jurisdiction by seeking a
        declaratory judgment................................................... 24

CONCLUSION ................................................................................... 30

i

## TABLE OF CONTENTS (cont'd)

**Page**

CERTIFICATE OF COMPLIANCE..........................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Wright,*
  468 U.S. 737 (1984)................................................................ 12

*Am. Freedom Def. Initiative v. Lynch*,
  217 F. Supp. 3d 100 (D.D.C. 2016), *aff'd sub nom. Am.
  Freedom Def. Initiative v. Sessions*, 697 F. App'x 7 (D.C.
  Cir. 2017)........................................................................... 21

*Baur v. Veneman,*
  352 F.3d 625 (2d Cir. 2003) ............................................... 23

*Bender v. Williamsport Area Sch. Dist.*,
  475 U.S. 534 (1986)............................................................. 29

*Bronson v. Swensen,*
  500 F.3d 1099 (10th Cir. 2007)........................................... 20

*Calderon v. Ashmus,*
  523 U.S. 740 (1998)............................................................. 27

*California v. Texas,*
  141 S. Ct. 2104 (2021)........................................ 10, 15, 19, 25

*Carver v. City of New York,*
  621 F.3d 221 (2d Cir. 2010) .................................................. 7

*Clapper v. Amnesty International USA,*
  568 U.S. 398 (2013)............................................................. 23

*Coffman v. Breeze Corps.*,
  323 U.S. 316 (1945)........................................................ 26, 27

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)............................................................. 29

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Davis v. FEC,*
554 U.S. 724 (2008) .................................................................. 8

*Digital Recognition Network, Inc. v. Hutchinson,*
803 F.3d 952 (8th Cir. 2015) ............................................... 20

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.,*
675 F.3d 149 (2d Cir. 2012) ................................................ 29

*Elliott v. GM LLC,*
829 F.3d 135 (2d Cir. 2016) ................................................ 14

*Fleet Bank, N.A. v. Burke,*
160 F.3d 883 (2d Cir. 1998) ................................................ 26

*Fyk v. United States,*
2023 U.S. Dist. LEXIS 101127 (D.D.C. June 9, 2023) ...................... 21

*General Motors LLC v. KAR Auto Group of Decorah, Inc.* No.
2022 U.S. Dist. LEXIS 96188 (N.D. Iowa Mar. 11, 2022)...... 17, 22, 23

*Green Haven Prison Preparative Meeting of the Religious Soc'y of Friends v. N.Y.S. Dep't of Corr. & Cmty. Supervision,*
16 F.4th 67 (2d Cir. 2021) ................................................. 12

*Haaland v. Brackeen,*
143 S. Ct. 1609 (2023) ............................................... *passim*

*Jenkins v. United States,*
386 F.3d 415 (2004) ....................................................... 25

*Johnson v. Williams,*
568 U.S. 289 (2013) .................................................. 14, 17

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .................................................. 19, 23

iv

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Mansion Realty LLC v. 656 6th Ave Gym LLC,*
    79 Misc. 3d 372 (Sup. Ct. N.Y. Cnty. 2023).................................. 17, 18

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923)......................................................................... 10, 25

*Melendez v. City of New York,*
    16 F.4th 992 (2d Cir. 2021)................................................................ 5, 6

*Melendez v. City of New York,*
    503 F. Supp. 3d 13 (S.D.N.Y. 2020)....................................................... 5

*Muskrat v. United States,*
    219 U.S. 346 (1911)............................................................................. 10

*Nova Health Sys. v. Gandy,*
    416 F.3d 1149 (10th Cir. 2005).......................................................... 19

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001).............................................................. 20

*Old Carco Motors LLC v. Suthers,*
    470 B.R. 688 (S.D.N.Y. 2012) ........................................................... 18

*Platinum-Montaur Life Scis., LLC v. Navidea*
    *Biopharmaceuticals, Inc.,*
    943 F.3d 613 (2d Cir. 2019) .............................................................. 10

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976).............................................................................. 28

*Sloley v. Vanbramer,*
    945 F.3d 30 (2d Cir. 2019) ................................................................ 14

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021)........................................................................ 23

v

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Tweed-New Haven Airport Authority v. Tong,*
930 F.3d 65 (2d Cir. 2019) ............................................................ 21, 22

*United States v. Texas,*
143 S. Ct. 1964 (2023) ....................................................................... 28

*Valley Forge Christian College v. Americans United for
Separation of Church and State, Inc.,*
454 U.S. 464 (1982) ...................................................................... 10, 25

*Whitmore v. Arkansas,*
495 U.S. 149 (1990) ............................................................................. 12

*Whole Woman's Health v. Jackson,*
142 S. Ct. 522 (2021) ......................................................................... 15

