# 23-683

## United States Court of Appeals
## for the Second Circuit

ELIAS BOCHNER and 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees*,

MARCIA MELENDEZ, JARICAN REALTY INC., 1025 PACIFIC LLC,
LING YANG, TOP EAST REALTY LLC, and HAIGHT TRADE LLC,

*Plaintiffs*,

*against*

CITY OF NEW YORK, a municipal entity, BILL DE BLASIO, as
Mayor of the City of New York, LOUISE CARROLL, Commissioner
of New York City Department of Housing Preservation &
Development, and JONNEL DORIS, Commissioner of New York
City Department of Small Business Services,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLEES

CLAUDE G. SZYFER
DAVID KAHNE
DARYA ANICHKOVA
STROOCK & STROOCK & LAVAN LLP
Attorneys for Appellees
180 Maiden Lane
New York, New York 10038
212-806-5400
cszyfer@stroock.com

November 7, 2023

# **<u>TABLE OF CONTENTS</u>**

**Page(s)**

TABLE OF AUTHORITIES ................................................................ ii

CORPORATE DISCLOSURE STATEMENT .......................................1

JURISDICTIONAL STATEMENT ........................................................1

ISSUE PRESENTED FOR REVIEW ....................................................1

STANDARD OF REVIEW ...................................................................2

STATEMENT OF THE CASE ...............................................................2

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT ...................................................................................12

    I.      PLAINTIFFS SATISFY THE ARTICLE III STANDING
            REQUIREMENTS ...............................................................12

          A.      Plaintiffs Have Demonstrated an Injury-in-Fact.......................13

          B.      Plaintiffs' Injury is Traceable to the Guaranty Law .................19

          C.      The District Court's Opinion Redressed a Direct Harm to
               Plaintiffs' Contractual Rights ...................................................28

   CONCLUSION...................................................................................40

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*27 Morton, L.P. v. MDS Fashions, Ltd.*,
  No. 155681/2020, 2020 WL 6867927
  (Sup. Ct. N.Y. Cnty. Nov. 20, 2020) ...................................................36

*274 Madison Co. LLC v. Vieira*,
  No. 151756/2020, 2021 WL 4441911 (Sup. Ct. N.Y. Cnty. Sept.
  28, 2021), *aff'd*, 205 A.D.3d 403 (1st Dep't 2022) ............................36

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  651 F.3d 218 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev.
  v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013)................................12, 13

*Allco Finance Ltd. v. Klee*,
  861 F.3d 82 (2d Cir. 2017) ................................................................26

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................2

*Antilles Cement Corp. v. Fortuño*,
  670 F.3d 310 (1st Cir. 2012)..............................................................31

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*,
  10 F.4th 905 (9th Cir. 2021) ..............................................................27

*Auracle Homes, LLC v. Lamont*,
  478 F. Supp. 3d 199 (D. Conn. 2020)................................................28

*Baker v. Carr*,
  369 U.S. 186 (1962)............................................................................12

*Baptiste v. Kennealy*,
  490 F. Supp. 3d 353 (D. Mass. 2020)............................................12, 28

*Bennett v. Spear*,
  520 U.S. 154 (1997)............................................................................30

*Bols v. Newsom*,
515 F. Supp. 3d 1120 (S.D. Cal. 2021)..............................................15

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*,
90 F.3d 671 (2d Cir. 1996) ................................................................33

*Chevron Corp. v. Donziger*,
833 F.3d 74 (2d Cir. 2016) ..........................................................32, 39

*In re Combustion Equip, Associates, Inc.*,
838 F.2d 35 (2d Cir. 1988) ................................................................33

*Digital Recognition Network, Inc. v. Hutchinson*,
803 F.3d 952 (8th Cir. 2015) ........................................................21, 22

*Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*,
411 F.3d 384 (2d Cir. 2005) ..............................................................33

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
241 F.3d 154 (2d Cir. 2001) ..............................................................31

*Elmsford Apartment Associates, LLC v. Cuomo*,
469 F. Supp. 3d 148 (S.D.N.Y. 2020) ................................................28

*Franklin California Tax-Free Tr. v. Puerto Rico*,
85 F. Supp. 3d 577 (D.P.R. 2015) ......................................................22

*Franklin v. Massachusetts*,
505 U.S. 788 (1992)......................................................................30, 38

*General Motors LLC v. KAR Auto Group of Decorah, Inc.*,
No. 6:20-cv-02039, 2022 WL 1715216
(N.D. Iowa March 11, 2022) .........................................................34, 35

*Grano v. Rappahannock Elec. Coop.*,
552 F. Supp. 3d 563 (W.D. Va. 2021)................................................15

*Haaland v. Brackeen*,
599 U.S. 255 (2023)................................................................36, 37, 38

*HAPCO v. City of Philadelphia*,
482 F. Supp. 3d 337 (E.D. Pa. 2020)............................................12, 28

*Heckler v. Mathews*,
465 U.S. 728 (1984)..............................................................20

*Heights Apartments, LLC v. Walz*,
30 F.4th 720 (8th Cir. 2022) ...............................................12, 28

*HRPT Properties Trust v. Lingle*,
676 F. Supp. 2d 1036 (D. Haw. 2009)......................................23

*Huntington Branch, NAACP v. Town of Huntington*,
689 F.2d 391 (2d Cir. 1982) ...............................................32

*Iten v. Cnty. of Los Angeles*,
No. 22-55480, 2022 WL 17365830 (9th Cir. Nov. 21, 2022)............18

*Iten v. Los Angeles*,
81 F.4th 979 (9th Cir. 2023) ........................................*passim*

*Kensington House NY LLC v. Accardi*,
Index. No. 651365/2022
(Sup. Ct. N.Y. Cnty. May 17, 2023)........................................39

*Konits v. Valley Stream Cent. High Sch. Dist.*,
394 F.3d 121 (2d Cir. 2005) ..................................................2

*Lake Carriers' Ass'n v. MacMullan*,
406 U.S. 498 (1972)..............................................................14

*Larson v. Valente*,
456 U.S. 228 15 (1982)..........................................................31

*Lazar v. Kroncke*,
862 F.3d 1186 (2017)........................................................16, 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...........................................................14, 31

*Lynch v United States*,
292 U.S. 571 (1934)..............................................................16

*Make the Rd. by Walking, Inc. v. Turner*,
378 F.3d 133 (2d Cir. 2004) ..................................................2

*Mark Propco LLC v. Noro*,
    Index No. 157131/2021 (Sup. Ct. N.Y. Cnty. Aug. 30, 2023) ...........................39

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ...................................................................9, 33, 34

*Melendez v. City of New York*,
    16 F.4th 992 (2d Cir. 2021) ......................................................3, 4, 7, 17

*Melendez v. City of New York*,
    No. 20-CV-5301, --F. Supp. 3d--, 2023 WL 2746183
    (S.D.N.Y. March 31, 2023) ............................................................*passim*

*Melendez, et al. v. City of New York, et al.*,
    No. 20-cv-5301 (RA) (S.D.N.Y. Nov. 25, 2020) ..................................3

*Nashville, Chattanooga & St. Louis Ry. v. Wallace*,
    288 U.S. 249 (1933) ...........................................................................30

*Nova Health Sys. v. Gandy*,
    416 F.3d 1149 (10th Cir. 2005) .........................................................21

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) .............................................................22

*In re Old Carco, LLC*,
    470 B.R. 688 (S.D.N.Y. 2012) ....................................................34, 35

