# 23-683

## United States Court of Appeals
## for the Second Circuit

ELIAS BOCHNER and 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees*,

MARCIA MELENDEZ, JARICAN REALTY INC.,
1025 PACIFIC LLC, LING YANG, TOP EAST REALTY LLC,
and HAIGHT TRADE LLC,

*Plaintiffs*,

*against*

CITY OF NEW YORK, a municipal entity, BILL DE BLASIO, as
Mayor of the City of New York, LOUISE CARROLL,
Commissioner of New York City Department of Housing
Preservation & Development, and JONNEL DORIS,
Commissioner of New York City Department of Small
Business Services,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of New York

## REPLY BRIEF

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
  *of Counsel*

November 28, 2023

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-2490 or -2502
jdavies@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ii

PRELIMINARY STATEMENT .................................................................. 1

ARGUMENT ............................................................................................ 3

    A.  Plaintiffs cannot meet Article III's redressability requirement .................................................................... 4

        1. As plaintiffs effectively concede, the district court's judgment does not provide legal redress ................................ 4

        2. A bare declaration about the constitutionality of a statute does not satisfy Article III. ..................................... 14

    B.  Any alleged injury is not traceable to the defendants, who indisputably have no role in enforcing the law. ....................... 20

    C.  Plaintiffs have not shown an actual, concrete, imminent injury. .................................................................... 31

CONCLUSION ...................................................................................... 35

CERTIFICATE OF COMPLIANCE ....................................................... 36

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*141 Ave. A Assocs., LLC v. Sneak EZ LLC*,
   NY Slip Op. 51081(U) ............................................................ 14

*Apartment Association of Los Angeles County, Inc. v. City of Los Angeles*,
   10 F.4th 905 (9th Cir. 2021) .................................................. 32

*In re Application for Appointment of Indep. Counsel*,
   766 F.2d 70 (2d Cir. 1985) ...................................................... 4

*Auracle Homes, LLC v. Lamont*,
   478 F. Supp. 3d 199 (D. Conn. 2020)................................... 32

*Baptiste v. Kennealy*,
   490 F. Supp. 3d 353 (D. Mass. 2020)................................... 32

*Bennett v. Spear*,
   520 U.S. 154 (1997).................................................................. 13

*Blaisdell v. Home Bldg. & Loan Ass'n*,
   189 Minn. 422 (1933) .............................................................. 29

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*,
   402 U.S. 313 (1971) .................................................................. 11

*Bols v. Newsom*,
   515 F. Supp. 3d 1120 (S.D. Cal. 2021) ............................... 34

*Bronson v. Swensen*,
   500 F.3d 1099 (10th Cir. 2007)............................................. 24

*California v. Texas*,
   141 S. Ct. 2104 (2021)............................................ 6, 15, 22, 24

ii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Camreta v. Greene*,
    563 U.S. 692 (2011) ............................................................... 10

*Digital Recognition Network, Inc. v. Hutchinson*,
    803 F.3d 952 (8th Cir. 2015) ............................ 13, 17, 24, 28

*E. New York Sav. Bank v. Hahn*,
    326 U.S. 230 (1945) ............................................................... 29

*E.T. v. Paxton*,
    41 F.4th 709 (5th Cir. 2022) ............................................... 19

*Elmsford Apartment Associates, LLC v. Cuomo*,
    469 F. Supp. 3d 148 (S.D.N.Y. 2020) ................................. 33

*Franklin California Tax-Free Trust v. Puerto Rico*,
    85 F. Supp. 577 (D.P.R. 2015) ............................................ 26

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ......................................................... 11, 12

*General Motors LLC v. KAR Auto Group of Decorah, Inc.*
    No. 6:20-cv-02039, 2022 U.S. Dist. LEXIS 96188 (N.D.
    Iowa Mar. 11, 2022) ............................................................... 9

*Grano v. Rappahannock Elec. Coop.*,
    552 F. Supp. 3d 563 (W.D. Va. 2021) ........................... 34, 35

*Haaland v. Brackeen*,
    143 S. Ct. 1609 (2023) ................................................. *passim*

*HAPCO v. City of Philadelphia*,
    482 F. Supp. 3d 337 (E.D. Pa. 2020) ........................... 32, 33

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ............................................................... 23

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Heights Apartments, LLC v. Walz,*
  30 F.4th 720 (8th Cir. 2022) ............................................................. 32

*Hewitt v. Helms,*
  482 U.S. 755 (1987) ........................................................................ 19

*Home Building & Loan Association v. Blaisdell,*
  290 U.S. 398 (1934) ........................................................................ 29

*HRPT Properties Trust v. Lingle,*
  676 F. Supp. 2d 1036 (D. Haw. 2009)............................................. 26

*Igartua-de la Rosa v. United States,*
  417 F.3d 145 (1st Cir. 2005) ........................................................... 13

*Iten v. City of Los Angeles,*
  81 F.4th 979 (9th Cir. 2023) .......................................... 30, 31, 35, 36

*Lake Carriers' Association v. Macmullan,*
  406 U.S. 498 (1972) ........................................................................ 34

*Lazar v. Kroncke,*
  862 F.3d 1186 (9th Cir. 2017)......................................................... 35

*Lewis v. Governor of Ala.,*
  944 F.3d 1287 (11th Cir. 2019).................................................. *passim*

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................... 8, 9

*Mansion Realty LLC v. 656 6th Ave Gym LLC,*
  79 Misc. 3d 372 (Sup. Ct. N.Y. Cnty. 2023) .................................. 14

*Massachusetts v. Mellon,*
  262 U.S. 447 (1923) ................................................................. 15, 36

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*MedImmune v. Genentech, Inc.*,
  549 U.S. 118 (2007) (Resp. Br. 33) ...................................... 20

*Melendez v. City of New York*,
  16 F.4th 992 (2d Cir. 2021) ........................................... 16, 30

