

| MURIEL GOODE-TRUFANT<br>*Acting Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NEW YORK 10007 | RICHARD DEARING<br>*Chief, Appeals Division*<br>Phone: 212-356-2500<br>rdearing@law.nyc.gov |
|---|---|---|

June 7, 2024

Clerk of the Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, New York 10007

Re: *Melendez v. City of New York*
     Docket No. 23-683

To the Hon. Clerk of the Court:

     This letter is filed in response to the Court's invitation to submit a letter brief addressing questions that arose during oral argument.

     *First*, members of the panel inquired whether it would be appropriate to impose sanctions against the City because it did not raise its current subject-matter jurisdiction arguments in the prior appeal or the initial motion to dismiss. As discussed below, the City overlooked its current jurisdictional arguments at these prior stages of the case, but that oversight is not sanctionable.

     As explained by the Seventh Circuit decision cited by a member of the panel during argument, "a challenge to subject-matter jurisdiction is timely until at least the entry of a final judgment after exhaustion of further judicial remedies." *Enbridge Pipelines (Ill.) L.L.C. v. Moore*, 633 F.3d 602, 606 (7th Cir. 2011). The court there went on to say that a party cannot "hold[] such a challenge in reserve because he hopes to obtain a judgment on the merits." *Id.*; *see also BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) (explaining that "*deliberately* to avoid raising the issue is improper, indeed sanctionable" (emphasis added)).

     At the same time, "jurisdictional problems may be overlooked in all innocence." *BEM I*, 301 F.3d at 551. Sanctions require much more than a delay in raising a jurisdictional argument. For example, sanctions may be warranted where there is evidence that counsel "was aware of a jurisdictional problem even before the case was

removed." *Id.* at 551–52. Or sanctions may be warranted where the record reflects that a party pocketed a jurisdictional issue "until the appeal" even though other parties raised the identical issue earlier. *Enbridge*, 633 F.3d at 605–06.

Here, in contrast, the City first became aware of the jurisdictional issues raised in this appeal *after* the prior appeal was decided and en banc rehearing denied, following internal discussion about how to proceed following remand, and upon further consideration, research, and review of contemporaneous Supreme Court decisions presenting similar circumstances. The undersigned assures the Court that we take very seriously the obligation to bring jurisdictional issues promptly to the Court's attention. We would never withhold such an issue deliberately, and we did not do so here.

For context, this case initially proceeded on an expedited schedule in the middle of the pandemic, with the plaintiffs moving for a preliminary injunction on July 22, 2020 (Joint Appendix ("A") 27), and the City opposing and moving to dismiss less than a month later (SDNY ECF No. 37). After the district court denied a preliminary injunction and dismissed the complaint, the initial appeal followed. Briefing concluded as of April 2, 2021, and the appeal was decided on October 28, 2021. *Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021).

When the City briefed the prior appeal, the Supreme Court had not yet decided *Haaland v. Brackeen*, 143 S. Ct. 1609 (2023), *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), or *California v. Texas*, 141 S. Ct. 2104 (2021). Those decisions were key in bringing our attention to the specific standing problems raised on remand and on this appeal. Indeed, these decisions brought "renewed attention to remedies," "restor[ed] the centrality of remedies specific to the parties," and "emphasiz[ed] the distinction between judgments and opinions." William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153, 177–79, 182 (2023); *see also id.* at 174 (referring to the Supreme Court's recent standing decisions as a "course correction"). This renewed attention to standing from the Supreme Court highlighted the fundamental redressability and traceability problems with plaintiffs' suit. *Haaland*, in particular, crystallized the problem that arises when a declaratory judgment cannot bind relevant actors. *Haaland*, 143 S. Ct. at 1639–40.

Our earliest discussions of the issue occurred after the prior appeal was fully resolved and were tentative, identifying the matter as one for further research. Further research confirmed that there appeared to be a legitimate question of Article III jurisdiction. The City thus raised the point in its answer (A1184 ¶ 263; A1186 ¶ 272). When petitioners abruptly moved for summary judgment (A1189), the City requested a brief discovery period (SDNY ECF No. 95 at 1–2). And, though a member of the panel expressed concern about subjecting plaintiffs to onerous discovery, the discovery period was short and focused on plaintiffs' standing (*id.* at 1). Plaintiffs consented to limited discovery on standing (*id.* at 2), and they addressed the City's

2

jurisdictional argument without any objection as to its timing or any suggestion of prejudice (*see* SDNY ECF No. 110 at 6–7; SDNY ECF No. 119; A2818–22). Nor did plaintiffs ever raise the possibility of sanctions.

