

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

June 13, 2024

Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  <u>Melendez (Bochner), et al.,  v. City of New York, et al., No. 23-683</u>

Dear Ms. O'Hagan Wolfe:

We represent Plaintiffs-Appellees Elias Bochner and 287 7th Avenue Realty LLC in the above-referenced matter.  We file this letter in response to the City of New York's (the "City") letter to this Court dated June 7, 2024 (the "City's Letter"), in which the City addressed issues that arose during oral argument held in the above-referenced matter on May 29, 2024.

*First*, while the City claims that the "[e]arliest discussions of the [standing] issue occurred after the prior appeal was fully resolved and were tentative, identifying the matter as one for further research"(City's Letter at 2), a review of the facts of the matter flatly contradicts that claim.  The Joint Appendix ("A") demonstrates that the City raised the issue of standing of Mr. Bochner and 287 7th Avenue Realty LLC upon their inclusion in this litigation.  At the beginning of the September 11, 2020 oral argument on the preliminary injunction/motion to dismiss, then-counsel for Plaintiffs, Stephen P. Younger, Esq., and Counsel for the City, Pamela Koplik, Esq., had the following exchange about standing on the record:

> <u>Mr. Younger</u>: … [I] think, as a result of the recent letters, there's no dispute about standing.  So just for the record, as to the Residential Harassment Laws: Plaintiffs Melendez, 1025 Pacific, Yang and Haight Trade have standing; for the Commercial Harassment Law: Plaintiffs Melendez and Jarican have standing; and then finally, for the Guaranty Law:  **Plaintiffs Bochner and 287 7th Avenue have standing.**
>
> And I don't think there should be any dispute about that at this point.
>
> <u>The Court</u>:  With respect to Bochner, he is not a party to the pending motion for a preliminary injunction, correct?

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Berlin Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Munich New York Northern Virginia Paris Philadelphia Riyadh Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C. Associated Offices: Budapest Jakarta Shanghai FTZ.  Business Service Centers: Johannesburg Louisville.  For more information see www.hoganlovells.com

>    Mr. Younger: Well, actually, we've filed a proposed amended notice of motion to join him to the motion....
>
>    The Court: All right. I'm just going to clarify that. Is that right Ms. Koplik?
>
>    Ms. Koplik: So the documents that were belatedly provided to us do seem to establish that **new plaintiffs [Mr. Bochner] appear to have standing**. We, I do not think, have an objection to the motion for preliminary injunction being as to those plaintiffs as well.

(Joint Appendix A1079-1080 (emphasis added)).[1]

As the excerpt above demonstrates, "the earliest discussions" of the standing issue occurred at the very inception of the case, and not as the City now claims after the first appeal in this matter in 2021.

In addition, much of the standing case law that the City relied upon in its August 8, 2023 ("Opening Brief") and November 28, 2023 ("Reply Brief") briefs was readily available to it at the time of the 2021 appeal—and even for the preliminary injunction/motion to dismiss oral argument excerpted above. The City's Letter suggests that its key arguments failed to materialize until certain Supreme Court decisions, but, the majority of its key points came from pre-2021 decisions. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1300 (11th Cir. 2019) (en banc); *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157–58 (10th Cir. 2005).

For example, the City cited *Lewis v. Governor of Ala.* so frequently in its Reply Brief it is noted as "*passim*" in the Table of Authorities, and the City even claimed that the Eleventh Circuit's reasoning "tracks this case exactly." (Reply Brief at 8). The Eleventh Circuit decided *Lewis* before this case even commenced, and more than a year before the briefs were filed during the first appeal in this matter. The City also repeatedly cited to both the *Nova Health Sys.* and the *Dig. Recognition Network, Inc.* cases in its Opening and Reply Briefs. Accordingly, the City's claims that its standing arguments only materialized after the Supreme Court decisions in *Haaland v. Brackeen*, 143 S. Ct. 1609 (2023), *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), and *California v. Texas*, 141 S. Ct. 2104 (2021) ring decidedly hollow.

