# 23-683

## United States Court of Appeals for the Second Circuit

ELIAS BOCHNER, 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees,*

*against*

CITY OF NEW YORK, a municipal entity, MAYOR ERIC L. ADAMS, as Mayor of the City of New York, COMMISSIONER LOUISE CARROLL, Commissioner of New York City Department of Housing Preservation & Development, COMMISSIONER JONNEL DORIS, Commissioner of New York City Department of Small Business Services,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Southern District of New York

## SUPPLEMENTAL BRIEF FOR APPELLANTS

MURIEL GOODE-TRUFANT
*Acting Corporation Counsel of the City of New York*
Attorney for Appellants
100 Church Street
New York, New York 10007
212-356-2490 or -2502
jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
  *of Counsel*

July 15, 2024

Defendants-appellants respectfully submit this supplemental brief, addressing the issues identified in the Court's July 1, 2024 order.

**(1)** **The scope of enforcement authority conferred by General City Law § 20(22) and New York City Charter § 394(c), including their application to Administrative Code §§ 22-1005, 22-902(a)**

Under New York City Charter § 394, the Corporation Counsel is the attorney for the City and its agencies, and has the right to "institute actions" to "collect any money, debts, fines or penalties or to enforce the laws."[1] Under General City Law (GCL) § 20(22), any city may "maintain an action" to "compel compliance with or restrain by injunction" the "violation" of local law, even if a penalty is separately provided.

These provisions mean what they say: the Corporation Counsel may bring suit in the City's name to enjoin violations of a local law or regulation proscribing or requiring specific conduct. And that is true even when the local law or regulation itself supplies an enforcement

---

[1] Charter § 394(c) primarily concerns the City's and the Corporation Counsel's capacity to sue. *See City of New York v. Tri-Rail Constr., Inc.*, 34 N.Y.3d 963, 964 (2019) ("The City has the general capacity to sue…."); *Wilmington Sav. Fund Soc'y v. Hayes*, 34 N.Y.3d 963 (2019) (same); *see also City of New York v. B Green Constr. Corp.*, 190 A.D.3d 407, 407 (1st Dep't 2021); *Amelius v. Grand Imperial LLC*, 57 Misc. 3d 835, 842 (Sup. Ct. N.Y. Cnty. 2017); *Property Clerk, N.Y.C. Police Dep't v. Covell*, 139 Misc. 2d 707, 708 (Sup. Ct. N.Y. Cnty. 1988).

mechanism. As described below (at 8–13), over the past decade the City has cited GCL § 20(22) or Charter § 394 when bringing suit in a range of contexts—from abating public nuisances, to protecting public health, to promoting safe transportation networks, to preserving landmarks. Notably, however, these authorities have typically been cited alongside other enforcement powers that speak directly to the particular regulatory context, or have been used to enjoin conduct that is specifically proscribed by local law and that could have been punished after the fact.

While GCL § 20(22) and Charter § 394 apply in a range of contexts, they have no bearing here. All the guaranty law, Administrative Code § 22-1005, does is render qualifying guaranties "not … enforceable." The law is unusual in that it provides a "defense by guarantors in a breach-of-contract claim" (Brief for Appellants 19–20). Rather than barring or requiring specified conduct, the law operates as a direction to a court addressing contract litigation between the private parties to a covered guaranty. This is reflected in the law's distinctive language: covered guaranties "shall not be enforceable." Admin. Code § 22-1005.

Moreover, that language contrasts with the initial draft language, which may have been susceptible of a prohibitory interpretation: "[n]o

2

personal liability provision … may be enforced." Int. No. 1932-2020, *available at* https://perma.cc/6N8P-5547. The final statutory text and its history reflect an intent to create a targeted mechanism—a defense in a private suit—for a particular public policy need created by the pandemic. Further, the "shall not be enforceable" formulation appears to be unique in the Administrative Code's substantive provisions.

