# 23-683

## United States Court of Appeals for the Second Circuit

ELIAS BOCHNER and 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees*,

MARCIA MELENDEZ, JARICAN REALTY INC., 1025 PACIFIC LLC, LING YANG, TOP EAST REALTY LLC, and HAIGHT TRADE LLC,

*Plaintiffs*,

*against*

CITY OF NEW YORK, a municipal entity, BILL DE BLASIO, as Mayor of the City of New York, LOUISE CARROLL, Commissioner of New York City Department of Housing Preservation & Development, and JONNEL DORIS, Commissioner of New York City Department of Small Business Services,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of New York

## SUPPLEMENTAL BRIEF FOR APPELLEES

CLAUDE G. SZYFER
DARYA D. ANICHKOVA
RAMAN R. KULKARNI
HOGAN LOVELLS US LLP
Attorneys for Appellees
390 Madison Avenue
New York, New York 10017
212-918-3000
claude.szyfer@hoganlovells.com

July 22, 2024

Plaintiffs-Appellees Elias Bochner and 287 7th Avenue Realty LLC ("Plaintiffs") respectfully submit this supplemental brief pursuant to this Court's July 1, 2024 order and in response to Defendants-Appellants' supplemental brief ("City Br."), dated July 15, 2024.

**I.   General City Law § 20(22) and New York City Charter § 394(c) endow the City with broad, liberally construed authority to enforce laws like the Guaranty Law, sufficient to confer standing on Plaintiffs.**

General City Law § 20(22) empowers the City "to maintain an action or special proceeding in a court of competent jurisdiction to compel compliance with or restrain by injunction the violation of *any* [ordinance or local law]." N.Y. Gen. City Law § 20(22) (emphasis added). New York City Charter § 394(c) further empowers Corporation Counsel to "institute actions in law or equity and any proceedings provided by law in any court, local, state or national, to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city . . . or of the people thereof, or to collect any money, debts, fines or penalties or to enforce the laws." N.Y.C. Charter § 394(c). Section 20(22) and § 394 each codify the City's broad power to enforce its laws, including the Guaranty Law. *Krolick v. Lowery*, 32 A.D.2d 317, 322 (1st Dep't 1969), *aff'd*, 26 N.Y.2d 723 (1970) (The City's broad enforcement power to "provide for the 'government, protection, order, conduct, safety, health and well being of persons or property'" is

to be "liberally construed.") (citing N.Y. Gen. City Law § 19 *et seq*.). As discussed below, this broad enforcement authority is sufficient to confer standing on Plaintiffs.

The City claims § 20(22) and § 394 "have no bearing here," because "these authorities have *typically* been cited alongside other enforcement powers that speak directly to the particular regulatory context, or have been used to enjoin conduct that is specifically proscribed by local law." City Br. at 2 (emphasis added). The City, however, effectively concedes that nothing bars it from invoking its broad powers under § 20(22) or § 394 to enforce the Guaranty Law. Moreover, for the reasons discussed *infra* at 5-6, the City's affirmative promises not to enforce the Guaranty Law are similarly irrelevant to Plaintiffs' standing.

First, the City cites no authority preventing it from relying on the broad powers conferred by § 20(22) or § 394 alone to enforce its laws. To say these authorities typically are cited alongside other provisions fails to refute the capacity of the City to rely on such statutes alone to bring suit.

Indeed, the City recently confirmed before the New York Court of Appeals in *City of New York v. Tri-Rail Constr., Inc.*, 34 N.Y.3d 963 (2019) that it could rely on either § 394 or § 20 individually to enforce City law. In *Tri-Rail Constr., Inc.*, the City argued that it was "endowed by the State with the *broadest powers*," and did not need a separate cause of action or a specific claim in order to bring suit against contractors for the negligent destruction of trees on City land. Exh. A at 2 (emphasis

2

added). The City argued "no specific 'tree lawsuit' authorization is needed." *Id*. at 17. Instead, the City relied on the broad general enforcement power conferred by § 20 and § 394: "there is no need for a statutory right of action to establish that the City can sue for damage to its property . . . . [T]he City's capacity to bring this lawsuit does not turn on . . . any . . . local regulation, but rather on the statutory predicates—§ 20(1) of the General City Law and § 394(c) of the New York City Charter." *Id*. at 17-19. The Court of Appeals agreed, finding that the City has a "general capacity to sue" under § 20(1) and § 394(c). *Tri-Rail Constr., Inc.*, 34 N.Y.3d at 964-65. Applying that principle here, the City needs no specific authorization to bring suit to "enforce" the Guaranty Law. Exh. A at 17 ("At bottom, the Legislature did not need to specifically authorize the City to bring a property damage claim for damage to its trees."). On the contrary, as the City itself urged in *Tri-Rail Constr., Inc.*, under its "general capacity to sue," it enjoys the power to "compel compliance with or restrain by injunction the violation of any [ordinance or local law]" as well as "to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city . . . or of the people thereof, or to collect any money, debts, fines or penalties or to enforce the laws." N.Y. Gen. City Law § 20(22); N.Y.C. Charter § 394(c). As discussed below, the City has repeatedly demonstrated its unflagging commitment to and interest in the Guaranty Law.

