23-683
Elias Bochner, et al. v. City of New York, et al.

# In the
# United States Court of Appeals
# for the Second Circuit

————————

AUGUST TERM 2023

No. 23-683

ELIAS BOCHNER, 287 7TH AVENUE REALTY LLC,

*Plaintiffs-Appellees,*

v.

CITY OF NEW YORK, a municipal entity, MAYOR ERIC L. ADAMS,
as Mayor of the City of New York, COMMISSIONER ADOLFO CARRIÓN JR.,
Commissioner of New York City Department of
Housing Preservation & Development, ACTING COMMISSIONER
DYNISHAL GROSS, Acting Commissioner of New York City Department
of Small Business Services,

*Defendants-Appellants.*\*

————————

On Appeal from the United States District Court
for the Southern District of New York

————————

ARGUED: MAY 29, 2024

DECIDED: OCTOBER 7, 2024

————————

---

\* The Clerk of Court is directed to amend the official case caption as set forth above.
Commissioner Carrión and Acting Commissioner Gross are automatically substituted as
defendants. *See* Fed. R. App. P. 43(c)(2).

Before: CABRANES, RAGGI, and CARNEY, *Circuit Judges*.

_____

Defendants the City of New York and certain of its named officials ("the City") appeal from an award of summary judgment entered in the United States District Court for the Southern District of New York (Abrams, *J*.) in favor of plaintiffs on their Contracts Clause challenge to the City's Guaranty Law.  That law, enacted in response to the COVID-19 pandemic, (1) rendered personal guaranties of commercial lease obligations arising between March 7, 2020, and June 30, 2021, permanently unenforceable; and (2) identified efforts to collect on such guaranties as proscribed commercial tenant harassment.  *See* N.Y.C. Admin. Code §§ 22-902(a)(14), 22-1005.  The City does not here dispute the district court's determination that the Guaranty Law violates the Contracts Clause.  Instead, it argues that there is no federal jurisdiction to hear this case because plaintiffs lack standing to challenge the Guaranty Law in an action against the City, which does not enforce that law.  On this ground, the City seeks vacatur not only of the district court's award of summary judgment but also of this court's earlier judgment reversing dismissal of plaintiffs' Contracts Clause challenge for failure to state a claim.  *See Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021).

The Court denies the City's request to vacate its judgment in *Melendez* because, at the pleadings stage of this case, plaintiffs satisfactorily carried their standing burden by alleging the City's enforcement of the Guaranty Law, which the City did not then disavow.

On summary judgment, however, plaintiffs failed to carry their heightened burden to demonstrate standing by coming forward with factual evidence of the City's likely enforcement of the Guaranty Law against them.  On this record, we must vacate the district court's award of summary judgment and remand the case with instructions to dismiss this action for lack of subject matter jurisdiction.

We nevertheless note that the City unnecessarily prolonged litigation in this case by failing to raise its enforcement challenge to standing throughout almost two years of dismissal litigation and, thereafter, failing to provide the district court and this court with a complete and accurate account of the City's enforcement authority. Because this conduct appears to have been negligent rather than strategic, we do not impose sanctions, but, in our equitable discretion, we deny the City costs on this appeal

VACATUR GRANTED IN PART AND DENIED IN PART; CASE REMANDED.

————————————

> CLAUDE G. SZYFER (Darya Anichkova, *on the brief*), Hogan Lovells US LLP, New York, NY; David Kahne, Steptoe LLP, New York, NY, *for Plaintiffs-Appellees*.
>
> JAMISON DAVIES, Assistant Corporation Counsel (Richard Dearing & Devin Slack, Assistant Corporation Counsels, *on the brief*), *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellants*.

————————————

REENA RAGGI, *Circuit Judge*:

The first time this case came before this court, plaintiffs, a group of New York City landlords, appealed from a judgment of the United States District Court for the Southern District of New York (Ronnie Abrams, *Judge*), which, pursuant to Fed. R. Civ. P. 12(b)(6), dismissed their constitutional challenges to laws enacted by New York City in response to the COVID-19 pandemic. *See Melendez v. City of New York* [*"Melendez I"*], 503 F. Supp. 3d 13 (S.D.N.Y. 2020). Those laws prohibit "threatening" residential or commercial tenants based on their COVID-19 status, *see* N.Y.C. Admin. Code §§ 22-902(a)(11), 27-2004(48)(f-7) (together, the

3

"Harassment Law Amendments"), and render permanently unenforceable personal liability guaranties of commercial lease obligations arising during the pandemic between March 7, 2020, and June 30, 2021, *see id.* §§ 22-902(a)(14), 22-1005 (the "Guaranty Law"). This court affirmed dismissal of plaintiffs' free speech and due process challenges to the Harassment Law Amendments, *see* U.S. CONST. amends. I, XIV, but reversed dismissal of their Contracts Clause challenge to the Guaranty Law, *see id.* art. I, § 10, cl. 1.  *See Melendez v. City of New York* ["*Melendez II*"], 16 F.4th 992 (2d Cir. 2021).

On this appeal, it is defendants, the City of New York and certain of its named officials (together, "the City"), who appeal from the district court's March 31, 2023 award of summary judgment in favor of plaintiffs 287 7th Avenue Realty LLC and its owner Elias Bochner (together, "the Bochner Plaintiffs") on their Contracts Clause challenge to the Guaranty Law.  *See Melendez v. City of New York* ["*Melendez III*"], 668 F. Supp. 3d 184 (S.D.N.Y. 2023).  The City does not here dispute the district court's determination that the Guaranty Law is unconstitutional.  Rather, it challenges the court's jurisdiction to hear the action at all, arguing that the Bochner Plaintiffs cannot demonstrate standing because the City does not enforce the Guaranty Law, which thus poses no imminent threat of injury to plaintiffs that could be redressed in this action.  On that ground, the City asks this court to vacate not only the district court's award of summary judgment in *Melendez III* but also this court's *Melendez II* judgment reversing dismissal of the Bochner Plaintiffs' Contracts Clause claim pursuant to Fed. R. Civ. P. 12(b)(6).

Throughout extensive litigation at the dismissal stage of this case, the City never disavowed enforcement of the Guaranty Law or challenged plaintiffs' standing or federal jurisdiction on that ground.  Because plaintiffs plausibly alleged the City's enforcement of the Guaranty Law at the pleadings stage of this action, this court denies the City's request to vacate its judgment in *Melendez II* for lack of jurisdiction.

Only on remand, when the parties cross-moved for summary judgment, did the City assert its non-enforcement of the Guaranty Law to challenge the Bochner Plaintiffs' standing and federal jurisdiction. At that stage of the proceedings, the Bochner Plaintiffs bore a heightened burden to demonstrate standing by adducing factual evidence showing that they faced a credible threat of imminent and redressable injury from the City's enforcement of the Guaranty Law. Plaintiffs having failed to carry that burden, and the City having now unequivocally disavowed any intent to enforce the Guaranty Law against them, we must conclude that the Bochner Plaintiffs lack standing to pursue a Contracts Clause challenge to the Guaranty Law in this action against the City. Accordingly, we vacate the district court's award of summary judgment in favor of the Bochner Plaintiffs, and we remand with instructions to dismiss the action for lack of subject matter jurisdiction.

We nevertheless note that the City unnecessarily prolonged litigation in this case by failing to raise its enforcement challenge to standing throughout almost two years of dismissal litigation and, thereafter, by failing to provide a complete and accurate account of the City's relevant enforcement authority. Because this conduct appears to have been negligent rather than strategic, we do not impose sanctions, but, in our equitable discretion, we deny the City costs on this appeal. *See* Fed. R. App. P. 39(a).