### Statutes

28 U.S.C. § 1291 ....................................................................................... 3

28 U.S.C. § 1331 ....................................................................................... 3

Conn. Gen. Stat. § 3-125 ......................................................................... 21

Conn. Gen. Stat. § 15-120j ...................................................................... 21

### Other Authorities

U.S. Const. Art. III § 2, cl. 1.................................................................... 10

N.Y.C. Admin. Code:

§ 22-902 ............................................................................................... 26

§ 22-903 ................................................................................................. 8

§ 22-1005 ......................................................................................... 4, 26

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

N.Y.C. Admin. Code (cont'd):

§ 27-2110 ................................................................. 8

§ 27-2004 ................................................................. 8

§ 27-2115 ................................................................. 8

## PRELIMINARY STATEMENT

This case has been narrowed to a Contracts Clause challenge to a pandemic-era law of the City of New York prohibiting landlords from enforcing certain personal guarantees in commercial leases when the tenant was forced to close by government-imposed shutdowns. On remand from this Court, the United States District Court for the Southern District of New York (Abrams, J.) issued a bare declaration that the personal guaranty law violates the Contracts Clause. This Court should vacate and dismiss the action for lack of Article III jurisdiction.

No principle is more fundamental to the judiciary's role in our system of government than the constitutional limitation of federal-court jurisdiction to cases or controversies. As part of that limitation, plaintiffs must establish their standing, identifying an injury-in-fact traceable to the specific defendants that would be redressed by a favorable judgment. Here, though the City regrettably did not recognize it at the outset, plaintiffs' claim does not meet those requirements. Perhaps the easiest way to understand why is to look to redressability. Plaintiffs secured their requested relief but remain in precisely the same *legal* position that they were in before filing suit. To enforce a guaranty, they would still

need to sue the guarantor, and the guarantor could still raise the guaranty law as a defense—the exact circumstances that obtained before plaintiffs commenced this litigation. All plaintiffs have obtained is an opinion they may point to for its persuasive value. That is the definition of an advisory opinion that federal courts cannot issue.

Fundamentally, the problem with plaintiffs' suit is that only private parties and courts have any role in enforcing the challenged law. No arm of City government does. Thus, plaintiffs' claimed injury cannot be traced to any defendant nor be redressed by the district court's judgment. Indeed, on remand, plaintiffs abandoned their request for an injunction— seemingly recognizing that it would have no effect—and pivoted to seek only a declaration that the law is unconstitutional. But it is a bedrock principle that federal courts are not empowered to hear challenges to the mere enactment or existence of a law, as opposed to its enforcement. No less foundational is the principle that federal courts cannot issue bare declarations on a law's constitutionality. Because plaintiffs cannot meet the requirements for maintaining suit in federal court, their Contracts Clause claim should be dismissed.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the appeal under 28 U.S.C. § 1291. Plaintiffs alleged that the district court had jurisdiction under 28 U.S.C. § 1331 but, as described below, the district court lacked jurisdiction over the plaintiffs' Contracts Clause claim, as well as their First Amendment claim challenging the commercial-tenant-harassment law.

## ISSUE PRESENTED FOR REVIEW

Did the district court err in concluding that this action against the City and certain of its officials presents an Article III case or controversy, where (1) the challenged law addresses contractual arrangements that are enforced by private parties, not by any City official; (2) the declaration sought by plaintiffs would not bind the relevant parties and thus would not redress plaintiffs' claimed injury; and (3) plaintiffs face no concrete and imminent injury in any event?

## STATEMENT OF THE CASE

When the COVID-19 pandemic began, all levels of government took a number of measures—often drastic—to limit the spread of the disease, including implementing stay-at-home orders, mandating closure of businesses, and restricting gatherings (*See* Joint Appendix ("A") 89–138). The City, for its part, proposed a suite of laws to promote public health,

3

protect essential workers, and assist small businesses (*see* A220–27). One of those laws, the personal guaranty law, remains at issue here.

The guaranty law provides that personal guaranties made to guarantee the payment of rent for commercial leases in New York City, made by natural persons who are not themselves the tenant, "shall not be enforceable against such natural persons" if certain conditions are met. N.Y.C. Admin. Code § 22-1005. First, the tenant default that would otherwise trigger the guaranty must arise between March 7, 2020 and June 30, 2021. *Id.* § 22-1005(2).[1] Second, the tenant must either: (1) have been "required to cease serving patrons food or beverage for on-premises consumption or to cease operation" under Executive Order 202.3; (2) be "a non-essential retail establishment subject to in-person limitations under" Executive Order 202.6; or (3) have been "required to close to members of the public under" Executive Order 202.7. N.Y.C. Admin. Code § 22-1005(1). The law provides the personal guarantor a defense in a future civil suit brought by the property owner. Consequently, it is a

---

[1] The end of the time period was originally September 30, 2020. The cutoff was thereafter extended twice by the City Council. *See* Local Law 98 of 2020; Local Law 50 of 2021.