*Ragsdale v. Turnock*,
    625 F. Supp. 1212 (N.D. Ill. 1985), *aff'd in part, vacated in part*,
    841 F.2d 1358 (7th Cir. 1988) ...........................................................14

*Reproductive Health Services v. Strange*,
    204 F. Supp. 3d 1300 (M.D. Ala. 2016) .............................................22

*Spectra Photo Art, Inc. v. Mendared, LLC*,
    No. 651179/2022, 2022 WL 16924078
    (Sup. Ct. N.Y. Cnty. Nov. 10, 2022) .................................................35

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................29

*Sullivan v. Syracuse Hous. Auth.*,
  962 F.2d 1101 (2d Cir. 1992) ...............................................................11

*Tweed-New Haven Airport Auth. v. Tong*,
  930 F.3d 65 (2d Cir. 2019) .............................................14, 23, 24, 29

*Tweed-New Haven Airport Authority v. Jepsen*,
  Nos. 17-3481(L), 17-3918(Con.), 2018 WL 3591531
  (2d Cir. July 18, 2018) ...............................................................23, 24

*Utah v. Evans*,
  536 U.S. 452 (2002)..............................................................................38

*WC Capital Management, LLC v. UBS Securities, LLC*,
  711 F.3d 322 (2d Cir. 2013) ...............................................................14

**Statutes**

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 2201 ..........................................................................2, 9, 33

42 U.S.C. § 1983 .....................................................................................2

**Other Authorities**

Fed. R. Civ. P. 56 ...................................................................................2

Fed. R. Civ. P. 65 ...................................................................................2

N.Y.C. Admin. Code § 22-1005 ................................................8, 15, 36

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, of the Federal Rules of Appellate Procedure, Elias Bochner and 287 7th Avenue Realty LLC, Plaintiffs/Appellees in this action, state that they do not have a corporate parent, and there is no publicly held corporation that owns 10 percent or more of either company's stock.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the appeal under 28 U.S.C. § 1291 and the District Court had jurisdiction under 28 U.S.C. § 1331. Plaintiffs Elias Bochner and 287 7th Avenue Realty LLC (hereinafter "Plaintiffs" or "Appellees") agree with the District Court's ruling that Appellees have standing to bring this matter.

## ISSUE PRESENTED FOR REVIEW

Did the District Court properly hold that Plaintiffs have Article III standing to challenge the constitutionality of the Guaranty Law where (a) Plaintiffs suffered an injury-in-fact when the Guaranty Law permanently impaired their bargained-for contractual rights, barring them from collecting over $100,000 in unpaid rent and preventing them from suing on their commercial lease; (b) Plaintiffs' injury is directly traceable to, and caused by, the enactment of the Guaranty Law; and (c) the District Court's decision invalidating the Guaranty Law redressed Plaintiffs' injury by reinstating Plaintiffs' contractual rights in their commercial lease?

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's grant of summary judgment, affirming only if the movant has demonstrated that there is no genuine issue as to any material fact and, hence, that judgment as a matter of law is warranted.  *See, e.g., Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004); *see also* Fed. R. Civ. P. 56(c).  In determining whether a case presents triable factual issues, this Court, like the District Court, may not make credibility determinations or weigh the evidence, *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986), and must resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, *see Konits v. Valley Stream Cent. High Sch. Dist*., 394 F.3d 121, 124 (2d Cir. 2005).

## STATEMENT OF THE CASE

Appellees brought this action for preliminary injunctive and declaratory relief, pursuant to Federal Rule of Civil Procedure 65, 28 U.S.C. § 2201 and 42 U.S.C. § 1983, seeking to enjoin Appellants from enforcing New York City Local Law 55 of 2020 (the "Guaranty Law") declaring it unconstitutional.

Appellees commenced the action on July 10, 2020, asserting that, among other things, the Guaranty Law violated the Contracts Clause.  On July 22, 2020, Plaintiffs filed a motion for preliminary injunction and declaratory relief, arguing that the Guaranty Law unreasonably and substantially impaired their contractual

rights in violation of Article 1, Section 10 of the United States Constitution.  At this time, the parties addressed the issue of the standing of Plaintiffs, and the City agreed that Plaintiffs had standing to bring this action.  In addition, the City filed a motion to dismiss all claims, and by decision dated November 25, 2020, United States District Court Judge Ronnie Abrams decided both motions, granting the motion to dismiss and denying Appellees' motions for a preliminary injunction and declaratory relief.  *Melendez, et al. v. City of New York, et al.*, No. 20-cv-5301 (RA) (S.D.N.Y. Nov. 25, 2020).

Plaintiffs filed a timely notice of appeal to this Court on December 21, 2020, arguing, among other things, that the Guaranty Law is unconstitutional under the Contracts Clause.  In a carefully considered and extensive decision analyzing and applying Contracts Clause jurisprudence to the legislative record and the Guaranty Law itself, this Panel found the Guaranty Law to be constitutionally infirm. *Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021).  Because of at least five separate features of the law, the Second Circuit concluded that the Guaranty Law was neither a reasonable nor appropriate means to achieve the City's stated public purpose.  While leaving it to the District Court to decide the ultimate issue in the first instance, the Second Circuit identified its "serious concerns" that the Guaranty Law did not pass constitutional muster. *Id.* at 1047.  The Panel left room for the parties, on remand to "identify…other circumstances relevant to

3

determining whether the Guaranty Law is [] reasonable and appropriate." *Id.* at 1046.

On remand, and after Appellants conducted document discovery and took the depositions of Appellees, the parties cross-moved for summary judgment. In its motion papers, the City failed to identify any other circumstances relevant to the reasonableness of the Guaranty Law or its passage or point to any record evidence to remedy the defects of the law. The District Court, "guided by the Second Circuit's specific and detailed instruction that the City must justify the reasonableness of the Guaranty Law given 'at least five serious concerns,'" found the Law failed to withstand constitutional scrutiny and granted summary judgment to the Plaintiffs. *Melendez v. City of New York,* No. 20-CV-5301, --F. Supp. 3d--, 2023 WL 2746183, at *8 (S.D.N.Y. March 31, 2023).

In just a single paragraph in its cross-motion for summary judgment, Appellants half-heartedly raised certain "jurisdictional defects." Because of the scant analysis in the main briefing, prior to the oral argument on the parties' respective motions, the District Court ordered additional briefing specifically related to the jurisdictional issues. JA 2812.

With the questions of ripeness, jurisdiction, and standing squarely before it for the second time, the Court below reviewed the full factual record and held that the Guaranty Law directly "invalidated Plaintiffs' bargained-for contract rights"

and that "by being forced to recoup expected rent payment by alternative means, Plaintiffs demonstrate[d] precisely the kind of 'direct and personal stake in the controversy' that the injury-in-fact inquiry seeks to answer." *Melendez*, 2023 WL 2746183, at \*6-7 (citation omitted). The District Court found that Plaintiffs' injury was traceable to the City and the passage of the Guaranty Law because Plaintiffs were threatened by the enforcement of a statute that specifically targets them. *Id.* at \*7. And the harm to Plaintiffs was redressable because a declaration by the District Court that the Guaranty Law was unconstitutional would restore Plaintiffs' trampled constitutional rights and enable them to enforce their contractual guaranty. *Id.* Plaintiffs were not required to first file suit to enforce the guaranty clause in the face of the Guaranty Law which expressly invalidated it, because case law "'does not require litigants to engage in futile gestures such as to jump through a series of hoops' before bringing an action to avail themselves of legal rights." *Id.* at \*7 n.2 (and cases cited therein).