*Melendez v. City of New York*
  (2d Cir. No. 20-4238), Dkt. No. 103 .................................. 16

*Mikel v. Quin*,
  58 F.4th 252 (6th Cir. 2023) ............................................ 15

*Muskrat v. United States*,
  219 U.S. 346 (1911) ....................................................... 15

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ........................................ 11

*Nova Health Sys. v. Gandy*,
  416 F.3d 1149 (10th Cir. 2005) ................................. 22, 24, 28

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) (en banc) ................... 22, 23, 24, 28

*Old Carco Motors LLC v. Suthers*,
  470 B.R. 688 (S.D.N.Y. 2012) ........................................... 9

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ....................................................... 10

*Reprod. Health Servs. v. Strange*,
  3 F.4th 1240 (11th Cir. 2021) .......................................... 25

*Reproductive Health Services v. Strange*,
  204 F. Supp. 3d 1300 (M.D. Ala. 2016) .............................. 25

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ....................................................... 18

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .................................................................. 17

*Support Working Animals, Inc. v. Governor of Fla.,*
    8 F.4th 1198 (11th Cir. 2021) ............................................... 17

*Sveen v. Melin,*
    138 S. Ct. 1815 (2018) ............................................................ 29

*Tweed-New Haven Airport Authority v. Tong,*
    930 F.3d 65 (2d Cir. 2019) ............................................... 26, 27

*United States v. Texas,*
    143 S. Ct. 1964 (2023) .......................................................... 3, 6, 29

*Utah v. Evans,*
    536 U.S. 452 (2002) (Resp. Br. 30) ................................. 11, 13

*Valley Forge Christian Coll. v. Ams. United for Separation of
    Church and State, Inc.,*
    454 U.S. 464 (1982) .............................................................. 15

*W.B. Worthen Co. v. Thomas,*
    292 U.S. 426 (1934) .............................................................. 29

*Whole Woman's Health v. Jackson,*
    142 S. Ct. 522 (2021) ...................................... 6, 16, 17, 30

**Statutes**

City of L.A. Mun. Code § 49.99.8 ......................................... 32

N.Y.C. Admin. Code § 22-1005................................................. 30

Phila. Code § 9-804 .................................................................. 33

Phila. Code § 9-807 .................................................................. 33

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Other Authorities**

County of Los Angeles, *Resolution of the Board of Supervisors of the County of Los Angeles Further Amending and Restating the Executive Order for an Eviction Moratorium During Existence of a Local Health Emergency Regarding Novel Coronavirus (COVID-19)* (Jan. 24, 2023) ....................................................................... 31

William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153 (2023) ...................................................... 6

## PRELIMINARY STATEMENT

Plaintiffs filed this lawsuit seeking a declaration that a pandemic-era law of the City of New York prohibiting landlords from enforcing certain personal guarantees underlying commercial leases is unconstitutional. But they did not sue the guarantors. Instead, they sued the City and three of its officials, none of whom, as plaintiffs concede, are involved with the law's enforcement. And, though they have obtained the exact relief they sought, it has not redressed their claimed injury. Legally, they are no more or less able to enforce the guaranty today than when they began this lawsuit.

In response, plaintiffs argue that it is the law itself—not any of these named defendants—that caused their claimed injury. And they argue that it is the district court's opinion—not its judgment—that redressed the injury. But those arguments run into an unbroken wall of Supreme Court precedent emphasizing that Article III requires a plaintiff to show that a judgment in his favor, not merely the persuasive power of a court's opinion, would redress a claimed injury caused by the named defendants.

Plaintiffs' response is largely to ignore this precedent and raise arguments that have been definitively rejected. They argue that a declaration against the City, standing alone, can redress their injury. But the Supreme Court has held that a declaration without a claim-preclusive effect on a relevant party is an impermissible advisory opinion. And plaintiffs argue that, even though no defendant enforces the challenged law, they must be permitted to challenge it via this lawsuit or it would be immune from challenge. But parties often litigate the constitutionality of laws in private litigation in state courts, subject to potential Supreme Court review, as has been the case with numerous previous Contracts Clause challenges. Plaintiffs are not entitled to an federal venue to litigate the Guaranty Law's constitutionality simply because that is their preference.

Article III's limitations on federal jurisdiction are fundamental, and the federal courts are obliged to enforce them rigorously. Plaintiffs cannot meet these rigorous requirements, and their Contracts Clause claim should be dismissed.

## ARGUMENT

Throughout their brief, plaintiffs make the core error of treating standing as "merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated" rather than as "a part of the basic charter promulgated by the Framers of the Constitution." *United States v. Texas*, 143 S. Ct. 1964, 1969 (2023) (cleaned up).[1] They freely concede that the Guaranty Law is not enforced by the defendants, but argue that means they must have standing to mount a direct challenge to it in the form of a declaratory judgment action against the City seeking a bare declaration that the law is unconstitutional, untethered to any relevant defendant (Brief for Appellees ("Resp. Br.") 25).

That is not the law. Article III's requirements do not vary based on the nature of the case, and cases brought under the Contracts Clause are no different than any other federal litigation. Plaintiffs must still show, among other things, that a federal court's *judgment* in their favor, not the persuasive or precedential force of a court's reasoning in an

---

[1] This brief uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.

3

*opinion*, would redress their claimed injury. While, throughout their brief, plaintiffs argue they need only have a "personal stake in the outcome" of the case (Resp. Br. 5, 11, 12, 14, 24), this Court has explained that phrase is "not intended to substitute" for a showing that a plaintiff has met "Article III's rigorous actual case-or-controversy requirements." *In re Application for Appointment of Indep. Counsel*, 766 F.2d 70, 74 (2d Cir. 1985). Because plaintiffs cannot meet those rigorous requirements, this Court should vacate the district court's order, along with the portions of this Court's prior opinion relating to the Contracts Clause claim and the commercial-tenant anti-harassment law claim, and dismiss those claims for lack of jurisdiction.[2]

## A. Plaintiffs cannot meet Article III's redressability requirement.

### 1. As plaintiffs effectively concede, the district court's judgment does not provide legal redress.

As the Supreme Court recently reaffirmed, to satisfy the redressability requirement, a plaintiff must be able to show that the

---

[2] Plaintiffs do not dispute that, if this Court dismisses for lack of standing, the relevant portions of its prior decision should be vacated.