Lawyers have an obligation to bring questions of subject-matter jurisdiction to the Court's attention, as the City did here. *See, e.g.*, *BEM I,* 301 F.3d at 551 ("[L]awyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress[.]"); *First Nat'l Bank v. A.M. Castle & Co. Emp. Tr.*, 180 F.3d 814, 819 (7th Cir. 1999) ("[A] lawyer (and his client) cannot be sanctioned directly or indirectly for performing his duty as an officer of the court of apprising the court that it is acting beyond its jurisdiction; the lawyer has an ethical duty to do that."); *Minority Police Officers Ass'n v. S. Bend*, 721 F.2d 197, 199 (7th Cir. 1983) (explaining that attorneys have a "professional obligation" to assist the federal courts in "polic[ing] the constitutional and statutory limitations on [their] jurisdiction"). The City did not hide a known jurisdictional issue, but rather raised it when it became aware of the problem.

Sanctions should not be imposed where, as here, the jurisdictional issues were "overlooked in all innocence." *BEM I*, 301 F.3d at 551. Indeed, sanctions have not been imposed even where a party's conduct cannot be described as entirely innocent. *See*, *e.g.*, *Aves v. Shah*, 997 F.2d 762, 767 (10th Cir. 1993) (party "stipulat[ed] proper subject matter jurisdiction … while planning to challenge jurisdiction if an appeal bec[ame] necessary"); *Richmond v. Chater*, 94 F.3d 263, 267 (7th Cir. 1996) (attorneys "agree[d] to suppress their doubts about the court's jurisdiction"). We respectfully submit that sanctions are unwarranted here and imposing them under these circumstances would chill attorneys from raising legitimate jurisdictional questions.

*Second*, we address questions during argument about plaintiffs' general allegation that the City enforces the law. Discussions with colleagues following the argument have drawn attention to the point that the City retains a generalized authority to maintain actions seeking to remedy violations of its laws, regardless of whether the relevant provision of local law sets forth other penalties or governmental remedies. *See* N.Y. Gen. City L. § 20(22); N.Y.C. Charter § 394(c). As we have explained (*see* Reply Br. 26), such generalized authority has consistently been held insufficient to support standing to sue a governmental defendant to challenge a law.[1]

---

[1] *See, e.g.*, *City of S. Miami v. Governor of Florida*, 65 F.4th 631, 642 (11th Cir. 2023) (defendant's authority to bring actions "'to enforce compliance'" with the challenged law was insufficient (quoting Fla. Stat. § 908.107(1)); *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1300 (11th Cir. 2019) (en banc) (statute generally authorizing the Attorney General to bring civil actions on behalf of the state insufficient to provide plaintiff standing); *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (governmental defendants' "broad powers" to enforce the state's laws insufficient); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157–58 (10th Cir. 2005) (Governmental defendants' "latent power to litigate" not enough to support plaintiff's standing); *see also Whole Woman's Health*,

3

That principle is especially apt here, given Administrative Code § 22-1005's distinctive quality of providing "a defense by guarantors in a breach-of-contract claim," such that its import pertains to potential lawsuits between private parties (Brief for Appellants 19–21), rather than barring specified misconduct or mandating specified actions. Section 22-1005's nature is reflected in its language providing that covered personal guaranty provisions "shall not be enforceable"—that is, they are deemed unenforceable in private disputes between private parties.[2]

In sum, sanctions are not warranted because the City raised the issue of this Court's jurisdiction when it became aware of the argument. We otherwise respectfully request that the Court accept the points herein as further responses to the panel's questioning.

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Acting Corporation Counsel*
*of the City of New York*
Attorney for Appellants

By:   /s/ Richard Dearing
Richard Dearing
Chief, Appeals Division

---

[1] 142 S. Ct. at 536 (plurality opinion) (to meet Article III's requirements, plaintiff must show "at least a credible threat of … an action against them"); *id.* at 539 (Thomas, J., concurring in part and dissenting in part) (agreeing that plaintiff must show an "imminent threat of state enforcement").

[2] A member of the panel referenced a provision of the commercial-tenant harassment law, N.Y.C. Admin. Code § 22-902(a)(14). We note that the Bochner plaintiffs did not allege a claim as to the harassment laws (*see* A1048–50). Nor could they have, as their tenant had vacated the premises and returned the keys before this suit was even filed (A1003–04; 1052). Bochner seeks here only to "reactivate[]" his right to pursue unpaid rent from the guarantor (Brief for Appellees 30; *see also* A1003–04; 1052), not to cause the "commercial tenant to vacate covered property" or to give up any rights under the commercial tenant's lease agreement. N.Y.C. Admin. Code § 22-902(a). The action therefore presents no issue regarding § 22-902(a)(14).