Finally, while the City attempts to commend itself, claiming the "discovery period was short and focused on plaintiffs' standing," none of the discovery elucidated was relevant to the City's standing arguments on traceability or redress. (City's Letter, at p. 2). Indeed, the City's standing arguments rely exclusively on the text of the Guaranty Law, and the

---

[1] A second lawyer for the City further confirmed this point: "Mr. Ugalde Alvarez: I don't have much to add. ... But I guess, you know, with respect to what Ms. Koplik said, I don't think we have an objection for those plaintiffs [Bochner and 287 Seventh Avenue] to be joined to the request." (A1080).

- 3 -                                                                              June 13, 2024

City's faulty claims that it does not enforce the Guaranty Law. Thus, the factual discovery conducted by the City—including depositions of both Mr. Bochner and the managing agent for 287 Seventh Avenue, as well as the document discovery—were utterly irrelevant to its standing arguments.[2]

*Second*, further research on the enforcement issue demonstrates that the City does in fact have an obligation to enforce the laws that are passed by New York State. As an initial matter, N.Y. Gen. City L. § 20 and N.Y.C. Charter § 394(c) (collectively, the "NY Statutes") contain numerous provisions that demonstrate the City's ability to "enforce" its laws. For example, N.Y. General City Law, Section 20 makes clear that each city in the State of New York is "empowered" to "enforce its laws," among taking actions such as file proceedings to make sure that the laws enacted by the City Council are complied with:

> Subject to the constitution and general laws of this state, every city is empowered:
>
> (1) To contract and be contracted with and to institute, **maintain and defend any action or proceeding in any court**.
>
> ...
>
> (13) To maintain order, **enforce the laws**, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses.
>
> ...
>
> (22) To regulate by ordinance or local law any matter within the powers of the city, and to provide penalties, forfeitures and imprisonment to punish violations thereof, and **to maintain an action or special proceeding in a court of competent jurisdiction to compel compliance with or restrain by injunction the violation of any such ordinance or local law**, notwithstanding that a penalty, forfeiture and/or imprisonment may have been provided to punish violations thereof.
>
> ...
>
> (23) To exercise all powers necessary and proper for carrying into execution the powers granted to the city.

*See* N.Y. Gen. City L. § 20 (1), (13), (22), and (23).

---

[2] Even the City's Letter focuses only on the text of Section 22-1005, and not any facts it purportedly elucidated relating to either Mr. Bochner or 287 Seventh Avenue. (City's Letter, at p. 4).

N.Y.C. Charter § 394(c) supplements the above enumerated enforcement powers of the City by stating that the Corporation Counsel shall have the right to institute actions to, among other things, "enforce the laws" of the City of New York:

> Except as otherwise provided in this chapter or other law, **the corporation counsel** shall have the right to institute actions in law or equity and any proceedings provided by law in any court, local, state or national, to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city or of any part or portion thereof, or of the people thereof, or to collect any money, debts, fines or penalties or **to enforce the laws**....

N.Y.C. Charter § 394(c).

These NY Statutes resemble the relevant statutes the Second Circuit found sufficient to provide the State of Connecticut and its Attorney General with "enforcement" authority in its decision in *Tweed-New Haven Airport Authority v. Tong,* 930 F.3d 65 (2d Cir. 2019), and which the City argued differentiated *Tweed* from this action. *See* Conn. Gen. Stat. §§ 3-125, 15-120j(c); City's Opening Brief at 21-22.

Conn. Gen. Stat. § 3-125, however, like N.Y. Gen. City Law § 20, does not expressly charge the Attorney General of Connecticut with enforcing any specific statute, but rather gives the Attorney General broad authority and "general supervision" over legal matters:

> The Attorney General shall appoint a deputy, who shall be sworn to the faithful discharge of his duties and shall perform all the duties of the Attorney General in case of his sickness or absence. He shall appoint such other assistants as he deems necessary, subject to the approval of the Governor. The Attorney General may also appoint not more than four associate attorneys general who will serve at the pleasure of the Attorney General and will be exempt from the classified service. **The Attorney General shall have general supervision over all legal matters in which the state is an interested party**, except those legal matters over which prosecuting officers have direction.