Even assuming the general enforcement statutes could in theory apply, plaintiffs have never even alleged that the City will enforce the guaranty law against them, let alone presented any "factual evidence" establishing a substantial likelihood of enforcement. *Murthy v. Missouri*, 219 L. Ed. 2d 604, 617 (2024). Indeed, there is no allegation or evidence that the City has threatened to enforce the four-year-old guaranty law against *anyone*. It is also telling that plaintiffs do not seek an injunction precluding anyone from "enforcing" § 22-1005, but rather a bare declaration of its unconstitutionality (*see* J. App'x ("A") 1189; Brief for Appellees 7–8 n.1).

As this Court's order notes, plaintiffs' letter brief pointed to *Tweed-New Haven Airport Authority v. Tong* for the proposition that "the law of standing does not place the burden on the plaintiff to show an intent by

3

the government to enforce the law against it." 930 F.3d 65, 71 (2d Cir. 2019) (quotation marks omitted). But plaintiffs overread *Tong*, and their broad reading brings it into conflict with more recent Supreme Court authority. As we pointed out (Defs.' Supp. Ltr. Br. ("Def. Ltr."), Dkt. No. 83 at 3–4 n.1) and plaintiffs ignored (*see* Pls.' Supp. Ltr. Br. ("Pl. Ltr."), Dkt. 85), in *Whole Woman's Health v. Jackson*, five justices concluded that, even where a governmental entity has authority to enforce a statute barring conduct, a plaintiff must show "at least a credible threat of … an enforcement action against them." 595 U.S. 30, 47 (2021) (plurality opinion); *id.* at 53 (Thomas, J., concurring in part and dissenting in part) (plaintiff must show an "*imminent* threat of state enforcement proceedings" (emphasis added)); *see also* Def. Ltr. 3–4 n.1 (collecting cases)). Plaintiffs have never even alluded to such a threat.

The Supreme Court reconfirmed this point twice after the post-argument letter briefs. Plaintiffs "must demonstrate a *substantial risk* that, in the *near future*, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek." *Murthy*, 219 L. Ed. 2d at 611 (emphasis added); *accord FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024). To carry that burden,

4

plaintiffs must "proffer evidence that the defendants' allegedly wrongful behavior would *likely* occur." *Murthy*, 219 L. Ed. 2d at 623 (cleaned up; emphasis original). A "one-step-removed" injury based on the potential actions of private guarantors presents two problems: it violates the "bed-rock principle" that federal courts cannot redress injury stemming from actions by a third party; and it negates "a real and immediate threat of repeated injury." *Id.* at 616 (cleaned up).

Nor does *Tong* apply here by its own terms, for at least two reasons. First, *Tong*'s presumption of enforcement exists only where a statute "specifically proscribes conduct." *Tong*, 930 F.3d at 71. The guaranty law, however, does not specifically proscribe any conduct; rather, it simply deems a contractual provision unenforceable in private disputes.

Second, even as to statutes specifically proscribing conduct, *Tong* recognized that government enforcement will not be presumed where there is "reason to conclude" that it will not occur. *Id.* And there are abun-dant such reasons here. *Tong*'s statements must be placed in context. There, the plaintiffs sought to extend a runway at a major public airport administered by an instrumentality of the State of Connecticut and funded by the State. *Tong*, No. 17-3481, J. App'x, Dkt. 66 at 51–52, 63.

5

But the State legislature enacted a law barring precisely what the plaintiffs wished to do. 930 F.3d at 69. And the law was not generally applicable; it was laser-focused on the runway in question, *id.*, reflecting the State's unambiguous position on what could not be done. Under those circumstances, if the airport authority were to disregard the law, the State would naturally be the party to step in and stop construction. The airport-runway restriction was no matter for private enforcement.[2]

The inverse situation obtains here. Plaintiffs are parties to a guaranty in a private contract with a private guarantor. If plaintiffs attempted to enforce their guaranty (which, again, they have never made any attempt to do), the private guarantor would be the one to potentially contest that action, not the City or any other defendant.

Finally, and relatedly, assuming these laws allowed plaintiffs to satisfy injury and traceability, plaintiffs would still stumble at redressability. If they succeed in their suit against the City, they still will not, by

---

[2] The case on which *Tong* relies for this proposition explained that standing is more permissive in the context of challenging "criminal" or otherwise "punitive" statutes, quintessential matters for public enforcement. *See Hedges v. Obama*, 724 F.3d 170, 197, 200 (2d Cir. 2013). The guaranty law, of course, is neither.