3

Second, as discussed *infra* at 8-12, the City's assertion that the Guaranty Law does not proscribe conduct is flatly contradicted by the plain language of the statute, and its own legislative pronouncements. Accordingly, rather than restrain the City's enforcement of the Guaranty Law, § 20(22) and § 394 enable it.

Additionally, over the past 10 years, the City has relied on § 20(22) and § 394 no fewer than 2,500 times to enforce laws and protect its interests in diverse fields ranging from landmark preservation to taxi licensing. *See* City Br. add. A. The City has also brought litigation "seeking to enjoin anticipated violations of law that could have otherwise been punished after the fact." City Br. at 12 (citing *City of New York v. Lyft, Inc.*, Index No. 451477/2014, NYSCEF No. 2 (Sup. Ct. N.Y. Cnty); *City of N.Y. v. Times' Up, Inc.*, 814 N.Y.S.2d 890, 2006 WL 346491, at *2 (Sup. Ct. N.Y. Cnty. 2006); *City of N.Y. v. Chavez*, No. 11-cv-2691, 2012 WL 1022283, at *1–2 (S.D.N.Y. Mar. 26, 2012)). For example, in the matter against Lyft, the City relied only on "Section 20(22) of the General City Law to permanently enjoin the defendants' violation of the licensing requirements." Exh. B ¶ 1. Accordingly, while the City attempts cavalierly to claim Lyft, and the other cases are "one-offs," its interest in protecting small business tenants under the Guaranty Law is surely no less great than its interest in taxi licensing or nuisance abatement; and it has repeatedly asserted an interest in defending the Guaranty Law's constitutionality.

4

The Guaranty Law's legislative history, as cited in the City's own papers, also amply illustrates the City's intentions in passing the statute and extending it twice (including *after* Plaintiffs brought this constitutional challenge). For example, at the May 13, 2020 Committee Hearing, City Council Member and Chairperson of the Committee on Small Business, Mark Gjonaj, called the Guaranty Law a "***strong start[] to protecting our small businesses*** during this pandemic and as Chair of the Small Business Committee it is my priority to ensure that our small business sector will re-emerge strong." JA 1806 at 5:12-16 (emphasis added). On September 16, 2020, Council Member Carlina Rivera advocated extending the Law:

> …*It is simply unethical to let this expire and **allow landlords to go after people** who have already lost their income and livelihoods in the midst of an ongoing economic and public health crisis*.

JA 2131-32 at 62:17-63:2 (emphasis added). The City's claims in its Supplemental Brief that it has no "intention of enforcing the guaranty law" ring decidedly hollow given its prolific use of both New York City Charter § 394(c) and General City Law §20(22), as well as the fact that it has already enforced the law through its New York City Department of Small Business Services when representing small business commercial tenants. *See infra,* at 12, JA 2697-2700, ¶¶ 2, 6, 9-13.

Further underscoring its continued interest in the Guaranty Law, the City has appeared in no less than 13 actions to defend the statute's constitutionality. City Br. add. B. In its amicus brief filed last year in the First Department appeal in *45-47-49*

5

*Eighth Avenue LLC v. Conti*, the City reaffirmed that it "has an interest in defending the constitutionality of its local laws," including the Guaranty law. No. 2021-02743, 2023 WL 6805863, at *1 (1st Dep't Aug. 11, 2023).

**II. The City's representations not to enforce the Guaranty Law under § 20(22) or § 394 are irrelevant to Plaintiffs' standing.**

The City's willingness to provide a declaration from the Acting Corporation Counsel promising not to enforce the Guaranty Law in the future is of little value. City Br. at 13-14. First, as this Court has held, neither Plaintiffs nor any other similarly situated landlord can claim estoppel if the City chooses to change course and seek to enforce the Guaranty Law. *See Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) ("The State also argues that VRLC's fear of suit could not possibly be well-founded because the State has no intention of suing VRLC for its activities. *While that may be so, there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation.*" (emphasis added)). Nor does a representation by the *Acting* Corporation Counsel, who has not been confirmed by the City Council, bind her successors. Accordingly, the City's representations provide cold comfort to landlords in New York City.