## BACKGROUND

### I.     The Guaranty Law

Because some understanding of the Guaranty Law is necessary to address the standing question here at issue, we begin by detailing its two substantive provisions, which amended the City's Administrative Code. First, the Guaranty Law added a section to the Code entitled, "Personal liability provisions in commercial leases," which rendered permanently unenforceable certain personal

liability guaranties on commercial lease obligations arising between March 7, 2020, and June 30, 2021. *See* N.Y.C. Admin. Code § 22-1005.[1] Second, the Guaranty Law added to the list of specified acts or omissions proscribed by the Commercial Harassment Law "attempting to enforce a personal liability provision that the

---

[1] As initially enacted, the Guaranty Law applied to lease obligations arising between March 7, 2020, and September 30, 2020. *See* N.Y.C. Local L. 2020/55 § 1. It was subsequently extended through March 31, 2021, *see id.* 2020/98 § 2, and then again through June 30, 2021, *see id.* 2021/50 § 2. As most recently amended, § 22-1005 reads as follows:

> A provision in a commercial lease or other rental agreement involving real property located within the city, or relating to such a lease or other rental agreement, that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph[s] 1 and 2 are satisfied:

> 1. The tenant satisfies the conditions of subparagraph (a), (b) or (c):

> > (a) The tenant was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under executive order number 202.3 issued by the governor on March 16, 2020;

> > (b) The tenant was a non-essential retail establishment subject to in-person limitations under guidance issued by the New York state department of economic development pursuant to executive order number 202.6 issued by the governor on March 18, 2020; or

> > (c) The tenant was required to close to members of the public under executive order number 202.7 issued by the governor on March 19, 2020.

> 2. The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and June 30, 2021, inclusive.

landlord knows or reasonably should know is not enforceable pursuant to section 22-1005." *Id*. § 22-902(a)(14).[2]  In sum, the Guaranty Law renders certain specified commercial lease guaranties permanently unenforceable and generally proscribes landlord attempts to enforce those guaranties.

## II.    Procedural History

In summarizing the procedural history of this case, we pay particular attention to pleadings, arguments, and rulings pertaining to standing.

### A. Dismissal Litigation

### 1.    First Standing Challenge: The City Questions and then Concedes Plaintiffs' Possession of a Commercial Lease Guaranty Subject to § 22-1005

#### a.  Plaintiff Top East Realty LLC

On July 10, 2020, a group of New York City landlords—not yet including the Bochner Plaintiffs—filed this action for declaratory and injunctive relief claiming, *inter alia*, that the Harassment Law Amendments and Guaranty Law were unconstitutional.

On August 12, 2020, the City, represented by its Corporation Counsel, moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs failed plausibly to plead constitutional violations.  Only in a footnote to its memorandum in support of that motion did the City first question plaintiffs'

---

[2] The City's Commercial Harassment Law states that "landlord[s] shall not engage in commercial tenant harassment," which it defines as specified acts or omissions that "would reasonably cause a commercial tenant to vacate a covered property, or to surrender or waive any rights." N.Y.C. Admin. Code § 22-902(a). The law affords commercial tenants a private cause of action for such harassment, which can result in an award of compensatory and punitive damages, a civil penalty of not less than $10,000 or more than $50,000, as well as equitable relief, attorneys' fees, and costs. *See id*. § 22-903.

standing to challenge the Guaranty Law—based not on the City's non-enforcement of that law, but rather on purported record ambiguity as to whether plaintiff Top East Realty LLC in fact held a guaranty agreement subject to § 22-1005.[3]

In opposing dismissal generally, plaintiffs similarly addressed standing only in a footnote. They argued that Top East Realty LLC and its owner Ling Yang "'reasonably fear' that in light of [the Guaranty] Law and the substantial penalties the Law provides, they will be unable to enforce their personal guaranty." Pls.' Reply Supp. Mot. Prelim. Inj. & Opp'n Defs.' Mot. Dismiss ["Pls.' Opp'n Defs.' Mot. Dismiss"] at 12 n.10, Dist. Ct. Dkt. 48 (alteration adopted) (citing *Pacific Cap. Bank, N.A. v. Connecticut*, 542 F.3d 341 (2d Cir. 2008)).

In reply, the City continued to question plaintiffs' standing to challenge the Guaranty Law, but only on the ground that plaintiffs had failed to show that Top East Realty LLC held a commercial lease guaranty subject to § 22-1005.

### b. The Bochner Plaintiffs

On September 2, 2020—before the district court ruled on the City's motion to dismiss—plaintiffs filed the operative Amended Complaint, adding the Bochner Plaintiffs as parties asserting a Contracts Clause challenge to the Guaranty Law.[4] Like the original Complaint, the Amended Complaint alleges that

---

[3] On other grounds, the City also questioned certain plaintiffs' standing to pursue First Amendment and due process challenges to the Harassment Law Amendments. The district court rejected that challenge, which ruling is not at issue on this appeal, this court having affirmed the district court's Rule 12(b)(6) dismissal of plaintiffs' First Amendment and due process challenges to the Harassment Law Amendments in *Melendez II*, 16 F.4th at 1047.

[4] By letter, plaintiffs advised the district court that Top East Realty LLC and Ling Yang had settled their claim for back rent, thus mooting their Contracts Clause challenge to the Guaranty Law.

certain City officials, specifically, the Mayor and the City's Commissioner of Small Business Services, are responsible for the enforcement of City laws generally and the City's Administrative Code in particular.

Two days later, the City sent the district court a letter asserting that questions remained as to plaintiffs' standing. As to the Contracts Clause claim, the City again did not disavow its enforcement of the Guaranty Law. Rather, it submitted that it was not clear from the documents provided that the Bochner Plaintiffs held a commercial lease guaranty subject to § 22-1005.

That same day, the district court ordered the parties to brief, *inter alia*, "[w]hether the plaintiffs have standing to challenge the Harassment Laws and which plaintiffs, if any, have standing to challenge the Guaranty Law." Order (Sept. 4, 2020), Dist. Ct. Dkt. 61.

In a letter brief filed September 9, 2020, plaintiffs submitted, primarily with respect to the Harassment Law Amendments, that they satisfied the causation and redressability elements of standing because (1) "the named defendants possess authority to enforce the complained-of provision[s]" of law, Pls.' Letter Br. (Sept. 9, 2020) at 4–5, Dist. Ct. Dkt. 64 (quoting *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015)); (2) "as to [the] municipal defendants," allegations that the law is unconstitutional are "always sufficient" to establish causations, *id.* at 5 (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004); (3) the City had not disavowed an intent to enforce the challenged laws, *see id.* at 6 ("Courts presume that the government intends to enforce a law 'in the absence of a disavowal by the government or another reason to conclude' it has no such intent." (quoting *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2508 (2020)); and (4) "the court could prevent enforcement of the unconstitutional restriction[s]," *id.* at 5. Further, as to the Guaranty Law, the Bochner Plaintiffs attached exhibits demonstrating that they held a commercial lease guaranty subject to § 22-1005.

9

They also asserted that, by "enacting the Guaranty Law," the City had injured the Bochner Plaintiffs by "permanently depriv[ing them] of their only remedy" for collecting unpaid rent from "defaulting commercial tenants." *Id.* at 8.

In its own letter brief, the City conceded plaintiffs' standing to maintain challenges to both the Harassment Law Amendments and the Guaranty Law. As to the former, the City simply agreed that one or more plaintiffs "appear[ed] to have standing" to challenge the Harassment Law Amendments because they had sufficiently shown that they were landlords of residential and/or commercial tenants—the "minimum" required to satisfy standing. Defs.' Letter Br. (Sept. 9, 2020) at 2, Dist. Ct. Dkt. 65. As to the latter, the City acknowledged that the Bochner Plaintiffs "appear to have standing to challenge the Guaranty Law under the Contract[s] Clause" because they satisfied the "minimum" requirement to show that they held an effective personal guaranty agreement with an individual who was not the commercial tenant. *Id.* at 3. Indeed, the City reiterated this last concession at oral argument on the motion to dismiss, acknowledging that "documents that were belatedly provided to us do seem to establish that [the Bochner] plaintiffs appear to have standing." Hearing Tr. (Sept. 11, 2020) at 4, Dist. Ct. Dkt. 66. At no time did the City disavow its ability to enforce the Guaranty Law, or challenge plaintiffs' standing or the court's jurisdiction on that ground.