4

law that would be invoked by a private party, subject to review by a court. It is not enforced in any way by the City or any of its agencies or officials.

Plaintiffs, a small group of residential and commercial property owners, brought this action challenging, among other things, the City's personal guaranty law.[2] Only one remaining landlord and his business claim to be affected by the guaranty law (A1051–52).[3] Plaintiffs initially moved for a preliminary injunction, seeking to enjoin the City from "enforcing" the law (S.D.N.Y. ECF No. 27 at 1; S.D.N.Y. ECF No. 28 at 1, 34). The district court denied plaintiffs' motion and granted the City's cross-motion to dismiss. *Melendez v. City of New York*, 503 F. Supp. 3d 13, 19 (S.D.N.Y. 2020). The district court held that the personal guaranty law was consistent with the Contracts Clause, reasoning that the law advanced a legitimate public purpose in supporting commercial tenants

---

[2] Earlier in this litigation, plaintiffs appealed the dismissal of their challenge to separate laws prohibiting "threatening" or "harassing" any lawful residential or commercial tenant "based on such person's actual or perceived status as an essential employee, status as a person impacted by COVID-19, or receipt of a rent concession or forbearance for any rent owed during the COVID-19 period." *Melendez v. New York*, 16 F.4th 992, 1003 (2d Cir. 2021). This Court affirmed the dismissal of those claims. *Id.* at 1011.

[3] One of the other plaintiffs and an associated corporate entity originally brought a Contracts Clause claim but later dropped it. *See Melendez v. City of New York*, 503 F. Supp. 3d 13, 31 n.11 (S.D.N.Y. 2020).

and their employees and that it was reasonable and appropriate to that purpose. *Id.* at 31–36.

This Court reversed in relevant part. *Melendez v. City of New York*, 16 F.4th 992, 997 (2d Cir. 2021). The Court held, over a dissent, that plaintiffs' Contracts Clause claim could not be dismissed as a matter of law. *Id.* at 1016. However, the Court declined plaintiffs' invitation to declare the guaranty law unconstitutional as a matter of law, instead remanding the case to the district court "to allow the parties to develop the record further." *Id.* at 1047.

On remand, the parties cross-moved for summary judgment (A1189, 1217). In their motion, plaintiffs dropped their request for an injunction and sought only a declaration that the guaranty law was unconstitutional (A1189). The district court, applying the factors identified by this Court, held that the City had "been unable to adduce record evidence demonstrating that the Guaranty Law is reasonably tailored to accomplish its legitimate policy goals" and, for that reason, granted summary judgment to plaintiffs (SPA3).

The district court also considered the City's challenge to federal jurisdiction (SPA12–16). The City had argued that plaintiffs lacked

standing and that, because the City does not enforce the guaranty law, a declaration of the law's constitutionality would be an impermissible advisory opinion, as it would not bind any individual guarantor (S.D.N.Y. ECF Nos. 103, at 9; 114, at 1–2; 120, at 1–4). The district court nonetheless found that plaintiffs had standing because a "finding by [the district court] that the Guaranty Law violates the Contracts Clause would enable [p]laintiffs to enforce the guaranty clause of their commercial lease" (SPA15).

## SUMMARY OF ARGUMENT
## AND STANDARD OF REVIEW

On de novo review, *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010), this Court should vacate the district court's order, along with the portions of this Court's prior opinion relating to the Contracts Clause claim and the commercial-tenant anti-harassment law claim, and

dismiss those claims for lack of jurisdiction.[4] The Contracts Clause claim does not meet the Constitution's case-or-controversy requirement. Federal courts have no jurisdiction to opine on the constitutionality of laws in the absence of a controversy between litigants who would be subject to the binding force of the court's judgment.