This appeal by the City followed, which seeks to vacate solely on jurisdictional grounds not only the District Court decision below, but the District Court's prior decision on the motion to dismiss as well as this Panel's substantial opinion on the constitutionality of the Guaranty Law under the Contracts Clause.

## SUMMARY OF ARGUMENT

Appellants' brief is a last-gasp attempt to save a statute – the Guaranty Law – that has been declared constitutionally infirm by this Panel and subsequently declared unconstitutional as violative of the Contracts Clause on remand by the District Court. In this appeal, despite years of litigation on the merits, the City effectively concedes the invalidity of the Guaranty Law, abandoning any hope of saving the statute as constitutional on the merits. Instead, the City argues that the District Court – twice – and this Court once, improperly ruled on the constitutionality of the Guaranty Law because Appellees do not have standing and because the harm wrought by the legislation is neither redressable by this action nor traceable to the named Appellants. (*See* Brief for Appellants ("Br.") 7-10). These arguments, a collective Hail Mary attempt to avoid the City's law finally being struck down as unconstitutional, are entirely without merit.

As an initial matter, it should be noted that the issues of standing and jurisdiction have already been litigated in this action and the City argued the merits of the constitutionality of the Guaranty Law in this Court without raising the issues. Though the City makes passing reference to "regrettably [] not recogniz[ing]" the bases of its appeal from the outset of this litigation (Br. 1), in truth, the issues of standing, traceability, and redressability have *twice* been raised in the District Court (both times rejected) and only now, after the Guaranty Law

6

has been declared unconstitutional on the merits, do Appellants seek to resurrect the argument. This Court (in both majority and dissenting opinions) never raised any question as to the standing of the Appellees, found it had jurisdiction to reach the merits of the legislation under the Contracts Clause, and did so in its comprehensive analysis of the Guaranty Law. *See Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021).

Appellants' current argument on appeal that the District Court and this Court lacked jurisdiction to issue their prior decisions proceeds from a self-serving, but incorrect sleight of hand – namely, that this action was brought to vindicate the specific rights of Appellees with respect to their tenant and guarantor under their commercial lease. The argument implies that the relief Appellees seek here, among other things, includes damages from the tenant or guarantor for failing to pay rent during the pendency of the Guaranty Law and that therefore to obtain complete relief Appellees must include the responsible or "enforcing" parties and must bring their claim in state court.

But as Appellees have repeatedly made clear each and every time the City has raised the issue of standing, properly framed, this action seeks injunctive[1] and

---

[1] Appellants disingenuously claim that "[P]laintiffs abandoned their request for an injunction" suggesting that the reason for the decision was because Plaintiffs recognized that the City does not have a role in enforcing the law. (Br. 2). That is flatly not so. As was made clear to the District Court, while Plaintiffs originally sought preliminary injunctive relief, by the time of summary judgment briefing, the

declaratory relief for individuals impacted by the Guaranty Law.  This case challenges the facial constitutionality of legislation under the Contracts Clause, brought against the City, the Mayor and the relevant enforcing City Commissioner, Commissioner Doris of New York City's Department of Small Businesses Services ("SBS").  The action was not brought under New York landlord-tenant law to collect unpaid rent from private parties, but for a declaration of rights and to enjoin the enforcement of a law Citywide that violates the federal constitution.

Accordingly, there is nothing conjectural, abstract, or speculative about the permanent impairment of Appellees' contractual rights caused by the passage of the Law.  The moment it was passed, the Guaranty Law invalidated Appellees' bargained-for contract rights because it rendered unenforceable personal guaranties in commercial leases for defaults occurring between March 2020 and June 2021. On its face, the legislation mandates that the personal guaranty in Appellees' lease "*shall not be enforceable*" to cover defaults occurring during a 16-month period. N.Y.C. Admin. Code § 22-1005 (emphasis added).  Contrary to the City's contentions, it is not a "possibility" that Appellees' contract rights would be impacted by the challenged law—it is a certainty *that has already occurred*. Because of the Guaranty Law, Appellees' commercial lease was severely impaired

---

Guaranty Law had expired (and therefore no longer applied on a forward looking basis), making declaratory judgment on summary judgment the more appropriate and efficient remedy.

and they were prohibited from collecting rent from their guarantor. JA 2768-2778. Appellees are not limited by Appellants' suddenly convenient view that damages represent the only proper relief and that a lawsuit against their guarantor and tenant is the only proper course of action.

By Appellants' logic, no law passed impacting contractual rights or even private litigants, more broadly, could be challenged as unconstitutional. Similarly, according to Appellants' reasoning, a declaratory judgment action would never settle a controversy where damages or some other relief may be sought down the road. Certainly, no declaratory judgment could be brought facially challenging a law under the Contracts Clause, which necessarily impacts the private contractual rights of parties. That, of course, is not the law.

Under the Declaratory Judgment Act a district court may, "in a case of actual controversy within its jurisdiction…declare the rights of and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201(a) (emphasis added). The purpose of the Declaratory Judgment Act is to permit a plaintiff to seek prospective declaratory relief, rather than face exposure to liability of further injury before seeking remedial relief. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). Here, Appellees have not "manufactured" federal court jurisdiction by seeking a declaratory judgment, as Appellants' suggest. Jurisdiction is conferred because

Appellees sought a declaration that their rights under the United States Constitution have been abridged by the City – incontrovertibly a federal question. Appellees need not wait to see whether their tenant or guarantor would raise the Guaranty Law as an affirmative defense—which is exactly what the discovery Appellants sought before the Court below demonstrated—in an arguably frivolous state court collection proceeding to challenge its facial invalidity.

Furthermore, Appellants repeatedly assert that the District Court's ruling in this case has no "preclusive effect" on Appellees' tenant or guarantor in state court. (Br. 16). This argument misses the point. The District Court's decision *does* have a preclusive effect on the Appellants in this case—the City of New York—and the City Council may not, under Judge Abrams' well-reasoned decision, pass a similar draconian law in a similar, slapdash fashion without sufficiently demonstrating its reasonableness and necessity before doing so.

Conspicuously absent from Appellants' largely academic submission is any mention of the actual record and facts in this case—particularly that the City asked for significant discovery regarding the loans taken out by Appellees, their ownership of the property at issue, and then deposed Mr. Bochner and a representative for 287 7th Avenue. While Appellants dismissively characterize Appellees' claim as relying on a "series of events that have yet to take place and that may never take place," (Br. 9), the evidence, reviewed by the District Court,

demonstrates that Plaintiffs did, in fact, seek to collect rent after the passage of the Guaranty Law. The evidence further demonstrated that Plaintiffs' tenant refused to pay, invoked the protection of the Guaranty Law and threatened the Plaintiffs, expressly stating that the "guarantor is not liable for rent, utility expenses or taxes owed by the tenant or for fees or charges relating to the routine maintenance owed by the tenant," during the duration of the Guaranty Law. JA 2770. Because of the Guaranty Law, Appellees were unable to collect $116,000 in rent and taxes due under their commercial lease and were forced to take out a small business administration ("SBA") loan—which has not been forgiven—in the amount of $150,000, to cover the unpaid rent and taxes. This "concrete and particularized" injury, cited by the District Court, *yet never mentioned in Appellants' brief*, is the epitome of the "direct and personal stake in the controversy," required to establish standing. *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1107 (2d Cir. 1992). Appellants' bald assertion that "Plaintiffs have not experienced any 'monetary injury'" (Br. 24) is squarely contradicted by the evidentiary record.