4

relief sought will remedy their alleged injury by the force of the judgment, "not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1639 (2023) (cleaned up). The fact that another court might "defer to a federal court's interpretation of federal law" is insufficient—a plaintiff must show that a declaration in their favor would "establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata." *Id.* (cleaned up).

Here, the district court's judgment did nothing to remedy plaintiffs' alleged injury. It provided them with an opinion that may or may not be persuasive if they ever try to enforce their personal guaranty. It does not bind anyone relevant as a matter of preclusion; not the guarantor, nor any state court that might consider a Contracts Clause challenge to the Guaranty Law.

Plaintiffs dispute none of this. Indeed, they embrace it; they lead off their redressability section by arguing that the district court's "[o]pinion"—not its judgment—redressed a harm to their rights (Resp. Br. 28). But that is not how redressability works, as the Supreme Court

5

has been at pains to point out in several recent decisions. *See*, *e.g.*, *Haaland*, 143 S. Ct. at 1639; *United States v. Texas*, 143 S. Ct. 1964, 1970–71 (2023); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021); *California v. Texas*, 141 S. Ct. 2104, 2116 (2021); *see also* William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153, 177–79 (2023) (noting the Supreme Court's focus in *Haaland* and *California v. Texas* on "the centrality of remedies specific to the parties"). Plaintiffs have no answer to this recent, on-point Supreme Court authority. They fail to engage with the reasoning in *Haaland* and utterly ignore *Whole Woman's Health* and *California v. Texas*.

Plaintiffs go on to argue that the district court's declaration redresses their injury because it could have some downstream effect on their likelihood of recovery (*see* Resp. Br. 32, 39). But the mere potential for an increased likelihood of recovery is insufficient. The en banc Eleventh Circuit rejected precisely that argument in highly similar circumstances. *Lewis v. Governor of Ala.*, 944 F.3d 1287 (11th Cir. 2019) (en banc). There, the City of Birmingham increased the minimum wage, but the increase was enforceable only through a private right of action

brought by employees against their employers. *Id.* at 1292. In response, the state passed a law preempting Birmingham's law. *Id.* at 1292–93. Plaintiffs sued the Governor and Attorney General, seeking a declaration that the state's preemption law was unconstitutional. *Id.* at 1294.

The employers, like the guarantors here, were "non-parties to th[e] litigation" and thus "wouldn't be bound by a judgment invalidating" the challenged law. *Id.* at 1303. Even if the court in *Lewis* had declared the preemption law unconstitutional, when the employee-plaintiffs filed a new suit against their employers to enforce the minimum wage law, the employer-defendants in that future litigation could still raise the preemption law as a defense, and "when plaintiffs assailed the [preemption law] as unconstitutional … their employers would defend it anew." *Id.* at 1304. The exact same is true here—the plaintiffs could sue their guarantor, the guarantor could raise the Guaranty Law as a defense, and the plaintiffs would challenge its constitutionality again.

In those circumstances, plaintiffs cannot meet the redressability requirement. *Id.* at 1305. Substituting employers for guarantors, the

court's reasoning tracks this case exactly: "plaintiffs haven't sued their employers, and (to state the obvious) the relief that plaintiffs request in this action wouldn't constrain those employers, who are not parties to the suit and who wouldn't be obliged—at least in any binding sense—to honor an incidental legal determination the suit produced." *Id.* at 1301–02 (cleaned up). And, like here, "a federal-court judgment declaring [the challenged law] invalid" would not be "binding on [state] courts," which would decide "the vast majority of cases brought … under the [minimum-wage] ordinance." *Id.* at 1302.

Next, plaintiffs argue they were the "direct object" of the government action, and so the judgment therefore must redress their injury (Resp. Br. 31). But their argument misunderstands the import of the cases on which they rely. Certainly, where the plaintiff is the "direct object" of government action in the sense that they are subject to a law that will be enforced against them by a government actor, they have standing to seek a judgment precluding the government actor from enforcing the law against them. Indeed, as the case they cite explains, that conclusion turns on the fact that the court can issue a "judgment preventing or requiring" some government action. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561 (1992). Here, there is no such judgment that can be issued against these defendants.

Plaintiffs continue to rely on *General Motors LLC v. KAR Auto Group of Decorah, Inc.* No. 6:20-cv-02039, 2022 U.S. Dist. LEXIS 96188, at *5 (N.D. Iowa Mar. 11, 2022), and *Old Carco Motors LLC v. Suthers*, 470 B.R. 688 (S.D.N.Y. 2012). As we explained in our opening brief (Brief for Appellants ("App. Br.") 17–18), those cases are both nonbinding and distinguishable on the basis that the government defendants had authority to enforce the challenged laws. Plaintiffs ignore this critical distinction (*see* Resp. Br. 34–35). Nor is it relevant to the redressability analysis that New York courts had dismissed other Guaranty Law cases (*id.* at 35–36).

Plaintiffs argue in a footnote that a hypothetical Guaranty Law action would be brought in federal court under diversity jurisdiction and, therefore, the district court's decision "*would* be binding on any subsequent action brought against the guarantor" (Resp. Br. 36 n.5). But they once again ignore the critical and categorical distinction between a decision's potential value as *precedent*, on the one hand, and

9

a judgment's binding force as a matter of *preclusion*, on the other. Only the latter is relevant on the question of redressability.