Conn. Gen. Stat. § 3-125 (emphasis added). Similarly, Conn. Gen. Stat. § 15-120j (a)-(c) does not contain any specific mandate requiring the Attorney General to enforce its terms—to the contrary, the word "enforce" never appears in the relevant text of the statute:

> (a) The authority shall maintain and improve Tweed-New Haven Airport as an important economic development asset for the south central Connecticut region which is comprised of the towns and cities of Bethany, Branford, East Haven, Guilford, Hamden, Madison, Milford, New Haven, North Branford, North Haven, Orange, Wallingford, West Haven and Woodbridge. The authority shall have the following powers and duties and may exercise such powers in its own name: (1) To manage, maintain, supervise and operate Tweed-New Haven Airport; (2) do all things necessary to maintain working relationships with the state, municipalities and persons, and conduct the business of a regional airport, in accordance with applicable statutes and regulations; (3) to charge reasonable fees for the services it performs and modify, reduce or increase such fees, provided fees shall apply uniformly to all

>    airport users; (4) to enter into contracts, leases and agreements for goods and equipment and for services with airlines, concessions, counsel, engineers, architects, private consultants and advisors; (5) to contract for the construction, reconstruction, enlargement or alteration of airport projects with private persons and firms in accordance with such terms and conditions as the authority shall determine; (6) to make plans and studies in conjunction with the Federal Aviation Administration or other state or federal agencies; (7) to apply for and receive grant funds for airport purposes; (8) to plan and enter into contracts with municipalities, the state, businesses and other entities to finance the operations and debt of the airport, including compensation to the host municipalities of New Haven and East Haven for the use of the land occupied by the airport; (9) to borrow funds for airport purposes for such consideration and upon such terms as the authority may determine to be reasonable; (10) to employ a staff necessary to carry out its functions and purposes and fix the duties, compensation and benefits of such staff; (11) to issue and sell bonds and to use the proceeds of such bonds for capital improvements to the airport; (12) to acquire property by purchase or lease for airport purposes, subject to applicable requirements of federal law and regulation; (13) to prepare and issue budgets, reports, procedures, audits and such other materials as may be necessary and desirable to its purposes; and (14) to exercise all other powers granted to such an authority by law.
>
> (b) The authority shall have full control of the operation and management of the airport, including land, buildings and easements by means of a lease to the authority by the city of New Haven and the town of East Haven.
>
> (c) Notwithstanding the provisions of subsections (a) and (b) of this section, Runway 2-20 of the airport shall not exceed the existing paved runway length of five thousand six hundred linear feet.

Conn. Gen. Stat. § 15-120j (a)-(c). In citing to cases outside this circuit, the City ignores that the Second Circuit in *Tweed* found statutes that afforded the government with "generalized authority" (City's Letter, at p. 3 n.1) over relevant legal issues and "enforcement" of the law sufficient to confer standing on a plaintiff challenging a statute, like the Guaranty Law, which specifically proscribed certain actions or conduct by the object of the statute. *Tweed,* 930 F.3d at 70-71.

Further, N.Y. Gen. City L. § 20 (22)'s reference to "...[m]aintain[ing] an action or special proceeding in a court of competent jurisdiction to compel compliance with or restrain by injunction the violation of any such ordinance or local law..." is highlighted, as referenced in Plaintiffs-Appellees' May 31, 2024 letter to this Court, by the City's ongoing interest in defending the Guaranty Law. *45-47-49 Eighth Ave. LLC v. Conti*, 220 A.D.3d 473 (1st Dep't 2023) involved an action to enforce the terms of a personal guaranty. While the City of New York first appeared as amicus curiae, the First Department directed plaintiff to "serve notice on nonparty City of New York… in order for the City to intervene in support of its constitutionality." *Id*. at 474 (citations and quotation marks omitted).

In sum, while Appellees respectfully submit that the City's arguments concerning standing remain without merit, should this Court decide otherwise, Appellees respectfully request that this Court impose a monetary sanction against the City that would include all of the costs and attorneys' fees incurred by Appellees in connection with both the discovery engaged in after the first appeal, as well as the costs and attorneys' fees incurred with the briefing (including this letter brief) of the second appeal before the Court. Please do not hesitate to contact me should any additional information be required. Thank you in advance for the Court's attention to this letter.

Respectfully submitted,

Claude G. Szyfer

Partner
Claude.Szyfer@hoganlovells.com
D 212.9183179


cc: All counsel, by electronic filing