6

the force of that judgment, be able to enforce their guaranty. Its enforce-ability will be decided, if at all, in a future action against the guarantor.

Aside from the guaranty law, this Court's order also points to § 22-902(a)(14) which, the Court notes, "specifically proscribes commercial tenant harassment" (Order, Dkt. 92 at 2). That provision does not salvage plaintiffs' standing for several reasons. As we pointed out (Def. Ltr. 4 n.2) and plaintiffs did not dispute (*see* Pl. Ltr.), the Bochner plaintiffs never alleged a claim as to the commercial tenant harassment law (A1048–50) and their submissions lack the factual predicate to allege such a claim. Nor have they ever made any argument that § 22-902(a)(14) supports their standing to challenge § 22-1005. And for good reason, as standing is determined on a claim-by-claim basis. *Murthy*, 219 L. Ed. 2d at 619.

The Court's order notes that commercial tenant harassment is "de-fined to include attempted enforcement of guaranties subject to § 22-1005" (Order at 2). But the law has additional requirements—among them, it applies only if the landlord's action "would reasonably cause a *commercial tenant* to vacate covered property," or give up "any rights un-der a lease or other rental agreement." Admin. Code § 22-902(a)

(emphasis added). After all, the law prohibits harassment of a commercial *tenant*, not of a commercial *guarantor*.

The facts alleged here do not fit, even if the Bochner plaintiffs purported to challenge § 22-902(a)(14)—which they have not. Their tenant returned the keys before the suit was even filed and gave notice of its intent to vacate months earlier (A1003–04; 1052). Plaintiffs never alleged any intent to engage in any conduct that could have triggered § 22-902, as nothing they propose to do would be aimed at causing the *tenant* to vacate the property or give up a right under the lease, as opposed to recovering money from the *guarantor*. Plaintiffs have effectively conceded the point, insisting that they seek only to "reactivate[]" their contractual rights (Brief for Appellees 29, 30, 32, 38).

**(2) All instances over the last 10 years in which the City or any other defendant has relied on § 20(22) and/or § 394(c) to enforce any law or regulation, and how those cases do (or do not) demonstrate a risk of similar enforcement of the Guaranty Law**

The City conducted a thorough search to identify cases over the past 10 years where any defendant has cited § 20(22) or § 394(c) to enforce a law or regulation, and the results are appended as Addendum A. While the City does not have a single means to search for every case citing these

provisions, we conducted multiple, overlapping searches in an effort to capture any case that references either provision, including searches of our internal filing systems and Lexis, supplemented with inquiries within our office and with other agencies. Our searches of our internal systems depend on documents being entered into that system and being text-searchable, so may not have captured every case. In an effort to be overinclusive, we have identified every case found citing either provision, even if the City did not rely on those provisions to bring suit. None of the cases demonstrate any risk of enforcement of the guaranty law.

First, the vast majority of cases that cite either § 20(22) or § 394, or both, do so in addition to citing more specific statutory authority that expressly authorizes the City to enforce the particular law in question. So, for example, the City's nuisance abatement actions include language to the effect of: "Plaintiff brings this action pursuant to and by the authority of [§] 20 of the General City Law, [§] 394 of the New York City Charter and [§§] 7-704(a) and 7-706(a) of the … Administrative Code." *See*, *e.g.*, *City of N.Y. v. 490 Broadway*, Index No. 152049/2023, NYSCEF No. 1 (Sup. Ct. Richmond Cnty.). Despite the invocation of § 20(22), the cited Administrative Code sections—by themselves—provide the City

with the ability to "bring … a civil proceeding" and sue to "permanently enjoin a public nuisance," Admin. Code §§ 7-704, 7-706, in addition to specifically defining what legal violations constitute a public nuisance.[3]

Likewise, where the City seeks entry on a premises for rodent abatement, it cites § 20(22), but also refers to specific authority permitting it to apply for an entry order, set out in Charter § 398, and the authority provided to the Department of Health and Mental Hygiene under Charter § 556(a), Health Code § 3.01, and Administrative Code § 17-147. *See*, *e.g.*, *Matter of City of N.Y v. Block 12603, Lot 54, Queens County*, Index No. 717670/2023, NYSCEF No. 1 (Sup. Ct. Queens Cnty.).