**III. § 20(22) and § 394 are analogous to the statutes held to confer standing in *Tweed*.**

General City Law § 20(22) and New York City Charter § 394 are nearly

6

identical to the general authority statutes that this Court found sufficient to confer standing in *Tweed New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019). In *Tweed,* this Court found similar Connecticut general authority statutes sufficient to provide the State of Connecticut and its Attorney General with "enforcement authority," conferring standing onto the *Tweed* plaintiff. *See* Conn. Gen. Stat. §§ 3-125, 15-120j. The *Tweed* Court's analysis establishes Plaintiffs' standing. In *Tweed*, this Court held that Tweed suffered an injury-in-fact where the relevant statute "directly targets Tweed and prevents it from extending its runway." 930 F.3d at 70. "In addition, Tweed has established that it is injured by the threatened enforcement of the Statute should Tweed attempt to extend the runway." *Id*. Furthermore, "Where a statute specifically proscribes conduct, the law of standing does 'not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it [has] presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such Intent existed." *Id*. at 71 (citing *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)).[1] As to traceability, the Court made clear that "Where . . . a plaintiff is

---

[1] The City incorrectly claims that *Tweed's* enforcement standing analysis is limited to "criminal" or otherwise "punitive" statutes, citing *Hedges v. Obama*, 724 F.3d at 197, 200. (City's Br., at 6, n. 2). *Hedges*, however, makes clear this standing analysis applies in the civil context: "[A]s noted above, however, neither this Court nor the Supreme Court has required much to establish this final step in challenges to ordinary criminal or **civil** punitive statutes. *Rather, we have presumed that the government will enforce the law*." *Id.* at 200 (emphasis added).

7

threatened by the enforcement of a statute that specifically targets the plaintiff, the requirement is met." *Id.* at 71 (citations omitted). Like the law in *Tweed,* the Guaranty Law directly targets Plaintiffs' ability to collect rent arrears from their tenant's guarantors. And that Plaintiffs would have to sue a guarantor in a separate proceeding is irrelevant as "[a]n injury can be 'fairly traceable' even when future contingencies of one kind or another might disrupt or derail a project." *Id. See also Dep't of Commerce v. New York*, 588 U.S. 752, 766-67 (2019). Guarantors who have invoked, and will invoke, the Guaranty Law demonstrate the effect of the City's legislative action. "[R]espondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on ***the predictable effect of Government action on the decisions of third parties***." *Dep't of Commerce,* 588 U.S. at 768 (emphasis added).

The City further claims that Plaintiffs "overread [*Tweed*]" because (1) "[*Tweed*'s] presumption of enforcement exists only where a statute 'specifically proscribes conduct,'" and the City claims the Guaranty Law does not proscribe conduct; and (2) even if it did, "government enforcement will not be presumed where there is 'reason to conclude' that it will not occur." City Br. at 4-6. Both arguments miss the mark.

*First*, the City claims that, "[r]ather than barring or requiring specified conduct, the law operates as a direction to a court addressing contract litigation

8

between the private parties to a covered guaranty." City Br. at 2. The City, once again, mischaracterizes the nature of Plaintiffs' injury. The injury was complete the minute the Guaranty Law was passed, and as this Court aptly noted, "forever extinguish[ed]" Plaintiffs' ability to enforce their bargained-for personal guaranty. *Melendez v. City of New York*, 16 F.4th 992, 1005 (2d Cir. 2021).

Any contention that the Guaranty Law "does not specifically proscribe any conduct" (City Br. at 5) is belied by the City's own documents. The record is replete with quotes from City Council members seeking to prevent/prohibit the enforcement of personal guarantees. At the May 13, 2020 Committee Hearing, City Council Member and Chairperson of the Committee on Small Business, Mark Gjonaj stated unequivocally, "**Intro 1932 will prohibit enforcement of commercial lease provisions** that hold business owners personally responsible when their business cannot pay rent due to COVID-19." JA 1806 at 5:3-6 (emphasis added).[2] *See also supra*, p. 5 (quote from Council Member Rivera: "It is simply unethical to let this expire and *allow landlords to go after people*…").