## 2. The Dismissal Judgment

On November 25, 2020, the district court granted the City's motion to dismiss the Amended Complaint. *See Melendez I*, 503 F. Supp. 3d at 38. Presumably relying on defendants' concessions as to standing, the district court did not address that jurisdictional issue. Instead, the district court concluded pursuant to Fed. R. Civ. P. 12(b)(6) that plaintiffs failed to state any plausible claims for relief because (1) the Harassment Law Amendments did not implicate plaintiffs' First Amendment rights and were not so vague as to violate the Due Process Clause of the Fourteenth Amendment, *see id.* at 27–31; and (2) while the

Guaranty Law substantially impaired the Bochner Plaintiffs' contract rights as against the lease guarantor, it did not violate the Contracts Clause because it was a reasonable and necessary means to advance a legitimate public interest in addressing pandemic-related concerns, *see id.* at 32–36.[5]

### 3.  The City Raises No Standing Challenge in Defending Dismissal on Appeal

On appeal, this court affirmed the district court's Rule 12(b)(6) dismissal of plaintiffs' First Amendment and due process challenges to the Harassment Law Amendments, *see Melendez II*, 16 F.4th at 1010–16, but reversed its dismissal of the Bochner Plaintiffs' Contracts Clause challenge to the Guaranty Law and remanded to the district court for further consideration of that claim, *see id.* at 1016–47. Because we assume familiarity with that decision, we do not here repeat its lengthy analysis.  We note only that, in urging this court to affirm the district court's judgment of dismissal as to all claims, the City never suggested that it did not enforce the Guaranty Law, that the Bochner Plaintiffs lacked standing to assert a Contracts Clause claim, or that the district court or this court lacked jurisdiction to hear the case.

We proceed now to review how the City eventually came to raise an enforcement-based challenge to standing and jurisdiction on remand.

---

[5] The district court also declined to exercise supplemental jurisdiction over plaintiffs' due process claim under the New York State Constitution.  *See Melendez I*, 503 F. Supp. 3d at 27 n.8.

11

### B.  Summary Judgment Litigation

### 1.  City Moves for Discovery on Standing Without Disavowing Enforcement

On return of this case to the district court, the Bochner Plaintiffs, on March 28, 2022, moved for summary judgment on their Contracts Clause challenge to the Guaranty Law, clarifying that they sought only a declaratory judgment and abandoning any claim for injunctive relief.  The City responded by moving for a three-month period of discovery limited to "the question of standing."  Defs.' Letter Mot. (Apr. 11, 2020) at 1, Dist. Ct. Dkt. 95.

The City did not profess to need discovery to clarify its enforcement authority over the Guaranty Law as that pertained to standing or jurisdiction, a matter presumably already within its knowledge.  Rather, it stated that it sought discovery to explore "certain holes in the documents previously provided [by plaintiffs] in September 2020"—an apparent reference to documents provided to show that the Bochner Plaintiffs held a commercial lease guaranty subject to § 22-1005.  *Id*.at 1–2**.**  The City explained:

> While Defendants may have[,] for the purposes of preliminary injunctive relief[,] accepted the minimal discovery that Plaintiffs provided back in September 2020, now, for the purposes of determination on the merits, Defendants require further discovery to address the standing issue, particularly regarding certain holes in the documents previously provided to Defendants in September 2020, and to develop the record regarding events impacting standing issues that may have transpired since September 2020.

*Id*. (citation omitted).  The district court granted the City's request.

### 2. The City Cross Moves for Summary Judgment and First Disavows Enforcement of the Guaranty Law

Some five months later, on September 23, 2022, the City filed its opposition to the Bochner Plaintiffs' motion for summary judgment and its own cross-motion for summary judgment. It devoted most of its twenty-five-page brief to challenging the merits of the Bochner Plaintiffs' claim, arguing that the record demonstrated, as a matter of law, that the Guaranty Law did not violate the Contracts Clause. In a single paragraph—and for the first time in the more than two years since the action commenced—the City also challenged the court's subject matter jurisdiction on the ground that the Bochner Plaintiffs lacked standing because "[t]he City does not enforce the Guaranty Law." Defs.' Cross-Mot. Summ. J. & Opp'n Pls.' Mot. Summ. J. ("Defs.' Cross-Mot. Summ. J.") at 9, Dist. Ct. Dkt. 103. It argued that, in these circumstances, a judgment for the Bochner Plaintiffs would "amount to no more than a declaration that the statutory provision they attack is unconstitutional,' which . . . 'is the very kind of relief that cannot alone supply jurisdiction otherwise absent.'" *Id.* (quoting *California v. Texas*, 593 U.S. 659, 673 (2021)).[6]

The Bochner Plaintiffs offered only a brief reply to this new standing argument, asserting that *California v. Texas* was inapt because the statutory provision there in question "failed to include a penalty for noncompliance[,] rendering the provision unenforceable," while here "[t]hat is plainly not the case." Pls.' Reply Supp. Mot. Summ. J. & Opp'n Defs.' Cross-Mot. Summ. J. at 6, Dist. Ct. Dkt. 110.

---

[6] The City also raised a ripeness challenge to jurisdiction. Insofar as that issue is presented on this appeal, we address it *infra* at 30–36 in considering the Bochner Plaintiffs' ability to satisfy the injury requirement for standing. *See National Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ("Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing.").

In its own reply brief, the City expanded on its standing argument. Repeating that the "City does not enforce the Guaranty Law" and continuing to rely on *California v. Texas*, it argued that any declaration running against defendants as to the constitutionality of the Guaranty Law could not redress the Bochner Plaintiffs' alleged injury. Defs.' Reply Supp. Cross-Mot. Summ. J. at 1, Dist. Ct. Dkt. 114; *see id.* at 2 ("[T]he logic of [*California v. Texas*] is that litigants may not proceed in federal court if the defendants have no capacity to enforce the law against them and have not caused them any redressable injury[.]"). Because "the only conceivable, potential controversy would be between Plaintiffs and their lessee," a declaratory judgment or even "an injunction from this court could not affect the legal rights of either Plaintiffs or Defendants here." *Id.* at 2 (internal quotation marks omitted).

On November 30, 2022, the district court ordered supplemental briefing on defendants' standing challenge.

### 3. Bochner Plaintiffs Concede Guaranty Law Is "Not 'Enforced' by Anyone"

In its supplemental filing, the City repeated its argument that the declaratory relief sought by the Bochner Plaintiffs could not redress their alleged injury because "the City does not enforce the Guaranty Law against the Plaintiffs." Defs.' Suppl. Letter (Dec. 7, 2022) at 2, Dist. Ct. Dkt. 120 (quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021), for proposition that "court lacks jurisdiction where plaintiffs could point to no 'enforcement authority the [defendant] possesses in connection with [the challenged law] that a federal court might enjoin him from exercising'" (alterations in original)).

In their supplemental filing, the Bochner Plaintiffs agreed that "the Guaranty Law is not 'enforced' by anyone." Pls.' Suppl. Letter Br. (Dec. 7, 2022) at 5 n.3, Dist. Ct. Dkt. 119. Nonetheless, they urged rejection of the City's standing

challenge because the "suggestion that the action must be brought against an entity 'enforcing' the Guaranty Law would render it completely immune from any constitutional challenge." *Id.* The Bochner Plaintiffs maintained that they suffered a redressable injury at the moment the City "enact[ed] the Guaranty Law." *Id.* at 4; *see id.* at 5 ("To the extent there is no 'threatened action' here, it is because the City's action—and resulting injury to Plaintiffs—occurred when the City enacted the Guaranty Law, stripping Plaintiffs of their contractual rights in violation of the Contracts Clause.").

### 4. District Court Rejects the City's Standing Challenge and Awards Summary Judgment to Bochner Plaintiffs

The district court rejected the City's standing challenge. Identifying the three "irreducible constitutional minimum" requirements of standing—"injury-in-fact, causation, and redressability"—the district court concluded that the Bochner Plaintiffs satisfied the first because the Guaranty Law's "permanent[] bar[]" on their ability to recoup "unpaid rent for a prime commercial tenancy in the heart of Manhattan" from a guarantor was a concrete and particularized injury. *Melendez III*, 668 F. Supp. 3d at 194–95 (internal quotation marks omitted). They satisfied the second because "[w]here, as here, a plaintiff is 'threatened by the enforcement of a statute that specifically targets the plaintiffs, the [causation] requirement [of standing] is met.'" *Id.* at 195 (quoting *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d at 71). Finally, the district court concluded that the Bochner Plaintiffs demonstrated that their injury was redressable because a favorable court decision on their constitutional challenge would remove the "absolute barrier to recovering unpaid rent" imposed by the Guaranty Law. *Id.* at 196.