That fundamental requirement leads most clearly to an inability by plaintiffs to satisfy the redressability prong of the Article III standing analysis. For a case to meet the redressability prong, it must be capable of producing a binding adjudication of the legal rights of the parties. But the district court's declaration that the law is unconstitutional does not bind any individual guarantor, who could still raise the defense in any action to enforce the guaranty. Nor will the declaratory judgment issued here bind a court adjudicating a guaranty dispute—any influence the district court's ruling may have would be attributable only to its status

---

[4] Standing is determined on a claim-by-claim basis. *See*, *e.g., Davis v. FEC*, 554 U.S. 724, 734 (2008). Unlike their Contracts Clause claim, petitioners had standing to bring their claim challenging the residential-tenant anti-harassment law because that law is enforceable by the City. *See* N.Y.C. Admin. Code §§ 27-2110; 27-2004(a)(48)(f-7); 27-2115(b). The commercial-tenant-harassment law, on the other hand, is enforceable only through private actions by tenants, *id.* § 22-903(a), and plaintiffs therefore also lacked standing to bring that claim for the same reasons discussed below. Accordingly, although the City prevailed on that particular front, any prior opinion should be vacated to the extent it addresses either the commercial-tenant-harassment law claim or the Contracts Clause claim that is the focus here.

8

as precedent. In short, plaintiffs have obtained only an opinion to which they can point for its persuasive value, demonstrating that the district court's declaration amounts to an impermissible advisory opinion.

Plaintiffs cannot meet the other requirements for Article III standing either. Plaintiffs' alleged injury is not caused by any defendant. No defendant enforces the guaranty law against them. The only relevant actors, the individual guarantors who could raise the law as a defense in a suit to enforce the guaranty, are not parties here. And plaintiffs have suffered no injury-in-fact. Their claimed injury relies on a series of events that have yet to take place and that may never take place. Plaintiffs will be injured only if they elect to sue their guarantor, the guarantor interposes a defense based on the guaranty law, and a court concludes that the guaranty law is valid and bars their claim.

Finally, the fact that plaintiffs seek only a declaration does nothing to provide jurisdiction where it is lacking. Federal courts are not empowered to issue declarations about the constitutionality of a law unmoored from a case or controversy satisfying all Article III requirements. The Supreme Court and this Court have consistently rebuffed declaratory judgment actions where no relevant party would be

9

bound by the declaratory judgment or where the outcome would merely be a premature advisory ruling on anticipated defenses.

## ARGUMENT

### THE CONTRACTS CLAUSE CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019) (quotation marks omitted). One of those constitutional limits is that federal courts only have the power to decide "Cases" or "Controversies." U.S. Const. Art. III § 2, cl. 1. As the Supreme Court has repeatedly explained, the case-or-controversy requirement means that federal courts may not entertain a free-floating challenge to a statute. *See, e.g.*, *California v. Texas*, 141 S. Ct. 2104, 2115–17 (2021); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72 (1982); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *Muskrat v. United States*, 219 U.S. 346, 359–62

10

(1911). There is not, and has never been, federal jurisdiction to hear a constitutional challenge to the mere enactment or existence of a statute.

Instead, federal jurisdiction arises only in the context of the actual or threatened enforcement of a statute. But here, the City did nothing more than enact the personal guaranty law; it has absolutely no role in enforcing the law. Instead, the law addresses the contractual relationship between private parties, and when parties to a contract reach an impasse, their dispute is resolved through contractual litigation. So, if the personal guaranty law is to be enforced, it will be in the context of such contractual litigation, where the guarantor is a party and invokes the law as a defense, and where the presiding court adjudicates whether the defense is availing.

Evidently recognizing this, on remand, plaintiffs dropped their original request for injunctive relief and sought only a declaration that the guaranty law is unconstitutional (A1189; *see also* S.D.N.Y. ECF No. 92 at 1 n.1 & 25). But the declaratory-judgment statute does not confer jurisdiction where it would not otherwise exist. Plaintiffs must still meet all of Article III's requirements, implemented through the Supreme Court's standing doctrine, and they cannot do so. Plaintiffs may, in the

future, elect to litigate their Contracts Clause challenge in an appropriate forum against appropriate defendants, but they cannot meet Article III's requirements in *this* litigation.

## A. Plaintiffs cannot satisfy any of the prongs of the standing test.

A party's standing to bring suit is "perhaps the most important" of the case-or-controversy requirements, which serve as "fundamental limits on federal judicial power in our system of government." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Because constitutional standing is a jurisdictional prerequisite to suit, it may be raised at any time. *See, e.g.*, *Green Haven Prison Preparative Meeting of the Religious Soc'y of Friends v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021). In every case, plaintiffs bear the burden of showing: (1) that they have sustained a concrete "injury in fact," (2) that the injury can be "fairly traced to the challenged action," and (3) that the injury is "likely to be redressed by a favorable decision." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quotation marks omitted). A "litigant must clearly and specifically set forth facts sufficient to satisfy these … standing requirements." *Id.*

12

**1. Plaintiffs' alleged injury is not redressed by a declaratory judgment whose binding force does not extend to any relevant party.**

Most conspicuously, plaintiffs cannot meet Article III's redressability requirement. They cannot obtain any relief in this proceeding that would redress their only alleged injury—the inability to enforce contractual personal guarantees in future contractual litigation against nonparty guarantors.