Finally, it merits emphasizing at the outset that noticeably absent from Appellants' submission are citations to *any* Contracts Clause cases where courts have found lack of Article III jurisdiction or standing by plaintiffs impacted by a challenged law. The Guaranty Law in New York City is one of a litany of rent-related and other COVID-19 laws passed around the country in response to the

global pandemic. Many have been challenged as violative of the Contracts Clause, and courts have had occasion to consider the standing of Appellees in these cases. Where plaintiffs' contracts were impacted by the challenged COVID-19 law, courts routinely reject lack of standing arguments, including when local and state municipalities are named as defendants.[2] The courts in all of these COVID-19 cases recognized, either implicitly or explicitly, that plaintiffs demonstrated a "personal stake in the outcome" in challenging the legislation in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of a constitutional question. *Baker v. Carr*, 369 U.S. 186, 204 (1962). This case, which meets that same basic threshold requirement for facial challenges, should fare no different, and the District Court's decision granting summary judgment should be affirmed.

## ARGUMENT

## I. PLAINTIFFS SATISFY THE ARTICLE III STANDING REQUIREMENTS

To satisfy the "'irreducible constitutional minimum' of standing," a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress. *All.*

---

[2] *See, e.g., Iten v. Los Angeles*, 81 F.4th 979 (9th Cir. 2023); *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022); *see also Baptiste v. Kennealy,* 490 F. Supp. 3d 353, 381-87 (D. Mass. 2020); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337 (E.D. Pa. 2020).

*for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 228 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  As the District Court found, Plaintiffs satisfy every prong of the Article III standing requirements.  *Melendez*, 2023 WL 2746183, at *6-7.

### A.  Plaintiffs Have Demonstrated an Injury-in-Fact

With respect to injury-in-fact, the District Court correctly held that the Guaranty Law forever extinguished Appellees' bargained-for contract rights because it provides that any personal guaranty clauses in commercial leases "shall not be enforceable" to cover defaults occurring during the March 2020 to June 2021 time period.  *Melendez*, 2023 WL 2746183, at *6.  Based on the undisputed record evidence before it, the Court found that Appellees were unable to recover over $110,000 in rent and taxes and that "this kind of 'monetary injury' to the Plaintiffs—permanently barring them from collecting more than a hundred thousand dollars in unpaid rent for a prime commercial tenancy in the heart of Manhattan—*plainly establishes that they 'have suffered a concrete injury in fact under Article III.'*"  *Id*. (emphasis added) (citation omitted).

Appellants' argument that Appellees cannot show actual injury is flatly unsupportable.  An injury-in-fact is any invasion of a legally protected interest that is both: a) concrete and particularized; and b) actual or imminent, not conjectural

13

or hypothetical. *Lujan*, 504 U.S. at 560. The Second Circuit has emphasized that the "injury in fact" requirement is a "low threshold." *WC Capital Management, LLC v. UBS Securities, LLC*, 711 F.3d 322, 329 (2d Cir. 2013). Where, as here, "the suit is one challenging the legality of government action . . . the nature and extent of facts that must be averred . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action . . . at issue. If he is, there is ordinarily little question that the action . . . has caused him injury…" *Lujan*, 504 U.S. at 561–62; *see also Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019); *Ragsdale v. Turnock*, 625 F. Supp. 1212, 1220 n.7 (N.D. Ill. 1985), *aff'd in part, vacated in part*, 841 F.2d 1358 (7th Cir. 1988) ("[U]nder the standing requirements of Article III … parties against whom statutes and regulations directly operate may be the 'best' plaintiffs for a constitutional challenge, given their concrete personal stake in the outcome of the litigation").

The Guaranty Law has injured Appellees by "invad[ing their] legally protected interest" in a manner that is both "concrete and particularized" and "actual or imminent," by substantially impairing Appellees' contractual right to enforce the personal guaranty in their commercial lease, for rent arrears for the period March 7, 2020 to June 30, 2021. *Lujan*, 504 U.S. at 560; *see also Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 507 (1972) (stating that if plaintiffs

14

are currently under an obligation imposed by the challenged law, "that in and of itself makes their attack on the validity of the law a live controversy."). Once enacted, the Guaranty Law completely canceled Appellees' contract rights to cover defaults occurring during a 16-month period. N.Y.C. Admin. Code § 22-1005. As this Panel previously observed, the Guaranty Law "does not simply defer a landlord's ability to enforce a personal guaranty; it forever extinguishes it." *Melendez*, 16 F.4th at 1005. Appellees did not bring a "free floating" challenge to the "mere enactment or existence of a statute", as Appellants suggest (Br. 10-11); the Guaranty Law was one that directly threatened and impacted Appellees bargained-for contractual rights in their commercial lease.

Recent Contracts Clause case law is instructive with respect to what sufficiently constitutes "injury-in-fact" with respect to COVID-19 legislation. The Southern District of California, with facts very similar to this matter, reached a similar conclusion with respect to landlords challenging eviction moratoria in *Bols v. Newsom*, 515 F. Supp. 3d 1120, 1131 (S.D. Cal. 2021). The court there concluded that a moratorium lasting "even as little as 29 days is a sufficient time to impose an actual injury." *Id*. at 1131. In *Grano v. Rappahannock Elec. Coop*., 552 F. Supp. 3d 563, 571–72 (W.D. Va. 2021), too, plaintiffs had standing under the Contracts Clause to challenge a law relieving easement holders from paying compensation to plaintiff-landowner for installation of broadband equipment.

Appellees here are property owners and suffer a readily proven economic injury from the permanent extinguishment of their contractual rights to collect rent arrears from guarantors to the leases. Appellees Bochner and 287 7th Avenue were forced to take out an SBA loan in the amount of $150,000 to cover unpaid rent and taxes—which has not been forgiven. JA 1250 ¶ 100, JA 2822:14-22. For purposes of standing, the Appellees have alleged facts sufficient to state a claim that they suffered an injury and that the obligations of their contracts have been "taken away or materially lessened." *Lynch v United States*, 292 U.S. 571, 580 (1934).

The City suggests that Appellees' "only alleged" injury is "the inability to enforce contractual personal guarantees in future contractual litigation." (Br. 13). Even if true—and it is not—the lost expectancy in their commercial lease alone would be sufficient to show "injury in fact."

The Ninth Circuit's decision in *Lazar v. Kroncke*, 862 F.3d 1186 (2017), cited by the District Court, proves the point. In *Lazar*, plaintiff, an ex-wife and beneficiary of her husband's individual retirement account, challenged Arizona's revocation-on-divorce statute, alleging that the application of the statute to her ex-husband's IRA interfered with her contract rights and therefore violated the Contracts Clause. Defendants in the action, like Appellants here, argued that plaintiff had not suffered a cognizable injury-in-fact because her interest in the

16

IRA had not yet vested and that she therefore only possessed an "expectation interest" in the IRA. 862 F.3d at 1198. The Ninth Circuit disagreed, holding that plaintiff had standing to seek a declaratory judgment that Arizona's revocation on divorce statute was unconstitutional under the Contracts Clause because the law "operated to extinguish Lazar's valid expectancy interest in the IRA—an injury which is actual, concrete and particularized." *Id.* at 1198-99.