Plaintiffs' argument thus succinctly encapsulates their fundamental misunderstanding of the difference between the effect of a court's *opinion* and the effect of its *judgment*. A valid declaratory judgment must have a relevant claim-preclusive effect. *Haaland*, 143 S. Ct. at 1639. But, of course, the judgment in this case would not be binding on the guarantor.[3] It would, in fact, be "a violation of due process for a judgment to be binding on a litigant who was not a party" to the prior proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *see also Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313, 329 (1971).

Further, while essentially ignoring recent, binding Supreme Court precedent, plaintiffs rely on *Franklin v. Massachusetts*, 505 U.S. 788 (1992), and *Utah v. Evans*, 536 U.S. 452 (2002) (Resp. Br. 30, 38–39). Neither alters the analysis. First, though plaintiffs do not mention it,

---

[3] Though a decision's potential value as precedent is irrelevant to the redressability issue, plaintiffs are also wrong that the decision would be binding precedent. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court is not binding precedent … in … the same judicial district, or even upon the same judge in a different case." (cleaned up)).

the portion of the opinion in *Franklin* discussing standing, Part III, "did not garner the support of a majority of the Supreme Court and is therefore not controlling." *Newdow v. Roberts*, 603 F.3d 1002, 1012–13 (D.C. Cir. 2010); *see also Franklin*, 505 U.S. at 789–90 (listing only three Justices joining the portion of the opinion containing the standing discussion and noting that Justice O'Connor "delivered the opinion of the Court, except as to Part III").

And the opinion of the Court in *Haaland*, which did garner a majority, adopts Justice Scalia's concurrence in *Franklin*, which departed from the plurality on standing and would instead have held that the plaintiffs did not meet the redressability requirement for the same reason plaintiffs cannot satisfy it here: because "'[r]edressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power.'" *Haaland*, 143 S. Ct. at 1639 (quoting *Franklin*, 505 U.S. at 825 (Scalia, J., concurring in part and concurring in judgment)). So, while plaintiffs argue that *Haaland* "did not overrule" *Franklin* (Resp. Br. 39), there was no need to overrule it because it was not a majority opinion in relevant part. Instead,

11

*Haaland* adopted Justice Scalia's concurrence, to which plaintiffs offer no response.

Second, *Franklin* is distinguishable. In that case, the Commerce Secretary was obligated by statute to provide the President a census report, which the President consults before sending his own report to Congress. 505 U.S. at 799. Therefore, a plurality of the Supreme Court found declaratory relief as to the Secretary's duty would make it "likely" the President would take the action desired by the plaintiffs, even if he was not obligated to do so. *See id.* at 803. There is no corresponding advisory relationship between the City defendants and guarantors or the state courts in this case.

As to *Evans*, compliance with the any declaration relating to the need for a new census report "would be purely mechanical." *Evans*, 536 U.S. at 463. Here, it would not be merely the mechanical action of another actor, also within the government, that would redress plaintiffs' injuries. *See Igartua-de la Rosa v. United States*, 417 F.3d 145, 156 (1st Cir. 2005) (en banc) (Lipez, J., concurring) (drawing the same distinction); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d

952, 959 (8th Cir. 2015) (same). It would require the actions of independent third parties.[4]

Finally, plaintiffs' concluding paragraph illustrates the precise reason they fail to meet the redressability requirement. They point out that some New York state courts have "adopted the reasoning" of the district court, even though they were not bound by its judgment (Resp. Br. 39).[5] But that shows exactly why the district court's decision is an impermissible advisory opinion. Redressability requires the judgment to have an effect, not just the persuasive effect of a court's opinion. *Haaland*, 143 S. Ct. at 1639 (cleaned up). Plaintiffs agree that any benefit they obtained was from the opinion's persuasive effect, not the legal effect of its judgment. And that means they cannot meet the redressability requirement.

---

[4] Plaintiffs' reliance on *Bennett v. Spear*, 520 U.S. 154 (1997), is even further afield. There, the Supreme Court stressed that a nonparty agency would likely comply because failure to do so would have exposed it to "substantial civil and criminal penalties, including imprisonment" and distinguished circumstances, like the ones here, where another actor is "*independent*." *Bennett*, 520 U.S. at 169–70.

[5] Some state courts have also gone the other way, declining to follow the decision. *See 141 Ave. A Assocs., LLC v. Sneak EZ LLC*, NY Slip Op. 51081(U), ¶ 2 (Sup. Ct. N.Y. Cnty. 2023); *Mansion Realty LLC v. 656 6th Ave Gym LLC*, 79 Misc. 3d 372, 380 n.4 (Sup. Ct. N.Y. Cnty. 2023)

### 2. A bare declaration about the constitutionality of a statute does not satisfy Article III.

Plaintiffs also argue that the district court's judgment provides redress because it sets out a "declaration of rights" (Resp. Br. 8, 29, 38). That is merely another way of saying all they sought and obtained was a declaration that the Guaranty Law is unconstitutional without legal effect—in other words, an advisory opinion. *See, e.g.*, *California*, 141 S. Ct. at 2116; *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72 (1982); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *Muskrat v. United States*, 219 U.S. 346, 359–62 (1911). Every plaintiff who seeks a declaration that a law is unconstitutional contends the law has itself harmed their rights, but that does not absolve them of the need to prove standing. *See Mikel v. Quin*, 58 F.4th 252, 259 (6th Cir. 2023) ("Declaratory judgments are not get-out-of-standing-free cards.").