And, where the City seeks to require a property owner to repair or maintain a landmark, it references § 20(22) and § 394, in addition to "[§§] 119-aa and 119-dd of the General Municipal Law … and [§§] 25-311, 25-317.1, and 25-317.2(d) of the Landmarks Law." *See*, *e.g.*, *City of N.Y. v. Fiekowsky*, Index No. 450963/2019, NYSCEF No. 1 (Sup. Ct. N.Y. Cnty.). The cited provisions lay out penalties, criminal punishments, and specific

---

[3] *City of New York v. Arlene M. Tropp Revocable Trust*, 183 N.Y.S.3d 838 (Sup. Ct. N.Y. Cnty. 2023), cited in the Court's order, is of a piece, as it relies on Administrative Code §§ 7-706, 7-714 (authorizing permanent injunctions), and Zoning Resolution § 11-61 (making failure to comply a misdemeanor and authorizing injunctive action).

enforcement mechanisms, including injunctions. *See* Admin. Code §§ 25-317, 25-317.1, 25-317.2(d)(2). The same is true for cases the City brings to correct flagrant violations of the Building Code, or to enjoin the operation of illegal short-stay apartments. *See*, *e.g.*, *City of N.Y. v. Crisari Realty, Inc.*, Index No. 450965/2020, NYSCEF No. 2 (Sup. Ct. N.Y. Cnty.); *City of N.Y. v. Metrobutler LLC*, 2022 N.Y. Misc. LEXIS 5535 (Sup. Ct. N.Y. Cnty. 2022). Those cases rely on, in addition to § 20(22) or Charter § 394, Administrative Code §§ 20-703, 27-287.1, and 28-205.1.1, and Multiple Dwelling Law §§ 121 and 306(2), which permit the City to seek injunctions to remedy violations. And when the City seeks to detain an individual with tuberculosis to stop its spread, it cites § 20(22), but also Health Code §§ 11.21 and 3.09, which provide independent authority. *See*, *e.g.*, *City of N.Y. v. T.*, Index No. 100346/2022 (Sup. Ct. N.Y. Cnty.). Finally, in one action to enjoin dumping of manure that could contaminate the City's drinking water, *City of New York v. Wickham,* Index No. EF2024-460 (Sup. Ct. Delaware Cnty.), the City cited those provisions as well as Public Health Law § 1102, which expressly permits the City to "maintain an action … for an injunction" against a person violating any rule or regulation relating to contamination of the public water supply.

11

The City has also filed some one-off cases seeking to enjoin antici-pated violations of law that could have otherwise been punished after the fact, relying in part on § 20(22). So, in *City of New York v. Lyft, Inc.*, Index No. 451477/2014, NYSCEF No. 2 (Sup. Ct. N.Y. Cnty.), the City sought to enjoin Lyft from launching in New York City. The City alleged that Lyft intended to provide unlicensed taxi services in violation of Adminis-trative Code §§ 19-506 and 19-528, as they existed at the time. Though outside the order's timeframe, *City of New York v. Times' Up, Inc.*, 814 N.Y.2.2d 890, 2006 N.Y. Misc. LEXIS 257 (Sup. Ct. N.Y. Cnty. 2006), is of a piece, as the City sought to enjoin unpermitted demonstrating in a public park—conduct that could have been punished after the fact under Administrative Code § 10-110 and 56 RCNY §§ 1-03(b)(6)(a) & 2-08. *Times' Up*, 2006 N.Y. Misc. LEXIS 257, at *6.