---

[2] At the September 14, 2020 Committee Hearing, Council Member Rivera also explained: ". . . that was absolutely one of the intentions of, of putting forward this bill, was to not just protect our small business owners who are really just such important New Yorkers to us, they keep the city moving, that are the lifeblood, *but also to show to some of these landlords that, um, we really are trying to do everything we can to support a fair and effective negotiation.* We realize everybody's in hard times, ah, but that increase in landlords looking to negotiate new lease terms was absolute a positive side effect of the bill that I put forward that we're hoping to extend today." JA 1936 (emphasis added).

Further, the City's claim that Plaintiffs have never made any attempt to "enforce" the personal guaranty here (City Br. at 6) is flatly refuted by the record—Plaintiffs tried to enforce the guaranty and the Guaranty Law was, expectedly, raised as a defense. JA at 2770.

Defendants quizzically claim the change in text from "[n]o personal liability provision . . . may be enforced" to "shall not be enforceable" (City Br. at 2) somehow demonstrates the statute does not proscribe conduct. The City's identification of minor statutory wordsmithing ignores statements from the Council Members set forth *supra* identifying the actual intent and impact of the Guaranty Law: proscribing enforcement of personal guaranties by commercial landlords.

The City's claim that the Guaranty Law merely provides "a defense by guarantors in a breach-of-contract claim," City Br. at 2, is further undermined by N.Y.C. Admin. Code § 22-902(a)(14) – the Commercial Tenant Harassment Law – which, like the Guaranty Law, was part of the suite of pandemic laws passed by the City Council and which the City now seeks to downplay. Section 22-902(a)(14) specifically proscribes commercial tenant harassment, defined to include attempted enforcement of guaranties subject to section 22-1005: "attempting to enforce a personal liability provision that the landlord knows or reasonably should know is not enforceable pursuant to section 22-1005 of the code." N.Y.C. Admin. Code § 22-902(a)(14). Nor does the fact that Plaintiffs' tenant "surrendered the keys" prevent

10

that tenant from claiming in any subsequent lawsuit that Plaintiffs' harassment caused it to elect to surrender.

*Second,* the City incorrectly claims that "even as to statutes specifically proscribing conduct, [*Tweed*] recognized that government enforcement will not be presumed where there is 'reason to conclude' that it will not occur." City Br. at 5. The City, however, concedes that in *Tweed*, "the State legislature enacted a law *barring precisely what the plaintiffs wished to do*." *Id.* at 6 (emphasis added). That same reasoning applies here—the City passed the Guaranty Law preventing Plaintiffs from enforcing the personal guaranty they bargained for in their lease. To paraphrase the City's Brief, the Guaranty Law is "laser-focused" on preventing enforcement of personal guaranties.

Nor does this case involve the speculative "'one-step-removed' injury" of *Murthy v. Missouri*, 219 L. Ed. 2d 604, 617 (2024). City Br. at 5. First, the City misstates the injury-in-fact standard set forth in *Tweed*. *See supra,* p. 6-8. Next, the claim that "plaintiffs have never alleged that the City will enforce the guaranty law against them" is plainly contradicted by the pleadings in this case. City Br. at 3. As Plaintiffs have pointed out time and again (Appellees' November 7, 2023 Brief ("Appellees Br.") at 24-25), the Amended Complaint alleges that the City enacted the law, the Mayor is "charged with enforcement of…the laws and ordinances of New York City" and Commissioner Doris is responsible for "enforcement of New

11

York City's Administrative Code," where the Guaranty Law is codified. JA 1020 ¶¶ 58, 60. Further, the City's repeated extension of the Guaranty Law illustrates that the City thinks the Guaranty Law is worthy of enforcement. *Melendez*, 16 F.4th 992, 1005 n.27.

Most important, the City itself filed the Declaration of Coby Kalter, the Executive Director of Launch Services of the New York City Department of Small Business Services, admitting that the City "represented" tenants and provided free legal services pursuant to the Commercial Lease Assistant Program ("CLA") to "hundreds of small business commercial tenants with personal guaranties and arrears."[3] JA 2697-2700, ¶¶ 2, 6, 9-13. Mr. Kalter's declaration details explicitly how the Guaranty Law unfairly tilted the playing field against landlords, and how CLA "represented" clients gained "added leverage" to cause landlords to forego enforcing personal guaranties. *Id.* Thus, in addition to its capacity to bring suit under § 394(c) and §20(22), Mr. Kalter readily admits the "Guaranty Law was essential" to CLA in its representations of small businesses against landlords. *Id.* at ¶¶ 11, 13.