In granting summary judgment to the Bochner Plaintiffs on their Contracts Clause challenge to the Guaranty Law, the district court concluded that (1) "the contractual impairment imposed by the Guaranty Law on Plaintiffs was substantial"; (2) "the City's effort to mitigate the devastating economic impact of

15

the COVID-19 pandemic constituted a legitimate public purpose"; but (3) the Guaranty Law was not a reasonable and appropriate means to advance that interest. *Id.* at 197. In reaching the last conclusion, the district court examined five areas of concern identified by this court in reversing dismissal of plaintiffs' Contracts Clause challenge in *Melendez II*.

*First*, it observed that the Guaranty Law "permanently barred [commercial landlords] from recovering any rent owed during the [covered] period," which weighed against constitutionality in the tailoring analysis. *Id.* at 200 (citing *Melendez II*, 16 F.4th at 1039–40).

*Second*, noting that the City had chosen to "rel[y] upon the same record evidence" as at the dismissal stage, the district court found that it failed to show that "permanently eviscerat[ing]" commercial lease guaranties was an appropriate means to advance the City's professed purpose "to help shuttered small businesses survive the pandemic." *Id.* at 200–02 (quoting *Melendez II*, 16 F.4th at 1040). Specifically, the City failed to justify the Guaranty Law's permanent bar "irrespective of (1) a showing that the affected guarantor owned the small business, (2) that such owner guarantor had financial need, and (3) that such owner-guarantor would reopen the closed business following the pandemic emergency if provided the [statutory] aid." *Id.* at 202 (citing *Melendez II*, 16 F.4th at 1041–43).

*Third*, the district court found that the City was "unable to justify its decision to exclusively allocate the [economic] burden" of defaulted commercial leases on landlords by rendering their guaranty agreements unenforceable. *Id.* at 204; *see id.* at 203 (noting "no record support for the proposition that commercial landlords were in any way responsible for the economic crisis that the Guaranty Law sought to mitigate" (citing *Melendez II*, 16 F.4th at 1042)).

16

*Fourth,* the district court found that the City's "generalized evidence" of small business owners' need for urgent economic relief during the pandemic was insufficient to justify "the lack of any hardship requirement in the [Guaranty] Law." *Id.* at 204–05 (citing *Melendez II*, 16 F.4th at 1043). Nor did the fact that the Guaranty Law afforded relief only to natural-person guarantors demonstrate the requisite means-end fit, because a natural person requirement "by itself, does not mean that a particular guarantor cannot pay rent arrears." *Id.* at 206 (quoting *Melendez II*, 16 F.4th at 1043).

*Fifth,* finding that the "record now confirms" that the Bochner Plaintiffs had sustained a loss of "approximately $150,000" in unpaid rent, the district court noted the Guaranty Law's failure to provide any compensation or relief for landlords or their principals who were unable to mitigate such losses by enforcing guaranties. *Id.* (citing *Melendez II*, 16 F.4th at 1046).

Thus finding that the City was "unable to provide record evidence to answer the 'five serious concerns'" identified by this court as to the Guaranty Law being "a reasonable and appropriate means to pursue the professed public purpose," *id.* at 207 (quoting *Melendez II*, 16 F.4th at 1047), the district court entered summary judgment in favor of the Bochner Plaintiffs on their Contracts Clause claim.

### 5. Instant Appeal

#### a. Parties' Initial Agreement that the City Lacks Authority to Enforce Guaranty Law

In timely appealing from the award of summary judgment in this case, the City does not challenge that judgment on the merits. It challenges only the district court's subject matter jurisdiction to hear the case at all, arguing that the Bochner Plaintiffs lack standing to bring this pre-enforcement challenge to the Guaranty Law because the City does not and, indeed, cannot enforce that law. *See*

17

Appellants' Br. at 11 ("[T]he City . . . has *absolutely no role* in enforcing the [Guaranty Law]." (emphasis added)); Appellants' Reply Br. at 19 ("[T]here is no threatened enforcement by the government here because none of the defendants has *any power* to enforce the challenged law." (emphasis added)).

In their initial brief to this court, the Bochner Plaintiffs agreed that "the Guaranty Law is not 'enforced' by *anyone.*" Appellees' Br. at 25 (emphasis in original). Nevertheless, they argued that "[t]here is no requirement that only enforcers of a statute may be sued in a Contracts Clause constitutional challenge." *Id.* Further, plaintiffs asserted that their case "is not a pre-enforcement challenge" but, rather, "a Contracts Clause action where the passage of the Guaranty Law itself caused the injury." *Id.* at 22.

### b. Supplemental Briefing and Identification of City Enforcement Authority

At oral argument, this court expressed some skepticism as to the City's claim that it was completely lacking in authority to enforce the Guaranty Law. It also questioned whether the City had strategically delayed raising its enforcement-based challenge to standing and jurisdiction until after this court's reversal of a dismissal judgment in its favor—conduct that might be sanctionable. *See generally International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 393 (2d Cir. 1989) (affirming imposition of sanctions under Fed. R. Civ. P. 11 for "attorney's failure to conduct a proper pre-trial inquiry into the court's subject matter jurisdiction"). The City requested an opportunity to brief the sanctions issue, which this court granted.

In a supplemental letter brief arguing that it did not engage in strategic delay, the City included a brief passage that—at odds with its disavowal of "any power" to enforce the Guaranty Law, Appellants' Reply Br. at 19—acknowledged that two laws, one state and one local, provide the City with at least "generalized

18

authority to maintain actions seeking to remedy violations of its laws."
Appellants' 1st Suppl. Letter Br. at 3, Dkt. 83. The first of these laws, N.Y. Gen.
City L. § 20(22), empowers all cities within New York State "[t]o maintain an action
or special proceeding in a court of competent jurisdiction to compel compliance
with or restrain by injunction the violation of any such ordinance or local law."
The second law, N.Y.C. Charter § 394(c), authorizes the City, through its
Corporation Counsel, "to institute actions in law or equity . . . to maintain, defend
and establish the rights, interests, revenues, property, privileges, franchises or
demands of the city . . . or of the people thereof, or to collect any money, debts,
fines or penalties or to enforce the laws." The City, nevertheless, submitted that
"such generalized authority has consistently been held insufficient to support
standing." Appellants' 1st Suppl. Letter Br. at 3 & n.1 (collecting out-of-circuit
cases).

The Bochner Plaintiffs responded to the City's supplemental submission by
abandoning their own prior concession that no one enforces the Guaranty Law
and instead arguing that the enforcement authority conferred on the City by N.Y.
Gen. City L. § 20(22) and N.Y.C. Charter § 394(c) establishes the credible risk of
enforcement and, therefore, redressable injury, required to satisfy standing to
maintain this action. *See* Appellees' 1st Suppl. Letter Br. at 3, Dkt 85.

Concluding that "Plaintiffs' standing cannot be determined on the present
record," this court ordered further briefing. Order (July 1, 2024), Dkt. 92.[7]

---

[7] Further briefing was ordered as to the following issues:

> (1) the scope of enforcement authority conferred by [N.Y. Gen. City L.]
> § 20(22) and [N.Y.C. Charter] § 394(c), including their application to [the
> Guaranty Law as reflected in N.Y.C. Admin. Code] §§ 22-1005, 22-
> 902(a)(14);

> (2) all instances over the last ten (10) years . . . in which the City . . . has
> relied on § 20(22) and/or § 394(c) to enforce any law or regulation, and

19

c.  **Identification of Cases in which the City Invoked § 20(22)
    or § 394(c) Authority or Appeared to Defend Guaranty
    Law**

In the second round of supplemental briefing, the City disclosed that it frequently invokes the authority conferred by N.Y. Gen. City. L. § 20(22) and N.Y.C. Charter § 394(c) to enforce various laws and regulations.  *See* Appellants' 2d Suppl. Br. at 2 & Addendum A (listing more than 2,500 cases), Dkt. 94.  Indeed, as the City acknowledges, these authorizing laws "mean what they say: the Corporation Counsel may bring suit in the City's name to enjoin violations of a local law or regulation proscribing or requiring specific conduct."  *Id.* at 1.