Consider the following. Before plaintiffs filed this suit, they could have sued the guarantor. The guarantor could have raised the guaranty law as a defense to that suit, and plaintiffs could have argued, in opposition, that the law violated the Contracts Clause, leaving the court handling that litigation to decide the issue.

Now, plaintiffs have succeeded in this case and obtained a declaration from the district court that the guaranty law violates the Constitution. *But nothing relevant has changed.* They still could sue the guarantor, the guarantor could still raise the guaranty law as a defense, and plaintiffs could still argue, in opposition, that the law is unconstitutional. The district court's *opinion* could be persuasive to the court hearing the guaranty suit, but its *judgment* would have no legal

13

effect—making the district court's ruling a quintessential advisory opinion.[5] And the "oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." *Elliott v. GM LLC*, 829 F.3d 135, 167–68 (2d Cir. 2016) (quotation marks omitted).

Indeed, just recently, the Supreme Court reaffirmed this principle in closely analogous circumstances. In *Haaland v. Brackeen*, 143 S. Ct. 1609 (2023), plaintiffs brought an equal-protection challenge to the Indian Child Welfare Act (ICWA) against the federal government, seeking "an injunction preventing the federal parties from enforcing ICWA and a declaratory judgment that the challenged provisions are unconstitutional." *Id.* at 1639. But, the Court held, an injunction "would not remedy the alleged injury, because state courts apply the placement preferences and state agencies carry out court-ordered placements." *Id.*

---

[5] Most litigation over guaranties would likely take place in state court. And while the precedential effect of an opinion—in contrast to the binding force of a judgment—is not relevant to redressability, it is worth noting that the state court would make an independent assessment as to the law's constitutionality and would not be bound as a matter of precedent by the decision below or even by an affirmance from this Court. *See Johnson v. Williams*, 568 U.S. 289, 305 (2013) (holding that the "views of the federal courts of appeals do not bind" state courts when they "decide[] a federal constitutional question"); *Sloley v. Vanbramer*, 945 F.3d 30, 42 n.9 (2d Cir. 2019) (same). Plaintiffs' remedy for an adverse decision in state court would be to appeal and, ultimately, to seek certiorari from the U.S. Supreme Court.

14

Thus, an injunction would not give "petitioners legally enforceable protections from allegedly imminent harm." *Id.*

Just like the personal guarantors here, the state officials in *Haaland* were "not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced." *Id.* (quotation marks omitted). Likewise, plaintiffs can point to no "enforcement authority" that any defendant possesses "in connection with [the guaranty law] that a federal court might enjoin [them] from exercising." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021); *see also California v. Texas*, 141 S. Ct. 2104, 2116 (2021) ("There is no one, and nothing, to enjoin.").

Thus, even with a complete victory in the district court, plaintiffs obtained no concrete relief. Indeed, even if this Court affirmed and a future court treated its decision as binding precedent, the establishment of binding precedent, as opposed to a binding judgment, does not meet Article III's redressability requirement. To satisfy the redressability requirement, a case must "establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata." *Haaland*, 143 S. Ct. at 1639 (quotation marks omitted). The

15

existence of a "preclusive effect on a traditional lawsuit that is imminent" is what "saves proper declaratory judgments from a redressability problem." *Id.* (quotation marks omitted). Without "preclusive effect," a declaratory judgment is to "little more than an advisory opinion." *Id.*

To hold otherwise would allow redressability to be satisfied "whenever a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on issuing advisory opinions." *Id.* at 1639–40 (quotation marks omitted). It is the "federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.* at 1640. The district court's *judgment* here does nothing for plaintiffs, thus demonstrating that they cannot satisfy the redressability prong.

The district court, for its part, apparently misunderstood the effect of a declaration in plaintiffs' favor. The court noted that several New York courts have enforced the guaranty law and dismissed personal guaranty actions (SPA15). The court then concluded that "[a] finding by this Court that the Guaranty Law violates the Contracts Clause would enable Plaintiffs to enforce the guaranty clause of their commercial lease" (*id.*).

16

The court was simply incorrect. As explained, its declaration has no binding res judicata effect on any relevant actor. That is the end of the analysis. In any case, even if what mattered was whether this case ends in binding *precedent* rather than a binding *judgment*, most if not all litigation to enforce the guaranty would be brought in state court, and a state court would have no obligation to follow a federal court's decision as a matter of precedent either. *Johnson*, 568 U.S. at 305. Indeed, at least one court has already done so, proving that the decision does not, by its own force, allow plaintiffs to enforce the guaranty clauses in their leases. *See Mansion Realty LLC v. 656 6th Ave Gym LLC*, 79 Misc. 3d 372, 380 n.4 (Sup. Ct. N.Y. Cnty. 2023) (declining to follow the district court's decision and noting that it "does not bind the courts of New York State").