The same holds true here. Even if Appellees had not actually lost over $110,000 and been forced to take a $150,000 loan to cover taxes and expenses, the Guaranty Law operated to completely extinguish Appellees' valid expectancy interest in their commercial lease—an injury which is actual, concrete and particularized. The injury is a permanent deprivation of contractual rights that were fairly bargained for between commercial landlords and the guarantors to those commercial leases. *Melendez*, 6 F.4th 992 at 1005.

Similarly, Appellants' repeated argument that Appellees' injury is "conjectural," "hypothetical" or contingent upon a "chain of contingencies" (Br. 23) is not only factually incorrect, it is belied by recent Contracts Clause case law in which the exact same argument has been rejected. First, as a factual matter, it is simply not true that Appellees' claim rests on a demand for payment, a failure to pay and a subsequent lawsuit with the Guaranty Law raised as a defense. It is not a "legal defense" in a "hypothetical litigation" that causes the injury here, as

Appellants suggest (Br. 23); it is the Guaranty Law itself that impaired the commercial lease at the time the law was enacted. And it is of no moment that Appellees did not contact the guarantor on their commercial lease directly, as Appellants suggest. (Br. 24) Appellees contacted their counterparty under their commercial lease, the tenant in the building (and their primary contact), who invoked the Guaranty Law on behalf of the guarantor. JA 2770. There is no requirement in the law that the guarantor be contacted directly to establish standing.

Nor is there any requirement that Appellees take any other further steps in the "chain" of events Appellants have outlined to have suffered an injury. In *Iten v. City of Los Angeles*, the City of Los Angeles argued that plaintiff lacked standing to challenge a COVID-related eviction moratorium because it was unclear whether the plaintiff landlord could, in fact, evict his tenant under the moratorium. 81 F.4th 979, 988 (9th Cir. 20203). Los Angeles argued, like Appellants here, that the "speculation" of the possible impact of the law on plaintiff and his tenant was too remote to confer standing and that plaintiff "could have ended his relationship with the Tenant in August 2020 and sued for breach of contract." Appellee's Brief, *Iten v. Cnty. of Los Angeles*, No. 22-55480, 2022 WL 17365830, at *36 (9th Cir. Nov. 21, 2022).

The Ninth Circuit rejected the "injury-in-fact" challenge, ruling that it was sufficient that plaintiff alleged that the moratorium "imposed additional rights, remedies, conditions or procedures that impair the obligations to which he and his Tenant had contracted." *Iten*, 81 F.4th at 988. The injury was not "theoretical" or conjectural because the moratorium applied to plaintiff and altered the "obligation of contract." *Id.* Indeed, so long as the moratorium was in effect, the economic value of plaintiffs' property was diminished. *Id.*

Like the plaintiff in *Iten*, Appellees need not commence legal proceedings and have the Guaranty Law raised as a defense to suffer a cognizable injury. It is undisputed that the Guaranty Law applies to Appellees' commercial lease; they have been stripped of their contractual rights, unable to collect over $100,000 in rent, been forced to take out a loan, and the Guaranty Law has undercut the economic value and security of their property and contract. Nothing more is required to demonstrate injury-in-fact.

## B. Plaintiffs' Injury is Traceable to the Guaranty Law

The District Court also correctly found that Plaintiffs' injury is fairly traceable to the Guaranty Law. *Melendez*, 2023 WL 2746183, at *7. To satisfy the "traceability" or "causation" prong of the standing analysis there must be a causal connection between the injury and the conduct at issue. As Appellants recognize, a plaintiff must show that there is some "government action that is causally

19

connected to [their] injury." (Br. 19) (citation omitted). The District Court held that [w]here, as here "a plaintiff is 'threatened by the enforcement of a statute that specifically targets plaintiffs, the [fairly traceable] requirement is met.'" *Melendez*, 2023 WL 2746183, at *6 (citing *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019)). Appellees have standing because the Guaranty Law permanently impaired their bargained-for contractual rights, and their inability to sue on their commercial lease and collect rent is directly traceable to and caused by the enactment of the Guaranty Law. Appellees are specifically targeted by the Guaranty Law and the "government action" is causally connected to their injury.

At its core, Appellants' argument with respect to traceability attempts to sidestep these well-settled tenets and reframe this case as a pre-enforcement action challenging the prospective application of a statute by the government. The City's characterization invites the inaccurate impression that a plaintiff is only at risk of a legally redressable injury if an "official" attempts to enforce an ordinance against him. The City's characterization ignores the myriad factual variations when a plaintiff *actually* is injured by the passage of an ordinance, even in the absence of direct enforcement. *See, e.g., Heckler v. Mathews*, 465 U.S. 728, 740 n.9 (1984) (plaintiff had standing to challenge a federal statute on constitutional grounds because there was "no doubt about the direct causal relationship between the government's alleged deprivation of appellee's right to equal protection and the

20

personal injury appellee has suffered—denial of . . . benefits solely on the basis of his gender.").

Appellees do not seek to challenge a statute that *may* be applied at some point by a government official in the future. The Guaranty Law is not a statute akin to the pre-enforcement challenge in *Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), cited by Appellants. In *Nova Health Sys.*, abortion medical providers challenged an Oklahoma statute, which made the providers liable for medical costs arising from procedures that may be required in the future on a minor without parental consent or knowledge. The City's enactment of the Guaranty Law, on the other hand, immediately invalidated the guaranty in an existing commercial lease of the Appellees; that is the "immediate coercive" act that is traceable to the passage of the law and Appellees need not wait for "possible future conduct" to challenge its constitutionality. Br. 19-20.

None of the other cases cited by the Appellants bear any resemblance to the facts at issue in this matter and none were brought under the Contracts Clause. In *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), for example, plaintiffs requested *prospective* relief to prohibit Arkansas' attorney general from enforcing a license plate privacy law under the First Amendment. Though heavily relied upon in their submission, Appellants conspicuously neglect to recite the central holding of *Digital Recognition*, that "when a plaintiff brings *a*

*pre-enforcement challenge* to the constitutionality of a particular statutory

provision . . . the named defendants [must] possess authority to enforce the

complained-of provision" because a plaintiff's injury must be "fairly traceable" to

the official sued. *Id.* at 957-58 (emphasis added) (citation omitted). The other

cases cited by Appellants are distinguishable in the same way. *See, e.g.*, *Okpalobi*

*v. Foster,* 244 F.3d 405 (5th Cir. 2001) (pre-enforcement challenge to law holding

abortion providers liable to patients in tort for damage occasioned by abortions).

This case is not a pre-enforcement challenge and the Guaranty Law is not

one that only provides a "defense" in civil suits between private parties.[3] Instead,

it is a Contracts Clause action where the passage of the Guaranty Law itself caused

the injury. As district courts around the country have found, the appropriate

defendants in these types of actions are the entities passing the law. *See, e.g.,*

*Franklin California Tax-Free Tr. v. Puerto Rico*, 85 F. Supp. 3d 577, 594 (D.P.R.

2015), judgment entered, No. 14-1518 FAB, 2015 WL 574008 (D.P.R. Feb. 10,

2015), and *aff'd*, 805 F.3d 322 (1st Cir. 2015), *aff'd*, 579 U.S. 115 (2016) (holding

---

[3] Even if this were a pre-enforcement action, Appellees could satisfy the causation element of standing by alleging that their injury is traceable to the passage of the Guaranty Law. *See Reproductive Health Services v. Strange*, 204 F. Supp. 3d 1300, 1318 (M.D. Ala. 2016) ("in the context of this pre-enforcement challenge to a legislative enactment, the causation element does not require that the defendants themselves have 'caused' [plaintiffs'] injury by their own acts or omissions in the traditional tort sense; rather it is sufficient that the 'injury is directly traceable to the passage of [the Act]." (quoting *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1260 (11th Cir. 2012).

the causation and traceability requirements were met in plaintiffs' Contract Clause claim against the Commonwealth of Puerto Rico because "the Recovery Act's nullification of several statutory and contractual security rights" was a "direct injury" "caused by the Commonwealth's enactment of the Recovery Act."); *see also HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036 (D. Haw. 2009) (finding standing to sue the Governor of Hawaii in a Contracts Clause action challenging the constitutionality of legislation that changed the rent negotiation and appraisal process on commercial and industrial leases).