Plaintiffs also argue that the decision "reinstated" or "reactivated" their rights in their guaranty and "effaced" or "eliminated" the

14

Guaranty Law (Resp. Br. 29, 30, 32, 38).[6] But that again misunderstands the effect, or lack thereof, of the district court's judgment. Plaintiffs are no more or less barred from seeking to enforce their contract rights than they were before the district court's decision issued. Likewise, guarantors are no more or less barred from raising the Guaranty Law as a defense. Plaintiffs' argument is akin to that made by the plaintiffs in *Whole Woman's Health*, who argued their rights were immediately chilled by the mere enactment of S. B. 8, which permitted private civil actions against abortion providers. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 530 (2021). The plaintiffs there argued, among other theories, that an injunction against the Texas Attorney General would "bind any private party who might try to

---

[6] Plaintiffs puzzlingly refer to their rights "in their commercial lease" and contend that, with the district court's declaration, they can "seek to collect unpaid rent from their tenant" and "charge additional rent or interest to their tenant" (Resp. Br. 29–30, 32). But the Guaranty Law had no effect on their commercial leases or their ability to collect rent from their *tenant*. As plaintiffs were at pains to point out in the prior appeal, the guaranty is a "separate agreement entirely" and a "separate undertaking and self-standing document" with different parties (Appellant's Reply Brief, *Melendez v. City of New York* (2d Cir. No. 20-4238), Dkt. No. 103 at 16 n.8); *see also Melendez v. City of New York*, 16 F.4th 992, 1034 (2d Cir. 2021) (noting that there is "one contractual bargain between landlord and tenant and another contractual bargain between landlord and guarantor"). And, even if correct, plaintiffs' observations only reinforce that the proper defendants would be their contractual counterparties.

15

bring an S. B. 8 suit against them." *Whole Woman's Health*, 142 S. Ct. at 534. But the Supreme Court rejected this argument, explaining that a court could not issue "an injunction against any and all unnamed private persons who might seek to bring their own S. B. 8 suits." *Id.* at 535.

The Court reached this conclusion because, consistent with historical practice, the courts may not "purport to enjoin challenged laws themselves." *Whole Woman's Health*, 142 S. Ct. at 535; *see also Steffel v. Thompson*, 415 U.S. 452, 469 (1974) (a declaratory judgment "cannot make even an unconstitutional statute disappear"). Instead, courts have the power only to "enjoin named defendants from taking specified unlawful actions." *Whole Woman's Health*, 142 S. Ct. at 535. Even after the district court's decision, the Guaranty Law "remain[s] on the books" and the plaintiffs remain "in the same position they were in when they filed the operative complaint." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021); *see also Digital Recognition Network*, 803 F.3d at 958 ("A district court has no authority to enjoin the statute[.]").

Plaintiffs also ignore that the crux of a valid declaratory judgment is that it produces a claim-preclusive effect. *Haaland*, 143 S. Ct. at 1639. Instead, they resort to the circular argument that the declaration redresses their injuries because it "establish[es their] rights" (Resp. Br. 31). But the only thing that "saves proper declaratory judgments from a redressability problem" is the existence of a "preclusive effect on a traditional lawsuit that is imminent." *Id.* Plaintiffs cannot identify any preclusive effect the declaration they obtained has on any imminent lawsuit, because there is no such effect—there is no suit that the City would, or could, have brought against plaintiffs.[7] While they contend that the judgment established "their" rights, it did no such thing. It is impossible to identify any legal right they have now that they did not have before the suit was filed.

---

[7] Plaintiffs cite Justice Thomas's concurrence in *Spokeo v. Robins*, 578 U.S. 330 (2016), for the proposition that a plaintiff can bring suit where they have alleged a bare violation of a private right (Resp. Br. 29). But Justice Thomas referred to situations where "one private party has alleged that another private party violated his private rights." *Spokeo*, 578 U.S. at 347 (Thomas, J., concurring). Where a plaintiff sues a public entity, the Court's standing doctrine "den[ies] private litigants the right to test the abstract legality of government action," *id.*, precisely what plaintiffs seek to do here.

17

Plaintiffs instead argue, not that any injunction against any defendant "would redress their injuries, but rather that an injunction would clear the way to allow *third parties* … to redress their injuries. But that's not how redressability works." *E.T. v. Paxton*, 41 F.4th 709, 721 (5th Cir. 2022). What makes something a "judicial resolution of a case or controversy rather than an advisory opinion" is that it "*affects the behavior of the defendant towards the plaintiff.*" *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). The district court's judgment has no such effect. Perhaps plaintiffs could have obtained redress by seeking a declaration against their guarantor, as opposed to the municipal defendants, but that is not the action plaintiffs pursued.

Nor do the cases plaintiffs cite indicating that declaratory judgment actions may be brought before a plaintiff "suffers harm" or "expose[s] himself to liability" assist their cause (Resp. Br. 33 (cleaned up)). To start, their argument that a declaratory judgment may be brought "*before* suffering harm" (Resp. Br. 33) is flatly at odds with their contention that they suffered the alleged harm when the law was passed and that this is not a "pre-enforcement" challenge (Resp. Br. 17, 20). And in any case, their argument about the permissible timing of a

declaratory suit does nothing to cure their core problem of having sued the wrong defendants.

Moreover, plaintiffs truncate the quotation from the Supreme Court's decision in *MedImmune v. Genentech, Inc.*, 549 U.S. 118 (2007) (Resp. Br. 33), which, in fact, supports the City. The Court explained that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis of the threat." *MedImmune*, 549 U.S. at 128–29. So, a plaintiff may bring suit to challenge "the constitutionality of a law threatened to be enforced" where there is a "genuine threat of enforcement" by the government. *Id.* at 129. But, as plaintiffs concede, there is no threatened enforcement by the government here because none of the defendants has any power to enforce the challenged law.