Finally, in some cases, the City has relied on Charter § 394 simply to establish its capacity to sue or to bring common-law claims, as in *City of New York v. Tri-Rail Construction*, 34 N.Y.3d 963, 964 (2019), pertain-ing to damage to City-owned trees, and *City of New York v. Chavez*, 2012 U.S. Dist. LEXIS 42792, at *7 (S.D.N.Y. Mar. 26, 2012), pertaining to the City's standing to bring suit under the federal Contraband Cigarette

Trafficking Act. The City has also cited § 394 to establish its capacity to assert securities claims on behalf of public retirement funds and to submit the equivalent of an amicus brief in a French court. *Flannery v. Snowflake, Inc.*, No. 5:24-cv-01234, Dkt. 82 at ¶ 17 (N.D. Cal. May 20, 2024); *Notre Affaire à Tous v. Total*, Dkt. RG 20/00915 (Judicial Court of Nanterre), *available at* https://perma.cc/6DBC-8GQ4.

None of these cases involve the City bringing suit to "enforce" a law whose import is to declare a provision in a private contract unenforceable and thus to provide a defense in a civil contract action between private parties. None render it plausible that the City would sue these plaintiffs—or anyone—to enforce the guaranty law.

**(3) Whether the City or any other defendant intends to enforce the Guaranty Law under § 20(22), § 394(c), or any other provision of law, and if not, whether defendants are prepared to submit an affidavit categorically disavowing any future enforcement**

Neither the City nor any other defendant has any intention of enforcing the guaranty law—full stop. Consistent with the Charter's allocation of powers, and in light of the points made above, we are prepared to submit a declaration categorically disavowing future enforcement from

the Acting Corporation Counsel, who controls litigation on the City's behalf and enjoys the general enforcement powers discussed above.

**(4) In what, if any, actions arising under the Guaranty Law, has any defendant appeared, either as a party or an amicus, and what positions, if any, has that defendant taken in any such litigation with respect to the constitutionality of the Guaranty Law**

The City has appeared as a party or amicus in the cases listed in Addendum B. In all cases, the City argued that the guaranty law is constitutional. Contrary to plaintiffs' argument (Pl. Ltr. 5), the mere fact that a government has an interest in defending the constitutionality of its law does not mean that a plaintiff automatically has standing to sue the government. *See*, *e.g.*, *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958, 962 (8th Cir. 2015) (explaining that attorney general's potential intervention in private suit to "defend the constitutionality of the Act" did not support standing); *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc) (fact that attorney general could join suit "to defend a statute's constitutionality" not enough for standing); *cf. Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (holding that attorney general's "duty to support the constitutionality of challenged state statutes" insufficient to show a "connection with the

14

enforcement" of a challenged law). Indeed, even if plaintiffs sought an injunction prohibiting the City from "intervening in a private … action to defend the [guaranty law's] constitutionality," that would still be insufficient. *Digital Recognition Network*, 803 F.3d at 958. Fundamentally, plaintiffs simply have no answer to the basic principle that there is no federal suit to challenge a law's enactment, as opposed to its enforcement. *See Whole Woman's Health*, 595 U.S. at 50.

**(5) In any such litigation, what, if any, preclusive effect will a decision by this Court to vacate (or not to vacate) the challenged summary judgment award have on any position the City or any other defendant might take**

This Court's decision will not have any preclusive effect on the "position" that the City or any other defendant might take, nor would a decision not to vacate summary judgment prevent the City from continuing to argue that the law is constitutional. The district court's declaratory judgment does not operate as a gag order precluding the City from expressing a view of the law. And, even if it did, only the present plaintiffs and those in privity with them could enforce the judgment. *See United States v. Mendoza*, 464 U.S. 154, 160 (1984) (holding that nonmutual collateral estoppel is not available against government).

15

Dated:  New York, NY
        July 15, 2024

                                   Respectfully submitted,

                                   MURIEL GOODE-TRUFANT
                                   *Acting Corporation Counsel*
                                   *of the City of New York*
                                   Attorney for Appellants

By:   /s/ Jamison Davies
                                   JAMISON DAVIES
                                   Assistant Corporation Counsel

                                   100 Church Street
                                   New York, NY 10007
                                   212-356-2490
                                   jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
  *of Counsel*

16