Thus, the City's continued reliance on cases like *Whole Woman's Health v. Jackson*, 595 U.S. 230 (2021) is entirely misplaced. *Whole Woman's Health*

---

[3] The CLA program website is *available at* https://nyc-business.nyc.gov/nycbusiness/business-services/legal-assistance/commercial-lease-assistance-program.

involved a pre-enforcement challenge (at the motion to dismiss stage), of S.B. 8, which "generally does not allow state officials to bring criminal prosecutions or civil enforcement actions." *Whole Woman's Health*, 595 U.S. at 35-36. Plaintiffs have established that the City passed the unconstitutional Guaranty Law, extended it twice, extinguishing Plaintiffs' contractual rights, and its own agency, through its CLA legal services enforces the Guaranty Law against landlords.

The City's reliance on *FDA v. Alliance for Hippocratic Medicine* is similarly misplaced, and reinforces a finding that Plaintiffs demonstrate standing here. 602 U.S. 367 (2024). The Supreme Court made clear in *Hippocratic Medicine* that "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, *standing is usually easy to establish*." 602 U.S. at 382 (emphasis added). Here, the Guaranty Law bars Plaintiffs from enforcing the personal guaranty, and this is not a case of the "government's regulation (or lack of regulation) of someone else." *Id.* Plaintiffs are the direct subject of the Guaranty Law's prohibitions.

## IV. The City Overstates the Redressability Standard

Finally, the City fails to accurately state the redressability standard. As the Supreme Court again found in *Hippocratic Medicine*, to demonstrate redressability a plaintiff need only demonstrate the threat of future injury "***likely would be***

13

*redressed by the requested judicial relief*."[4]  602 U.S. at 380 (citations omitted) (emphasis added).  Redressability does not require Plaintiffs to prove that their injury would be completely remedied pursuant to an order by this Court, but rather that the requested relief would have the *likely* effect of redressing the injury.

Similarly, in *Massachusetts v. E.P.A.*, in finding that Massachusetts had standing to pursue its claims based on the E.P.A.'s failure to properly address global climate change, the Supreme Court found as to the "remedy":

> While it may be true that regulating motor-vehicle emissions will not by itself reverse global warming, it by no means follows that we lack jurisdiction to decide whether EPA has a duty to take steps to *slow or reduce* it. *Larson v. Valente,* 456 U.S. 28, 244 n.15, 102 S. Ct. 1673, 72 L. Ed. 33 (1982) ("A plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his *every* injury"). Because of the enormity of the potential consequences associated with manmade climate change, the fact that the effectiveness of a remedy might be delayed during the (relatively short) time it takes for a new motor-vehicle fleet to replace an older one is essentially irrelevant.
>
> …
>
> The risk of catastrophic harm, though remote, is nevertheless real.  That risk would be reduced to some extent if petitioners received the relief they seek.  We therefore hold that petitioners have standing to challenge EPA's denial of their rulemaking petition.

---

[4] As Justice Kavanaugh further found, "The second and third standing requirements – causation and redressability – are often 'flip sides of the same coin.'" *Hippocratic Medicine*, 602 U.S. at 380-81 (citing *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 288 (2008)).

*Massachusetts v. E.P.A.,* 549 U.S. 497, 525 (2007)(emphasis in original).

While the City argues that New York state court judges are not bound by any decision of this Court, that is not dispositive. Many New York state court judges have adopted the reasoning in Judge Abrams's ruling, and for standing to exist, Plaintiffs need only show that their injury would "likely be redressed." *See Mark Propco LLC v. Noro*, 2023 WL 5750432, at 2, 2023 N.Y. Misc. LEXIS 5362, at 4 (N.Y. Sup. Ct. 2023) ("This court agrees that the reasoning in Melendez is thorough and sound, and should apply to the instant action."); *Dongqi 79 Alumni, Inc. v. United POS Inc.*, 2023 WL 4234297, *3, 2023 N.Y. Misc. LEXIS 3325, *7 (N.Y. Sup. Ct. 2023)(same); *Kensington House NY LLC v. Accardi*, 2023 WL 3505284, at *2, 2023 N.Y. Misc. LEXIS 2457, at *3–4 (N.Y. Sup. Ct. 2023)(same).

Dated:    New York, New York
            July 22, 2024

**HOGAN LOVELLS US LLP**

By: _____
Claude G. Szyfer
Daria D. Anichkova
Raman R. Kulkarni
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
Fax: 212.918.3100
Claude.szyfer@hoganlovells.com
Daria.anichkova@hoganlovells.com
Raman.kulkarni@hoganlovells.com
*Attorneys for Plaintiffs—Appellees Elias Bochner and 287 7th Avenue Realty LLC*

15