Nevertheless, the City submits that § 20(22) and § 394(c) are irrelevant to the question of the Bochner Plaintiffs' standing to maintain this action, not because the enforcement authority they confer is general but because the Guaranty Law is "unusual" in that it does not bar or require any specific conduct, but only provides guarantors with a defense in certain contract actions brought by landlords.  *Id.* at

---

how those cases do (or do not) demonstrate a risk of similar enforcement of the Guaranty Law;

(3) whether the City . . . intends to enforce the Guaranty Law under § 20(22), § 394(c), or any other provision of law, and if not, whether Defendants are prepared to submit an affidavit (by an authorized person in the case of the City) categorically disavowing any future enforcement;

(4) in what, if any, actions arising under the Guaranty Law, has [the City] appeared, either as a party or an *amicus*, and what positions, if any, has [the City] taken in any such litigation with respect to the constitutionality of the Guaranty Law; and

(5) in any such litigation, what, if any, preclusive effect will a decision by this Court to vacate (or not to vacate) the challenged summary judgment award have on any position the City . . . might take.

*Id.*

2 (quoting N.Y.C Admin. Code § 22-1005 stating that covered guaranties "shall not be enforceable"). Insofar as § 22-902(a)(14) does proscribe attempts to collect guaranties rendered unenforceable by § 22-1005 as commercial tenant harassment, the City submits that plaintiffs never raised a Contracts Clause challenge to that law. *See id.* at 7.

The City also acknowledges appearing—either as an *amicus* or an intervening party—in at least five state actions arising under the Guaranty Law and, in each, arguing that the law is constitutional. *See id.* at 14 & Addendum B. Nevertheless, it maintains that merely defending the constitutionality of a law does not constitute enforcement of the law sufficient to confer standing. *See id.* (citing *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976)). Moreover, it states that it has no intention of using § 20(22), § 394(c), or any other law to enforce the Guaranty Law against the Bochner Plaintiffs—"full stop." *Id.* at 13.

In their own supplemental submission, the Bochner Plaintiffs downplay the significance of defendants' disavowal and emphasize the large volume and variety of cases in which the City has invoked its enforcement authority under § 20(22) and § 394(c). *See* Appellees' 2d Suppl. Br. at 4, Dkt. 95. At the same time, the Bochner Plaintiffs reiterate that, without regard to City enforcement, their standing to sue is established by the fact that their "injury was complete the minute the Guaranty law was passed." *Id.* at 9.

## DISCUSSION

The long history of this case just detailed leads us to two conclusions. *First*, the Bochner Plaintiffs met their standing burden at the pleadings stage. The Amended Complaint adequately alleged the City's enforcement of the Guaranty Law, and defendants failed to rebut—indeed twice conceded—the presumption that the government will enforce proscriptive laws. *Second*, on remand following this court's decision in *Melendez II*, the Bochner Plaintiffs failed to meet the more

21

demanding burden on summary judgment to provide factual evidence demonstrating a credible threat of imminent enforcement. They failed to come forward with a single instance in which the City sued or threatened to sue any commercial landlord for violating the Guaranty Law. Moreover, the City has now unequivocally disavowed any intent to enforce the Guaranty Law against the Bochner Plaintiffs.

On this record, we deny the City's request to vacate the judgment in *Melendez II,* but we must vacate the district court's award of summary judgment to the Bochner Plaintiffs in *Melendez III* and remand the case with instructions to dismiss the action for lack of subject matter jurisdiction.

## I. Article III Standing

### A. Legal Standards

"Article III confines the federal judicial power to the resolution of "'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. CONST. art III, § 2). To satisfy this jurisdictional requirement, a plaintiff cannot simply complain of some wrong in the abstract. Rather, he must have a "personal stake" in the litigation at issue. *Id.* (internal quotation marks omitted). To demonstrate such a stake, a plaintiff must satisfy the three requirements of standing by showing, "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The first requirement, *i.e.*, injury in fact, cannot be merely "conjectural" or "hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. at 560 (internal quotation marks omitted). This does not mean, however, that a party must wait until he sustains an actual injury before filing suit. An anticipated future injury may suffice if the threatened injury is "imminent," a term the Supreme Court construes to mean

"*certainly* impending." *Id.* at 564 n.2 (emphasis in original) (internal quotation marks omitted); *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (requiring "substantial risk" that feared future harm will occur (internal quotation marks omitted)); *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (quoting *Clapper*). Thus, a plaintiff intending "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," may demonstrate standing to bring a pre-enforcement challenge to that statute by asserting a "credible threat" of imminent enforcement, whether criminal or civil, by a government defendant. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see Hedges v. Obama*, 724 F.3d 170, 196–97 (2d Cir. 2013).

In pre-enforcement challenges, the second and third requirements for standing—causation and redressability—are "often flip sides of the same coin." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (internal quotation marks omitted); *see California v. Texas*, 593 U.S. at 670–71 (analyzing pre-enforcement standing infirmity "from the point of view of" both causation and redressability). As the Supreme Court has explained, the future injury asserted in a pre-enforcement challenge to a particular law must be "the result of a statute's . . . threatened *enforcement*." *California v. Texas*, 593 U.S. at 670 (emphasis in original). Thus, an unenforceable statute cannot cause injury "fairly traceable" to a government actor because "there is no action—actual or threatened"; "[t]here is only the statute's textually unenforceable language." *Id.* at 671 (internal quotation marks omitted). Applying this reasoning in *California v. Texas* to a challenge to the Affordable Care Act's insurance-coverage mandate, the Supreme Court held that the absence of any penalty for noncompliance with that mandate precluded plaintiffs from asserting an injury that was traceable to the statute, as required for standing. *See id.*

Similarly, as to redressability, the Supreme Court has stated that, where a challenged statute is unenforceable, "[t]here is no one, and nothing, to enjoin." *Id.* at 673. In such circumstances, relief for plaintiffs "could amount to no more than a declaration that the statutory provision they attack is unconstitutional, *i.e.*, a declaratory judgment[,] . . . the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.*; *see Haaland v. Brackeen*, 599 U.S. 255, 292–94 (2023) (holding plaintiffs lacked standing to challenge constitutionality of Indian Child Welfare Act in action against federal officials because statute was not enforced by them but only by state officials).

The standing requirements of injury in fact, causation, and redressability are "not mere pleading requirements but rather [are] indispensable part[s] of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. at 561. This means each "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*; *see Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("A plaintiff's burden to demonstrate standing increases over the course of litigation."). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. at 561 (internal quotation marks omitted) (alteration adopted). However, where "the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. at 561).

### B. Plaintiffs Satisfied Standing at the Pleadings Stage

In applying these standing principles here, we start with the operative Amended Complaint, which effectively alleges that (1) the Guaranty Law proscribes as commercial tenant harassment the attempted enforcement of those

commercial lease guaranties rendered unenforceable by the Guaranty Law, and (2) the Bochner Plaintiffs face a threat that the City will enforce this proscription against them if they attempt to recoup unpaid rents from their commercial lease guarantor. As to the first point, the Amended Complaint pleads that the Guaranty Law both (a) "forever prohibits landlords from enforcing personal guaranties" on certain commercial leases, Am. Compl. ¶ 144, App'x 1046 (citing N.Y.C. Admin. Code § 22-1005), and (b) proscribes landlord attempts to do so as commercial tenant harassment, *see id.* ¶ 145, App'x 1046 (citing N.Y.C. Admin. Code § 22-902(a)). *See also id.* ¶ 201, App'x 1057 (alleging that "Commercial Harassment Law and the Guaranty Law, operating in tandem, destroy the economic vitality of Plaintiffs' leases"). As to the second point, the Amended Complaint alleges that certain named City officials are charged with "enforcement" of City laws, including the City's Administrative Code, which encompasses the Guaranty Law and Commercial Harassment Law. *See id.* ¶¶ 58, 60, App'x 1020. [8]

These allegations sufficed to demonstrate the Bochner Plaintiffs' standing at the pleadings stage. As this court has held, "[w]here a statute specifically proscribes conduct, the law of standing does 'not place the burden on the plaintiff to show an intent by the government to enforce the law against it'"; rather, the law "presume[s] such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d at 71 (quoting *Hedges v. Obama*, 724 F.3d at 197); *see Vitagliano v. Cnty. of Westchester*, 71 F.4th at 138 ("The credible-threat standard 'sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review, as courts are generally willing to presume that the government will

_____

[8] The City claims that plaintiffs incorrectly ascribe enforcement authority for the Administrative Code to the Small Business Commissioner. The City did not raise that argument at the pleadings stage. In any event, it does not alter our standing analysis here, as the City does not dispute the Amended Complaint's assertion that the Mayor is "charged with enforcement" of all City laws. *Id.* ¶ 58, App'x 1020.

enforce the law as long as the relevant statute is recent and not moribund.'" (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016))). The City not having disavowed either authority to enforce §§ 22-902(a)(14), 22-1005, or intent to exercise that authority at any time during the lengthy dismissal litigation in this case, we conclude that the cited "general factual allegations" in the Amended Complaint, and the "specific facts . . . necessary to support the claim" that they embrace, here sufficed to establish the Bochner Plaintiffs' standing at the pleadings stage. *Lujan v. Defs. of Wildlife*, 504 U.S. at 561 (citation omitted).