Nor do either of the nonbinding cases cited by the district court counsel otherwise. The court cited *General Motors LLC v. KAR Auto Group of Decorah, Inc.* (SPA15), for the proposition that the plaintiff's inability to sue on a term of its contract would be redressable by a judgment in its favor. No. 6:20-cv-02039, 2022 U.S. Dist. LEXIS 96188, at *5 (N.D. Iowa Mar. 11, 2022). But, in that case, the challenged law was enforced by the governmental defendant, so an order in that case could

17

redress the plaintiff's injury. 2022 U.S. Dist. LEXIS 96188, at *2–4. The challenged law prevented car manufacturers from terminating franchise agreements with car dealerships without first obtaining permission from two state agencies. *Id.* at *3–4. Thus, the state was heavily involved in multiple aspects of the administration of the challenged law, in complete contrast to the relevant circumstances as to the guaranty law. *Id.* Plus, the contractual counterparty was also a defendant in *General Motors*, and so would be bound by any judgment issued, unlike here. *Id.*

And, in *Old Carco Motors LLC v. Suthers*, 470 B.R. 688 (S.D.N.Y. 2012), also relied on by the district court (SPA15), the plaintiffs challenged a Kentucky law that was enforced by a state commission. *Id.* at 697–98, 701. The head of the commission was a defendant in his official capacity. *Id.* at 688. Thus, a decision in the plaintiffs' favor would bind the state commission, require it to issue new dealer licenses, and redress plaintiffs' injury. *Id.* at 701. In both cases, the court's "judgment, not its opinion," would remedy the plaintiffs' injuries. *Haaland*, 143 S. Ct. at 1640. But the same is not true here.

18

> **2.   Because the City has no role in enforcing the law, plaintiffs' alleged injury is not traceable to the actions of any defendant.**

The other two prongs of the standing inquiry reinforce the conclusion that plaintiffs cannot establish standing. As to traceability (or causation), plaintiffs must show that there is some "[g]overnment action that is causally connected to [their] injury." *California*, 141 S. Ct. at 2114. Causation is "substantially more difficult to establish" where the alleged injury "depends on the unfettered choices made by independent actors not before the courts." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (quotation marks omitted). Here, any alleged injury stems from the bare existence of the guaranty law and its potential use as a defense by guarantors in a breach-of-contract claim brought by property owners. But that injury is not traceable to any "actual or threatened *enforcement*" action by the named defendants. *California*, 141 S. Ct. at 2114. There is "no action—actual or threatened—whatsoever" on defendants' part. *Id.* Plaintiffs have "confused the *statute's* immediate coercive effect … with any coercive effect that might be applied by the *defendants*." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (quotation marks

19

omitted). A legislature's mere enactment of a statute, standing alone, has never been sufficient to meet the causation requirement.

The Eighth Circuit reached the same conclusion in a similar case against the governor and attorney general of Arkansas challenging the constitutionality of a law permitting private lawsuits against anyone who uses an automatic license plate reader. *See Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 954 (8th Cir. 2015). The court explained that the "causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Id.* at 958 (quotation marks omitted). But the governmental defendants there had no power to "initiate enforcement or seek relief" under the law; it was enforced "only through private actions for damages." *Id.*; *see also Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007) (holding no traceability where "no nexus between *this defendant's* past or possible future conduct" and plaintiffs' alleged injury); *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (finding no injury traceable to defendants who were "powerless to enforce" challenged act against plaintiffs).

This point is even more salient where, as here, the law provides a defense to civil suits between private parties, instead of a civil cause of

20

action. A statute that operates as "a form of protection from civil liability" causes no injury traceable to a governmental official who does not enforce it. *Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 105 (D.D.C. 2016), *aff'd sub nom. Am. Freedom Def. Initiative v. Sessions*, 697 F. App'x 7 (D.C. Cir. 2017); *see also Fyk v. United States*, No. 22-cv-01144, 2023 U.S. Dist. LEXIS 101127, at *10 (D.D.C. June 9, 2023) (holding no traceable injury when statute was "civil liability shield for private parties and does not enable, command, or delegate any state action").