On the issue of causation, the District Court cited to *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65 (2d Cir. 2019). In *Tweed*, an airport brought suit against the attorney general of the State of Connecticut in his general capacity as enforcer of State laws, challenging a statute that limited the length of the airport's runaway, thus deterring several airlines from carrying their aircrafts and impacting existing plans to upgrade the airport. Defendants argued that plaintiffs lacked standing because there was no evidence that any airline had actually considered whether to bring commercial service even if the runway were lengthened. Brief of Defendant-Appellee, *Tweed-New Haven Airport Authority v. Jepsen*, Nos. 17-3481(L), 17-3918(Con.), 2018 WL 3591531 (2d Cir. July 18, 2018). Defendants posited that a "chain of possibilities" and contingencies—*if* the infrastructure improvement at the airport were implemented, *if* there was viability

23

for new service, if a new airline was confident in the operating conditions, then new customers would *consider* commencing commercial service—severed the causal connection such that no harm was traceable to the challenged law. *Id.*

This Court disagreed, ruling that an injury can be fairly traceable "even when future contingencies of one kind or another might disrupt or derail a project." *Tweed*, 930 F.3d at 71. The point "of a standing inquiry is not to figure out whether a plaintiff will likely achieve a desired result. The point is simply to ensure that a plaintiff has a sufficient nexus to the challenged action in the form of a personal stake in the litigation so that the case or controversy requirements of Article III are met." *Id.*

Appellants cite to the same "chain of contingencies," (Br. 23-24), yet the harm to Appellees here is even more traceable to the challenged law than it was in *Tweed*. The Guaranty Law directly impaired an existing commercial lease and permanently canceled vital contract rights of Appellees. Appellees clearly have a personal stake in the litigation, meeting the case or controversy requirement.

Finally, it is a red herring to assert, as Appellants do, that *Tweed* is distinguishable because there the enforcer of the statute, the Attorney General, was a named defendant. (Br. 21). Indeed, Appellants' repeated argument that an "enforcer" of the Guaranty Law must be a party to this suit is unavailing for at least two reasons. First, Appellees here sued not only the City, but the Mayor of

24

New York, and the Commissioner of the New York City Department of Small Business Services.  As the Amended Complaint alleges, the City enacted the law, the Mayor is "charged with enforcement of…the laws and ordinances of New York City" and Commissioner Doris is responsible for "enforcement of New York City's Administrative Code," where the Guaranty Law is codified.  JA 1020 ¶¶ 58, 60.

Second, as demonstrated above, this case is not a pre-enforcement challenge to a law that is enforced by the government.  As in most Contracts Clause cases, practically, the Guaranty Law is not "enforced" by *anyone*, including individual tenants and personal guarantors.  The City's repeated suggestion that the action must be brought against a municipal entity "enforcing" the Guaranty law would render it completely immune from any constitutional challenge.  There is no requirement that only enforcers of a statute may be sued in a Contracts Clause constitutional challenge.  Further, Appellants' bare assertion that "no relevant actors are defendants in this litigation" (Br. 25) is simply wrong.  This action challenges the constitutionality of a legislative enactment and the Amended Complaint names the City actors—the relevant actors—responsible for that legislative enactment as defendants.

The Ninth Circuit's recent decision in *Iten* reinforces the point.  There, plaintiff, a commercial property lessor—like Appellees here—brought an action

for declaratory judgment alleging that *the City of Los Angeles* had violated his rights under the Contracts Clause when it passed an executive order in response to the COVID-19 pandemic imposing certain restrictions on evictions.  As here, there was no specific government agency or person named as a defendant charged with "enforcing" the moratorium, because the moratorium applied to private contracts and evictions between private counterparties.  The City of Los Angeles argued that plaintiff lacked standing because it was unclear whether the plaintiff's individual tenant would raise the moratorium as an affirmative defense in any potential eviction.

The Ninth Circuit reversed and rejected the argument, holding that it was sufficient that plaintiff alleged that "he was a commercial landlord living in Los Angeles County; that both he and the tenant believed that the Moratorium applied to their lease agreement; and that the Moratorium altered the terms of his contract with his Tenant."  *Iten*, 81 F.4th at 992.  The Ninth Circuit allowed the case to continue against the City and found it more than sufficient that the law "limited the legal procedures [that plaintiff] may take to evict his Tenant for nonpayment of rent; that it prevented him from charging late fees or interest," and that it "imposed additional penalties that chilled his ability to test the viability of eviction."  *Id.*; *see also Allco Finance Ltd. v. Klee*, 861 F.3d 82, 97 (2d Cir. 2017) (claim for a

declaratory judgment was redressable because it was "substantially likely" plaintiff would have future opportunities).

*Iten* applies with equal force here. As in *Iten,* Appellees are commercial landlords living in New York City; Appellees and their tenant believe that the Guaranty Law applies to their commercial lease; and the Guaranty Law radically altered the terms of the commercial lease, leaving Appellees without the ability to collect rent, charge late fees, or to force the tenant to leave the premises. For the same reasons the Ninth Circuit permitted the case to be decided on the merits against the City of Los Angeles, the District Court—and this Court—are correct to reach the merits of the Contracts Clause claim.

In recent years, plaintiffs throughout the country have brought challenges to COVID-19 legislation under the Contracts Clause, often involving facial attacks to eviction or rent moratoria, like the case at bar. In each case, plaintiffs have brought suit not against any purported "enforcers" of the legislation nor their counterparties in any existing lease or contract, as Appellants insist Appellees must here, but against the City or municipality itself, challenging the constitutionality of the law. Universally, courts have decided these cases on the merits. *See Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 913-17 (9th Cir. 2021) (affirming the denial of a preliminary injunction because the Apartment Association was unlikely to succeed on the merits of their Contracts

Clause claim); *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 729 n.8 (8th Cir.

2022), *rehearing denied*, 39 F.4th 479 (8th Cir. 2022); *see also Auracle Homes,*

*LLC v. Lamont*, 478 F. Supp. 3d 199, 224–25 (D. Conn. 2020) (concluding that the

state moratorium did not "operate as a substantial impairment of [the plaintiffs']

contractual rights" because it did not "eliminate [the plaintiffs'] contractual

remedies for evicting nonpaying tenants"); *Baptiste v. Kennealy*, 490 F. Supp. 3d

353, 381–87 (D. Mass. 2020) (same); *HAPCO v. City of Philadelphia*, 482 F.

Supp. 3d 337, 349–53 (E.D. Pa. 2020) (same); *Elmsford Apartment Associates,*

*LLC v. Cuomo*, 469 F. Supp. 3d 148, 168–72 (S.D.N.Y. 2020) (same).

　　　If Appellees were challenging a governmentally enforceable law, to meet the

causality or traceability requirement they might need to name the entity responsible

for enforcing the statute or show a threatened enforcement action.  The Guaranty

Law, however, does not fall into this category of laws.  Appellants' cases are

therefore entirely inapposite.  Both this Panel and the District Court plainly had

jurisdiction to opine on the constitutionality of the law.