Seeking a declaratory judgment does not obviate the need to prove standing, and the declaration plaintiffs obtained offers no redress. The judgment does not declare anything about *these* plaintiffs' rights as against *these* defendants. It does not offer a shred of "legally enforceable protection from … allegedly imminent harm." *Haaland*, 143 S. Ct. at

19

1640. Because plaintiffs obtained "nothing more than an opinion, … they cannot satisfy Article III." *Id.*

### B. Any alleged injury is not traceable to the defendants, who indisputably have no role in enforcing the law.

The Court could stop there. But because standing goes to this Court's jurisdiction, we address the two other requirements in the interest of completeness. On traceability, plaintiffs once again give up the game in their argument heading. They argue that their claimed injury is "traceable to the Guaranty Law" (Resp. Br. 19; *see also id.* at 20 (injury "traceable to and caused by the enactment of the Guaranty Law"). But the enactment of a statute, standing alone, has never been sufficient to meet the causation requirement. Instead, the relevant question is not whether their alleged injury is traceable to the Guaranty Law, it is whether their injury is traceable to the *defendants in this lawsuit*. *See*, *e.g.*, *California*, 141 S. Ct. at 2114.

Relying on the "immediate coercive effect" of "the statute" is not enough; there must be some "coercive effect that might be applied by the defendants." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (cleaned up); *see also Okpalobi v. Foster*, 244 F.3d 405, 426

(5th Cir. 2001) (en banc). Even if a plaintiff engages in some conduct as "a response to the enactment" of the statute, it is irrelevant unless the conduct is "a response to … actions" of the "particular public officials" who are sued. *Id.* As plaintiffs concede (Resp. Br. 25), there is "no action—actual or threatened—whatsoever" on defendants' part. *California*, 141 S. Ct. at 2114. Plaintiffs' concession that no named defendant has any role in enforcing the law is the end of their case.

In response, plaintiffs first argue that there is a class of cases where the plaintiff is "injured by the passage of an ordinance, even in the absence of direct enforcement" (Resp. Br. 20). But the lone case they cite offers them no support. There, the plaintiff's injury was the denial of his benefits, and he sued the governmental actor responsible for denying his benefits. *Heckler v. Mathews*, 465 U.S. 728, 738 (1984). His injury was traceable to the "putatively illegal conduct of the defendant." *Id.* (cleaned up). Plaintiffs cite no case, because there is no case, holding that a plaintiff may sue any government official to challenge a law regardless of whether that official enforces the law. Instead, authority holds precisely the opposite (*see* App. Br. 19–22). Indeed, the en banc Fifth Circuit specifically rejected this argument in *Okpalobi*, vacating

21

the panel's decision holding that the mere enactment of the statute was sufficient. 244 F.3d at 426.

Plaintiffs also attempt to distinguish the numerous cases holding that traceability requires enforcement authority on the part of the named defendants on the grounds that those were "pre-enforcement" cases and, here, they do not "challeng[e] the prospective application of a statute" (Resp. Br. 20). But nothing in any of those cases suggests that the traceability analysis has anything to do with their "pre-enforcement" posture. Indeed, in all of them, the challenge was necessarily "pre-enforcement" because there could be no enforcement; the defendants, as here, lacked any enforcement capability. *See Bronson v. Swensen,* 500 F.3d 1099, 1110 (10th Cir. 2007); *Gandy,* 416 F.3d at 1157; *Digital Recognition Network,* 803 F.3d at 957; *Okpalobi*, 244 F.3d at 427. And plaintiffs attempt no response to the Supreme Court's invocation of the same principles in *California v. Texas*, where the challenged law had been in effect for over a decade. 141 S. Ct. at 2112.

It is unsurprising that traceability largely arises in pre-enforcement challenges. Ordinarily, a plaintiff would have to show an injury that had occurred and could sue the government official who

caused the injury, and there would be no question that the defendant was the cause. In a pre-enforcement challenge, by contrast, a plaintiff need only meet the looser standard of showing that the defendant has some "authority to enforce the complained-of provision." *Bronson*, 500 F.3d at 1110. But even in those cases, a plaintiff must show that the defendant has some authority to enforce the law. *Id.*; *see also Digital Recognition Network*, 803 F.3d at 958 (holding that where the government defendant "does not initiate enforcement or seek relief" the plaintiff's "injury is 'fairly traceable' only to the private civil litigants who … enforce the statute").

In the margin, plaintiffs make a half-hearted argument, relying on a single district court case, *Reproductive Health Services v. Strange*, 204 F. Supp. 3d 1300, 1318 (M.D. Ala. 2016), that they can maintain suit because their alleged injury is traceable to the passage of the Guaranty Law (Resp. Br. 22 n.3). At the outset, on appeal, the Eleventh Circuit specifically noted that the plaintiffs met the traceability requirement because the challenged act "contemplates enforcement" by the named defendants "through its criminal-sanctions provision." *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1252 (11th Cir. 2021). Moreover, the en

23

banc court vacated the panel decision upholding the district court's standing ruling, 22 F.4th 1346 (11th Cir. 2022), though the case was voluntarily discontinued before the en banc court ruled. 2022 U.S. App. LEXIS 20795 (11th Cir. 2022).

A better source of authority from the Eleventh Circuit is that court's en banc decision in *Lewis*, which explains that the challenged law there, exactly like the Guaranty Law, "doesn't anticipate affirmative enforcement at all" but would only arise "in the context of a private suit between an employee and her employer, with the latter deploying [the challenged law] as an affirmative defense." *Lewis*, 944 F.3d at 1299. In that circumstance, the plaintiffs could not show traceability. *Id.* at 1301.[8]

Nor do plaintiffs seriously defend the district court's decision that they are "threatened by the enforcement" of the statute (SPA14 (cleaned

---

[8] Neither of the other district court decisions on which plaintiffs rely help them. The district court in *Franklin California Tax-Free Trust v. Puerto Rico*, 85 F. Supp. 577, 594 (D.P.R. 2015), engaged in no analysis and, in any event, the challenged Act altered the debts of entities ultimately owned by the defendant government, not relations among private parties. *Id.* at 583. In *HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036 (D. Haw. 2009), contrary to plaintiffs' characterization, the district court found that "neither standing nor the merits can be determined on the present motion." *Id.* at 1039. And neither decision overcomes binding Supreme Court authority.

up)). Plaintiffs continue to rely on *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019), contending that the defendants there made the same argument regarding a "chain of possibilities" that the City defendants raise here (Resp. Br. 23–24). First, our argument is that there is a series of contingencies before the plaintiffs will suffer a cognizable injury, not that the chain of contingencies defeats traceability (App. Br. 23–24). Our traceability argument is simpler—as the caselaw consistently provides, a plaintiff cannot establish traceability where the named defendants do not enforce the statute. And, in *Tweed-New Haven*, as plaintiffs do not appear to dispute, the airport was "threatened by the enforcement of [the] statute" by the defendant. *Tweed-New Haven*, 930 F.3d at 71.