In urging otherwise, the City seeks to cast its disavowal of enforcement at the summary judgment stage back in time to the pleadings stage. It cannot do that here because the City, in litigating its motion to dismiss, not only failed to disavow enforcement but also twice appears to have conceded the presumption of enforcement.

To explain, as discussed *supra* at 7–8, when the City initially questioned the Top East Realty LLC plaintiff's standing (based on ambiguity as to its possession of a commercial lease subject to § 22-1005), plaintiffs argued they had standing to assert a pre-enforcement challenge to the Guaranty Law "in light of . . . the substantial penalties the Law provides." Pls.' Opp'n Defs.' Mot. Dismiss at 12 n.10. Further, plaintiffs argued that they had standing to challenge amendments to the Commercial Harassment Law—which includes the Guaranty Law amendment proscribing attempts to collect on guaranties it rendered unenforceable, *see* § 22-902(a)(14)—because they reasonably feared enforcement of those laws if they attempted to collect rent arrears. In reply, the City did not address plaintiffs' allegation of "substantial penalties." And, as to plaintiffs' professed fear of enforcement, the City disputed neither its authority nor its intent to enforce the Guaranty Law. It stated only that it "never argued that Plaintiffs lacked standing for this reason." Defs.' Reply Supp. Mot. Dismiss at 2 n.3. This disavowal

26

effectively conceded the presumption of enforcement, at least at the pleadings stage.

The City again conceded this point after the Bochner Plaintiffs joined the case. As discussed *supra* at 9–10, in response to the district court's order for supplemental briefing, the Bochner Plaintiffs submitted that a feared threat of enforcement supported their standing to bring a pre-enforcement challenge. In arguing that the Amended Complaint satisfactorily pleaded such a feared threat, plaintiffs submitted that "[c]ourts presume that the government intends to enforce a law 'in the absence of a disavowal by the government or any other reason to conclude' it has no such intent," and asserted that the City was "empowered to enforce [§] 22-902(a)," and had "not disavowed any intention to enforce the law against landlords." Pls.' Letter Br. (Sept. 9, 2020) at 6 (quoting *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d at 71). While this section of plaintiffs' letter brief specifically addressed the City's enforcement authority with respect to the Commercial Harassment Law, because the Guaranty Law amended the Commercial Harassment Law to define proscribed harassment to include attempts to collect on guaranties rendered unenforceable by § 22-1005, *see* § 22-902(a)(14), the City's authority to enforce the Commercial Harassment Law presumptively includes the authority to enforce the Guaranty Law to the extent incorporated therein. In any event, in response to plaintiffs' arguments, the City made no disavowal of its enforcement authority or intent but, rather, acknowledged that all plaintiffs then before the court—including the Bochner Plaintiffs—had standing to challenge both the Harassment Law Amendments and the Guaranty Law. This is reasonably understood as a second concession of the presumption of enforcement at the pleadings stage.

In seeking to avoid that conclusion, the City argues that a presumption of enforcement cannot apply to the Guaranty Law because it "does not specifically proscribe any conduct," but "simply deems a contractual provision unenforceable

in private disputes." Appellants' 2d Suppl. Br. at 5.[9]  As should by now be apparent, this argument fails because it overlooks § 22-902(a)(14), which proscribes landlord attempts to collect on guaranties rendered unenforceable by § 22-1005 as commercial tenant harassment.   The City acknowledges the proscriptive character of § 22-902(a).  *See* Defs.' Mem. Supp. Mot. Dismiss at 16 ("[T]he Harassment Laws . . . proscribe the conduct of harassing residential or commercial tenants[.]"); Defs.' Reply Supp. Mot. Dismiss at 3 (referring to "proscribed forms of conduct" under Harassment Law Amendments).   That acknowledgement necessarily extends to § 22-902(a)(14).   Moreover, before this court, the City acknowledged that N.Y. Gen. City L. § 20(22) and N.Y.C. Charter § 394(c) empower the City to sue "to enjoin violations of a local law or regulation proscribing or requiring specific conduct," Appellants' 2d Suppl. Br. at 1, which presumably includes harassment in violation of §§ 22-902(a)(14), 22-1005.  In these circumstances, we see no basis to conclude that a presumption of enforcement does not apply to these Guaranty Law provisions at the pleadings stage.

The City nevertheless argues that the Bochner Plaintiffs never faced a real threat of enforcement because their commercial tenant had "returned the keys" to the leased premises before this action was commenced and, thus, the City would have had no plausible basis for charging the Bochner Plaintiffs with conduct that caused a commercial tenant to vacate or give up rights under the lease. Appellants' 2d Suppl. Br. at 7 (noting that proscribed harassment pertains to conduct that "would reasonably cause a commercial tenant to vacate covered property" or to surrender or waive "any rights under a lease or other rental agreement" (quoting N.Y.C. Admin. Code § 902(a) (emphasis omitted)).  The City

---

[9] As already noted, on this appeal, the City does not dispute that the Bochner Plaintiffs' desire to enforce their guaranty agreement is "affected with a constitutional interest" protected by the Contracts Clause.  *Susan B. Anthony List v. Driehaus*, 573 U.S at 159 (internal quotation marks omitted).

did not make such an argument during dismissal litigation in this case. In doing so now, it fails to point to any evidence in the record as to the circumstances attending the tenants' return of keys. We thus cannot conclude that the unlikelihood of the City succeeding on a Guaranty Law claim against the Bochner Plaintiffs is so clearly established as to defeat the presumption of enforcement as a matter of law at the pleadings stage. *See Vitagliano v. Cnty. of Westchester*, 71 F.4th at 138 (noting "low threshold" for demonstrating credible threat of enforcement at pleadings stage); *see also Vermont Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (stating that "while there may be other, perhaps even better," constructions of challenged law, plaintiff's interpretation was "reasonable enough" to support "legitimat[e] fear that it will face enforcement of the statute").

Finally, the City suggests that the Bochner Plaintiffs fail, in any event, to satisfy the redressability requirement of standing because a judgment against the City would not preclude commercial lease guarantors from themselves "enforcing" the Guaranty Law against landlords. Appellants' 2d Suppl. Br. at 6–7. The argument fails because the law of standing does not require that the relief sought by a plaintiff completely redress the asserted injury. *See American Cruise Lines v. United States*, 96 F.4th 283, 286 (2d Cir. 2024) ("[A] plaintiff 'need not show that a favorable decision will relieve [his] *every* injury.'" (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original)); *Soule v. Connecticut Assoc. of Schs., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) (*en banc*) ("A plaintiff makes this [redressability] showing when the relief sought 'would serve to . . . eliminate *any* effects of' the alleged legal violation that produced the injury in fact." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998) (emphasis added)). Presuming City enforcement of the Guaranty Law at the pleadings stage, a declaration that the law is unconstitutional would eliminate the risk of such enforcement against the Bochner Plaintiffs and, at least to that extent, "directly and tangibly benefit[]" them in a way sufficient to satisfy the redressability requirement of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. at 574.

29

In sum, we conclude that the Bochner Plaintiffs sufficiently demonstrated standing at the pleadings stage of this action. Therefore, we deny the City's request to vacate this court's judgment in *Melendez II* for lack of subject matter jurisdiction.