In finding that plaintiffs established causation, the district court reasoned that plaintiffs were "threatened by the enforcement" of the statute (SPA14 (quotation marks omitted)), relying on this Court's decision in *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019). There, an airport brought suit against the attorney general of the State of Connecticut challenging a statute that placed an absolute bar on extending that airport's runway. *Id.* at 68. No private party could stop the airport from beginning construction or take any action to enforce the statute. Instead, the State of Connecticut, through its attorney general, would be responsible for enforcing the statute to prevent the airport from extending its runway. *See* Conn. Gen. Stat. §§ 3-125, 15-

21

120j(c). As this Court explained, the law of standing "presume[s] … an intent by the government to enforce the law." *Tweed-New Haven Airport*, 930 F.3d at 71 (quotation marks omitted).

The decision thus relies on the fact that the airport was "threatened by the enforcement of [the] statute" by the named governmental defendant, *id.* at 71, a circumstance which does not exist here. Nor do plaintiffs face the "choice between abandoning [their] rights or risking prosecution." *Id.* at 70. They can simply attempt to vindicate their rights in an action against a guarantor, with the full panoply of constitutional arguments available to them in any action against the personal guarantor.

The district court's reliance on a single paragraph of analysis in a nonbinding case is even further afield (SPA14). The court again pointed to *General Motors*, for the proposition that the plaintiffs' inability to sue on a term of its contract was an injury traceable to the statute at issue. 2022 U.S. Dist. LEXIS 96188, at *5 (N.D. Iowa Mar. 11, 2022). The court's reliance on that decision is misplaced for several reasons. First, the state defendant in *General Motors* conceded traceability. *Id.* at *7–8. Second, as noted above, the government had enforcement authority over the

22

relevant statute. The challenged law prevented car manufacturers from terminating franchise agreements with car dealerships without first obtaining permission from two state agencies. *Id.* at *3–4. Thus, the government was heavily involved in multiple aspects of the administration of the challenged law, in complete contrast to the guaranty law. Third, the contractual counterparty was also a named defendant in the case, so plaintiffs' injury could be traced to the actions of that counterparty. *Id.* at *1.

### 3. The possibility that plaintiffs may face a legal defense in a hypothetical litigation against a nonparty is not an injury-in-fact.

Plaintiffs also cannot show an injury in fact, which requires a "concrete and particularized" injury. *Lujan*, 504 U.S. at 560. And because plaintiffs seek only forward-looking relief, the risk of harm must be "sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021).

But plaintiffs' claim rests on a lengthy "chain of contingencies," *Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013), and depends "on the independent actions of third-parties not before the court." *Baur v. Veneman*, 352 F.3d 625, 640 (2d Cir. 2003). *If* plaintiffs

23

make a demand from the guarantor, and *if* the guarantor declines to pay, and *if* plaintiffs sue to enforce the guaranty, and *if* the guarantor raises the guaranty law as a defense, and *if* the court rejects any constitutional argument that plaintiffs raise and finds the guaranty law to be the sole barrier to judgment in plaintiffs' favor, only then would plaintiffs have a concrete and particularized injury. Yet plaintiffs have never even *communicated* with the guarantor (*see* A2757). Instead, they received an email from the commercial tenant—not the guarantor—invoking the guaranty law, and unilaterally decided at that point they were at a "dead end" (A2756–57).

Plaintiffs have not experienced any "monetary injury" (SPA13). At most, plaintiffs may have a lesser chance than they did before of collecting money that they may be owed from a stranger to this litigation in a hypothetical future lawsuit. That is insufficient.

## B. Plaintiffs cannot manufacture jurisdiction by seeking a declaratory judgment.

The fact that plaintiffs seek a declaration that the guaranty law is unconstitutional does not provide federal jurisdiction either. "[J]ust like suits for every other type of remedy, declaratory-judgment actions must

satisfy Article III's case-or-controversy requirement" and thus require "identification of a remedy that will redress the individual plaintiffs' injuries." *California*, 141 S. Ct. at 2115–16. Federal courts may not entertain a free-floating challenge to a statute unmoored from Article III's requirements, and bringing the suit as a declaratory-judgment action does not solve the problem. *See, e.g.*, *id.* at 2116; *Valley Forge Christian*, 454 U.S. at 471–72 (1982); *Mellon*, 262 U.S. at 488. This Court has also carefully followed that longstanding rule. *See*, *e.g.*, *Jenkins v. United States*, 386 F.3d 415, 418 (2004) (holding the district court lacked jurisdiction to issue a declaration that would not "have any binding or authoritative effect" in another district).