### C.　　The District Court's Opinion Redressed a Direct Harm to Plaintiffs' Contractual Rights

　　　Much of the City's appeal is devoted to the argument that this Court and the

District Court's decision constitute "advisory opinions" because Appellees

purportedly cannot obtain relief in this proceeding that would remedy the impact of

the Guaranty Law on their alleged injury.  (Br. 13-14)  The City suggests that the

28

Appellees *could have* sued their guarantor and *could have argued in state court* that the law violated the Contracts Clause. (Br. 13). But just because Appellees *could have* brought a suit in state court does not mean that they *must* have done so. The City's argument, which seeks to artificially constrain what constitutes "redress" in this action to only Appellees' receipt of the unpaid rent, deprives Appellees of the federal courts to resolve their federal constitutional challenge.

Fundamentally, this is a declaratory judgment action seeking a declaration of rights by Appellees clearly injured by the Guaranty Law. That injury is redressable. The District Court's decision invalidating the Guaranty Law reinstated the contract rights of Appellees in their commercial lease. Courts have broad power to adjudicate suits over the private rights of parties "even when plaintiffs alleged only the violation of those rights and nothing more." *E.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 344 (2016) (Thomas, J., concurring)

The District Court found that Plaintiffs had demonstrated that the Guaranty Law "poses [] an absolute barrier to recovering unpaid rent from the guarantor" and held that "[a] finding by this Court that the Guaranty Law violates the Contracts Clause would enable Plaintiffs to enforce the guaranty clause of their commercial lease." *Melendez*, 2023 WL 2746183, at *7; *see also Tweed*, 930 F.3d at 72 (holding that the redressability requirement is met where a favorable decision "will remove the absolute barrier the Statute imposes."). And the District Court's

29

decision reactivated Plaintiffs' contractual rights under their commercial lease. That is all the "redress" required to confer Article III standing. Even assuming the District Court's decision is not binding on state courts (and it has already been found to be persuasive authority by several New York courts), that does not make it "advisory." *See Franklin v. Massachusetts*, 505 U.S. 788, 804 (1992) (holding an action for declaratory judgment could be brought against the Secretary of Commerce regarding the census because it was substantially likely that the President and other executive congressional officials would abide by an interpretation of the census statute and constitution by the District Court "*even though they would not be directly bound by such a determination.*") (emphasis added); *see also Bennett v. Spear*, 520 U.S. 154, 169-71 (1997) (finding redressability satisfied where plaintiffs sought to have the Fish and Wildlife Service advisory opinion set aside because such advisory opinions were often followed by the agencies that directly caused plaintiffs' injuries.).

An action for declaratory relief is a justiciable case or controversy under Article III where, as here, plaintiff seeks "a definitive adjudication of the disputed constitutional right." *Nashville, Chattanooga & St. Louis Ry. v. Wallace*, 288 U.S. 249, 262 (1933). The indispensable prerequisites for declaratory relief are the existence of a live, definite and concrete controversy between adverse parties and circumstances making a binding judicial declaration *useful in establishing their*

*rights*. *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001). Where the plaintiff alleges that he or she was the direct object of the challenged government action, there is "ordinarily little question" that a court can grant prospective relief that redresses the plaintiff's injuries. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). Importantly, "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228 15 (1982); *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 318 (1st Cir. 2012) ("To carry its burden of redressability, [plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitely demonstrate that a victory would completely remedy the harm.").

It cannot be seriously disputed that Appellees were the direct object of the City's governmental action and that the District Court's declaration is "useful" in establishing Plaintiffs' rights and relieving their discrete injury of contractual impairment. Though the City argues in conclusory fashion that "nothing relevant has changed" (Br. 13), in reality much has changed since the declaration that the Guaranty Law violates the Constitution.[4] The District Court found that "the Law

---

[4] Appellants' refrain that "nothing has changed" begs the question why they are actually then appealing the District Court's decision. If the lower court's decision

violates the Contracts Clause by rendering the guaranty clauses in Plaintiffs' commercial leases unenforceable for unpaid rent during the covered period, March 7, 2020 and June 30, 2021, and that Plaintiffs are entitled to summary judgment." *Melendez*, 2023 WL 2746183, at *16. With that declaration, Appellees can, among other things, seek to collect unpaid rent from their tenant (who previously relied on the Guaranty Law's protections), charge additional rent or interest to their tenant, bring an action in federal court or even use the summary judgment decision in future rent negotiations.

The redressability prong of standing "focuses on whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (citation omitted). Appellees have personally benefited in a tangible way from the District Court decision; the Guaranty Law no longer invalidates their guaranty. *See Huntington Branch, NAACP v. Town of Huntington*, 689 F.2d 391, 394 (2d Cir. 1982) (for redressability, "[a]ll that is required is a showing that such relief be reasonably designed to improve the opportunities of a plaintiff not otherwise disabled to avoid the specific injury alleged."). The absolute bar effected by the Guaranty Law has been effaced. Though the City repeatedly stresses that Appellees *could* sue the

---

has absolutely no impact on its conduct or the rights of Appellees in this action, one wonders why this appeal was taken at all.

guarantor for relief, rather than seek a declaratory judgment, it is well established that courts "do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007).

Moreover, the Declaratory Judgment Act was intended to enable parties to adjudicate disputes *before* suffering harm. *See In re Combustion Equip, Associates, Inc.*, 838 F.2d 35, 36 (2d Cir. 1988). The Act specifically contemplates federal court jurisdiction and its application "whether or not further relief is or could be sought." 28 U.S.C. § 2201. When making a determination as to whether a declaratory judgment is proper, courts ask 1) whether a judgement serves a useful purpose in explaining or settling the legal issues involved; and 2) whether a judgment would finalize the controversy and offer relief from uncertainty. *See Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*, 411 F.3d 384, 389 (2d Cir. 2005). The inquiry is necessarily one of degree, and affords the district court great discretion in making a determination. *See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996).

The District Court appropriately exercised its discretion in determining that declaratory relief was appropriate here. The decision served a useful purposes in settling legal issues *between Appellees and the City* regarding the constitutionality

of the Guaranty Law. There was a "substantial controversy" after the passage of the Guaranty Law between the City and Appellees having adverse legal interests of "sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127. Appellees did not obtain a "bare" or "free-floating" declaration that the Guaranty Law violates the Contracts Clause, as Appellants baldly state (Br. 25); they obtained a decision that resolves the "legal rights of the parties"—a decision by the District Court that the City Council abridged Appellees' constitutional rights when it enacted its improper legislation.

*In re Old Carco*, *LLC,* 470 B.R. 688 (S.D.N.Y. 2012) a case relied upon by the District Court, is an illustrative Contracts Clause case in this regard. There, plaintiffs sought a declaration that a Kentucky statute aimed at protecting certain car dealers with contracts rejected by the bankruptcy court violated the Contracts Clause. *Id.* at 697. Defendants were "officers of states that have adopted laws alleged to be contrary to the [] Contract Clause" and Kentucky, among other things, argued that plaintiffs should have had to apply for and been denied a dealer's license before bringing suit. The *Old Carco* Court found this argument "ignore[d] the negative impact" the statute already had on plaintiffs' business and that the declaratory relief sought in federal court was appropriate because the "alternative to pursuing declaratory relief would be to test the constitutionality of the state dealer laws by violating them." *Id.* at 697.