Plaintiffs further briefly contend that they have sued the Mayor, who is charged generally with enforcement of the City's laws, and the Small Business Commissioner, who they argue (incorrectly) is

responsible for the City's entire Administrative Code (Resp. Br. 25).[9] But, two sentences later, they abandon their contention and concede that the law is "not 'enforced' by *anyone*" (*id.*). And it's just as well, because the caselaw establishes conclusively that resort to a defendant's generalized authority to enforce the law is insufficient without a showing that there is a specific mechanism for the defendant to enforce the challenged law. *E.g.*, *Lewis*, 944 F.3d at 1300 (holding that Attorney General's general authorization to enforce the state's laws does not permit plaintiffs to sue "for any violation of any Alabama law that regulates the relationships between private parties—including, … a statute that doesn't envision enforcement by anyone"); *Okpalobi*, 244 F.3d at 416, 426 (injury not traceable to defendants with a mere "general duty" to implement the state's laws).

The crux of plaintiffs' argument appears to be that there is a special-pleading rule for Contracts Clause cases, and they do not need

---

[9] In various places, plaintiffs also argue that the relevant act is the "enactment" of the Guaranty Law and they have named the actors "responsible for that legislative enactment" (Resp. Br. 10, 25). But they haven't. As they acknowledge elsewhere, it was "the City Council," not the named defendants, who enacted the law (Resp. Br. 34). Plaintiffs do not purport to sue the City Council. For that reason, and many others, the district court's judgment does not, as plaintiffs contend, preclude the City Council from passing a "similar" law (Resp. Br. 10).

to show that the defendants enforce a statute "in a Contracts Clause constitutional challenge" (Resp. Br. 25). If it were otherwise, they contend, the law would be "completely immune from any constitutional challenge" (*id.*). But Article III applies equally to all cases, and plaintiffs cite nothing to suggest that Contracts Clause cases have a different standing analysis than any other case. *See United States v. Texas*, 143 S. Ct. at 1969 (explaining that standing applies to "all manner" of cases). The lack of an enforcement mechanism simply means that the constitutional issue will be litigated in the context of disputes "between private parties." *Lewis*, 944 F.3d at 1300.

As both the most recent and the most cited of the Supreme Court's Contracts Clause cases show, this is not uncommon. No government entity was involved in the litigation in either *Sveen v. Melin*, 138 S. Ct. 1815 (2018) or *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398 (1934). Instead, in *Sveen*, the parties were the decedent's children and his ex-wife. 138 S. Ct. at 1821. In *Blaisdell*, the parties were the mortgagor and the mortgagee whose mortgage was subject to the challenged moratorium, not any state official. *Blaisdell v. Home Bldg. & Loan Ass'n*, 189 Minn. 422, 423–24 (1933), *aff'd* 290 U.S. 398 (1934); *see*

27

*also*, *e.g.*, *E. New York Sav. Bank v. Hahn*, 326 U.S. 230, 230–31 (1945) (same); *W.B. Worthen Co. v. Thomas*, 292 U.S. 426, 429 (1934) (parties were a landlord and renters).

The fact is, contrary to plaintiffs' preferences, "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health*, 142 S. Ct. at 537. There is no "unqualified right" to review of "constitutional claims in federal court." *Id.* at 538. Instead, as is the case here, and in any number of prior Contracts Clause cases, "federal constitutional rights are as a practical matter asserted" in the context of "state-law claims." *Id.*

Finally, plaintiffs point to *Iten v. City of Los Angeles*, 81 F.4th 979 (9th Cir. 2023), and a few other Contracts Clause cases, seeming to argue that because other cases challenging different "COVID-19 legislation" and "eviction or rent moratoria" proceeded to the merits,

there must be standing here as well (Resp. Br. 27).[10] But standing is analyzed with respect to the specific claim brought and the specific law challenged; there is no rule of standing that applies to COVID-19 cases generally. *Iten* is itself a perfect example. There, unlike here, the executive order was enforced by the defendant—landlords who failed to comply were "subject to criminal and civil penalties, including fines of up to $5,000 per day." *Iten*, 81 F.4th at 982.[11] An injunction against the County would prevent it from imposing those penalties. It is perhaps for that reason that the litigants there focused only on the injury-in-fact component of standing. Indeed, while plaintiffs initially argue that, in *Iten*, there was "no specific government agency or person named as a defendant charged with 'enforcing' the moratorium" (Resp. Br. 26), on the very same page they quote the portion of the Ninth Circuit's opinion

---

[10] The Guaranty Law is not an eviction or rent moratorium. Contrary to plaintiffs' argument, it had no effect on plaintiffs' ability to "collect rent, charge late fees, or to force the tenant to leave the premises" (Resp. Br. 27). It had nothing to do with plaintiffs' relationship with their *tenant* whatsoever. N.Y.C. Admin. Code § 22-1005; *see also Melendez v. City of New York*, 16 F.4th 992, 1033 (2d Cir. 2021) ("[T]he landlord may continue to seek unpaid rent from the tenant.").