## C. The Bochner Plaintiffs Failed To Satisfy Standing at the Summary Judgment Stage

In cross-moving for summary judgment on remand, the City for the first time challenged the Bochner Plaintiffs' standing and federal jurisdiction on the ground that it "does not enforce the Guaranty Law" and, thus, the Bochner Plaintiffs cannot show the requisite credible threat of imminent enforcement. Defs.' Cross-Mot. Summ. J. at 9. The City repeated this assertion unequivocally to both the district court and this court, indicating that its disavowal of enforcement was grounded not merely in an exercise of discretion but in a lack of authority. *See* Defs.' Reply Supp. Cross-Mot. Summ. J. at 1 ("The City does not enforce the Guaranty Law . . . against the Plaintiffs[.]"); Defs.' Suppl. Letter Br. (Dec. 7, 2022) at 2 ("[T]he City does not enforce the Guaranty Law against the Plaintiffs[.]"); Appellants' Br. at 11 ("[T]he City . . . has absolutely no role in enforcing the [Guaranty Law]."); Appellants' Reply Br. at 19 ("[T]here is no threatened enforcement by the government here because none of the defendants has any power to enforce the challenged law.").

In response, the Bochner Plaintiffs also changed their position on standing, conceding in the district court and initially in this court that they do not face a threat of enforcement by the City because "the Guaranty law is not 'enforced' by anyone." Pls.' Suppl. Letter Br. (Dec. 7, 2022) at 5 n.3; *see* Appellees' Br. at 25 (stating "Guaranty Law is not 'enforced' by *anyone*" (emphasis in original)); *id.* at 28 (stating Guaranty Law does not "fall into [the] category" of "governmentally enforceable law[s]"). In conceding as much, the Bochner Plaintiffs necessarily fell short of meeting their heightened burden on summary judgment to adduce

"factual evidence" proving a credible threat of imminent and redressable enforcement injury by the City. *Murthy v. Missouri*, 144 S. Ct. at 1986; *see Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. at 298–99 ("When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971))).

Resisting that conclusion, the Bochner Plaintiffs submit that this action is not a pre-enforcement challenge but, rather, a backward-looking claim to redress injury already sustained by them upon enactment of the Guaranty Law, which deprived them of their ability to enforce their guaranty agreement for commercial lease arrears. But that only serves to highlight the Bochner Plaintiffs' standing problem. On remand, the Bochner Plaintiffs indicated that the only relief sought against the City was a declaratory judgment. But, as the Supreme Court has made plain, relief that can "amount to no more than a declaration that the statutory provision they attack is unconstitutional, *i.e.*, a declaratory judgment" is "the very kind of relief that cannot alone supply jurisdiction otherwise absent." *California v. Texas*, 593 U.S. at 673. The Bochner Plaintiffs seek no other form of relief from the City for *past* injury, which is hardly surprising because, to date, the City has never tried to enforce the Guaranty Law against them—or apparently any other landlord. Thus, the Bochner Plaintiffs cannot recast what is plainly a forward-looking pre-enforcement action as a backward-looking claim and, thereby, avoid the burden of adducing evidence of injury in the form of a "real and immediate threat" of enforcement. *Murthy v. Missouri*, 144 S. Ct. at 1986 ("[B]ecause the plaintiffs request forward-looking relief, they must face a real and immediate threat of repeated injury." (internal quotation marks omitted)). Put another way, remedies "operate with respect to specific parties"; "they do not simply operate on legal rules in the abstract." *California v. Texas*, 593 U.S. at 672 (internal quotation marks omitted). Here, a judgment declaring the Guaranty Law unconstitutional

31

could run only against the City. But if, as plaintiffs conceded on summary judgment, the City does not enforce the Guaranty Law, a declaratory judgment against the City could afford plaintiffs no relief from the injuries they claim flow from its enactment, *i.e.*, the defenses and/or penalties afforded *private parties* pursuant to §§ 22-902(a)(14), 22-903, 22-1005. *See California v. Texas*, 593 U.S. at 673 (concluding asserted injury from unenforceable statutory mandate was not redressable because "[t]here is no one, and nothing, to enjoin").[10]

Nor can plaintiffs avoid this conclusion by arguing that, even in the absence of any enforcement of the Guaranty Law by the City, the declaratory judgment they seek would redress injury from the enactment of that law because of its likely persuasive effect on New York State courts presiding over future private litigation between the Bochner Plaintiffs and their lease guarantor. This argument fails because, as the Supreme Court has made clear, "the views of the federal courts of appeals do not bind [a state court] when it decides a federal constitutional question." *Johnson v. Williams,* 568 U.S. 289, 305 (2013).[11] The conclusion applies

---

[10] This fact distinguishes this case from others cited by the Bochner Plaintiffs in which a challenged law authorized *the government defendant* to impose penalties. *See Iten v. Los Angeles*, 81 F.4th 979, 982 (9th Cir. 2023) (recognizing plaintiffs' standing to challenge eviction moratorium that not only provided tenants with defense to eviction but also "imposed civil and criminal penalties to landlords who violate the [m]oratorium"); *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 724 (8th Cir. 2022) (addressing Contracts Clause challenge to eviction moratorium that "made willful violations a misdemeanor punishable by imprisonment or a fine" and granted Attorney General "discretion to impose other penalties on landlords"); *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905 (9th Cir. 2021) (affirming denial of preliminary injunction against eviction moratorium without considering standing where government was authorized to issue administrative citations for noncompliance).

[11] A few New York State trial courts have already chosen not to follow the district court's reasoning in *Melendez III* holding the Guaranty Law unconstitutional. *See 141 Ave. A Assocs., LLC v. Sneak EZ LLC*, 80 Misc.3d 1225(A), at *1 (N.Y. Sup. Ct. 2023) (explaining "this court is not bound by *Melendez*" in holding landlord could not pursue damages

32

with equal force to the views of federal district courts. As such, the potential influence of a federal court opinion in a state action is insufficient to satisfy redressability. That standing requirement demands that a federal court "be able to afford relief *through the exercise of its power,* not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen,* 599 U.S. at 294 (quoting *Franklin v. Massachusetts,* 505 U.S. 788, 825 (1992) (Scalia, *J.,* concurring in part and concurring in judgment) (emphasis in original)).

Our standing analysis, however, cannot simply end there because, as discussed *supra* at 18–19, in their post-argument supplemental filings with this court, the parties changed their positions on enforcement yet again. The City, instead of continuing to insist that it lacks "any power to enforce the [Guaranty Law]," Appellants' Reply Br. at 19, belatedly identified state and local laws affording it "generalized authority . . . to remedy violations" of any City law, Appellants' 1st Suppl. Letter Br. at 3 (citing N.Y. Gen. City L. § 20(22), N.Y.C. Charter § 394(c)). Indeed, in response to a specific question from this court, the City conceded that it has relied on this generalized authority in more than 2,500 actions involving various provisions of City law. Not surprisingly, the Bochner Plaintiffs respond to these disclosures by abandoning their concession that "the Guaranty Law is not 'enforced' by *anyone.*" Appellees' Br. at 25 (emphasis in original). They now argue that the authority conferred on the City by § 20(22) and § 394(c) establishes a credible threat of enforcement sufficient to support standing.[12]

---

under Guaranty Law); *see also Mansion Realty LLC v. 656 6th Ave. Gym LLC,* 79 Misc.3d 372, 380 n.4 (N.Y. Sup. Ct. 2023).

[12] Insofar as one or both parties have sometimes taken contrary positions, we need not here decide whether earlier concessions waive contrary later arguments because, in any event, this court is not bound by litigants' concessions on points of law. *See Kamen v.*

On the record before this court, it appears that the City regularly invokes the authority conferred by N.Y. Gen. City L. § 20(22) and N.Y.C. Charter § 394(c) in enforcing a variety of local laws. While there is no obvious reason why this enforcement authority would not extend to the Guaranty Law, at least insofar as it expands the definition of commercial harassment proscribed by the City's Commercial Harassment Law, *see* N.Y.C. Admin. Code §§ 22-902(a)(14), 22-1005, the Bochner Plaintiffs point to nothing in the record indicating that the City has ever so used this enforcement authority. The City does not seem to have initiated any of the Guaranty Law cases in which it tells us it has entered appearances. Rather, it has appeared in those cases as an *amicus* or intervening party, frequently at the behest of the state court, and in that context defended the constitutionality of the Guaranty Law. *See Mendez v. Heller*, 530 F.2d at 460 (holding that where New York Attorney General "has a duty to support the constitutionality of challenged state statutes, and to defend actions in which the state is interested, [he] does so, not as an adverse party, but as a representative of the State's interest in asserting the validity of its statutes" (internal quotation marks and citations omitted)). On this record, we must conclude that the Bochner Plaintiffs failed to carry their standing burden at summary judgment.