Here, because no relevant actors are defendants in this litigation, all plaintiffs could and did obtain is a bare declaration that the guaranty law violates the Contracts Clause. And that is not sufficient to give rise to an Article III case or controversy. Again, as the Supreme Court very recently explained, a valid declaratory judgment must conclusively resolve "the legal rights *of the parties*." *Haaland*, 143 S. Ct. at 1639 (quotation marks omitted). But the personal guarantors "are nonparties who would not be bound by the judgment." *Id*. Thus, the issue would "not

be settled" between the plaintiffs and the potential defendants "who matter," making the "declaratory judgment powerless to remedy the alleged harm." *Id.* "After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata." *Id.* (quotation marks omitted). Without that claim-preclusive effect, "a declaratory judgment is little more than an advisory opinion." *Id.*[6]

Even where, unlike here, the named defendant *is* a relevant party to the underlying dispute, the Supreme Court has consistently rejected declaratory-judgment actions challenging an anticipated defense before it has been raised. For example, in *Coffman v. Breeze Corps.*, 323 U.S. 316 (1945), a patent owner brought suit against a licensee seeking to have the Royalty Adjustment Act declared unconstitutional. *Id.* at 317. But the Court explained that the validity of the Act would properly arise only in

---

[6] This conclusion is further reinforced by the test for federal-question jurisdiction in declaratory-judgment suits under the well-pleaded-complaint rule. The test asks the court to consider whether the case would validly arise under federal law if the declaratory-judgment defendant had initiated a suit against the declaratory-judgment plaintiff. *See Fleet Bank, N.A. v. Burke*, 160 F.3d 883, 886 (2d Cir. 1998). But here, of course, the City could not initiate any suit against the plaintiffs under the guaranty law (or the commercial tenant harassment law). *See* N.Y.C. Admin. Code §§ 22-902(a); 22-1005.

a suit by the patent holder to recover royalties from the licensee. Thus, the Court concluded it lacked jurisdiction to consider the Act's constitutionality "unless and until [the patent holder] seeks recovery of the royalties, and then only if [the licensee] relies on the Act as a defense." *Id.* at 324. There, as here, the plaintiff sought an "advisory opinion as to the validity of a defense to a suit," *id.*, with the only difference being the defendant there would actually have been a party to the eventual suit.

Likewise, in *Calderon v. Ashmus*, a prisoner sought a declaratory judgment that California did not meet certain statutory requirements for expedited review in capital habeas cases. 523 U.S. 740, 742–43 (1998). The Court held that there was no jurisdiction because the prisoner merely sought a "declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding." *Id.* at 747. The Declaratory Judgment Act does not permit a party to obtain "an advance ruling on an affirmative defense." *Id.*

It is also no answer to say that future courts or individual guarantors are likely to be swayed by the persuasive force of the federal courts' decisions. Instead, redressability requires that the "court be able to afford relief *through the exercise of its power*, not through the

27

persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland*, 143 S. Ct. at 1639 (quotation marks omitted). Were it otherwise, redressability would be satisfied "whenever a decision might persuade actors who are not before the court," which would, again, fall afoul of the prohibition on advisory opinions. *Id.*; *see also United States v. Texas*, 143 S. Ct. 1964, 1979 (2023) (Gorsuch, J., concurring) (explaining that the Court measures redressability "by asking whether a court's judgment will remedy the plaintiff's harms," not "by asking whether a court's legal reasoning may inspire or shame others into acting differently"). Plaintiffs "can hope for nothing more than an opinion, so they cannot satisfy Article III." *Haaland*, 143 S. Ct. at 1640.

\*          \*          \*

Federal courts have an unceasing obligation to police the bounds of their jurisdiction, and "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). Plaintiffs cannot meet those jurisdictional requirements and

instead seek an advisory opinion that federal courts are powerless to offer. The case should be dismissed.

Moreover, because plaintiffs lacked standing from the outset, the federal courts never had "judicial power" over the Contracts Clause claim or the challenge to the commercial-tenant anti-harassment law, see *supra* at 7 n.4, and all prior rulings relating to those claims should be vacated. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 161 (2d Cir. 2012) (vacating prior decisions where the district court "decided important questions of … law based entirely on the presentation of a plaintiff who lacked standing"). The district court never had the authority to issue decisions on those claims, and this Court has jurisdiction "not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quotation marks omitted).

## CONCLUSION

This Court should dismiss for lack of jurisdiction and vacate the district court's decision, as well as all prior decisions to the extent they address plaintiffs' Contracts Clause or commercial-tenant-harassment claims.

Dated:  New York, NY
        August 8, 2023

                                   Respectfully submitted,

                                   HON. SYLVIA O. HINDS-RADIX
                                   *Corporation Counsel*
                                   *of the City of New York*
                                   Attorney for Appellant

                          By:   /s/ Jamison Davies
                                   JAMISON DAVIES
                                   Assistant Corporation Counsel

                                   100 Church Street
                                   New York, NY 10007
                                   212-356-2490
                                   jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
  *of Counsel*

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,014 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____/s/ Jamison Davies_____
JAMISON DAVIES