Similarly in *General Motors LLC v. KAR Auto Group of Decorah, Inc.*, No. 6:20-cv-02039 (CJW-KEW), 2022 WL 1715216, at *5 (N.D. Iowa March 11, 2022), another case involving a Contracts Clause challenge, plaintiff sought a declaration that an Iowa law prohibiting it from terminating or refusing to continue a car dealership franchise agreement absent approval by the Department of Transportation impaired and altered plaintiffs existing contractual rights in violation of the Contracts Clause. Plaintiff argued the case was ripe and redressable by declaratory judgment because of the inability to terminate or sue on a breached term of its franchise agreement under the existing law. *Id.* The Court agreed holding that "a declaration that [the challenged statutory provision] is unconstitutional would redress [plaintiff's] injury." *Id.* With such a declaration, plaintiffs "could enforce those contractual provisions in court" and "assert the violation" of the franchise agreement, if necessary. *General Motors LLC*, 2022 WL 1715216, at *5.

The similarities here are self-evident. As in *In re Old Carco LLC* and *General Motors*, Appellees sought a declaratory judgment to test the Guaranty Law's constitutionality rather than risk violating the Guaranty Law by attempting to bring an action against their tenant and/or guarantor in state court to collect unpaid rent. Indeed, as the District Court recognized, prior to its ruling in this action, New York courts repeatedly dismissed claims by landlords against

guarantors, citing the Guaranty Law as the basis for doing so. *See, e.g.*, *Spectra Photo Art, Inc. v. Mendared, LLC*, No. 651179/2022, 2022 WL 16924078, at *2 (Sup. Ct. N.Y. Cnty. Nov. 10, 2022) ("Since Administrative Code § 22-1005 prohibits enforcement of the rent and real estate tax obligations that [the guarantor's] guaranty covers, the complaint's first and second causes of action fail to state a claim for an enforceable liability against [the guarantor]."); *274 Madison Co. LLC v. Vieira*, No. 151756/2020, 2021 WL 4441911 (Sup. Ct. N.Y. Cnty. Sept. 28, 2021), *aff'd*, 205 A.D.3d 403 (1st Dep't 2022) (holding same for period covered by the Guaranty Law); *27 Morton, L.P. v. MDS Fashions, Ltd.*, No. 155681/2020, 2020 WL 6867927, at *2 (Sup. Ct. N.Y. Cnty. Nov. 20, 2020) (same). Appellees were not required to bring an arguably frivolous lawsuit, subjecting their claims to potential dismissal, prior to challenging the law's constitutionality in federal court.[5]

---

[5] Appellants take pains to argue that the District Court's ruling is not binding on state court jurists, yet tucked in a footnote acknowledge that "litigation over guaranties *would likely take place in state court*." (Br. 13-14 n.5) (emphasis added). Putting aside the fact that Appellees need not bring an arguably frivolous state court proceeding against the tenant and guarantor before challenging the constitutionality of the Guaranty Law, left unsaid is that the District Court's decision *would* be binding on any subsequent action brought against the guarantor here (founder and portfolio manager of a California-based hedge fund) to recover unpaid rent in federal court based on diversity jurisdiction. Indeed, where a guarantor resides out of state and the amount in controversy requirement is met, actions to collect on the guaranty would be heard in federal court. .

Appellants repeatedly cite to the Supreme Court's decision in *Haaland v. Brackeen*, 599 U.S. 255 (2023) to support the argument that Plaintiffs' injury is not redressable. The *Haaland* decision is factually distinguishable, did not involve a Contracts Clause challenge, and Appellants' cherry-picked quotations from the decision do not provide this Court with any basis to reverse the District Court's decision. In *Haaland,* the Court heard a challenge to the federal Indian Child Welfare Act (ICWA) legislation regulating custody proceedings for Indian Children on the grounds, in part, that it exceeded Congress's power to regulate Indian affairs. The action was brought by a group of Petitioners, which included the State of Texas and several individuals who alleged that they "intend[ed]" to foster and adopt additional children in need, but had not yet done so. Aside from the speculative nature of their claim, Congress expressly left it to state courts to implement the ICWA and injury to Petitioners could only arise from the ICWA's application in separate state court child-custody proceedings. With a favorable decision on the federal law, Petitioners could more easily overcome ICWA preferences in state court, child-welfare officials would no longer need to implement parent preferences against Petitioners and adoptions would be less vulnerable to being overturned. But there was no immediate impact of the ruling on the Petitioners' intended or actual adoptions.

Not so here.  The District Court's declaration that the Guaranty Law is unconstitutional not only benefits Appellees in subsequent litigation, should Appellees choose to bring such litigation, but the declaration of rights by the District Court eliminated the permanent impairment to their guaranty (and lease) caused by Appellants' enactment of the Guaranty Law, and reactivated Appellees' "good guy" guaranty provisions in their commercial leases.  That is the tangible and immediate result of the Court's ruling and there is no subsequent decision that must be implemented by state courts to effectuate Judge Abrams' decision.  Should Appellees elect to bring a further enforcement action to obtain the lost rent, that is an action for another day, involving other parties.

It merits noting while Appellants rely almost exclusively on *Haaland* and repeatedly argue that a state court would not be bound by the District Court's decision in this action, the Supreme Court has previously found standing and justiciability in many cases in which the "practical consequence" of a ruling would simply "amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."  *Utah v. Evans*, 536 U.S. 452, 464 (2002) (citing cases).  In fact, the Supreme Court has found that redressability still exists where non-party actors are "substantially likely" to "abide by an authoritative interpretation of the [federal] statute and constitutional provisions[s] by the District Court, *even though they would not be directly bound*."

*Franklin v. Massachusetts*, 505 U.S. at 803 (emphasis added). Notably, *Haaland,* a case predominantly concerning federalism, commandeering, and Congress's ability to legislate in the area of Indian affairs, did not overrule these well-settled precedents, and they all apply with equal force here.

One final point merits emphasis. Well-settled case law makes clear that to establish redressability, Appellees need only demonstrate that they would personally benefit in a "tangible way" from the Court's determination. *Chevron Corp. v. Donziger*, 833 F.3d at 121. Since this Panel's decision, at least three New York state courts have adopted the reasoning on the constitutional infirmities of the Guaranty Law as "thorough and sound" and applied the decision of Judge Abrams and awarded damages to plaintiffs for unpaid rent. *See Mark Propco LLC v. Noro,* Index No. 157131/2021 (Sup. Ct. N.Y. Cnty. Aug. 30, 2023) (Adams, J.); *Kensington House NY LLC v. Accardi*, Index. No. 651365/2022 (Sup. Ct. N.Y. Cnty. May 17, 2023) (Bluth, J.). Plainly, as these cases show, should Appellees decide to bring an action in state court, they will personally benefit from the Court's determination.

## <u>CONCLUSION</u>

For the reasons stated here, this Court should affirm the District Court's

decision.

Dated:  New York, New York
        November 7, 2023

**STROOCK & STROOCK & LAVAN LLP**

By:  */s/ Claude G. Szyfer*
     _____
     Claude G. Szyfer
     (A Member of the Firm)
     David Kahne
     Darya Anichkova
     180 Maiden Lane
     New York, New York 10038
     (212) 806-5400

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(5) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 9,362 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: November 7, 2023
　　　New York, New York


　　　　　　　　　　　　　　*/s/ Claude G. Szyfer*　　　　　　　
　　　　　　　　　　　　　　Claude G. Szyfer