[11] *See also* County of Los Angeles, *Resolution of the Board of Supervisors of the County of Los Angeles Further Amending and Restating the Executive Order for an Eviction Moratorium During Existence of a Local Health Emergency Regarding Novel Coronavirus (COVID-19)* (Jan. 24, 2023) §§ X, XI(B) (authorizing the County to impose "administrative fines" and seek misdemeanor criminal charges).

explaining that the law permitted the defendant County to "impos[e] additional penalties" on landlords who violated it (*id.* (cleaned up)).

Nor is any of the cases in their following string cite applicable because the cases do not address standing, or the law was enforceable by the defendant, or both. The Ninth Circuit in *Apartment Association of Los Angeles County, Inc. v. City of Los Angeles*, 10 F.4th 905 (9th Cir. 2021), did not consider standing and a landlord who violated the law was "subject to the issuance of an administrative citation." City of L.A. Mun. Code. § 49.99.8. In *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022), willful violations of the moratorium were "a misdemeanor punishable by imprisonment or a fine" and the defendant attorney general had the "discretion to impose other penalties on landlords." *Id.* at 724; *see also Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 207, 219 (D. Conn. 2020) (noting that both that landlords are "subject to significant penalty" for violations and declining to rule on standing because the "case presents redressability issues"); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 381–87 (D. Mass. 2020) (not considering standing relating to plaintiffs' Contracts Clause claim); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 349–53 (E.D. Pa.

2020) (same)[12]; *Elmsford Apartment Associates, LLC v. Cuomo*, 469 F. Supp. 3d 148, 168–72 (S.D.N.Y. 2020) (same).

## C. Plaintiffs have not shown an actual, concrete, imminent injury.

Plaintiffs also lack standing because they cannot show a concrete, imminent injury. Their claimed injury rests on a lengthy chain of contingencies that may or may not eventually cause them a concrete injury (App. Br. 23–24). Their argument in response—that they were permanently barred from collecting rent (Resp. Br. 13)—simply assumes what they need to prove. They would be permanently barred from collecting from their guarantor only if they had actually made a demand from the guarantor (as opposed to the tenant), the guarantor refused to pay, plaintiffs sued to enforce the guaranty, the guarantor raised the guaranty law as a defense, and the court rejected any constitutional argument that plaintiffs raise and found the Guaranty Law to be the sole barrier to judgment in plaintiffs' favor.

---

[12] Further, the law in *HAPCO* made a violation an "unfair rental practice," subject to penalties issued by the defendant. Phila. Code §§ 9-804, 9-807.

Indeed, one of the cases on which plaintiffs rely shows why they have not suffered a cognizable injury. They cite *Lake Carriers' Association v. Macmullan*, 406 U.S. 498 (1972), for the proposition that there is a case or controversy if plaintiffs are "under an obligation imposed by the challenged law" (Resp. Br. 15). But the defendant there threatened enforcement, and the Court held that the injury was "immediate and real" because "compliance is coerced by the threat of enforcement." *Id.* at 507–08. The Court specifically contrasted the situation there with the situation, as here, where "compliance with challenged statutes is uncoerced by the risk of their enforcement." *Id.* at 507 (cleaned up).

The more recent cases on which plaintiffs rely deal with the severity of the claimed injury, not whether an injury has occurred at all (Resp. Br. 15 (citing *Bols v. Newsom*, 515 F. Supp. 3d 1120, 1131 (S.D. Cal. 2021); *Grano v. Rappahannock Elec. Coop.*, 552 F. Supp. 3d 563, 571–72 (W.D. Va. 2021)). In both cases, the injury had already occurred. *Bols*, 515 F. Supp. 3d at 1131; *Grano*, 552 F. Supp. 3d at 571. Likewise, in *Lazar v. Kroncke*, 862 F.3d 1186 (9th Cir. 2017), the plaintiff's injury was certain. But for the law she challenged, she would have received

32

the funds she sought; there were no possible intervening events that would have stood in the way of recovery if she had succeeded on her Contracts Clause claim. *Id.* at 1199. The only issue was timing, not the likelihood that she would ultimately recover. *Id.* Contrast that with the situation here, where success on the merits in no way guarantees a recovery of the rental arrears plaintiffs' allege they have lost.

Plaintiffs further point to the "loss" of $110,000 and their decision to seek a loan. But they have not "lost" any money. They elected not to attempt to recover (or even ask for) the money that they were potentially owed by a guarantor. Unlike in *Lazar*, there is no certainty they would ever collect, even in the absence of the Guaranty Law. And, unlike in *Iten*, if plaintiffs attempted to collect, they would not be subject to "administrative fines and criminal penalties." *Iten*, 81 F.4th at 989.

Lastly, plaintiffs argue that it is not the decreased ability to recover on their guaranty based on the hypothetical invocation of the Guaranty Law as a defense in a hypothetical case that causes their injury, but rather the passage of the Guaranty Law itself that causes the harm. The Supreme Court disposed of this argument a century ago.

33

A party who invokes the judicial power of the court "must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement." *Massachusetts v. Mellon*, 262 U.S. 447, 489 (1923). As with the plaintiffs' inability to establish redressability or traceability, this failure to show injury-in-fact is fatal.

## CONCLUSION

This Court should dismiss for lack of jurisdiction and vacate the district court's decision, as well as all prior decisions in this action to the extent they address plaintiffs' Contracts Clause or commercial-tenant-harassment claims.

Dated:  New York, NY
          November 28, 2023

                              Respectfully submitted,

                              HON. SYLVIA O. HINDS-RADIX
                              *Corporation Counsel*
                              *of the City of New York*
                              Attorney for Appellants


                         By:    /s/ Jamison Davies
                                JAMISON DAVIES
                                Assistant Corporation Counsel

                                100 Church Street
                                New York, NY 10007
                                212-356-2490
                                jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
   *of Counsel*

35

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,994 words, not including the table of contents, table of authorities, signature blocks, this certificate, and the cover.

_____/s Jamison Davies_____
JAMISON DAVIES