Indeed, the City has now unqualifiedly disavowed any intent to enforce the Guaranty Law against the Bochner Plaintiffs: "Neither the City nor any other defendant has any intention of enforcing the guaranty law—full stop." Appellants' 2d Suppl. Br. at 13. Indeed, the City's Acting Corporation Counsel, "who controls litigation on the City's behalf and enjoys the general enforcement powers" conferred by law, *id.* at 14, has reiterated that disavowal in a declaration submitted

---

*Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99 (1991) (holding parties' legal theories not binding on Court, which "retains the independent power to identify and apply the proper construction of governing law"); *accord Becker v. Poling Transp. Corp.*, 356 F.3d 381, 390 (2d Cir. 2004).

under penalty of perjury. Therein Counsel "categorically disavow[s] any future enforcement of the Guaranty Law . . . by the city of New York under General City Law § 20(22), New York City Charter § 394(c), or any other provision of law." Decl. of Muriel Goode-Trufant, Acting Corporation Counsel (Sept. 9, 2024) at 2, Dkt. 99. In the face of such a disavowal, the Bochner Plaintiffs can no longer rely on a presumption of enforcement. *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d at 71 (explaining that court presumes intent to enforce proscriptive statute "*in the absence of a disavowal by the government* or another reason to conclude that no such intent existed" (emphasis added) (internal quotation marks omitted)); *see also HealthNow New York Inc. v. New York*, 448 F. App'x 79, 81 (2d Cir. 2011) (identifying no Article III injury from threatened enforcement of statute where "Attorney General has denied his office intends to use [it] against [plaintiff]"). Rather, on summary judgment, it was their burden to adduce "factual evidence," *Murthy v. Missouri*, 144 S. Ct. at 1986, showing "certainly impending" injury from City enforcement of the Guaranty Law, or a "substantial risk" of such injury, *Clapper v. Amnesty Int'l USA*, 568 U.S. at 414 & n.5; *see Vitagliano v. Cnty. of Westchester*, 71 F.4th at 136. They failed to adduce any such evidence.[13]

---

[13] The Seventh Circuit recently suggested that "state officials' promises *not* to enforce a statute receive less weight" than other parties' disavowals "especially when they cannot bind their successors in office." *Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625, 631 (7th Cir. 2023) (emphasis in original). By contrast, the Tenth Circuit has stated that to identify standing in the face of such a disavowal would be to "conclude the highest-ranking law enforcement official" in the county "had engaged in deliberate misrepresentation to the court." *Brown v. Buhman*, 822 F.3d 1151, 1170 (10th Cir. 2016); *see also Gordon v. Lynch*, 817 F.3d 804, 807 (D.C. Cir. 2016) (holding case moot where government unequivocally stated it would not enforce challenged statute). We need not here decide when, if ever, the caution urged by the Seventh Circuit is warranted because, in this case, it is the Bochner Plaintiffs' failure to adduce factual evidence of likely enforcement that defeats standing.

The Bochner Plaintiffs nevertheless submit that, even in the absence of any threat of City enforcement, their standing to maintain this action must be recognized because, otherwise, the Guaranty Law would be "completely immune from any constitutional challenge." Appellees' Br. at 25. The Supreme Court, however, has "long rejected that kind of 'if not us, who?' argument as a basis for standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. at 396. In any event, there is no reason to think that a commercial landlord suing a guarantor for unpaid lease obligations will not be able to challenge the constitutionality of the Guaranty Law if the guarantor raises it as a defense in the action. Nor is there reason to think that a landlord sued under § 22-903 for harassment in violation of §§ 22-902(a)(14), 22-1005, will not be able to challenge the constitutionality of the Guaranty Law in seeking dismissal of such a claim. Such opportunities are sufficient to "vindicate the supremacy of federal law." *Whole Woman's Health v. Jackson*, 595 U.S. at 48; *see DeVillier v. Texas*, 601 U.S. 285, 291 (2024) (explaining that constitutional rights are often "invoked defensively in cases arising under other sources of law"). While plaintiffs may have preferred to challenge the Guaranty Law in this federal action against the City, "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health v. Jackson*, 595 U.S. at 49. In so stating, the Supreme Court emphasized that it "has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Id.*

In sum, the Bochner Plaintiffs failed to carry their heightened burden on summary judgment to demonstrate standing through factual evidence of the City's likely enforcement of the Guaranty Law against them. On this record, we must vacate the award of summary judgment in favor of the Bochner Plaintiffs and remand the case to the district court with instructions to dismiss for lack of subject matter jurisdiction.

## II.     Sanctions and Costs

This court expressed concern that the City had engaged in sanctionable strategic delay in not raising an enforcement challenge to standing until this court partially reversed the Rule 12(b)(6) dismissal judgment in its favor.  *See generally International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d at 393.  Upon review of papers submitted by the City, we are persuaded that this delay was not strategic and, therefore, we give no further consideration to sanctions.

At the same time, however, the City's delay in raising an enforcement challenge to standing appears to have been negligent.  The City was represented in this action by the City's Corporation Counsel, who "controls litigation on the City's behalf and enjoys the general enforcement powers" conferred by law. Appellants' 2d Suppl. Br. at 14**.**  Thus, during the lengthy dismissal stage of this case, the City had every reason to explore the scope of its authority to enforce the Guaranty Law.  Similarly, it had every reason to decide at that stage of the litigation whether to disavow enforcement of the Guaranty Law against the Bochner Plaintiffs, as it now unequivocally has done.  The City's failure to conduct such due diligence, coupled with its concession of standing on two occasions, failed timely to alert the district court and this court to an enforcement issue determinative of standing that, if raised earlier, might have shortened or streamlined this years-long litigation.  Similarly, the need for multiple submissions to learn the scope of the City's authority to enforce the Guaranty Law, and the history of its appearances to defend that law, unnecessarily prolonged resolution of this appeal.

In these circumstances, although the City prevails in part on this appeal, we deny it costs because its actions unreasonably and unnecessarily delayed consideration of plaintiffs' standing and federal jurisdiction.  *See* Fed. R. App. P. 39(a)(4) (providing that, where district court's judgment is vacated, "costs are taxed only as the court orders"); *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330,

341, 343 (2021) (identifying "equitable discretion" of courts of appeals "over costs relating to their own proceedings"); *Moore v. Cnty. of Delaware*, 586 F.3d 219, 221 (2d Cir. 2009) (stating that while "prevailing party is presumptively entitled to an award of costs," the court has "wide discretion" to choose a different cost allocation (internal quotation marks omitted)).

Although federal courts must address jurisdictional questions at any time in a case, they need not condone a party's failure to exercise reasonable diligence in identifying and raising jurisdictional questions early in a case to avoid putting courts and adversaries to unnecessary time and expense. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (denying costs to prevailing party to "emphasize" that court "in no way condone[s party's] cavalier disregard of the earlier proceedings in this case"). Accordingly, we deny the City costs on this appeal.

## CONCLUSION

To summarize, we conclude,

1. At the pleadings stage of this case, the Bochner Plaintiffs sufficiently demonstrated standing to challenge the Guaranty Law because their Amended Complaint alleged the City's enforcement of that law, a presumption of enforcement applied, and defendants did not challenge that presumption but, rather, conceded standing.

2. On summary judgment, the Bochner Plaintiffs failed to carry their heightened burden to adduce factual evidence showing a likelihood of City enforcement of the Guaranty Law against them, particularly where the City has not enforced or threatened to enforce the Guaranty Law against them or anyone else in the past, and it unqualifiedly disavows intent to enforce the law against the Bochner Plaintiffs in the future.

38

3. Although the City unreasonably delayed raising the enforcement-based challenge to standing and, therefore, to jurisdiction, and then failed to provide complete information as to their enforcement authority, because the conduct was negligent rather than strategic, sanctions are not warranted, but the City is denied costs on this appeal.

Accordingly, the district court's award of summary judgment is VACATED and the case is REMANDED with directions to DISMISS this case for lack of subject matter jurisdiction consistent with this opinion. Defendants' request to vacate this court's judgment in *Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021), is DENIED. No sanctions are warranted against defendants, but they are DENIED costs on this appeal.